# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5044 | **DATE** | 9/23/2004 |
| **CASE TITLE** | Bruce G. Howell vs. Motorola, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss (Doc. No. 16-1) is granted with respect to Committee Defendants without prejudice, and otherwise denied. Plaintiff has leave to file an Amended Complaint, if any, on or before October 15, 2004. The court strikes Plaintiff's motion for class certification (28-1), but will permit Plaintiff to re-file that motion also on or before October 15, 2004, as the parties are now prepared to brief it. Defendants' answer to the Amended Complaint (or to this complaint, if Plaintiff elects to stand on it) to be filed on or before November 5, 2004. Rule 16 Conference is set for November 19, 2004, at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | *5* | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 9/23/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | | mailing deputy initials | |

Document Number

60

U.S. DISTRICT COURT

2004 SEP 23 PM 1:17

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRUCE G. HOWELL, on behalf of Himself )
and a Class a Persons Similarly Situated, )
)
     Plaintiff, )
)
     v. )    No. 03 C 5044
)
MOTOROLA, INC., THE PROFIT SHARING )    Judge Rebecca R. Pallmeyer
COMMITTEE OF MOTOROLA, INC., DAVID )
DEVONSHIRE, GLENN GIENKO, GARTH L. )
MILNE, RON MILLER, WILLIAM P. )
DECLERCK, RICHARD ENSTROM, RICK )
DORAZIL, CHRISTOPHER B. GALVIN, )
ROBERT L. GROWNEY, RONNIE C. CHAN, )
H. LAURANCE FULLER, ANNE P. JONES, )
DONALD R. JONES, JURY C. LEWENT, )
WALTER E. MASSEY, NICHOLAS )
NEGROPONTE, JOHN E. PEPPER, JR., )
SAMUEL C. SCOTT III, GARY L. TOOKER, )
B. KENNETH WEST, JOHN A. WHITE and )
CARL F. KOENEMANN, )
)
     Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Bruce G. Howell has filed this putative class action lawsuit on behalf of the

Motorola, Inc. 401(k) Profit Sharing Plan (the "Plan") and on behalf of "all Participants in the Plan

for whose individual accounts the Plan purchased and/or held shares of" Motorola, Inc. ("Motorola")

common stock from May 16, 2000 to the present (the "Class Period"). Defendant Motorola, which

has substantial national and international operations in the telecommunications, electronics,

computer, and satellite communications industries, was the Sponsor of the Plan during the Class

Period. Defendants include certain Motorola officers, members of Motorola's Board of Directors,

the Profit Sharing Committee which served as the Plan Administrator, and members of that

Committee. Specifically, Christopher B. Galvin (Motorola's Chief Executive Officer and Chairman

of the Board of Directors during all or part of the Class Period), Robert L. Growney (Motorola's

Chief Operating Officer during all or part of the Class Period), Ronnie C. Chan, H. Laurance Fuller,

Anne P. Jones, Donald R. Jones, Judy C. Lewent, Walter E. Massey, Nicholas Negroponte, John E. Pepper, Jr., Samuel C. Scott III, Gary L. Tooker, B. Kenneth West, and John A. White were members of Motorola's Board of Directors during all or part of the Class Period (the "Director Defendants"). Defendant Profit Sharing Committee of Motorola, Inc. (the "Committee"), as well as its six members–Defendants David Devonshire, Glenn Gienko, Garth L. Milne, Ron Miller, William P. DeClerck, and Richard Enstrom, constituted the Plan Administrator and "Named Fiduciary" of the Plan during all or part of the Class Period (the "Committee Defendants"). Defendant Rick Dorazil is Motorola's Vice President and Director, Global Rewards-Benefits. Defendant Carl F. Koenemann was at all times relevant to this action Motorola's Executive Vice President-Finance and Chief Financial Officer.

Plaintiff alleges that all Defendants violated section 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3). Specifically, Plaintiff alleges that Defendants breached their fiduciary duties to the Plan and the Participants by (1) negligently permitting the Plan to purchase and hold shares of Motorola's common stock when it was imprudent to do so, (2) negligently misrepresenting and negligently failing to disclose material facts concerning the management of Plan assets to the Plan and the Participants, and (3) failing to appoint appropriate fiduciaries, to properly monitor those fiduciaries, and to provide sufficient information to enable the fiduciaries to fulfill their obligations under ERISA. These purported failures all relate to allegedly risky vendor financing agreements between Motorola and its business partners, including a contract with Telsim Mobil Telekomunikayson Hizmetleri A.S. ("Telsim"), a Turkish mobile telecommunications company, as well as a purported liquidity crisis and unspecified problems with at least two Motorola lines of business. Plaintiff claims that Defendants' failure to disclose this information to the public or to dispose of Motorola's shares under these circumstances constituted a violation of section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), and Department of Labor regulation 29 C.F.R. § 2550.404a-1(b)(2).

Defendants seek to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth here, Defendants' motion to dismiss is granted in part and denied in part.

## FACTUAL BACKGROUND

### I. Motorola's Purported Problems During Class Period

As discussed below, the chief focus of Plaintiff's allegations of mismanagement and concealment is Motorola's relationship with Telsim. That relationship has been described in other reported opinions and will not be exhaustively analyzed here. *See, e.g., In re Motorola Sec. Litig.,* No. 03 C 287, 2004 WL 2032769 (N.D. Ill. Sept. 9, 2004); *Motorola Credit Corp. v. Uzan,* 274 F. Supp. 2d 481, 491 (S.D.N.Y. 2003) (Rakoff, J.). According to Plaintiff's Complaint, Motorola's Form 10-Q[1] for the first quarter of 2000, which it filed with the SEC on May 16, 2000, stated that Motorola had "signed an agreement with Telsim, which is estimated to have a sales potential of at least $1.5 billion over three years. Under this agreement, the Company expects to provide infrastructure equipment, wireless phones and associated services to expand the countrywide GSM network in Turkey." (Cmplt. ¶¶ 1, 20.) Plaintiff alleges that this statement was misleading in several respects. First, this supposed $1.5 billion agreement required Motorola to provide $1.7 billion in vendor financing. Second, there were unspecified "serious ongoing problems in the Motorola-Telsim relationship." Third, Telsim had made numerous unspecified complaints about the systems it had purchased from Motorola; some of these claims were legitimate, while others were made in order to justify Telsim's failure to repay any portion of the loan. Fourth, during the Class Period, unnamed Motorola and Telsim officials frequently discussed the need either for sale of Telsim to a third party or for a "strategic partnership"[2] to address problems in the Motorola-Telsim relationship. Fifth, "there was a huge risk to Motorola's shareholders if Telsim defaulted on its

---

[1] The purpose of a Form 10-Q, which includes unaudited financial statements, is to provide investors with a continuing view of a company's financial condition during the year. *See* http://www.sec.gov/answers/form10q.htm.

[2] The Complaint does not explain this term.

agreement with Motorola, which it did during the Class Period." Sixth, during the Class Period, Motorola took unspecified actions that "severely damaged Telsim's name, brand, retail sales and subscriber growth."

Plaintiff makes a handful of additional allegations that do not relate directed to Telsim: Plaintiff alleges that Motorola had provided vendor financing to other unidentified customers, so that Motorola's total vendor financing commitment during an unspecified period of time totaled approximately $2.9 billion. He asserts, further, that during the Class Period, "Motorola experienced a liquidity crisis" that endangered its credit rating. Finally, "major portions of Motorola's lines of business, including its semiconductor business and its business of providing base stations for wireless service providers and other nonconsumer telecom gear, were experiencing substantial difficulties during the Class Period." (*Id.* ¶¶ 3(a), 50, 58, 60.)

## II. Defendants

### A. Motorola

Plaintiff claims that Defendant Motorola itself is a fiduciary of the Plan on four grounds: (1) Motorola's Board of Directors controlled the Plan Committee; (2) Motorola filed the Plan's annual reports on Form 11-K with the SEC; (3) relevant portions of Motorola's Summary Plan Description ("SPD") "constitute part of a prospectus covering securities that have been registered under the Securities Exchange Act of 1993"; and (4) Motorola's filings either were incorporated by reference into the Plan's SPD or otherwise were made available to the Participants during the Class Period. (*Id.* ¶¶ 56, 59(a), 88.) Plaintiff alleges that Motorola breached its fiduciary duties by allowing the Plan to purchase and hold a large number of shares of Motorola common stock and by failing to sell those shares at a time when it was imprudent to hold Motorola stock. (*Id.* ¶ 57.) Plaintiff also contends that "Motorola negligently made materially false or misleading public statements which caused the common stock of Motorola to be an imprudent investment," and that specifically, its quarterly reports on Form 10-Q and its annual reports on Form 10-K "negligently

misrepresented Motorola's relationship with Telsim" in that it failed to disclose Motorola's difficulties, including its relationship with Telsim, described above. (*Id.* ¶¶ 3(a), 59, 60.) In addition, Plaintiff claims that "Motorola should have known that the[] public statements it negligently issued [regarding the Telsim relationship] during the Class Period were materially false and misleading and should have known that th[is] adverse information caused the common stock of Motorola to be an imprudent investment." (*Id.* ¶ 61.)

