UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE G. HOWELL, on behalf of Himself and a Class of Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., THE PROFIT SHARING COMMITTEE OF MOTOROLA, INC., DAVID DEVONSHIRE, GLENN GIENKO, GARTH L. MILNE, RON MILLER, WILLIAM P. DECLERCK, RICHARD ENSTROM, RICK DORAZIL, CHRISTOPHER B. GALVIN, ROBERT L. GROWNEY, RONNIE C. CHAN, H. LAURANCE FULLER, ANNE P. JONES, DONALD R. JONES, JUDY C. LEWENT, WALTER E. MASSEY, NICHOLAS NEGROPONTE, JOHN E. PEPPER, JR., SAMUEL C. SCOTT III, GARY L. TOOKER, B. KENNETH WEST, JOHN A. WHITE and CARL F. KOENEMANN,<br><br>Defendants. | No. 03 C 5044<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bruce G. Howell, a former employee of Motorola, Inc. ("Motorola"), filed this putative class action lawsuit on behalf of the Motorola, Inc. 401(k) Profit Sharing Plan (the "Plan") and all Participants in the Plan for whose individual accounts the Plan purchased and/or held shares of Motorola from May 16, 2000 to the present (the "Participants"). Motorola, an international telecommunications business, was the Plan's sponsor during the class period. Named as Defendants are Motorola and several members of its Board of Directors, the Profit Sharing Committee which

administered the plan, and members of that Committee (collectively, "Defendants").[1] Arguing that Plaintiff Howell's complaint is barred by a release he signed when his employment terminated, Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated herein, Defendants' motion is granted.

## PROCEDURAL HISTORY

Howell filed his initial complaint on July 21, 2003, and then his first amended complaint on October 3, 2003, alleging that Defendants violated Sections 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2)-(3) (2005). Howell claims that Defendants breached their fiduciary duties to the Plan and the Participants by: (1) negligently permitting the Plan to purchase and hold shares of Motorola's common stock when it was imprudent to do so; (2) negligently misrepresenting and failing to disclose material facts concerning the management of Plan assets to the Plan and the Participants; and (3) failing to appoint appropriate fiduciaries, to properly monitor those fiduciaries, and to provide sufficient information to enable the fiduciaries to fulfill their obligations under ERISA. Howell's allegations of breach of fiduciary duty are based on claims of mismanagement focusing primarily on Motorola's relationship with Telsim Mobil Tekkomunkayson Hizmetleri A.S., a Turkish mobile telecommunications company, and a

---

[1]     Specifically named in Howell's complaint are Christopher B. Galvin (Motorola's Chief Executive Officer and Chairman of the Board of Directors during all or part of the Class Period), Robert L. Growney (Motorola's Chief Operating Officer during all or part of the Class Period), Rick Dorazil (Motorola's Vice President and Director of Global-Rewards Benefits), and Carl F. Koenemann (Motorola's Executive Vice President for Finance and Chief Financial Officer). Also named are members of the Board of Directors Ronnie C. Chan, H. Laurance Fuller, Anne P. Jones, Donald R. Jones, Judy C. Lewent, Walter E. Massey, Nicholas Negroponte, John E. Pepper Jr., Samuel C. Scott III, Gary L. Tooker, B. Kenneth West, and John A. White. Defendants from the Profit Sharing Committee are David Devonshire, Glenn Gienko, Garth L. Milne, Ron Miller, William P. DeClerck, and Richard Enstrom.

2

liquidity crisis and other unspecified problems with at least two Motorola lines of business. Details of these allegations appear in other reported opinions and will not be discussed here. *See, e.g., Howell v. Motorola, Inc.,* 337 F. Supp. 2d 1079, 1082 (N.D. Ill. 2004); *In re Motorola Secs. Litig.,* No. 03 C 287, 2004 WL 2032769 (N.D. Ill. Sept. 9, 2004).

Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This court granted that motion with respect to the Committee Defendants, without prejudice, and denied the rest of the motion. Since then, Howell filed a Second Amended Complaint (the "Complaint") purporting to correct the deficiencies the court found in the first complaint,[2] and the parties have continued to engage in discovery. Defendants now move for summary judgment, arguing that the waiver and release he signed upon the severance of his employment in August 2001 bars Howell from bringing this action against Defendants.

