UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE G. HOWELL, on behalf of Himself and a Class of Persons Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 03 C 5044 |
| MOTOROLA, INC., et al., | ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on a Motion to Intervene by John Endsley ("Endsley" or "Intervenor"). After this court concluded that Bruce Howell ("Howell") lacked standing to represent a class of ERISA plan beneficiaries in this action for breach of fiduciary duty, Plaintiffs proposed another class representative: Endsley. For the reasons explained below, however, the court concludes that Endsley, too, lacks standing. Accordingly, his motion for leave to intervene is denied.

## BACKGROUND

On July 21, 2003, a single named Plaintiff, Bruce Howell, filed the initial complaint on behalf of the Motorola, Inc. 401(k) Profit Sharing Plan (the "Plan") and all Participants in the Plan for whose individual accounts the Plan purchased and/or held shares of Motorola common stock during the proposed class period, May 14, 2000 to the present (the "Participants"). The action was filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et. seq.* Plaintiffs seek to recover from Defendants[1] for breach of fiduciary duty in violation of Sections

---

[1] Named as Defendants are Christopher B. Galvin (Motorola's Chief Executive Officer and Chairman of the Board of Directors during all or part of the Class Period), Robert L. Growney (Motorola's Chief Operating Officer during all or part of the Class Period), Rick Dorazil (Motorola's Vice President and Director of Global-Rewards Benefits), and Carl F. Koenemann (Motorola's Executive Vice President for Finance and Chief Financial Officer). Also named are members of the Board of Directors: Ronnie C. Chan, H. Laurance Fuller, Anne P. Jones, Donald R. Jones, Judy C.

(continued...)

502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2)-(3).  Specifically, in their amended complaint, filed on October 3, 2003, Plaintiffs allege that Defendants breached their fiduciary duties by: (1) purchasing and holding shares of Motorola common stock when it was imprudent to do so; (2) negligently misrepresenting and failing to disclose materials concerning Plan management and assets; and (3) failing to appoint and monitor appropriate fiduciaries, and failing to provide sufficient information to enable the fiduciaries to fulfill their obligations under ERISA.  In September 2004, this court denied Defendants' motion to dismiss, holding, *inter alia*, that Plaintiffs' claim that members of the Board of Directors breached their fiduciary duty to monitor the Profit Sharing Committee of Motorola, Inc., and its members, was sufficient, and that Plaintiffs' allegation that the Board had an affirmative duty to monitor the committee was sufficient, under liberal pleading standards, to state a claim for relief. *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1097, 1099 (N.D. Ill. 2004).

After a period of discovery, Defendants moved for summary judgment, arguing that the waiver and release signed by Howell at the end of his employment barred him from pursuing this action.  On September 30, 2005, this court granted that motion for summary judgment, and struck the motion for class certification without prejudice. *Howell v. Motorola, Inc.*, No. 03-C-5044, 2005 WL 2420410 (N.D. Ill. Sept. 30, 2005).  Howell filed a Notice of Appeal with the Seventh Circuit on October 27, 2005. This court assumes the reader's familiarity with its two earlier opinions and will repeat facts here only as necessary for understanding the motion now under consideration.

Endsley filed this motion to intervene as Plaintiff and additional class representative on October 19, 2005.

---

[1](...continued)
Lewent, Walter E. Massey, Nicholas Negroponte, John E. Pepper Jr., Samuel C. Scott III, Gary L. Tooker, B. Kenneth West, and John A. White. Defendants from the Profit Sharing Committee are David Devonshire, Glenn Gienko, Garth L. Milne, Ron Miller, William P. DeClerck, and Richard Enstrom.

**FACTS**

Endsley is a former Motorola employee; he voluntarily resigned from his position on February 24, 2001. (Ex. A to Defendants' Memorandum in Opposition to Endsley's Motion to Intervene ("Def.'s Opp.").) The Plan is a "defined contribution" plan within in the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). The Plan provides for individual accounts for each participant, and benefits are payable based on the amount contributed to each Participant's account, adjusted for any gains or losses. (Complaint in Intervention, 16.) Participants direct the Plan to purchase investments from among the investment options available in the Plan and allocate them to Participants' individual accounts. (*Id.*) One of the investment options available to Motorola employees was the Motorola Stock Fund, which consisted solely of Motorola Common Stock. (*Id.* at 17.)

During Plaintiff Endsley's employment with Motorola, he participated in the Motorola, Inc. 401(k) Profit Sharing Plan, and held shares of Motorola common stock in his individual account under the Plan. (Endsley's Motion to Intervene, 2.) After resigning, he received a full distribution under the Plan on or about March 20, 2001. (Ex. B to Def.'s Opp.)

