**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRUCE G. HOWELL, STEPHEN LINGIS** | ) | |
| **DONALD SMITH and PETER WHITE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 03 C 5044** |
| | ) | |
| **MOTOROLA, INC.,** *et al.*, | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendants.** | ) | |

<u>**ORDER**</u>

Stephen Lingis, Donald Smith, and Peter White ("Intervenor Plaintiffs"), current participants in the Motorola, Inc. 401(k) Profit Sharing Plan (the "Plan"), have intervened as Plaintiffs in this lawsuit alleging that the Defendants, the administrators of the Plan, breached their fiduciary duty to Plan participants. The complaint, filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (2000), alleges that Defendants breached their fiduciary duty in violation of Sections 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2)-(3), by (1) purchasing and holding shares of Motorola common stock when it was imprudent to do so; (2) negligently misrepresenting and failing to disclose materials concerning Plan management and assets; and (3) failing to appoint and monitor appropriate fiduciaries, and failing to provide sufficient information to enable the fiduciaries to fulfill their obligations under ERISA. Each of these claims relates to the Plan's investment in Motorola's own stock during a period of time that Motorola was allegedly engaged in a risky venture with a Turkish telecommunications business ("Telsim").

In earlier rulings, the court has concluded that Plaintiffs' complaint states a claim for relief, but that two putative class representatives did not have standing, one because he had signed a comprehensive release, and another because he did not qualify as a current Plan participant. *See Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1102 (N.D. Ill. 2004) (denying motion to dismiss); *Howell v. Motorola, Inc.*, No. 03 C 5044, 2005 WL 2420410, at *1 (N.D. Ill. Sept. 30, 2005)

(dismissing claims of Plaintiff Howell); *Howell v. Motorola, Inc.*, No. 03 C 5044, 2006 WL 2355586, at *1 (N.D. Ill. Aug. 11, 2006) (denying motion to intervene by Plaintiff Endsley).

Intervenor Plaintiffs, who have not released their claims and are current Plan participants, seek now to proceed in this case on behalf of a class of Plan participants for whose accounts the Plan purchased or held Motorola shares at any time between May 16, 2000, and December 31, 2002. Defendants object to the motion for class certification. They challenge the propriety of the proposed class definition, argue that conflicts of interest between Plaintiffs and other class members preclude class treatment, and contend that Plaintiffs cannot meet the Rule 23(a) requirements of adequacy and typicality. For the reasons set forth below, the court sustains those objections in part but otherwise grants Plaintiffs' motion for class certification.

## DISCUSSION

### I. Class Definition

Defendants raise three principal challenges to the proposed class definition: (1) They argue that the class period should end in May 2001, the date on which problems relating to Motorola's dealings with Telsim were disclosed in the market; (2) they argue that persons who have executed releases should be excluded from the class; and (3) they argue that the class definition improperly includes former Plan participants, who seek money damages rather than relief for the class as a whole. (Defendants' Memorandum in Opposition to Class Certification [hereinafter, "Defs.' Mem."], at 8-10.) [1]

#### A. Class Period

In arguing for a broad class period, Plaintiffs have focused on circumstances that relate to Motorola's alleged failure to "disclose[] to [Plan] participants the extensive evidence of

---

[1] Defendants have also suggested that Motorola officers and directors (including Defendants themselves) and their family members, should be excluded from the class definition, (Defs.' Mem., at 8), but have failed to develop that argument.