To support its contention that Motorola breached its fiduciary duties in purchasing and holding Motorola common stock when it was an imprudent investment, Plaintiff cites several public statements regarding the Telsim transaction. First, on or about April 6, 2001, *Bloomberg News* published an analysis of Motorola's debt problems, including its loan to Telsim, noting that the company was owed "a staggering $1.7 billion by a single customer in an emerging market country." (*Id.* ¶ 62.)[3] Second, in a 2002 book, Arthur Levitt, chairman of the SEC from July 1993 to February 2001, opined that "Motorola should ask itself: why is it in shareholders' interest to invest in a company that fails to disclose an enormous risk taken with their money?" (*Id.* ¶ 64 (citing ARTHUR LEVITT, TAKE ON THE STREET: WHAT WALL STREET AND CORPORATE AMERICA DON'T WANT YOU TO KNOW 167 (2002)). Finally, on May 2, 2003, unidentified individuals affiliated with Telsim published a notice in the *Wall Street Journal* complaining that "Motorola management has severely and knowingly damaged the Telsim brand, its retail sales, and its subscriber growth. These are, of course, the very sources of income from which the loans [to Motorola] could be repaid." (*Id.* ¶ 63.)

Plaintiff also claims that Motorola "cause[d] the Plan to offer the common stock of Motorola as an investment option." (*Id.* ¶ 88.) According to Plaintiff, "Motorola negligently misrepresented and negligently failed to disclose material information [regarding Motorola's difficulties, including its relationship with Telsim, discussed above] in the SPD and in its SEC filings during the Class

---

[3]    The Complaint does not indicate when or how the amount of the Telsim loan was publicly disclosed.

Period." (*Id.* ¶ 89.) Alternatively, Plaintiff claims that Motorola is liable under the principle of *respondeat superior* for the actions of Director Defendants, as the Directors were compensated by Motorola and "acted solely in the scope of their agency for Motorola." (*Id.* ¶¶ 36, 106.)

## B. Director Defendants

Plaintiff contends that Director Defendants had the power to appoint and remove members of the Committee, and were obligated to appoint to the Committee only persons "who would refuse to offer Motorola common stock as a retirement investment available to Participants" if that stock were not a prudent investment. (*Id.* ¶¶ 17, 35, 37, 69, 70, 103.) In addition, Plaintiff alleges that Director Defendants had the ability, authority, and responsibility to monitor Committee Defendants and other fiduciaries of the Plan, "and had the affirmative obligation to provide the Committee Defendants with all information available to the Director Defendants that the Director Defendants should have known would be important to . . . Committee Defendants in managing the Plan and the Plan's assets in a prudent manner." (*Id.* ¶ 17.) According to Plaintiff, Director Defendants violated these obligations when they appointed as members of the Committee one or more Motorola employees who, "by definition," lacked the necessary independence, knowledge, and skill to carry out their responsibility and were therefore influenced or controlled by Motorola or the Director Defendants with respect to the Plan management and investment. (*Id.* ¶¶ 35, 56(a), 70(b), 103(b)-(c).) Plaintiff also urges that Director Defendants failed to monitor Committee members' performance or to provide them with information that Director Defendants knew or should have known the Committee members needed. (*Id.* ¶ 70(c)-(d), 103(d).) According to Plaintiff, Director Defendants should have known that Motorola was making available to the Participants the allegedly misleading SPD and SEC filings. (*Id.* ¶ 90.) Plaintiff contends, further, that Director Defendants themselves "exercised discretionary authority or control respecting management of the Plan or management of the disposition of its assets." (*Id.* ¶ 68.)

6

### C.    Committee Defendants

Plaintiff alleges that Committee Defendants had "complete authority and discretion to control and manage the operation and administration of the Plan." (*Id.* ¶¶ 38, 92.) Plaintiff urges that Committee Defendants breached their fiduciary duties to Participants by offering Motorola common stock as an investment option at a time when Motorola stock was not a prudent investment. (*Id.* ¶¶ 39, 73.) According to Plaintiff, "Committee Defendants had a duty to ascertain the true state of affairs at Motorola, including with respect to the extremely significant Motorola-Telsim relationship [discussed above], and to fully inform the Participants concerning these material facts." (*Id.* ¶ 92.)

### D.    Rick Dorazil

Defendant Rick Dorazil,[4] who served as the Plan's "404(c) Fiduciary," signed the Plan's 2000 and 2001 Forms 11-K,[5] which were filed with the SEC on June 27, 2001 and June 27, 2002, respectively. (*Id.* ¶¶ 13, 74.) Plaintiff alleges that Dorazil should have known that Motorola was disseminating the Plan's SPD to Participants and making Motorola's SEC filings available to Participants during the Class Period. (*Id.* ¶¶ 14, 87.) Plaintiff further claims that Dorazil should have known that these documents contained misleading information (discussed above), should have prevented them from being made available to the Participants, and should have ensured that correct information was being disseminated. (*Id.*) According to Plaintiff, Dorazil also "exercised discretionary authority or control respecting management of the Plan or management or disposition of its assets." (*Id.* ¶ 75.)

---

[4]    Although Plaintiff initially named Dorazil as one of the Committee Defendants, Cmplt. ¶ 1), the remainder of the Complaint, as well as Plaintiff's brief, refers to Dorazil separately from Committee Defendants. (*See, e.g., id.* ¶¶ 11-14.)  The court therefore presumes that Plaintiff's initial inclusion of Dorazil as a Committee Defendant was the result of a scrivener's error.

[5]    The purpose of a Form 11-K is to provide annual reports pursuant to § 15(d) of the Securities Exchange Act of 1934 with respect to employee stock purchase, savings and similar plans. *See* http://www.sec.gov/about/forms/form11-k.pdf.

### E.     Carl Koenemann

Defendant Carl F. Koenemann was responsible for preparing the SEC filings that were incorporated into the SPD. (*Id.* ¶¶ 42, 77.) According to Plaintiff, Koenemann acted as a fiduciary with respect to the Plan and "was in a unique position to inform the Director Defendants and the Committee Defendants of the true facts concerning the Motorola-Telsim relationship and other material facts" (discussed above) and either failed to do so or, alternatively, "succeeded in doing so but acquiesced in the concealment from Participants of this important information." (*Id.* ¶¶ 18, 77.) Plaintiff alleges that, like Dorazil, Koenemann exercised discretion with respect to Plan management and Plan assets. (*Id.* ¶ 78.)

### F.     Allegations Against All Defendants

Plaintiff urges that all Defendants should have ceased purchasing shares of Motorola common stock and offering Motorola common stock as an investment option, and should have sold all shares that the Plan held of Motorola common stock. (*Id.* ¶ 51.) According to Plaintiff, Defendants failed to consider the risks inherent in Motorola common stock (because of Motorola's difficulties, including its relationship with Telsim, discussed above) when evaluating the prudence of such stock as a Plan investment option. (*Id.*) Plaintiff also maintains that all Defendants should have known the facts regarding the Telsim transaction and "should have known that the Plan should not have invested such massive amounts in the common stock of Motorola." (*Id.* ¶ 80.)

## III.     Motorola 401(k) Profit Sharing Plan

The Plan is a participant-directed, defined contribution plan that permits Participants to choose from nine investment options pursuant to ERISA § 404(c) and to shift among options at any time. (Def. Mem., at 4-5; Exs. A-D to Def.' Mem.)[6] One such investment option is the "Motorola Stock Fund," which is an investment fund consisting solely of Motorola common stock. (Cmplt.

---

[6]     Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint is cited as "Def. Mem., at __."

¶¶ 2, 34(d).) As of December 31, 1999, the Plan's investments totaled $6,980,926,000, of which approximately $1,547,214,000, or 22%, was invested in Motorola common stock. (*Id.* ¶ 48.) As of December 31, 2000, the Plan's investments totaled $6,003,900,000, of which approximately $906,146,000, or 15%, was invested in Motorola common stock. (*Id.*)

Plaintiff notes that "[t]he SPD and Motorola's SEC filings constituted representations made in a fiduciary capacity by all Defendants." (*Id.* ¶ 44.) The SPD included a chart comparing the relative risk of the various investment options available under the Plan and identifying the Motorola Stock Fund as the riskiest investment option. Nevertheless, Plaintiff urges that the chart concealed the extent of risk involved in Motorola's relationship with Telsim, as well as the fact that when employees invest exclusively or primarily in their employer's stock, they take on a much greater risk than they would accept with a more diversified portfolio. Plaintiff claims, therefore, that all Defendants "failed to adequately inform the Participants concerning the true extent of the risk involved in choosing the common stock of Motorola as a retirement investment." (*Id.* ¶ 57.)