## UNDISPUTED FACTS

Howell admits every allegation of undisputed fact set out by Defendants except for Paragraph 18, in which Defendants claim Howell took time to make sure he understood the severance agreement and accompanying waiver and release before signing it. Howell denies fully understanding the scope of the waiver and release. The following are the admitted undisputed facts.[3]

---

[2]    The court found that Howell had not adequately alleged that the Committee Defendants breached their fiduciary duties because Howell did not allege who the Committee Defendants were and why they should have known that certain nonpublic transactions with Motorola were improper.

[3]    Defendants' Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue will be cited to as "(Def. SOF at ¶__)".

3

Howell has a master's degree in electronic and computer technology and a master's degree in decision information systems. (Def. SOF at ¶ 4.) Howell began working for Motorola in 1996. (Id. at ¶ 6.) Prior to Motorola, he had been employed for fifteen years in several safety and engineering positions. (Id. at ¶ 21.) Howell was laid off on August 21, 2001, during one of a series of waves of layoffs. (Id. at ¶¶ 12-13.) Howell received a standard severance payment when he was laid off from Motorola and, in exchange for additional money, he signed a severance agreement and General Release ("Release"). (Id. at ¶¶ 14-15.)

Howell first saw the language of the severance agreement and Release on August 21, 2001, as part of a packet of material provided to him upon his dismissal. (Id. at ¶ 16.) At that time, he met with two representatives of Motorola who encouraged him not to sign the Release immediately, but instead to take the time necessary to review its contents and make sure he understood it. (Id. at ¶¶ 16-17.) In addition, the agreement itself advised Howell to "consult an attorney before signing this release." (Id. at ¶ 19.) Howell elected not to do so, however, because he believed he understood the agreement. (Id.) On September 17, 2001, Howell signed the Release and accepted additional payment in consideration. (Id. at ¶ 20.) The terms of the Release provide, in relevant part:

> I hereby unconditionally and irrevocably release, waive, and forever discharge Motorola, Inc. and its affiliates, parents, successors, subsidiaries, directors, officers, and employees from ANY and ALL causes of action, claims and damages, including attorneys fees, whether known or unknown, foreseen or unforeseen presently asserted or otherwise, which have or could have arisen to date out of my employment or separation from employment. This General Release includes, but is not limited to, any claim or entitlement to pay, benefits or damages arising under any federal law (including but not limited to . . . the Employment Retirement Income Security Act . . . .)

(Id. at ¶ 22.)

4

## DISCUSSION

Defendants contend that the Release bars Howell from raising the claims asserted in this lawsuit. Howell responds that he is entitled to proceed here notwithstanding the language of the Release, because (1) Section 1101 of ERISA, 29 U.S.C. § 1110(a), prohibits enforcement of a release of ERISA claims; (2) the record does not establish he knowingly and voluntarily signed a release of his ERISA claims; (3) the Release does not waive claims against Defendants other than Motorola, Inc.; and (4) the Release does not absolve Defendants of liability for conduct occurring subsequent to the loss of his job at Motorola.

### A. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, and other materials in the record show that there is no disputed issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted when the record as a whole shows that a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). The opposing party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000).

### B. Invalidity as a Matter of Law

The court will first address Howell's claim that the Release is invalid as a matter of law as applied to ERISA, 29 U.S.C. § 1101, *et seq.* Section 1110(a) of ERISA states that "any provision in

5

an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). Howell claims this Section prohibits enforcement of the provision of the Release that would bar from enforcement of Defendants' fiduciary responsibilities under ERISA.

Section 1110(a) of ERISA has received only sparse attention in the Seventh Circuit, but this Circuit's opinions weigh in favor of promoting settlement rights, even when that results in the waiver of ERISA claims. For example, in *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990), an employee signed a general release and waiver as part of an $85,000 out-of-court settlement of a discrimination claim with her employer, International Flavors & Fragrances ("IFF"). The release stated that each party agreed never to sue each other "with respect to any claim of any kind, or any other kind of relief, arising from any matter relating to her employment relationship with IFF, except as may be necessary to enforce the terms of this Settlement Agreement." *Id.* at 1114. Nevertheless, upon Fair's retirement, she sued IFF, claiming that IFF's refusal to include the settlement payment in her compensation for purposes of calculating her pension benefits violated ERISA. *Id.* at 1115. The Seventh Circuit upheld the release in its entirety, including as applied to ERISA, stating, "we see no reason why the covenant not to sue does not apply to Fair's ERISA claim as well." *Id.* at 1117.