**DISCUSSION**

As in the earlier motion for summary judgment involving Howell, the central issue here is Endsley's standing. Under 29 U.S.C. § 1132(a), a "participant," "beneficiary," or "fiduciary" may bring a civil action for a breach of fiduciary duty proscribed by 29 U.S.C. § 1109. A "participant" is defined as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employer benefit plan . . . ." 29 U.S.C. § 1002(7). The Supreme Court has explained that a former employee "may become eligible" to receive benefits under a plan if he has either (1) "a reasonable expectation of returning to covered employment," or (2) a "colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-118 (1989) (internal citations omitted).

Because Endsley has not alleged he plans to return to covered employment, this court must determine whether he had a "colorable claim to vested benefits" when the suit was brought on July 21, 2003. *Id.*; *Clair v. Harris Trust and Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999). The requirement of a colorable claim in the Seventh Circuit "is not a stringent one." *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir. 1996). A claim can meet this "low threshold" if it is not "bizarre" or "out of line with existing precedent." *Id.* at 790 (internal quotation and citation omitted). Endsley's claim is founded on the assertion that Defendants breached their ERISA fiduciary duties, and thus meets the low threshold of "colorable." As noted earlier, this court has previously denied Defendants' motion to dismiss this claim. *Howell*, 337 F. Supp. 2d 1079.

The more challenging question here is whether Endsley's colorable claim is one for vested benefits. Endsley argues he meets the test in *Firestone* because he is seeking the "benefit" of what his individual account would have earned and what it would have yielded if the account balance in Motorola stock had been invested in the best alternative available under the Plan. Defendants argue that, although styled as a claim for benefits, as discussed below, Endsley is really seeking damages.

Plaintiffs challenge this assertion. They argue, first, that standing is determined at the time of the alleged violation, not at the time this lawsuit was filed. Second, Plaintiffs contend that Endsley's claim is properly understood as one for vested benefits, not damages. Alternatively, Plaintiffs urge that an exception to the "vested benefits" requirement in *Firestone* is applicable to Endsley. The court addresses these arguments in turn.

I.      **Standing at the Time of the Alleged Violation**

Plaintiffs first argue that, so long as Endsley had standing to challenge Defendants' conduct at the time of the alleged violation, he is entitled to represent the class. They cite *Flanagan v. Allstate Ins. Co.*, 213 F. Supp. 2d 862 (N.D. Ill. 2001) (Moran, J.), where plaintiffs, all of whom had left the company prior to May 31, 1999, asserted two claims: First, they alleged that their employer

4

had breached its fiduciary duty by failing to disclose the fact that a new severance package was under consideration at the time they retired. In a second claim, plaintiffs alleged that their employer had violated Section 510 of ERISA by interfering with plaintiffs' attainment of eligibility for the severance payments under consideration. *Id.* at 865-66. The case before this court is distinguishable. The *Flanagan* plaintiffs' first claim sought the *benefit* of coverage under a severance plan that they alleged was under consideration at the time of their retirement. *Id.* There is no dispute here about Endsley's coverage under the plan; indeed, he received a distribution from it at the time he resigned. In any event, the *Flanagan* court was simply ruling on a motion to dismiss; the focus of that court's discussion of the "serious consideration" claim was on whether the employer had any duty to disclose the plan under consideration. *Id.* at 866-67.[2]

The second ERISA claim in *Flanagan* was for harassment in violation of § 510 of ERISA, which states that "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the [employee benefit] plan . . . ." 29 U.S.C. § 1140. The court concluded that plaintiffs had established their standing "by alleging that they were constructively discharged for the purpose of minimizing their ERISA benefits from existing plans, as well as preventing future liability." *Flanagan*, 213 F. Supp. 2d at 868. In other words, the *Flanagan* court recognized standing only for those class members who were forced to quit. Endsley has not alleged he was forced to quit as a result of Defendants' alleged breach of fiduciary duty, and thus *Flanagan*'s exception is not applicable.