improprieties" in Motorola's dealings with Telsim. (Intervenor-Plaintiffs' Reply Memorandum of Law In Support of Their Motion for Class Certification [hereinafter, "Pls.' Reply"], at 6.) The court agrees with Defendants that Plaintiffs' nondisclosure claim parallels the claim made in the securities fraud case against Motorola that recently ended in a settlement. The class period in that case ended on May 14, 2001, the date Motorola filed its Form 10-Q with the Securities and Exchange Commission, revealing that it had loaned $2 billion in vendor financing in Telsim and that Telsim had defaulted on that loan. *See generally In re Motorola Securities Litig.*, ___ F. Supp. 2d ___, 2007 WL 487738, at *1, 8 (N.D. Ill. Feb. 8, 2007). In support of their argument for a longer class period, Plaintiffs cite two pieces of evidence that post-date that disclosure: a February 25, 2002, report from Arnold and Porter, and KPMG's May 2002 refusal to certify that the Telsim loan was unimpaired in the fall of 2000. Neither of these incidents creates a dispute with respect to the fact that the troubled status of the Telsim loan was known and disclosed by May 14, 2001. This is most obviously significant for Plaintiffs' non-disclosure claims. Notably, however, Plaintiffs have also not explained why Motorola stock continued to be an imprudent investment after the decline in price that resulted from the May 2001 disclosure, nor otherwise defended their selection of December 31, 2002, as the close date for the class period. As reflected in the stock price graph attached as Exhibit C to Defendants' Memorandum, the price of Motorola stock peaked in mid-summer 2000, declined sharply by October 1, and continued to drop until May 2001. After that time, the fluctuations were much more limited. Absent greater support for Plaintiffs' proposed December 31, 2002, class period close date, the court will adopt Defendants' proposal that the class period should close on May 14, 2001.

Defendants also argue in their sur-reply brief that the class period should begin on July 3, 2000, the date on which a "freeze" on Plan assets was lifted. (Defendants' Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification [hereinafter, "Sur-Reply"], at 9.) As a result of that freeze, which spanned the period from May 1, 2000 through June 30, 2000, Defendants contend, Plan

fiduciaries could not have divested their holdings in Motorola stock, nor could participants have been injured in reliance on any alleged failure to disclose information concerning the Telsim loans. Whatever the merits of this argument, the court notes it was raised for the first time in Defendants' sur-reply.  This objection is therefore overruled.

**B.**     **Plan Members who Executed Releases**

Two years ago, this court dismissed the claims of the original named Plaintiff, Bruce Howell, on the ground that the release he signed upon his September 2001 layoff from employment with Motorola barred this claim.  *See Howell,* 2005 WL 2420410 at *7 (N.D. Ill. Sept. 30, 2005). Defendants object to certification of a class that, as defined, includes Howell and other Plan participants who signed such releases.  This objection is sustained.  Plaintiffs have argued that "release is a common issue in this case," (Pls.' Reply, at 7), but the court is far less certain; as explained in the *Howell* opinion, the enforceability of a release turns on a number of individual issues on which the releasor bears the burden of proof, including his or her employment, education, experience, and access to counsel.  2005 WL 2420410 at *5, citing *Pierce v. Atchison, Topeka, and Santa Fe Ry. Co.*, 65 F.3d 562, 571-72 (7th Cir. 1995).  In any event, the class definition Plaintiffs have proposed here is far broader than one consisting exclusively of persons who have signed releases; for many (perhaps most) of the class members, the release is not an issue at all.  The court concludes the class definition must be amended to exclude, as eligible for any relief persons who signed valid releases of their claims against Motorola.

**C.**     **Former Plan Participants**

After Bruce Howell's claims were dismissed, John Endsley, a former Plan participant, sought leave to intervene in this action.  The court denied that motion for reasons explained in *Howell,* 2006 WL 2355586, at *1.  Defendants argue that Endsley and other former Plan participants are improperly included in Plaintiffs' proposed class definition.  Defendants concede, however, that the Seventh Circuit has more recently reached a conclusion at odds with the one this court reached last

4

year.  In *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), the court held squarely that former employees do remain "participants" in their employer-sponsored pension plan for purposes of a class action in which they sought to recover amounts that allegedly should have been in their accounts, but for the breach of fiduciary duties by plan managers.  489 F.3d at 806-07.  Defendants urge that despite *Harzewski*, Endsley and other former Plan participants are not entitled to recover damages.  Without addressing the question of what relief might be available to any class member, the court overrules Defendants' objections to inclusion of former Plan participants in the proposed class.