## DISCUSSION

Under section 404(a)(1)(B) of ERISA and its implementing regulations, fiduciaries of an employee benefit plan are obligated to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This so-called "prudence rule" requires that a fiduciary

> give[] appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties.

29 C.F.R. § 2550.404a-1(b)(1). "Appropriate consideration" includes:

> (i) A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has

investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action, and

(ii) Consideration of the following factors as they relate to such portion of the portfolio:

(A) The composition of the portfolio with regard to diversification;

(B) The liquidity and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and

(C) The projected return of the portfolio relative to the funding objectives of the plan.

29 C.F.R. § 2550.404a-1(b)(2).

Plaintiff claims that all Defendants breached their fiduciary duties to the Plan and its Participants, including the duties set forth in § 404 of ERISA and 29 C.F.R. § 2550.404c-1 promulgated thereunder, in three principal ways. In its first claim ("Claim I"), Plaintiff insists that all Defendants breached their fiduciary duties by negligently permitting the Plan to invest Plan assets in Motorola's common stock when it was imprudent to do so. (Cmplt. ¶¶ 2, 3(a).) In its second claim ("Claim II"), Plaintiff alleges that all Defendants "negligently ma[de] misrepresentations and negligently fail[ed] to disclose material information necessary to make informed decisions concerning Plan assets and benefits and the appropriateness of the common stock of Motorola as a Plan investment." (Id. ¶ 3(b).) In its third claim ("Claim III"), Plaintiff contends that Motorola and Director Defendants failed to appoint appropriate fiduciaries with the knowledge and expertise needed to manage Plan assets, to monitor those fiduciaries properly, and to provide sufficient information to enable the fiduciaries to fulfill their obligations under ERISA. (Id. ¶¶ 2, 3(c), 103, 106.)

In the alternative, Plaintiff alleges in Claims I and II that all Defendants are liable for the acts of the other Defendants as co-fiduciaries, as each Defendant (1) knowingly participated in or undertook to conceal the other fiduciaries' breaches, (2) by virtue of its own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (3) knew of the other Defendants' breaches of fiduciary duties and failed to take reasonable steps to remedy them. (Id. ¶¶ 83, 100.) Plaintiff contends in Claim III that Committee Defendants are co-fiduciaries for the

reasons stated above. (*Id.* ¶ 105.)

Defendants move to dismiss the Complaint on the ground that Plaintiff fails adequately to allege that Defendants were fiduciaries, or were acting as such, when they engaged in the allegedly unlawful conduct identified in the Complaint. Alternatively, assuming Defendants were acting as fiduciaries, Defendants maintain that Plaintiff has not adequately alleged that they knew or should have known the facts that Plaintiff claims they should have disclosed. Defendants further claim that "disclosure of the material inside information concerning Telsim to Plan Participants or removal of Motorola stock as an investment option would have resulted in a violation of applicable Federal Securities Laws." (Def. Motion ¶ 3.)[7]

## I.    Legal Standard

The purpose of a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the court accepts all well-pleaded allegations in a claim as true and draws all reasonable inferences in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999) (citation omitted). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In other words, a complaint will survive a 12(b)(6) motion if it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (citations omitted).

In every case alleging breach of ERISA fiduciary duty, the threshold question is whether a person employed to provide services under a plan was acting as a fiduciary, *i.e.*, was performing a fiduciary function, when taking the complained-of action. *Pegram v. Herdrich*, 530 U.S. 211, 226

---

[7]    Defendants' Motion to Dismiss Plaintiff's Amended Complaint is cited as Def. Motion ¶ __." For reasons not explained, Defendant Ronnie C. Chan has not joined in this Motion to Dismiss.

(2000). Under ERISA, a person is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . ., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

## II.     Committee Defendants

As noted, Plaintiff urges that all Defendants, including Committee Defendants, should have ceased purchasing shares of Motorola common stock and offering Motorola common stock as an investment option, and should have sold all shares of Motorola common stock held by the Plan. (Cmplt. ¶ 51.)[8] According to Plaintiff, all Defendants failed to consider the risks inherent in Motorola common stock "when evaluating the prudence of Motorola common stock as a Plan investment option." (Id.)[9] Plaintiff also maintains that all Defendants should have known the facts regarding the Telsim transaction and "should have known that the Plan should not have invested such massive amounts in the common stock of Motorola." (Id. ¶ 80.) According to Plaintiff, Committee Defendants breached their fiduciary duties by failing "to ascertain the true state of affairs at Motorola, including with respect to the extremely significant Motorola-Telsim relationship," and by failing to disclose to Participants the material facts concerning the Motorola-Telsim relationship. (Id. ¶ 92.) In addition, Plaintiff maintains that "[t]he SPD and Motorola's SEC filings constituted representations made in a fiduciary capacity by all Defendants." (Id. ¶ 44.)

### A.     Pleading Standard-Rule 9(b)

Defendants implicitly argue that Plaintiff's breach of fiduciary duty claim against Committee

---

[8]     The Complaint does not allege at what point Defendants should have sold Motorola stock. Plaintiff maintains that the Committee itself, as well as its six members named in this lawsuit, constituted the Named Fiduciary and Administrator of the Plan. (Cmplt. ¶¶ 1, 11, 12, 37, 38, 40.) Defendants do not dispute these allegations.

[9]     The Complaint does not specify when Defendants evaluated or should have evaluated the prudence of Motorola common stock as a Plan investment option.

Defendants is subject to FED. R. CIV. P. 9(b), which imposes a heightened pleading standard for claims alleging fraud or mistake, on the ground that "securities fraud is at the heart of [P]laintiff's allegations." (Def. Mem., at 9.) In support, Defendants cite *Thornton v. Evans*, in which our Court of Appeals explained that "claims of a breach of fiduciary duties are subject to Rule 9(b)." 692 F.2d 1064, 1083 n.43 (7th Cir. 1982) (citing *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966)).

Although Plaintiffs do not address *Thornton*, the court finds that it does not support the conclusion that Rule 9(b) governs all cases in which breach of fiduciary duties is alleged. The *Thornton* court explained that claims predicated on ERISA, rather than on fraud, are not subject to Rule 9(b):

> Although the elements of a common law fraud claim are typically pleaded in detail to comply with Rule 9(b), these elements are not required here since plaintiffs' cause of action is predicated upon ERISA, not the common law. Plaintiffs claim that the actions of these defendants, in combination with ERISA fiduciaries, amounted to a conspiracy to facilitate violations of ERISA by co-conspirators (who may or may not be parties to this action). The breach of fiduciary duties under ERISA, which was allegedly caused by a fraudulent scheme to bilk the Fund, is the crux of the instant action. Allegations of fraud *per se* are only part of the plaintiffs' conspiracy claim. In alleging a conspiracy to facilitate the fraudulent diversion of the Fund's insurance premiums, plaintiffs have set forth in sufficient detail facts necessary to state a claim upon which relief may be granted.

*Id.* at 1082-83 (emphasis added).

Plaintiff responds that he has alleged negligence and imprudent breaches of fiduciary duty against Committee Defendants, but not securities fraud. (Pl. Resp., at 24.)[10] Plaintiff notes, correctly, that fraud and *scienter* are not necessary elements of breach of fiduciary duty claims, and warns that Defendants' entreaties to this court to apply Rule 9(b)'s heightened pleading standard to this ERISA case "is an invitation to clear legal error." (*Id.* at 24-25.) Indeed, in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), the Supreme Court explained that the Court has declined to apply Rule 9(b) to contexts other than those set forth in the Rule, namely averments of fraud or

---

[10]     Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Complaint is cited as "Pl. Resp., at __."

mistake. *Id.* at 513; *see also Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003) ("Rule 9(b) is strictly construed; it applies to fraud and mistake and nothing else") (citations omitted).