Expanding upon *Fair*, the Seventh Circuit upheld a release which waived all "contestable" pension claims in *Licciardi v. Kropp Forge Div. Employees' Ret. Plan*, 990 F.2d 979 (7th Cir. 1993). Upon Licciardi's resignation from his company, he signed a release waiving all claims he might have against the company except those arising out of specified agreements, not including the pension plan itself. *Id.* at 981-82. Licciardi received $650,000 in settlement of certain claims, but learned three

6

years later that the $650,000 was not treated as earned income for pension-entitlement purposes as he had expected, and Licciardi brought suit. The Seventh Circuit held that in signing the release, Licciardi surrendered any right to contest the company's treatment of the $650,000 for pension-entitlement purposes. *Id.* at 982. In its holding, the court distinguished between "incontestable pension rights" and "contestable pension claims." Although worded broadly, the court found that the release barred all "contestable pension claims," but not claims to any pension benefits to which the plan entitled him, that is, incontestable pension rights, which may not be alienated under 29 U.S.C. § 1056(d)(1). *Id.* The release language was effective to bar contestable pension claims as the anti-alienation provision of ERISA was not intended to bar the settlement of ERISA disputes. *Id.* Distinguishing *Lynn v. CSX Transp., Inc.*, 84 F.3d 970 (7th Cir. 1996), the Seventh Circuit held that while pension entitlements may not be waived, "[c]ontested pension claims . . . are simply outside the realm of the provision." *Id.* at 975 (citations omitted). The court reasoned:

> A pension entitlement arises under the terms of the pension plan itself. A contested pension claim, by contrast, arises under a settlement agreement. A release may prevent a plan participant from asserting claims based on a settlement agreement, but may not bar claims based on pension entitlements

*Id.* In *Fair* and *Licciardi,* the plaintiffs' claims were "contested" because they argued they were entitled to additional pension benefits under the terms of their settlement agreements. In contrast, Plaintiff in *Lynn* claimed he was entitled to military service benefits under the language of the pension plan itself. *Id.* at 976-77.

In holding, in each of the above cases, that contested pension claims may be extinguished by a general release, the Seventh Circuit did not recognize any exception arising from Section 1110(a)

of ERISA. The Seventh Circuit has acknowledged that Section 1110(a) would nullify a provision indemnifying a pension fiduciary who has been found liable for breach of his fiduciary duties. *See, e.g., Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 175 (7th Cir. 1992). This court has not, however, ever applied Section 1110(a) to bar contested claims such as the case at hand, where the breach of fiduciary duty claims were contested claims at the time the Release was signed, and still are contested. This court recognizes that a claim such as Howell's – challenging the Plan managers' investment strategy – differs from a challenge to benefits award, but is not prepared to say the difference renders the release invalid in this context.

Other Circuits agree that ERISA claims may be knowingly and voluntarily waived in exchange for valuable consideration. In *Taylor v. Visteon Corp.*, No. 04-1879, 2005 WL 2108333 (6th Cir. Sept. 1, 2005), for example, the Sixth Circuit enforced language of a release of "any and all rights or claims of any kind" to bar a class action claim for breach of fiduciary duty. Plaintiffs alleged that defendant had represented that the waiver and release they signed was "non-negotiable," when, in fact, defendants did negotiate and give other employee additional benefits. Although resting its holding on other grounds, the Sixth Circuit explained that Section 1110(a) did not bar the general release of claims because the release did "not *relieve* Visteon of any fiduciary duties; it merely *resolves* claims arising from those duties." *Id.* at *5 (emphasis in original). The court reasoned that to read § 1110(a) as voiding indemnification agreements would be problematic because "[l]ike most legal claims, ERISA claims (including breach-of-fiduciary-duty claims) may be settled." *Id.* at *4.

In a case with similar facts, the Eighth Circuit also upheld a general release barring a former employee's claim of breach of fiduciary duty against his former employer. *See Leavitt v. Northwestern*