But Defendants are not necessarily correct in asserting that Intervenor must have been a plan participant at the time the action was commenced in order to have standing. Defendants cite

---

[2]    The Seventh Circuit has not decided whether employees are entitled to notice of plan amendments under "serious consideration" by their employer, but Judge Easterbrook, in dicta, has suggested that the "serious consideration" theory ought not be adopted. *See Beach v. Commonwealth Edison Co.,* 382 F.3d 656, 661 (7th Cir. 2004).

to the Seventh Circuit's decision in *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc.,* 942 F.2d 1190, 1193 (7th Cir. 1991) for this proposition, but the court there found that plaintiff lacked standing because her claim that she planned to return to covered employment was insufficient, and because she was seeking money damages, not benefits.  Standing may still be appropriate for Intervenor under *Firestone*, even if he was not a plan participant at the time of the suit, if his claim is one for vested benefits rather than damages.  The court turns next to that issue.

## II.      Damages and Vested Benefits

Neither party has cited controlling authority explaining the vested benefits/damages distinction in the context of this case.  The Supreme Court discussed the issue in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), where the Court held that a claim for reimbursement brought by an insurance company under 29 U.S.C. § 1132(a)(3) was one for money damages. Because the claim was not equitable in nature, the Court held that the insurance company was not entitled to relief under ERISA.  "'Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'"  *Id.* at 210 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1998) (Scalia, J., dissenting)). Defendants here argue that this is precisely what Endsley is seeking:  He wants compensation for the loss resulting from Defendants' breach of legal duty.  But this is not a remedy available under ERISA § 502(a) to a former employee who has accepted a lump sum payout of plan benefits.

Case law from other jurisdictions is instructive.  In *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir. 1989), plaintiffs filed a class action pursuant to ERISA § 502(a), 29 U.S.C. §1132(a)(2), alleging that "the amount received was not the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less than fair market value."  *Id.* at 350.  In differentiating

vested benefits from damages, the court stated:

> Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

*Id.* The Fifth Circuit held that although plaintiffs' claim fell somewhere between a claim for benefits and a claim for damages, it was closer to a "simple claim that benefits were miscalculated," and thus was for vested benefits. *Id.* The court therefore affirmed a judgment in favor of the plaintiff class. In this case, Endsley is not arguing that his benefits were wrongly computed; rather, he is arguing that the assets of the Plan itself should have been greater than they were.[3] Defendants are correct that this claim is best characterized as one for damages from the breach of fiduciary duty, and not for vested benefits from the Plan.

In *Hargrave v. TXU Corp.*, 392 F. Supp. 2d 785 (N.D. Tex. 2005), plaintiffs alleged that defendants "purchased TXU stock, on behalf of the Thrift Plan, at an artificially inflated price after making false and misleading statements about the revenues, earnings and operations of TXU Corp." *Id.* at 787. The result of this investment, plaintiffs alleged, was "an overall diminution of plan assets, which were then distributed to the Plaintiffs." *Id.* at 789. In stating a claim for "'a sum that possibly could have been earned' if Defendants had made prudent investment decisions with respect to plan assets," the court concluded, the plaintiffs were seeking damages. *Id.* at 790. The additional amounts that "*might have* accrued but for the Defendant's alleged misconduct" were "speculative" and not "vested under ERISA." *Id.* at 790 (citations omitted). Accordingly, the court concluded that the plaintiffs lacked standing to represent a class because, like Endsley here, they

---

[3]     Defendants argue that Endsley himself is unable to make any claim of such harm, as he received a distribution from the Plan on March 20, 2001, several days before any public disclosure of the circumstances resulting in a market "correction" of the Motorola share price. Because the court has sustained Defendants' objection to this motion on other grounds, it need not reach this argument.

had received all benefits due to them under the Plan. *See also Vaughn v. Bay Envtl. Mgmt., Inc.,* No. 03-5725, 2005 WL 2373728 at *13 (N.D. Cal. Sept. 26, 2005) (granting a motion to dismiss because a claim for plan losses due to imprudent investments is a claim for "recoverable damages for the breach of fiduciary duty" and not for "vested benefits"). Endsley, like the plaintiffs in *Hargrave*, wants only a sum that possibly could have been earned. This court agrees with the *Hargrave* court that such a claim is for damages.