**II.    Conflicts of Interest**

Defendants' second basic objection to class certification arises from purported conflicts between class members.  Defendants characterize these conflicts as "positional conflicts" and "claims conflicts."  The court addresses these matters in turn.

**A.    Positional Conflicts**

As described above, Plaintiffs have asserted that Defendants breached their fiduciary duties to the Plan participants in three ways: (1) by purchasing and holding shares of Motorola common stock when it was imprudent to do so; (2) by failing to make appropriate disclosures concerning the Plan's assets; and (3) by failing to appoint, monitor, and provide necessary information to Plan administrators.  According to Defendants, each of the three Intervenor-Plaintiffs has disavowed the first of these claims–that investment in Motorola stock was imprudent.  Thus, asked whether there was "any point in time where you believe the Motorola stock fund should have been removed from the menu of options for investments in the 401(k) plan," Intervenor-Plaintiff White responded, "I would say no." (Def.'s Mem., at 12, citing White Dep. 131-132.)  Intervenor-Plaintiff Lingis, similarly, when asked if he believed Motorola "should not have allowed you to invest in the Motorola stock fund 401(k) plan," answered, "Not at all."  (Def.'s Mem., at 12-13, citing Lingis Dep. 74-75.)  Finally, Intervenor-Plaintiff Smith testified that he did not ever "feel that Motorola stock was something that

5

[he] should not have been allowed to invest in through the 401(k) plan." (Def.'s Mem., at 13, citing Smith Dep. 13.)

Defendants predict that "[l]itigation of the prudence claim in this case will focus on Plaintiffs' testimony that they do not believe the claim." (Sur-Reply, at 5.) The court suspects, to the contrary, that proof of that claim will turn heavily on expert testimony, not on the views of investors to whom the Plan trustees owed a fiduciary duty. In any event, each of the Plaintiff-Intervenors also testified consistently with the claim that Defendants breached their fiduciary duties by permitting an imprudent investment. White commented that his personal opinions about the propriety of investing in Motorola stock are not relevant: "[W]e're not talking about my point of view whether Motorola stock should be allowed to be in the plan, we're talking about whether the defendants should have allowed it to be in the plan." (Pls.' Reply, at 11, citing White Dep. 131.) Lingis testified that Defendants should have been "aware of the very highly questionable underwriting of two billion dollars," a sum that would have "mitigat[ed] some of the Motorola pain . . . . " (Pls.' Reply, at 11, citing Lingis Dep. 87.)

Notably, Defendants have not suggested that White, Lingis, or Smith gave any testimony inconsistent with the Plan participants' remaining claims of failure to disclose and failure to appoint appropriate Plan managers. Smith specifically linked his decisions with respect to investment in Motorola stock to Defendants' failures to disclose the Telsim deal: "If they would have told us about this deal with Telsim, vendor financing, I would have switched my investments around." (Pls.' Reply, at 12, citing Smith Dep. 141.) In the court's view, Plaintiff-Intervenors' misunderstanding of or repudiation of the Plan participants' claim of imprudence goes to their adequacy; it does not establish that White, Lingis, or Smith have claims that are in conflict with those of other class members. The "positional conflicts" objection is overruled.

## B. Claims Conflicts

In addition to the purported "positional conflicts," Defendants have argued that there are

conflicts among class members, depending on when within the class period each Plan participant purchased or sold Motorola stock. Thus, Defendants contend, Plan participants who did not purchase any Motorola stock during the class period did not suffer any losses at all. Defendants concede that those Plan participants who purchased but did not sell Motorola stock during the class period were injured by the alleged artificial inflation of the stock prices. They contend, however, that those who first sold and then later purchased Motorola stock during the class period will have an interest in arguing that Defendants' wrongdoing occurred after they sold, but before they again purchased. (Defs.' Mem., at 15-16, citing the expert report of David Ross.)