As the court reads the Complaint, Plaintiff alleges only that Committee Defendants breached their fiduciary duties under ERISA, and not that Committee Defendants are liable under the federal securities laws or under a common law fraud theory. Although Claim II states a misrepresentation claim, it is premised on Plaintiff's contention that all Defendants *negligently* misrepresented and failed to disclose material information. (Cmplt. ¶ 3(b).) Such a claim is not subject to the requirements of Rule 9(b). *See Kennedy*, 348 F.3d at 593; *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) ("Rule 9(b) by its terms does not apply to negligent misrepresentation claims"); *Guaranty Residential Lending, Inc. v. International Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 864 (N.D. Ill. 2004) (Hart, J.); *Adamczyk v. Lever Bros. Co.*, 991 F. Supp. 931, 939 (N.D. Ill. 1997) (Hart, J.). As Plaintiff alleges negligent misrepresentation, but not fraud or mistake, this court will not require that his claim satisfy the heightened pleading requirements of Rule 9(b). *Cf. In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 822 (S.D. Ohio 2004) ("[T]his Court can discern no reason why, generally, ERISA plaintiffs should have to meet heightened pleading requirements, as opposed to the 'simplified notice pleading standard [that] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims'") (quoting *Swierkiewicz,* 534 U.S. at 512); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 652 (S.D. Tex. 2003) ("ERISA does not even have heightened pleading requirements, but is subject to the notice pleading standard . . . .") (citation omitted); *In re Worldcom, Inc.*, 263 F. Supp. 2d 745, 759 (S.D.N.Y. 2003) (Rule 8 satisfied even though allegations regarding defendant's fiduciary status did little more than restate statutory definition); *Rankin v. Rots,* 278 F. Supp. 2d 853, 866 (E.D. Mich. 2003) ("While some of the allegations in support of [plaintiffs'] claim are similar to fraud

allegations, i.e. that [defendants] provided false and misleading information, the gravamen of [plaintiffs'] claim is grounded in ERISA. The heightened pleading requirement under Rule 9(b) will not be imposed where the claim is for a breach of fiduciary duty under ERISA.").

## B.    Pleading Standard-Rule 8(a)

Alternatively, Defendants urge that Plaintiff's Complaint does not even satisfy Rule 8(a)'s pleading requirements. (Def. Mem., at 10.) First, Defendants note that Plaintiff does not allege that Committee Defendants knew the material facts regarding the Telsim transaction. (*Id.*) Defendants claim that Plaintiff could not have alleged that Committee Defendants "knew of the facts that caused the Telsim transaction to fail because Motorola was the victim of fraud by the Telsim owners." (*Id.*)  In support, Defendants cite *Uzan, supra*, in which Motorola Credit Corporation ("MCC"), a wholly-owned credit subsidiary of Motorola, charged five members of the Uzan family, which essentially controlled Telsim, as well as one of their associates and three Uzan-controlled companies, with federal acts of racketeering, state claims of fraud, and other serious misconduct. *See Uzan*, 274 F. Supp. 2d at 491. In his July 2003 decision, Jude Rakoff concluded that the defendants had "perpetrated a huge fraud" on MCC and awarded more than $4 billion in compensatory damages. *Id.* at 490. The court found that "MCC did not know and could not through reasonable diligence have discovered the falsity of defendants' representations (which, indeed, [the Uzans] went to great lengths to conceal), and that MCC would not have extended the loans if it had known the truth." *Id.* at 577. Plaintiff does not address this argument, which appears to preclude the theory that any of the Defendants here were aware of Telsim's wrongdoing at the time of the investment decisions. The court therefore limits its consideration to Plaintiff's allegations that Committee Defendants *should have known* of the adverse facts of the Telsim transaction and Motorola's other difficulties and that they had a duty to ascertain such information.

Defendants challenge the sufficiency of these allegations, noting that Plaintiff has alleged no facts suggesting that Committee Defendants were involved in negotiating the Telsim deal, had

15

responsibility for arranging the vendor financing to Telsim, participated in preparing or signing the allegedly misleading SEC filings, or had reason to know of Telsim's creditworthiness or the risks of the transaction. (Def. Mem., at 10-11, Def. Reply, at 2.)[11] In support, Defendants cite *Jackson*, *supra*, in which defendant employer modified its severance plan to bar recovery of benefits by any employee who refused to release the employer from any other claims. Plaintiffs asserted that their employer "knew or should have known" they would have made other financial arrangements following their termination had they known about the modification. The court held that this conclusory allegation was insufficient to state a claim under ERISA, absent any allegation that the company acted in bad faith, concealed information about the plan, or prejudiced plaintiffs. *Id.* at 981.

Defendants also cite *Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002), in which plaintiff alleged, *inter alia*, that members of the plan committee "knew or should have known" that information issued by the company through the media or its SEC filings was false and misleading and "knew or should have known that the Plan should not have invested in company stock." *Id.* at 230. In dismissing the complaint as to the committee members, the court noted that plaintiff made no allegation that the committee members "had any actual knowledge of any misinformation or that they participated in the dissemination of information they knew or should have known was misleading . . . [or] ever made any purchases of [company] stock at more than market price, or that they purchased or held stock in contravention of information generally available to investors and the then existing advice of market experts." *Id.* (citing *Hull v. Policy Mgmt. Sys. Corp.*, No. CIV.A. 3:00-778-17, 2001 WL 1836286, at *8 (D.S.C. Feb. 9, 2001) (footnote omitted)). As plaintiff's allegations were made against all defendants, without specifying when the "adverse information" was available, or known, to committee members, the court

---

[11]     Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint is cited as "Def. Reply, at __."

concluded that plaintiff failed to satisfy FED. R. CIV. P. 8. *Id.*

Plaintiff insists that his allegations that all Defendants, including Committee Defendants, should have known certain facts regarding the Motorola-Telsim relationship are sufficient to state a claim. (Pl. Resp., at 26-27, citing ¶¶ 3(a), 58.) In support, Plaintiff cites *Lalonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004), in which plaintiffs alleged that the Textron, Inc. pension plan, the plan's sponsor (the company itself), the committee that allegedly administered the plan (consisting of Textron executives), and the plan's trustee, all breached their fiduciary duties. Specifically, plaintiffs claimed that defendants continued to invest in Textron stock during a period in which they knew or had reason to know that Textron had artificially inflated its stock price by concealing "problems throughout Textron's segments and their adverse effect on Textron which are the subject of a federal securities lawsuit by shareholders against Textron and certain of its officers and directors." *Id.* at 2-3, 6. In reversing dismissal of plaintiffs' breach of fiduciary duty claims against Textron and the plan committee, the court found that, "[w]hile this allegation is not terribly specific, Textron surely is aware of the nature of the charges it faces in the separate lawsuit." *Id.* at 6. If it were not, the court explained, the proper response would have been a motion for a more definite statement under FED. R. CIV. P. 12(e), rather than a motion for dismissal on the merits. *Id.* at 6 n.10 (citing *Swierkiewicz*, 534 U.S. at 514). Notably, the Fifth Circuit affirmed dismissal of the claims against the plan Trustee who was not alleged to have knowledge of problems internal to Textron, but was instead "alleged only to have learned (as the events were unfolding) that Textron's stock price and profits were declining . . . ." *Id.* at 7. The court agreed with the district court that these allegations were "simply not enough to support a claim against the trustee." *Id.*

Plaintiff also cites *In re Sprint Corp. ERISA Litig.*, No. 03-2202-JWL, 2004 WL 1179371 (D. Kan. May 27, 2004), in which plaintiffs alleged that defendants breached their fiduciary duties by allowing Sprint's ESOP plans to purchase and hold shares of Sprint stock, and by continuing to offer Sprint stock as an investment option, at a time when Sprint stock was an imprudent

investment. *Id.* at *3. Specifically, plaintiffs alleged that Sprint's investment profile became akin to that of a high-risk, high-cost startup company because of steady declines in Sprint's long-distance rates and corresponding profitability, as well as $2 billion to develop a new Internet system. *Id.* at *12. Defendants allegedly knew but did not publicly announce that a planned merger with WorldCom was not going to proceed; that Sprint had abandoned its plans for the new Internet system but developed programs to target poor-credit subscribers; and that the corporation had established high-risk, aggressive, and inappropriate tax shelters. The court denied all defendants' motions to dismiss, observing that one could reasonably infer from these allegations that "some of the plan fiduciaries acted in their own self interest at the expense of the plan beneficiaries by misrepresenting or failing to disclose material information." *Id.* The court did not separately address the liability of plan committee members, but this court notes that all were Sprint employees.

Plaintiff here has not alleged that Committee Defendants knew any facts regarding the Telsim transaction or Motorola's other purported difficulties. Plaintiff claims that Committee Defendants should have known, or had a duty to ascertain, certain alleged facts regarding the Telsim transaction, but such allegations are arguably inconsistent with Plaintiff's allegation that Motorola itself negligently misrepresented its relationship with Telsim. (*See* Cmplt. ¶ 3(a).) Nothing in the Complaint suggests that Committee Defendants, some of whom may not have been Motorola employees, had any reason to know that they should seek out information regarding one or a few of Motorola's transactions when it is undisputed that such information was not disclosed to the public (*see id.* ¶ 35) ("some or all of the members of the Committee were employees of Motorola"). Indeed, Plaintiff has not identified the alleged employees' positions at Motorola, or how they may have or should have been privy to the Telsim situation. As there is no basis in the Complaint for a finding that Committee Defendants had reason to know of or discover nonpublic information regarding Motorola's difficulties, the court will dismiss Plaintiff's claim against them without

prejudice.[12]

## III.    Motorola

Plaintiff alleges that Motorola, through Director Defendants, had the power to appoint and remove Committee members without cause and that one or more Committee members were employees of Motorola. (Cmplt. ¶ 35.) Plaintiff also claims that Motorola filed with the SEC the Plan's annual reports on Form 11-K; these filings either were incorporated by reference into the Plan's SPD or otherwise were made available to the Participants during the Class Period. (*Id.* ¶¶ 56(b) & (d), 59(a), 88.) Finally, Plaintiff maintains that "Motorola should have known that the[] public statements it negligently issued [regarding the Telsim relationship] during the Class Period were materially false and misleading and should have known that th[is] adverse information caused the common stock of Motorola to be an imprudent investment." (*Id.* ¶ 61.)