8

*Bell Tel. Co.*, 921 F.2d 160, 161-62 (8th Cir. 1990). When the plaintiff, Leavitt, resigned from his position at Northwestern Bell, he signed a separation agreement and general release that provided he would not sue Bell on any known or unknown claims of any nature in exchange for $15,000. *Id.* Afterwards, Leavitt sought additional money from Bell because he felt it was unfair that a less senior employee received more compensation from Bell by accepting separation benefits (after they were turned down by Leavitt). *Id.* When Bell refused, Leavitt claimed that Bell breached its fiduciary duties. The court held that this claim was barred under the general release. Section 1110(a) of ERISA did not render the release unenforceable because the release "does not relieve a fiduciary of any responsibility, obligation, or duty imposed by ERISA; instead, it merely settles a dispute that the fiduciary did not fulfill its responsibility or duty on a given occasion." *Id.* Like the Sixth Circuit, the Eighth Circuit reasoned that to interpret the ERISA provision otherwise would "assign to Congress the intent of making an unreasonable law – one requiring terminal litigation, rather than favoring settlement as does the general law." *Id.* at 162. *See also Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 181 (1st Cir. 1995) (employee may waive her right to participate in employee welfare benefit plan); *Rein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1096 (2d Cir. 1996) (§ 1110(a) does not prohibit a release that settles a bona fide dispute between an ERISA fiduciary and a plan beneficiary). *Cf. Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust*, No. 02-7820, 2004 WL 1147075 (2d Cir. 2004) (upholding a release of the plaintiff's claim for failure to pay benefits, but dismissing breach of fiduciary duty claims on different grounds).

The cases Howell cites are not to the contrary. The district court in *Kling v. Fidelity Mgmt. Trust Co.*, 291 F. Supp. 2d 1, 3 (D. Mass. 2003), merely mentioned § 1110 in passing, and in *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1365 (2d Cir. 1991), the

9

Second Circuit held that an individual may waive participation in a plan. Howell also cites a Ninth Circuit case where, contrary to this case, the defendant tried to exonerate itself from fiduciary responsibility by denying that it was indeed a fiduciary. *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418-19 (9th Cir. 1997) (contract provision stated that "under no circumstances shall the service contractor [General American] be considered the named fiduciary under the Plan"). The Ninth Circuit held that § 1110(a) prohibits a fiduciary from contracting out of its fiduciary responsibility in that manner. Unlike *IT Corp.*, Defendants here acknowledge they owed a fiduciary responsibility to the Plan Participants; they contend that by signing the Release, Howell resolved and settled any ERISA dispute regarding their exercise of those responsibilities. Finally, the court in *Reighart v. Limbach Co.*, 158 F. Supp. 2d 730 (E.D. Va. 2001), invalidated a release for purporting to waive future ERISA claims. The Release in this case, in contrast, relieves Defendants of liability for events "which have or could have arisen to date out of my employment." Therefore, Section 1110(a) does not bar waiver of Howell's ERISA claims.

## C.    Knowing and Voluntary Waiver

Having determined that the Release of ERISA claims is valid as a matter of law, the court will address the parties' arguments as to whether a genuine issue remains as to any fact material to the determination of whether the Release will be enforced. *See* FED. R. CIV. P. 56(c). A release of claims will be enforced only if it is knowing and voluntary. *Pierce v. Atchison, Topeka & Santa Fe Railway Co.*, 65 F.3d 562, 570 (7th Cir. 1995). When a plaintiff challenges consent, the court examines the totality of the circumstances surrounding the release, emphasizing the following factors:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5)

10

whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Id.* at 571-72. The *Pierce* court emphasized that "the burden rests on the plaintiff to challenge specifically his voluntary and knowing consent to the release" when an employer meets its burden to raise the existence of a release as an affirmative defense. *Id.* 571-72.

The only matters Howell identifies as evidence that his waiver was not knowing and voluntary are presented in Paragraphs 3 and 4 of his sworn declaration ("Declaration"), attached to Howell's Statement of Additional Uncontested Material Facts in Opposition to Defendants' Motion for Summary Judgment. In those paragraphs, Howell asserts that he did not understand that he surrendered his ERISA claims against Defendants when he signed the Release because: (1) Motorola gave Howell documents relating to the job titles and ages of laid-off employees, leading Howell to believe that the Release only affected employment-related claims; (2) the Release did not specifically mention the Motorola 401(k) Profit Sharing Plan by name; and (3) no one from Motorola explained to him that he would be surrendering claims relating to his investments in Motorola stock under Motorola's 401(k) plan by signing the Release.

Howell's protestations of confusion are belied by his admission that he took twenty-seven days to review the Release prior to signing it, and he declined to consult an attorney as the Release recommended because he believed he understood the document himself. (Def. SOF at ¶¶ 19-20.) "Self-serving affidavits without factual support in the record will not defeat a motion for summary

judgment." *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) (internal quotations omitted).