Plaintiffs argue that the holding in *Hargrave* cannot be squared with this circuit's reasoning in *Panaras*. In *Panaras*, the employer modified its severance plan so as to require a release of claims against the company as a condition to receiving benefits. 74 F.3d at 788. When the plaintiff was involuntarily terminated, he chose not to sign the release. *Id.* He alleged that he was a participant in the old severance plan, and thus not required to sign the release, because he had not been properly informed of the changes as required by ERISA § 502. *Id.* The *Panaras* court held that standing was available to "any former employee who has a colorable claim to *vested benefits* which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." *Id.* at 791 (emphasis added). The court's description of plaintiff's theory confirms its understanding that the claim was for vested benefits: "Where violations of ERISA disclosure provisions work a substantive harm on plaintiffs who are denied benefits under the improperly disclosed plan, courts may find that these violations sufficiently taint the employer's denial of severance payments as to warrant . . . granting the benefits." *Id.* at 790 (quoting *Veilleux v. Atochem North America, Inc.,* 929 F.2d 74, 76 (2d Cir. 1991). It was the benefit of the earlier severance plan that Panaras was seeking, not some undefined amount by which the plan would have been enhanced had the plan administrators invested differently. *Id.* Accordingly, this court is not persuaded by Plaintiffs' assertion that *Panaras* indicates that the damages/vested benefits distinction articulated in *Hargrave* is not applicable in this Circuit. *See also Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 979 (7th Cir. 1999)

(stating that to satisfy *Firestone*, the plaintiff in *Panaras* had to demonstrate that his claim was both

not frivolous and for "vested benefits").

Moreover, Endsley has conceded he resigned voluntarily. The plaintiff in *Panaras*

complained of "the way in which his employer administered the plan which it had provided to cover

the *involuntary termination* which he in fact suffered." 74 F.3d at 790 (emphasis added). The court

relied on the involuntary termination to distinguish the holding from an earlier holding that plaintiffs

could not have a "colorable claim to severance benefits for the simple reason that they had left their

employment voluntarily." *Id.* (discussing *Sallee v. Rexnord Corp.*, 985 F.2d 927 (7th Cir. 1993)).

In a case not cited by either party, a New Jersey court has addressed a claim similar to

Endsley's. In *Graden v. Conexant Sys., Inc.*, No. 05-0695, 2006 WL 1098233 (D. N.J. March 31,

2006), the plaintiff alleged that the plan breached its duty by imprudently investing in Conexant

stock, which was declining as a result of a merger with Globespan. *Id.* at *1. Like Endsley,

plaintiffs sought the "benefit" of the best performing alternative investment. The court characterized

this claim as one for damage, not for benefits, and dismissed it. This court finds the *Graden* court's

rationale persuasive:

> As much as one might wish to engage in semantic gymnastics, there is simply no
> way to conclude that a claim which seeks reimbursement for the "lost return on
> investments that would have resulted from prudent and loyal investment of plan
> assets" is one for vested benefits. Nor is there any way to conclude that a claim for
> "the return that would have been obtained had the assets been prudently invested
> in the best performing alternative investment in the plan" is anything other than a
> claim for damages.

*Id.* at *4. Other recent decisions are in accord. *See In re AEP ERISA Litig.*, ___ F. Supp. 2d ___,

No. C2-03-67, 2006 WL 1890038 (S.D. Ohio July 12, 2006) (finding former participants' claims for

additional damages that *might have* accrued too speculative to be considered vested under

ERISA); *Holtzscher v. Dynegy, Inc..*, No. Civ. A. H-05-3293, 2006 WL 626402 (S.D. Tex. Mar. 13,

2006) (claim of former participants for compensation for losses sustained as a result of defendants'

false and misleading statements about the company more closely resembles a claim for damages

than a claim for vested benefits); *LaLonde v. Textron, Inc.*, 418 F. Supp. 2d 16, 21 (D. R.I. 2006) (absent evidence that defendant's alleged misconduct was causally connected to their loss of employment, former employees who have received full plan benefits are not "participants" for purposes of standing; to hold otherwise would "effectively eliminate[] the distinction between vested benefits and damages). Although Endsley may have a "colorable claim," it is a claim for damages from tortious acts, not for "vested benefits." Once he received his lump sum payment from the Plan's assets in 2002, he ceased to be a "participant" under ERISA. Accordingly, Endsley lacks standing to pursue his ERISA claim.

**III.     Exceptions to *Firestone***

Finally, Plaintiffs argue that the court should permit Endsley, a former employee, to bring this claim even if it is not fairly understood as a claim for vested benefits. Plaintiffs are swimming upstream here; courts generally have been strict in interpreting *Firestone*'s teaching that a former participant has standing only when he/she is claiming vested benefits. *See, e.g., Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990) (finding that the definition of "participant" must exclude retirees who have accepted a lump sum payout of benefits because they "have already received the full extent of their benefits and are no longer eligible to receive future payments"). The Seventh Circuit has not yet addressed whether the *Firestone* doctrine always excludes retirees who have accepted lump sum payouts, or whether a more expansive interpretation is acceptable. Plaintiffs here cite several cases that follow the Sixth Circuit's conclusion in *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995), that a rigid interpretation of the *Firestone* rationale is contrary to the purpose of ERISA.