In *Lively v. Dynegy, Inc.*, No. 05-CV-00063-MJR, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007), Judge Reagan considered the same argument and rejected it. *Id.* at *13. He emphasized that an action for breach of fiduciary duty under ERISA is brought on behalf of the plan as a whole, and that individual claims are therefore necessarily typical. *Id.* Citing a host of cases, Judge Reagan concluded that "the theory of seller-purchaser conflicts has been rejected by the majority of courts in class actions under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)." *Lively*, 2007 WL 685861, at *13. Following that authority, the court declined to adopt the reasoning of the same expert on whom Defendants rely in this case. *Id.* at *12. The Fifth Circuit in *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315-16 (5th Cir. 2007), vacated and remanded a class certification decision for further consideration of the claims conflict issue. The dissenting judge observed, however, that conflicts arising from the timing of a claim member's purchase or sale conflicts might require an individualized determination of the benefits due each class member; but such conflicts ought not preclude class certification. *Id.* at 324 (Reavley, J., dissenting.)

This court agrees with the *Lively* court that conflicts of the type identified by Defendants' expert do not preclude class action treatment in this case. As discussed earlier, the court is directing that the class period be shortened, so that it will begin on May 16, 2000 and end on May 14, 2001. The number of class members who have conflicts will, even under Mr. Ross's

analysis, be substantially reduced by this determination. The court agrees with Defendants that those class members who did not purchase Motorola shares during the class period will not be entitled to any individualized recovery. Despite this, the court believes those class members who did purchase Motorola stock during the class period will have a common interest in demonstrating that Defendants acted imprudently in permitting such an investment and in failing to disclose relevant information over that (comparatively brief) period. Any individual differences in their investment posture does not, at this stage, preclude class certification. *Id.* at 323-324 (Reavly, Jr., dissenting).

## III.    Rule 23(a) Requirements

The court turns, finally, to the Rule 23 requirements for class certification: the proponent must demonstrate (1) numerosity, that "the class is so numerous that joinder of all members is impracticable;" (2) "commonality," that there are "questions of law or fact common to the class;" (3) "typicality," that "the claims or defense of the representative parties are typical" of those of the class as a whole; and (4) "adequacy," that the class representatives will "fairly and adequately" represent the class members. FED. R. CIV. P. 23(a). Where these tests are met, a class action must also meet one of the 26(b) requirements.[2] Plaintiffs easily meet two of these tests: Defendants acknowledge that there are thousands of potential class members, (e.g. Defs.' Mem., at 14) , and Plaintiffs have identified several common questions: whether Defendants were Plan fiduciaries;

---

[2]    Although Defendants suggest otherwise (Defs.' Mem., at 7), Plaintiffs acknowledge that they must establish not only the four threshold requirements of Rule 23(a), but must also satisfy one of the requirements of Rule 23(b). (Memorandum of Law in Support of Motion of Plaintiff-Intervenors for Class Certification and for Related Relief [hereinafter, "Pls.' Mem."], at 7.) Plaintiffs have argued that the proposed class meets the requirements of Rule 23(b)(1) in that separate actions would create a risk of prejudice to the Defendants or to the class members, and have noted that claims for breach of fiduciary duty are routinely certified under Rule 23(b)(1). (Pls.' Mem., at 11-12, citing *Rogers v. Baxter Int'l, Inc.*, No. 04 C 6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006) (collecting cases).) Defendants, relying on their arguments that Plaintiff Intervenors are not adequate class members and do not have typical claims, object to the Rule 23(b)(1) argument only in a footnote. The court declines to address this undeveloped argument.

whether Defendants breached fiduciary duties; whether the Plan and its participants suffered injuries for which they are entitled to recover. (Pls.' Mem., at 9.) Defendants here challenge Intervenor Plaintiffs' typicality and adequacy. The court addresses these arguments below.