### A.    Fiduciary Status

Defendants implicitly argue that Motorola is not an ERISA fiduciary, as Motorola was merely the Plan Sponsor and did not make any investment decisions. (Def. Mem., at 22.) In support, Defendants cite several decisions by district courts in other circuits. In both *In re Williams Companies ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003), and *Crowley, supra*, the court dismissed the plaintiff's claim that the defendant company, which was the plan sponsor, imprudently continued to offer participants the ability to invest in company stock, as the company did not control investment options. *Williams*, 271 F. Supp. 2d at 1338; *Crowley*, 234 F. Supp. 2d

---

[12]    As the court finds that Plaintiff has failed to state a claim that Committee Defendants should have known about or discovered nonpublic information regarding Motorola's difficulties, it need not address Defendants' argument that requiring Committee Defendants to disclose or act on such nonpublic information would conflict with the federal securities laws. The court notes, however, that this argument appears relevant to the Director Defendants, who arguably had more ready access to nonpublic information. Director Defendants, however, have not pursued that theory, and several courts have rejected it. *See Kling v. Fidelity Management Trust Co.*, 323 F. Supp. 2d 132, 143 n.10 (D. Mass. 2004); *Enron*, 284 F. Supp. 2d at 564-66; *Rankin*, 278 F. Supp. 2d at 877-78; *but see Hull*, 2001 WL 1836286, at *3.

at 228. The courts in both cases also rejected the plaintiff's claim that the company was liable as an ERISA fiduciary for making material misrepresentations and nondisclosures concerning its future performance, since it was apparent from the complaint that the company did not make such statements in any fiduciary capacity regarding the plan. *Williams*, 271 F. Supp. 2d at 1338; *Crowley*, 234 F. Supp. 2d at 228. In addition, the courts dismissed the plaintiff's claim that defendants mismanaged the plan, as the complaint stated that the company was not charged with that function under the plan documents. *Williams*, 271 F. Supp. 2d at 1338; *Crowley*, 234 F. Supp. 2d at 228.

Plaintiff responds that its allegations pertaining to Motorola's control over Committee Defendants "are clearly sufficient to allege fiduciary status on the part of Motorola." (Pl. Resp., at 16.)[13] In support, Plaintiff cites *Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984), in which plaintiffs alleged, *inter alia*, that defendant Libco Corporation, a holding corporation for defendant Reliable Manufacturing, and Clyde Engle, one of Reliable's directors, were fiduciaries in that they had the power to appoint and remove the directors of the subsidiary corporation who, in turn, had the power to appoint and remove the trust administrators. *Id.* at 133. First, the court explained that Libco and Engle were fiduciaries to the extent that they performed fiduciary functions in selecting and retaining plan administrators. *Id.* Second, the court stated, "[a]s the fiduciaries responsible for selecting and retaining their close business associates as plan administrators, Engle and Libco had a duty to monitor appropriately the administrators' actions." *Id.* at 135 (citing 29 U.S.C. §§ 1104(a)(1), 1105(a) 1105(c); RESTATEMENT (SECOND) OF TRUSTS §§ 184, 224 (1959)). The court explained that Libco and Engle "could not abdicate their duties under ERISA merely through the device of giving their lieutenants primary responsibility for the day to day management of the trust." *Id.*

---

[13] Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Complaint is cited as "Pl. Resp., at __."

Plaintiff also cites *Enron, supra,* in which plaintiffs alleged, *inter alia,* that defendant Enron breached its fiduciary duty under ERISA by failing to disclose information about its dangerous financial condition to plan participants, the plan's administrative committee, or plan counsel. 284 F. Supp. 2d at 562. The court found that, in order to determine liability, the court would need to "make a functional, fact-specific inquiry to assess the extent of responsibility and control exercised by the individual with respect to the Plan to determine if a corporate employee, and thus also the corporation, has exercised sufficient discretionary authority and control to be deemed an ERISA fiduciary and thus personally liable for a fiduciary breach." *Id.* at 569-70 (internal quotation marks and citations omitted).

Although Defendants do not attempt to distinguish these cases, the court finds that neither supports Plaintiff's contention that Motorola had any direct ERISA fiduciary duties to Participants. As the court reads *Leigh,* the Appellate Court found that liability against the holding corporation was predicated on its role in appointing plan administrators. In contrast, Plaintiff here does not allege that Motorola itself appointed Committee members. Further, as this court reads *Enron,* the court declined to dismiss the claims against the corporation not because it found the company had any independent fiduciary duties, but on a *respondeat superior* theory. 284 F. Supp. 2d at 569-70. The court discusses Motorola's fiduciary duties under that theory below.

### B. *Respondeat Superior* Liability

As noted, Plaintiff alleges that Motorola is liable for the actions of Director Defendants as a fiduciary under the principle of *respondeat superior.* (Cmplt. ¶¶ 36, 106.) Our Court of Appeals has explained that *respondeat superior* is a "judge-made doctrine, applicable to most tort cases . . ., that makes an employer liable even if faultless for the torts its employees commit in the course of their employment." *Gernetzke v. Kenosha Unified Sch. Dist. No. 1,* 274 F.3d 464, 467-68 (7th Cir. 2001). Defendants urge that the court should not graft such common law remedies onto ERISA's statutory scheme. (Def. Mem., at 23-24.) Defendants note that several district courts in

other circuits have declined to hold a non-fiduciary principal vicariously liable for an agent's breach of fiduciary duties. *See, e.g., Tool v. National Employee Benefit Servs., Inc.*, 957 F. Supp. 1114, 1121 (N.D. Cal. 1996); *United Centrifugal Pumps v. Schotz*, No. C-89-2291 FMS, 1991 WL 274232, at *5 (N.D. Cal. June 12, 1991); *Walsh v. Emerson*, CIV. Nos. 88-952-DA and 88-1367-DA, 1990 WL 47319, at *3 (D. Or. Jan. 19, 1990).

Although Defendants concede that our Court of Appeals has not addressed *respondeat superior* in the ERISA context, they urge that such a common law doctrine is inapplicable; they note, for example, that the court has declined to recognize a breach of contract claim in an ERISA setting. *See Buckley Dement, Inc. v. Travelers Plan Adm'rs of Ill., Inc.*, 39 F.3d 784, 789-90 (7th Cir. 1994). (Def. Mem., at 24.) In *Buckley*, the plaintiff, which was the sponsor, administrator, and fiduciary of a health care plan, argued that a third-party claims administrator caused the plan to incur huge losses by failing to process a participant's medical claims before the plan's excess health insurance coverage policy lapsed. 39 F.3d at 785-86. As the administrator was not a fiduciary, the sponsor asked the court to infer a federal common-law right to relief under ERISA. *Id.* at 789. In declining to do so, the court explained that

> in interpreting ERISA plans, we have utilized a federal common law of contract interpretation rather than relegating such interpretative matters to the law of the individual states. *See, e.g., Hammond v. Fidelity & Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992). However, as the Supreme Court has pointed out to us on more than one occasion, "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries" in pension and welfare benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).
>
> . . . .
>
> We believe, therefore, that . . . we are without authority to entertain a claim for relief against a nonfiduciary based on our fashioning of a federal common-law remedy. Accordingly, even if we were to determine that the complaint adequately pleads a federal common-law remedy such as those suggested on appeal by Buckley Dement, we could not say that ERISA permits such relief against a nonfiduciary.

*Id.* at 789-90. *See also Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (Court is reluctant to "extend[] remedies not specifically authorized" in the text of ERISA because "Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly").

Plaintiff does not address *Buckley*, but the court does not believe it answers the question presented here. *Buckley* addressed whether a common-law remedy is available in a statutory scheme that provides for certain statutory remedies. In contrast, Defendants here challenge the application of a common law theory for determining liability.