The summary judgment record here demonstrates that Howell meets every factor of the test identified in *Pierce*, 65 F.3d at 570: Howell has two master's degrees; the Release plainly states that it applies to "ANY and ALL" causes of action, including claims arising under ERISA; Howell deliberated for twenty-seven days before signing the Release; he deliberately chose not to consult with an attorney because he understood the Release; and Howell received additional consideration in exchange for the waiver. Motorola did nothing improper by informing Howell of the job titles and ages of laid off employees, and the fact that the information led Howell to believe discrimination claims were waived does not defeat the plain language of the Release. Nor did Motorola act improperly by failing to direct Howell's attention to the plain language of the Release stating that ERISA claims were covered. Finally, the court concludes Defendants had no obligation to mention the Motorola 401(k) Profit Sharing Plan by name in the Release language, as claims relating to that Plan would be included in the covered ERISA claims. Howell's argument here amounts to nothing more than a claim of subjective misunderstanding, which, standing alone, will not defeat an otherwise valid release. *Pierce v. Atchison Topeka and Santa Fe Ry. Co.*, 110 F.3d 431, 442 (7th Cir. 1997). He has not met his burden of establishing that he did not knowingly consent to the terms of the Release.[4]

---

[4] Defendants' additional argument that Howell is barred from raising his claims because he has not returned the consideration he received in exchange for signing the Release is moot in light of the court's decision to enforce the Release.

12

## D.    Waiver of Liability Against All Defendants

Howell next asks the court to determine that because the individual and corporate Defendants, other than Motorola, are not specifically identified in the Release, his claims are not barred against any other Defendants. The court does not accept the contention that Motorola was required to name each employee, officer, or subsidiary individually in crafting its waiver. The Release states that Howell releases claims against "Motorola, Inc. and its affiliates, parents, successors, subsidiaries, directors, officers, and employees." Notwithstanding Howell's protestations, the Release, on its face, applies to all Defendants. It is written in extremely broad, yet unambiguous terms. *Pierce*, 65 F.3d at 568 ("any and all" language not ambiguous). Howell does not provide the court with any extrinsic evidence to the contrary to question the court's interpretation of the plain meaning of the Release.

Furthermore, although ERISA permits suits against an employee benefit plan as an entity, 29 U.S.C.A. § 1132(d) ("[a]n employee benefit plan may sue or be sued under this subchapter as an entity"), nowhere does ERISA mandate that the Plan be specifically named in an exculpatory agreement. In this case, the broad language of the Release included all affiliates of Motorola. Howell would be hard-pressed to argue that any of the Defendants he named in this lawsuit were not affiliates, including the Profit Sharing Committee of Motorola. Thus, under the plain language of the Release, it applies to all Defendants.

## E.    Liability for Events Subsequent to the Signing of the Waiver

Finally, Howell argues that the terms of the Release only apply to claims arising out of actions occurring on or before the date he signed the waiver. He claims that because his suit relates to the time period from May 16, 2000 to the present, his claims relating to actions and events occurring

13

after he signed the Release on September 17, 2001, are not waived. The Release provides that it releases Defendants from liability for claims "which have or could have arisen to date out of my employment," including "any and all known and unknown claims to date I may have against Motorola." Defendants counter that Howell only alleges breaches of fiduciary duties that arose prior to September 17, 2001. The crux of this issue is whether the events Howell alleges that occurred after September 17, 2001, amount to additional breaches of fiduciary duties or ongoing effects from breaches of fiduciary duty that occurred prior to September 17, 2001.

Indeed, Howell does not allege a breach of fiduciary duty after that date. Although Howell points to Paragraph 12 of the Complaint in support of his claim for a later breach, Paragraph 12 does not allege any breaches of fiduciary duty. Rather, Paragraph 12 alleges that Defendant Devonshire's actions in 2002, done in accordance with his position as Chief Financial Officer, show that he knew or should have known of certain breaches of fiduciary duty that occurred prior to September 17, 2001. Devonshire's conduct in 2002 may constitute evidence to support Howell's claim for an earlier breach of fiduciary duty, but it does not constitute an independent breach.

## CONCLUSION

For the reasons set out above, Defendants' motion for summary judgment (Doc. 72) is granted, and the Complaint is dismissed. The motion for class certification (Doc. 63) is stricken without prejudice.

ENTER:

Dated: September 30, 2005

REBECCA R. PALLMEYER
United States District Judge

14