In *Swinney* itself, the plaintiffs brought a suit for breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, after their employer altered its voluntary retirement incentives. Confronted with plaintiffs who had already ended their employment with General Motors and accepted lump sum benefits, the court carved out an exception to the rule in *Firestone* that former employees lack

standing to bring ERISA claims for breach of fiduciary duty. The Sixth Circuit held that "if the

employer's breach of fiduciary duty causes the employee to either give up his right to benefits or

to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach."

*Swinney,* 46 F.3d at 518 (citations omitted). Courts refer to the *Swinney* exception as the "but for"

exception.[4] *Id.* at 519. Under this approach, if an employee would not have retired but for the

actions of his employer, he will still have standing to bring a claim under ERISA.

Whether or not the "but for" exception would be recognized by the Seventh Circuit, this court

concludes this line of cases is distinguishable from the one at issue here. Endsley has not claimed

that the mismanagement and breach of fiduciary duty had any effect on his decision to end his

employment with Motorola and accept a lump sum payout of benefits. Instead, Plaintiffs argue that

Endsley has standing under a theory adopted by two district courts that have interpreted *Swinney*

more expansively. First, in *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004), the court held that

the plaintiff, a former participant in a Kmart sponsored plan, had standing to sue over allegations

that her employer breached its fiduciary duty by including Kmart stock in the plan "at a time when

Kmart was in serious decline and which resulted in significant losses to the Plan." *Id.* at 514. The

court there was not persuaded by defendants' argument that *Swinney* must be limited to situations

in which plan members alleged they gave up their employment as a result of misrepresentations

regarding eligibility for benefits. *Id.* "To find that [plaintiff] lacks standing would permit Kmart to

exclude potential class members by simply paying them their vested benefits." *Id.* Similarly, in *In*

---

4        The "but for" exception has been adopted by the First, Second, Third, Fifth, Sixth, and Eighth Circuits. *See, e.g., Leuthner v. Blue Cross & Blue Shield*, ___ F.3d ___, 2006 WL 1881438 at *8 (3d Cir. July 10, 2006); *Adamson v. Armco, Inc.*, 44 F.3d 650, 654-55 (8th Cir. 1995); *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518-19 (6th Cir. 1995); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 702-03 (1st Cir. 1994); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 667-68 (2d Cir. 1994); *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220-21 (5th Cir. 1992). *But see Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536 (10th Cir.1993); *Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 619 (11th Cir. 1992); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432 (4th Cir.1986) (rejecting the "but for" theory of ERISA standing). It has not yet been adopted by the Seventh Circuit.

*re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004), a subsequent case from the same district as *Rankin*, the court held that ERISA should not be construed to defeat standing of former participants.  The court was unwilling to find class members' claims could be extinguished "simply through payment of vested benefits which were arguably affected through the defendants' alleged breaches of fiduciary duties."  *Id.*

The policy argument presented in *Rankin* and followed in *CMS Energy* is that an employer should not be able to exclude potential class members merely by paying them their benefits. *Rankin*, 220 F.R.D. at 514.  This court does not find the argument compelling.  In *Rankin*, there was no indication that Kmart ended plaintiff's employment so as to avoid a lawsuit.  Nor is the court prepared to ignore the distinction between vested benefits and damages recognized by the *Firestone* case.  As another federal court has observed, "In effect these courts [*Rankin* and progeny] conclude that, because interpreting the statute as written would deny plaintiffs a remedy, the statute, and its definitive interpretation by the Supreme Court in *Firestone Tire & Rubber*, should be either ignored, or that suits which clearly seek damages should be transformed by judicial legerdemain into suits for 'vested benefits.'"  *Graden*, 2006 WL 1098233 at *5.  This court agrees, and concludes that Endsley may not proceed here in the absence of any claim for vested benefits.

Finally, the court notes Plaintiffs' reliance on *In re Syncor ERISA Litigation*, 227 F.R.D. 338 (C.D. Cal. 2005); that case requires only brief discussion.  The court in *Syncor* certified a class of persons who participated in the plan during the relevant class period.  But the court did not specifically state whether the plaintiffs remained employed, nor did the court mention whether any plaintiff accepted a lump sum payout like Endsley.  In short, the authorities cited by Plaintiffs do not satisfy the court that Endsley is entitled to proceed here even without a claim for vested benefits.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Intervene (97) is denied.

ENTER:

Dated: August 11, 2006

REBECCA R. PALLMEYER
United States District Judge