The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998) (internal quotations and citations omitted). In addition to the positional conflicts and claims conflicts discussed earlier, Defendants argue that Plaintiffs' claims are not typical of other class members' claims because "the only claim in which Plaintiffs appear to have any genuine interest, the disclosure claim, necessarily will require proof of materiality and reliance, which are inherently individualized inquiries." (Defs.' Mem., at 18.) Thus, Defendants' contend, Plaintiffs will be required to show what information was available to each class member at the time he or she made investment decisions and the degree to which the class member relied on Defendants' alleged misrepresentations or non-disclosures. (*Id.* at 19-20.) Their inability to do so, according to Defendants, destroys typicality and renders Plaintiffs inadequate as class representatives.

Even if Defendants are correct that Plaintiffs' nondisclosure claim is the only one they will pursue, the typicality challenge fails. Issues of individual reliance do not ordinarily defeat a finding of typicality. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D. Ill. 1986). Instead, so long as the claims of the representative Plaintiffs involve the same alleged misconduct on the part of the Defendants and are based on the same legal theory, those claims are typical. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154,183-84 (3d Cir. 2001) (citing, *inter alia*, 1 Newberg on Class Actions, § 3.15, p. 3-78, in certifying a securities fraud class action). Judge Norgle of this court so concluded in a case that, like this one, asserted a breach of fiduciary duty on the part of the trustees of a pension plan governed by ERISA. *Smith v. Aon Corp.*, 238 F.R.D. 609, 614-15 (N.D. Ill. 2006).

9

The cases cited by Defendants differ from this one in important ways. *Kamler v. H/N Telecommunications Services, Inc.*, 305 F.3d 672, 677 (7th Cir. 2002) was an individual claim, not a class action, and does not address typicality issues at all. In *Gesell v. Commonwealth Edison Co.,* 216 F.R.D. 616, 620 (C.D. Ill. 2003), a group of individuals that their former employer and ERISA trustees made false representations to induce them to sever their employment. These oral representations were made at a number of different meetings attended by various class members. Here, in contrast, Plaintiffs purportedly relied on Defendants' failure to disclose problems in the Telsim deal to the Plan participants as a whole. *In re Sears Retiree Group Life Insurance Litigation*, 198 F.R.D. 487 (N.D. Ill. 2000) is distinguishable for similar reasons. Plaintiffs there alleged that their former employer breached fiduciary duties by making misleading disclosures that falsely communicated that plaintiffs would enjoy permanent life insurance after their retirement. *Id.* at 490-91. Although plaintiffs there emphasized two misleading documents they alleged were distributed to all class members, the court concluded that different retirees had received a different mix of written and oral communications concerning their retirement benefits. *Id.* at 490. Defendants here argue that this case, too, involves a "wide mix of informational sources," (Defs.' Mem., at 21), but Plaintiffs observe that most of those sources–summary plan descriptions and SEC filings–were disseminated to all Plan participants. (Pls.' Reply, at 21.) The court deems it significant, as well, that Plaintiffs here are not challenging affirmative false or misleading statements, but Defendants' failure to disclose certain aspects of Motorola's agreement with Telsim (most notably, that Motorola itself was financing sales of equipment)–a failure that they claim harmed the Plan as a whole.

Indeed, Plaintiffs emphasize their role in bringing this action on behalf of the Plan as a whole, (Pls.' Reply, at 17), and Defendants themselves insist that recovery for any proved violation must inure to the benefit of the Plan as a whole. (Defs.' Mem., at 6.) To prevail, Plaintiffs will have to demonstrate that Defendants' disclosures or nondisclosures harmed the Plan. If they are unable to do so, the fact that any individual Plan participant may have been misled will be of no moment.

10

The typicality and adequacy objections are overruled.

## **CONCLUSION**

Plaintiffs' motion to certify class (194) is granted. Plaintiffs are directed to submit, within 14 days, a proposed amended class order consistent with this opinion. Status hearing set for Tuesday, October 16, 2007, at 9:00 a.m.

ENTER:

Dated: September 28, 2007

_____
REBECCA R. PALLMEYER
United States District

11