A similar argument was made in *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004). Defendants in that case argued, as do Defendants here, that application of *respondeat superior* and vicarious liability theories in an ERISA claim for breach of fiduciary duty is inconsistent with ERISA's "functional concept of fiduciary responsibility." *Id.* at 145 (citing *Crowley*, 234 F. Supp. at 228-29; *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998), and *Williams*, 271 F. Supp. 2d at 1338). The *Kling* court noted that other courts have applied the *respondeat superior* doctrine in the ERISA context. This court notes that in one such case, *Hamilton v. Carell*, 243 F.3d 992, 1000 (6th Cir. 2001), the court expressly declined to decide whether the doctrine of *respondeat superior* could be applied in the ERISA context, but observed that the doctrine would be applicable only if the employee who breached fiduciary duties did so in the course and scope of his employment with the defendant employer. Other courts have applied the doctrine in the ERISA context. *See, e.g., National Football Scouting Inc. v. Continental Assurance Co.*, 931 F.2d 646 (10th Cir. 1991); *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986) (stating that employer could be liable if employees were found to have breached their duties); *Stuart Park Assoc. Ltd. P'ship v. Ameritech Pension Trust*, 846 F. Supp. 701 (N.D. Ill. 1994) ("It is well-established that an employee's actions within the scope of employment are imputed to the employer, even in the context of ERISA litigation"). *See also American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc.*, 841 F.2d 658, 665 (5th Cir. 1988) (employer who "actively and knowingly" participates in the employee's breach of fiduciary duty may also be liable); *Kral, Inc. v. Southwestern Life Ins. Co.*, 999 F.2d 101, 103 (5th Cir. 1993) (same).

In addition, Plaintiff here cites *Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544 (D.

Md. 2003), *aff'd* 372 F.3d 261 (4th Cir. 2004). In that case, plaintiff doctors had deposited their pension plans with defendant Berkshire Life Insurance Co., who managed the funds through Michael Meszaros, a Berkshire insurance agent. *Id.* at 547-49. Berkshire argued, *inter alia*, that it should be considered an ERISA fiduciary only to the extent that Meszaros "acted within his scope of authority as a Berkshire insurance agent and for the benefit of Berkshire." *Id.* at 563. Although the court held that Berkshire was itself an ERISA fiduciary, it also agreed with plaintiffs that "Berkshire would be derivatively liable under a vicarious liability theory if the Fourth Circuit were to adopt one of the various tests advanced" by the Sixth Circuit Court of Appeals in *Hamilton, supra*, or by the Fifth Circuit Court of Appeals in *American Federation* and *Bannistor v. Ulman*, 287 F.3d 394 (5th Cir. 2002). *Id.* at 563-64.

Finally, Plaintiff cites *Stanton v. Shearson Lehman/American Express, Inc.*, 631 F. Supp. 100 (N.D. Ga. 1986), in which plaintiff pension plan fund trustees alleged that its broker had given it poor trading and investment advice. In denying summary judgment for the brokerage, the court determined that ERISA's "broad protective purpose" supported a brokerage firm's *respondeat superior* liability for its employee's breach of fiduciary duties and concluded that the question of whether Shearson acquired fiduciary status under *respondeat superior* "depends on whether the jury finds that defendant [individual broker] acquired fiduciary status and, if so, whether she acted within the scope of her employment when she engaged in the acts which made her an ERISA fiduciary." *Id.* at 104-05.

The matter is not free from doubt. Our Court of Appeals has expressed reluctance to graft common-law causes of action on to the comprehensive ERISA statute. It has not, however, held that doctrines of *respondeat superior* are inapplicable to claims brought under the Act. A complaint should be dismissed under Rule 12(b)(6) only if no set of facts could support it. Although the court may be willing to reconsider the legal question on a more fully-developed factual record, the court will at this stage permit Plaintiff to proceed in its claim against Motorola under a *respondeat*

*superior* doctrine.

## IV. Director Defendants

Plaintiff essentially contends that Director Defendants were fiduciaries of the Plan as they had the power to appoint and remove without cause members of the Committee and therefore controlled the Committee. (Cmplt. ¶¶ 17, 35, 56(a)). As the court understands Defendants' argument, Defendants do not dispute that Director Defendants were fiduciaries of the Plan. Instead, they maintain that Director Defendants' fiduciary duties were limited to appointing Committee members with the appropriate level of education, knowledge, and experience to administer the Plan. In Defendants' view, "the only relevant obligation assigned to the Board of Directors in the Plan is to appoint and remove members of the Committee." (Def. Mem., at 15-19, *but see WorldCom*, 263 F. Supp. 2d at 760 (directors were not ERISA fiduciaries simply because of their control of corporation and alleged authority to appoint and remove plan fiduciaries).) Plaintiff asserts that Director Defendants had two additional fiduciary duties to the Plan, as well: (1) to monitor Committee Defendants, and (2) "to provide the Committee Defendants with all information available to the Director Defendants that the Director Defendants should have known would be important to . . . Committee Defendants in managing the Plan and the Plan's assets in a prudent manner." (*Id.* ¶¶ 17, 70(b), 103(b)-(c).) The court considers each alleged duty in turn.

### A. Duty to Appoint Appropriate Committee Members

As described above, Plaintiff alleges that Director Defendants appointed as members of the Committee one or more Motorola employees who, "by definition," lacked the necessary independence, knowledge, and skill and who therefore were "influenced or controlled by the tacit or explicit direction of Motorola and/or the Director Defendants with respect to the management, investment and/or proposed or actual disposition of Plan assets." (*Id.* ¶¶ 17, 35, 56(a), 70(b), 103(b)-(c).)

First, Defendants note, correctly, that ERISA explicitly states that nothing in § 1106 "shall

be construed to prohibit any fiduciary from serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." 29 U.S.C. § 1108(c)(3); *see also Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995) (explaining that § 1108(c)(3) "provides specifically that employers may appoint their own officers to administer ERISA plans even if the company is a 'party in interest'"). Plaintiff does not address this argument, and the court finds that Plaintiff has not stated a claim that Director Defendants appointed Committee members who lacked independence from Motorola and the Board of Directors.

In addition, Defendants maintain that Plaintiff's claim that Committee members lacked the necessary knowledge, skill, or experience to perform their fiduciary obligations is insufficient, as there are no factual allegations to support the claim. (Def. Mem., at 18.) In support, Defendants cite *Jackson*, *supra*, in which the court found that plaintiffs' claim that the company "knew or should have known" they would have made other financial arrangements following their termination from defendant had they known their refusal to sign a release would result in denial of severance benefits was "conclusory and without the support of factual allegations." 176 F.3d at 981.

Plaintiff responds that his allegations that the Board of Directors controlled Committee Defendants "are clearly sufficient to allege fiduciary status on the part of . . . the Board." (Pl. Resp., at 16.) In support, Plaintiff cites *Leigh*, *supra*, in which the court explained that the holding corporation and the subsidiary company's director were fiduciaries to the extent that they performed fiduciary functions in selecting and retaining plan administrators. 727 F.2d at 133. Plaintiff also cites *Enron*, *supra*, in which the court found that, in order to determine liability, the court would need to "make a functional, fact-specific inquiry to assess the extent of responsibility and control exercised by the individual with respect to the Plan to determine if a corporate employee, and thus also the corporation, has exercised sufficient discretionary authority and control to be deemed an ERISA fiduciary and thus personally liable for a fiduciary breach." 284 F. Supp. 2d at 569-70. As discussed, however, Defendants appear tacitly to acknowledge that Director Defendants were

fiduciaries, albeit with limited responsibilities. (Def. Mem., at 15-19.) As the court reads the Complaint, moreover, Plaintiff's allegations that Director Defendants controlled the Committee are based solely on its allegation that one or more Committee members were Motorola employees and therefore lacked independence from the Directors. As ERISA explicitly permits employers to appoint their employees to administer ERISA plans, the court doubts that Plaintiff's allegations that Director Defendants breached their duty to appoint appropriate Committee members are sufficient even under Rule 8(a)'s liberal pleading standards. Nevertheless, the court need not resolve this issue, as the court finds that Plaintiff's claim that Director Defendants breached their fiduciary duty to monitor Committee members is sufficient.

### B. Duty to Monitor Committee Members

In a footnote, Defendants argue that Director Defendants did not have a fiduciary duty to monitor the Committee's activities. (Def. Mem., at 19 n.7.) In support, Defendants cite *Leigh*, *supra*, in which the court stated, "[a]s the fiduciaries responsible for selecting and retaining their close business associates as plan administrators," the holding corporation and the subsidiary company's director had a duty to monitor the administrators' actions. *727 F.2d at 135.* Defendants note that Plaintiff has not alleged that Director Defendants appointed any "close business associates" to the Committee and urge that, "[a]bsent [an] allegation that the appointees had clear conflicts of interest beyond their assumed loyalty to their employer, plaintiff's failure to monitor claim does not fall within the narrow exception identified in *Leigh*." (Def. Mem., at 19 n.7.)

Defendants also cite an unpublished opinion from this district, *Beauchem v. Rockford Products Corp.*, No. 01 C 50134, 2003 WL 1562561 (N.D. Ill. Mar. 24, 2003) (Reinhard, J.), in which plaintiff claimed that the company breached its fiduciary duties, *inter alia*, because it failed to monitor the plan committee's actions. *Id.* at *1. The court found that the directors had no duty to monitor the plan committee:

> [n]othing requires or allows [the company] control over the Plan Committee beyond appointing its members. The Plan Committee, not [the company], bears the duty

> of acting for the benefit of the participants. . . . It is the members of the Plan Committee who are fiduciaries and whose actions as officers of [the company] may subject them to fiduciary breach liability if they fail to act with complete loyalty to the participants.

*Id.* (citing *Delta Star, Inc. v. Patton,* 76 F. Supp. 2d 617, 637 (W.D. Pa. 1999)). Similarly, in

*WorldCom,* plaintiffs alleged that the directors were fiduciaries, as they controlled the company,

which in turn had the authority to appoint fiduciaries. 263 F. Supp. 2d at 760. The court rejected

plaintiffs' contention that a supervisor of an ERISA fiduciary can be held liable as an ERISA

fiduciary, finding that plaintiffs had provided no statutory or decisional support for that argument.

*Id.* at 760-61.

Plaintiff's contention that Director Defendants did have a fiduciary duty to monitor

Committee members (Pl. Resp., at 16), relies, in part, on ERISA Interpretive Bulletin 75-8, which

states that appointing fiduciaries have a duty to monitor those whom they appoint:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8 at FR-17. Plaintiff also cites *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,*

805 F.2d 732, 736 (7th Cir. 1986), in which the Seventh Circuit suggested that the duty to monitor

administrators is not limited to individuals who have appointed "close business associates": "[I]n

*Leigh* we held that fiduciaries responsible for selecting and retaining their close business

associates as plan administrators had a duty to monitor appropriately the administrators' action.

Similarly, the corporate plaintiffs here may well have some duty to monitor the actions of the plan

administrator and the insurance company administering the Plan." *See also Coyne & Delany Co.*

*v. Selman,* 98 F.3d 1457, 1465-66 (4th Cir. 1996) (power to appoint, retain, and remove plan

fiduciaries "carries with it a duty 'to monitor appropriately' those subject to removal") (citing *Ed*

*Miniat,* 805 F.2d at 736; *Leigh,* 727 F.2d at 135; *Atwood v. Burlington Indus. Equity, Inc.,* No.

2:92CV00716, 1994 WL 698314, at *6 (M.D.N.C. Aug. 3, 1994); and *Newton v. Van Otterloo,* 756

F. Supp. 1121, 1132 (N.D. Ind. 1991)); *Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992) ("Depending upon the circumstances, the director's duty to monitor the actions of appointed trustees may impose a duty to prevent wrongful conduct") (citing *Leigh*, 727 F.2d at 133-35; 29 C.F.R. § 2509.75-8); *AEP*, 327 F. Supp. 2d at 832-33; *Sprint*, 2004 WL 1179371, at *19; *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, at *7 (N.D. Ill. Mar. 3, 2004) (Darrah, J.) ("[A] fiduciary who delegates responsibility or appoints other fiduciaries has a duty to monitor those delegates") (citing 29 C.F.R. § 2509.75-8, FR-17; *Ed Miniat*, 805 F.2d at 736; and *Leigh*, 727 F.2d at 135); *Mehling v. New York Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001); *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998).

Defendants contend that "because of the Board members' limited role under the Plan . . ., they cannot be held responsible for failing to disclose information to the Participants or decisions to continue Motorola stock as an investment option." (Def. Mem., at 16.) In support, Defendants note that several district courts in other circuits have held that when Directors' powers with respect to a plan are limited to appointing, retaining, and removing members of the benefits committee, the directors cannot be held liable for improper investment decisions or for failing to disclose information to plan participants. *See Williams*, 271 F. Supp. 2d at 1339; *WorldCom*, 263 F. Supp. 2d at 759; *Crowley*, 234 F. Supp. 2d at 225; *Hull*, 2001 WL 1836286, at * 6.

Plaintiff notes that ERISA does impose a duty on Director Defendants to provide material information to Committee Defendants to enable them to perform their duties. (Pl. Mem., at 17.) In *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171 (3d Cir. 1996), for example, the court found that the defendant company might have been a fiduciary as it rendered investment advice to the plan. *Id.* at 1182. The court stated that "a fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." *Id.* Plaintiff also cites *WorldCom*, *supra*, in which plaintiffs alleged that WorldCom's President and

CEO, Bernard Ebbers, breached his fiduciary duty by failing to monitor the Plan's other fiduciaries in connection with investment of the Plan's assets, and by failing to disclose to WorldCom and other "investing fiduciaries" material facts he knew or should have known about the financial condition of WorldCom. 263 F. Supp. 2d at 765. The court explained that "[a] corporation and its board may wear two 'hats'–that of employer and of ERISA fiduciary. ERISA liability arises only from actions taken or duties breached in the performance of ERISA obligations." *Id.* at 760 (citing *Pegram*, 530 U.S. at 225-26; *Varity Corp. v. Howe*, 516 U.S. 489, 500 (1996)). In declining to dismiss the complaint against Ebbers, the court stated that "[w]hen a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity." *Id.* The court found that the allegation that Ebbers failed to disclose to the investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock was sufficient to state a claim. *Id.*; *see also AEP*, 327 F. Supp. 2d at 831-32; *Sprint*, 2004 WL 1179371, at *20.

Defendants argue that *Glaziers* is distinguishable, as the defendant company in that case provided investment advice to the Plan for a fee but was not responsible for appointing and removing plan committee members. 93 F.3d at 1183. This court notes, however, that the *Glaziers* court did not limit its holding to fiduciaries who provide investment advice. Defendants also claim that *WorldCom* is distinguishable as plaintiffs in that case alleged that Ebbers exercised discretionary authority or discretionary control regarding plan management, management or disposition of the plan's assets, and plan administration. 263 F. Supp. 2d at 754, 759. This court agrees that *WoldCom* is arguably distinguishable on this basis, but notes the substantial authority that supports a more liberal interpretation of the Director Defendants' fiduciary responsibility.

In light of the Department of Labor regulations, the Seventh Circuit Court of Appeals' decisions in *Leigh* and *Ed Miniat*, and the numerous decisions from this district court and courts in other circuits, the court finds that Plaintiff's allegations that Director Defendants had an

affirmative duty to monitor the Committee and its members are sufficient to withstand Defendants' motion to dismiss. The question of whether Director Defendants breached their duty to monitor Committee Defendants is a question that will require extensive discovery and factual development. The court therefore declines to dismiss the claims against Director Defendants.

## V.    Defendant Rick Dorazil

As noted, the Defendant Rick Dorazil is a Motorola Vice President and has the title of "Director-Global Rewards-Benefits." Plaintiff alleges that Dorazil was a fiduciary, as he signed the Plan's 2000 and 2001 Forms 11-K, which were filed with the SEC on June 27, 2001 and June 27, 2002, respectively. (Cmplt. ¶¶ 13, 74.) Plaintiff also alleges that Dorazil should have known that Motorola was making its SEC filings available to Participants during the Class Period, should have known that these documents contained misleading information, should have prevented their distribution to Participants, and should have ensured dissemination of accurate correct information. (Id. ¶¶ 14, 87.)

Defendants argue that Plaintiff has not adequately pleaded facts showing that Dorazil was a fiduciary or that he was acting in a fiduciary capacity when he committed the complained-of activities. (Def. Mem., at 19.) Defendants note that only Committee members have authority under the Plan to select investment options and invest the Plan's assets. (Id.) Plaintiff responds that Dorazil acted as a fiduciary when he made misrepresentations to Plan Participants. (Pl. Resp., at 22.) Although the court finds Plaintiff's conclusory response unsatisfying, the court nevertheless concludes that the Complaint adequately alleges a breach of fiduciary duty on the part of Mr. Dorazil. The allegations that Dorazil knew about, and should have prevented, the distribution of inaccurate information are sufficient under the liberal pleading standards of Rule 8(a) to apprise Mr. Dorazil of the claims against him. Plaintiff may well be unable to prove that Mr. Dorazil "should have known" that the SEC filings were misleading, but as allegations point to facts that Mr. Dorazil allegedly should have known regarding the Telsim loan, (see Cmplt. ¶ 3(a)), the court declines to

dismiss Mr. Dorazil.

## VI.    Defendant Koenemann

Plaintiff alleges that Koenemann was responsible for preparing the SEC filings that were incorporated into the SPD. (*Id.* ¶¶ 42, 77.) According to Plaintiff, Koenemann acted as a fiduciary with respect to the Plan and "was in a unique position to inform the Director Defendants and the Committee Defendants of the true facts concerning the Motorola-Telsim relationship and other material facts" and either failed to do so or, alternatively, "succeeded in doing so but acquiesced in the concealment from Participants of this important information." (*Id.* ¶¶ 18, 77.) Plaintiff alleges that, like Dorazil, Koenemann "exercised discretionary authority or control respecting management of the Plan or management or disposition of its assets." (*Id.* ¶ 78.)

Defendants urge that Plaintiff seeks to hold Koenemann responsible merely because of his status as a senior officer of Motorola who prepared the company's SEC filings. (Def. Mem., at 21.) In support, Defendants note that the *WorldCom* court, in dismissing claims against the Directors, concluded that although the SPD incorporated the company's SEC filings by reference, the fact that the Directors signed or prepared the SEC filings did not provide a basis for ERISA liability. 263 F. Supp. 2d at 760. Similarly, in *Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003), the court found that a CEO's representations in the company's SEC filings did not constitute an act of plan administration, as those filings were not alleged to have been made in the context of benefit plan discussions, and therefore that plaintiffs did not state a claim for breach of fiduciary duty against the CEO. *Id.* at 173 (citing *Varity*, 516 U.S. at 505 ("making intentional representations about the future of plan benefits [in the context of a meeting convened to discuss plan benefits] is an act of plan administration")).

Plaintiff insists that Koenemann acted as a "functional fiduciary" when he made misrepresentations to Plan Participants. (Pl. Resp., at 22.) In *Sprint*, *supra*, Plaintiff observes, the plaintiffs alleged that defendants made affirmative misrepresentations in Sprint's public filings with

the SEC, which were incorporated into the plan SPDs, that Sprint expected to close on a merger

with WorldCom in the second half of 2000, when in fact the defendants knew or should have known

that government regulators were not going to approve the merger. 2004 WL 1179371, at *5.

Defendants argued that they were not fiduciaries, as SEC filings are made in a corporate, rather

than an ERISA fiduciary, capacity. *Id.* at *13. Denying their motions to dismiss, the court stated

that an individual performs an ERISA fiduciary function when he disseminates an SPD to plan

participants. *Id.* (citing *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1261

n.10 (3d Cir. 1995) ("[W]hen a plan administrator explains plan benefits to its employees, it acts

in a fiduciary capacity")). The court distinguished *WorldCom* on the ground that plaintiffs in

*WorldCom* did not allege that WorldCom's directors had any discretionary authority for

administering the plan. *Id.* at *14; *cf. Sears*, 2004 WL 407007, at *6 ("[W]hether the Investment

Committee, based on their status as Sears officers, knew or should have known of the SEC

misrepresentations published by Defendants is a question of fact") (citing *WorldCom*, 263 F. Supp.

2d at 765).

Defendants are correct that Plaintiff does not allege that Koenemann prepared Motorola's

SEC filings in the context of plan benefit discussions. Nor does Plaintiff argue that Koenemann had

any sort of fiduciary duty to plan Participants. Nevertheless, Plaintiff does assert that Koenemann

"exercised discretionary authority or control respecting management of the Plan or management

or disposition of its assets." (*Id.* ¶ 77.) Although Plaintiff ultimately may not be able to prove that

Koenemann did in fact exercise any discretionary authority or control over the Plan, the court finds

that Plaintiff has stated a colorable claim that Koenemann was a fiduciary, and presumes the claim

was based upon a reasonable inquiry into the facts as required by the Federal Rules. The court

therefore declines to dismiss Mr. Koenemann.[14]

---

[14] In the class action brought under the federal securities laws, *Motorola, supra*, 2004
WL 1982529, this court dismissed claims against Messrs. Galvin, Growney, and Koenemann under
(continued...)

## VII. Co-Fiduciary Liability

As the court finds that Plaintiff has stated a claim against Motorola and the Director Defendants, it need not address Plaintiff's argument that these Defendants should be held liable as "co-fiduciaries." The court has dismissed claims against the Committee Defendants, however, and will therefore address the assertion that they are nevertheless liable as co-fiduciaries because they (1) knowingly participated in or undertook to conceal the other fiduciaries' breaches, (2) enabled the other Defendants to breach their fiduciary duties, and/or (3) knew of the other Defendants' breaches of fiduciary duties and failed to take reasonable steps to remedy them. (*Id.* ¶¶ 83, 100, 105.) In his brief, Plaintiff indicates that he bases these allegations upon ERISA § 405(a), which provides that a fiduciary may be liable for another's breach of fiduciary duty if he: (1) participates knowingly in, or undertakes knowingly to conceal, an act or omission that he knows is a breach; (2) fails to follow his fiduciary duties, thereby enabling another fiduciary to commit a breach; or (3) has knowledge of the breach committed by another fiduciary and makes no reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a).

Defendants argue that Plaintiff impermissibly lumps all Defendants together without explaining which Defendants knew, concealed, or enabled which other Defendants to commit alleged fiduciary breaches. In support, Defendants cite *Harris Trust and Savings Bank v. Salomon Brothers, Inc.*, 813 F. Supp. 1340 (N.D. Ill. 1992) (Aspen, J.), in which plaintiff alleged, *inter alia*,

---

[14](...continued)
§ 10(b) of the Securities Exchange Act and Rule 10b-5 because the court found that those claims failed to satisfy the heightened pleading standards of Rule 9(b), which requires that a plaintiff plead the circumstances constituting fraud with particularity, and the Private Securities Litigation Reform Act of 1995, under which a plaintiff must specify each statement alleged to have been misleading and the reason why it is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with"*scienter.* 15 U.S.C. § 78u-4(b)(1)-(2). In contrast, the court in this case has found that the Complaint provides sufficient notice of the claims against these Defendants and the grounds upon which they rest, as required by Rule 8(a)–namely, that Defendants acted negligently and imprudently with regard to the Plan. Indeed, this court in *Motorola* declined to dismiss the claims against Messrs. Galvin, Growney, and Koenemann under § 20(a) of the Securities Exchange Act, as the court found that Lead Plaintiff had satisfied the liberal pleading requirements of Rule 8(a).

that "[i]f it is ever found that other fiduciaries with respect to the Plan may have breached their fiduciary duties, [defendant company and its subsidiary] conspired against [plaintiff pension trust] and knowingly participated in and facilitated such violations. . . ." *Id.* at 1344. In dismissing this count of the complaint, the court concluded that, "by neglecting to describe a particular breach by a particular fiduciary, Count II never progresses beyond the hypothetical and fails to state a claim." *Id.* More recently, in *Sears, supra,* the court dismissed plaintiffs' co-fiduciary claims, as plaintiffs' complaint did "not contain allegations that put Defendants on notice of the particular charges against each Defendant." 2004 WL 407007, at *8.

Plaintiff responds that its allegations that Defendants are liable as co-fiduciaries satisfy the pleading standards of Rule 8. (Pl. Resp., at 24.) In support, Plaintiff cites *Rankin, supra,* in which the court stated that plaintiff had sufficiently alleged that defendant company's former directors were fiduciaries because of their "broad authority in regards to the Plan." 278 F. Supp. 2d at 872. The directors at issue in *Rankin* retained final authority over investment decisions. Without any further analysis, the court observed that "[i]t also follows that [plaintiff] has also properly alleged their liability as co-fiduciaries." *Id.* Similarly, defendants in *AEP,* also cited by Plaintiff here, were the plan's corporate sponsor and two corporate directors. The Court concluded that allegations that mirrored ERISA § 405(a) were sufficient to put these defendants on notice of the claims they faced. 2004 WL 1776001, at *18. The court then declined to dismiss plaintiffs' co-fiduciary claims on the basis that it had also declined to dismiss plaintiffs' fiduciary liability claims. *Id.* (citing *In re CMS Energy ERISA Litig.,* 312 F. Supp. 2d 898, 910 (E.D. Mich. 2004) ("Having declined to dismiss the fiduciary liability claims, the court will also decline to dismiss any of the co-fiduciary liability claims at this juncture").

This court is not persuaded that a determination that corporate directors may be liable for breach of fiduciary duties is authority for sustaining a complaint against the Committee Defendants in this case on a co-fiduciary theory. Neither *Rankin* nor *AEP* appears to authorize a claim based

35

solely on a co-fiduciary theory against persons who are not otherwise liable. The court declines to entertain this theory as the sole basis for proceeding against the Committee Defendants in this case.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Docket No. 16-1) is granted in part and denied in part. Specifically, Plaintiff's claims against Defendant Motorola, as well as against Defendants David Devonshire, Glenn Gienko, Garth L. Milne, Ron Miller, William P. DeClerck, and Richard Enstrom, are dismissed without prejudice. Plaintiffs have until October 15, 2004 to file an amended complaint consistent with this opinion, and Defendants have until November 5, 2004 to answer or otherwise plead. Rule 16 conference is set for November 19, 2004, at 9:30 a.m.

ENTER:

Dated: September 23, 2004

REBECCA R. PALLMEYER
United States District Judge