# EXHIBIT 1
# (Part 2 of 4)

# MOTOROLA PROFIT SHARING AND INVESTMENT PLAN

## AS AMENDED AND RESTATED EFFECTIVE SEPTEMBER 1, 1999

MOT-ERISA 3936

# MOTOROLA PROFIT SHARING AND INVESTMENT PLAN

## Table of Contents

Page

ARTICLE 1 - DEFINITIONS ............................................................................................... 3
1.1   "Affiliated Employer" ............................................................................................... 3
1.2   "Beneficiary" ............................................................................................................... 3
1.3   "Board of Directors" ................................................................................................... 3
1.4   "Break in Service" ....................................................................................................... 3
1.5   "Code" .......................................................................................................................... 3
1.6   "Company" ................................................................................................................... 3
1.7   "Company Contribution" ............................................................................................ 3
1.8   "Company Contribution Account" ............................................................................ 3
1.9   "Company Securities" ................................................................................................ 4
1.10   "Compensation" .......................................................................................................... 4
1.11   "Corporation" .............................................................................................................. 4
1.12   "Early Retirement Date" ............................................................................................ 4
1.13   "Elective Deferrals" or "Elective Contributions" .................................................. 4
1.14   "Employee" ................................................................................................................. 4
1.15   "Foreign Subsidiary" .................................................................................................. 5
1.16   "Forfeiture" .................................................................................................................. 6
1.17   "Fund" .......................................................................................................................... 6
1.18   "Highly Compensated Employee" ............................................................................ 6
1.19   "Hour of Service" ....................................................................................................... 6
1.20   "Income" ...................................................................................................................... 7
1.21   "Investment Funds" .................................................................................................... 7
1.22   "Matching Contribution" ............................................................................................ 7
1.23   "Motorola Stock Fund" ............................................................................................. 7
1.24   "Non-Highly Compensated Employee" .................................................................... 7
1.25   "Normal Retirement Date" ........................................................................................ 7
1.26   "One Year Break in Service" ..................................................................................... 7
1.27   "Participant" ................................................................................................................ 8
1.28   "Participant Contribution" ......................................................................................... 8
1.29   "Participant Contribution Account" .......................................................................... 8
1.30   "Period of Service" ..................................................................................................... 8
1.31   "Period of Severance" ................................................................................................ 8
1.32   "Plan" ........................................................................................................................... 9
1.33   "Plan Year" .................................................................................................................. 9
1.34   "Profit Sharing Committee" ....................................................................................... 9
1.35   "Profit Sharing Contribution" .................................................................................... 9
1.36   "Qualified Annuity" .................................................................................................... 9
1.37   "Severance from Service Date" ................................................................................ 11
1.38   "Subsidiary" ............................................................................................................... 11
1.39   "Total and Permanent Disability" ............................................................................ 11
1.40   "Trust" ........................................................................................................................ 11
1.41   "Trust Fund" or "Fund" ............................................................................................ 12
1.42   "Valuation Date" ....................................................................................................... 12
1.43   "Year of Service" ...................................................................................................... 12
ARTICLE 2 - ELIGIBILITY AND PARTICIPATION ................................................... 13
2.1   Employees Covered by the Plan .............................................................................. 13
2.2   Re-Employment .......................................................................................................... 13
2.3   Years of Service of Employees of Foreign Subsidiaries ...................................... 13

**ARTICLE 3 - CONTRIBUTIONS TO THE FUND** ......................................................... 15
   3.1    Participant Contributions ............................................................................. 15
   3.2    Company Contributions ................................................................................ 18
   3.3    Special Rules Applicable to Sections 3.1 and 3.2 ...................................... 22
   3.4    Actual Deferral Percentage Tests ............................................................... 25
   3.5    Average Contribution Percentage Tests .................................................... 28
   3.6    Additional Testing Rules ............................................................................. 31
**ARTICLE 4 - ALLOCATIONS TO PARTICIPANTS' ACCOUNTS** .......................... 34
   4.1    Participant Accounts ................................................................................... 34
   4.2    Account Adjustments ................................................................................... 34
   4.3    Maximum Allocations and Top Heavy Provisions .................................... 36
   4.4    Valuation of Fund ....................................................................................... 40
   4.5    Investment of Funds ................................................................................... 40
   4.6    Transferred Benefits ................................................................................... 40
**ARTICLE 5 – VESTING AND DISTRIBUTION OF BENEFITS** ............................. 42
   5.1    Vesting of Benefits ..................................................................................... 42
   5.2    Designation of Beneficiaries ....................................................................... 43
   5.3    Commencement of Distributions ............................................................... 45
   5.4    Method of Payment of Distribution ........................................................... 47
   5.5    Loans ........................................................................................................... 49
   5.6    Facility of Payment ..................................................................................... 51
   5.7    Notice of Address ........................................................................................ 51
   5.8    Hardship Withdrawals ................................................................................ 52
   5.9    Withdrawal at Age 59½ .............................................................................. 53
**ARTICLE 6 - QUALIFIED MILITARY SERVICE** ................................................... 54
   6.1    Special Definitions for Article 6 ................................................................ 54
   6.2    Military Leave of Absence .......................................................................... 54
   6.3    Distribution of Benefits During Military Leave of Absence ..................... 55
   6.4    Continuance of Participant's Interest in Fund During Military Leave of Absence .......... 55
   6.5    Effect of Termination of Military Leave of Absence ................................ 55
   6.6    Employees Entitled to the Benefits of USERRA ...................................... 56
   6.7    Applicable Laws ......................................................................................... 57
**ARTICLE 7 – PLAN ADMINISTRATION** ................................................................ 58
   7.1    Membership of the Profit Sharing Committee .......................................... 58
   7.2    Powers of the Profit Sharing Committee .................................................. 58
   7.3    Procedures of the Profit Sharing Committee ............................................ 60
   7.4    Adoption of Rules by Profit Sharing Committee ...................................... 60
   7.5    Directions to Trustee .................................................................................. 60
   7.6    Records to be Kept by the Profit Sharing Committee .............................. 60
   7.7    Inspection of Records of the Profit Sharing Committee ........................... 61
   7.8    Indemnification ........................................................................................... 61
   7.9    Claims Procedure ....................................................................................... 61
   7.10   Participants Subject to Section 16(b) of Securities Exchange Act .......... 61
   7.11   Assignment of Duties under ERISA Section 404(c) ................................ 61
**ARTICLE 8 - TRUSTEE** ............................................................................................. 63
   8.1    Trust Agreement ......................................................................................... 63
   8.2    Appointment of Successor Trustee ............................................................ 63
**ARTICLE 9 - INVESTMENT OF THE ASSETS OF THE TRUST FUND** ............. 64
   9.1    Direction of Investments ............................................................................ 64
   9.2    Investment Guidelines ................................................................................ 64
   9.3    Investment in Company Securities ............................................................ 64
**ARTICLE 10 - CHANGES IN THE ORGANIZATION OF THE COMPANY** ........ 65
   10.1   Merger or Consolidation ............................................................................ 65
   10.2   Transfer of a Participant to a Subsidiary .................................................. 65

MOT-ERISA 3938

10.3    Transfer of a Participant from a Subsidiary to the Company ................................... 65
10.4    Sale, Disposition or Transfer of a Subsidiary or Business Subdivision ................................. 66
10.5    Employees Transferred in Acquisition.................................................................... 68
ARTICLE 11 - AMENDMENT AND TERMINATION OF THE PLAN ........................................ 69
11.1    Amendments to Comply with Law ....................................................................... 69
11.2    Amendment of the Plan ...................................................................................... 69
11.3    Termination by Corporation ............................................................................... 69
11.4    Effect of Termination ......................................................................................... 69
ARTICLE 12 - RESTRICTION ON ALIENATION OF BENEFITS .......................................... 71
ARTICLE 13 - MISCELLANEOUS ............................................................................... 73
13.1    Participation of Subsidiaries ............................................................................... 73
13.2    Sole Benefit of Participants ................................................................................ 73
13.3    Nonguarantee of Employment ............................................................................ 73
13.4    Resolutions of the Board of Directors .................................................................. 73
13.5    Written Notice by Trustee .................................................................................. 73
13.6    Gender and Numbers.......................................................................................... 73
13.7    Headings ......................................................................................................... 74
13.8    Litigation ......................................................................................................... 74

MOT-ERISA 3939

## MOTOROLA PROFIT SHARING AND INVESTMENT PLAN

On November 18, 1947, Motorola, Inc., a Delaware corporation (hereinafter referred to as the Corporation), established the Motorola Employees' Savings and Profit Sharing Plan for the benefit of its employees to provide funds for employees in the event of death, disability, unemployment and retirement, and to encourage employees' interests in the successful operation of the business and provide a share in the resulting profits for the benefit of employees. The name of the Motorola Employees' Savings and Profit Sharing Plan was changed to the Motorola Profit Sharing and Investment Plan (herein referred to as the "Plan") effective January 1, 1996. Effective January 1, 2000, the name of the Plan is again changed to the Motorola, Inc. 401(k) Profit Sharing Plan.

Except as otherwise provided below, this document sets forth the Plan, as amended and restated effective September 1, 1999. Certain provisions of the Plan are effective prior to or after September 1, 1999, as set forth hereinbelow or as provided elsewhere herein:

- Changes to Section 1.10 are effective January 1, 2000, provided, however, that deletion of the "family aggregation" rule shall be effective January 1, 1997;
- Section 1.18 is amended effective January 1, 1997;
- Section 3.1 is amended effective July 1, 2000;
- Section 3.2 is amended effective January 1, 2000;
- Section 3.3 is amended effective January 1, 2001;
- Sections 3.4, 3.5 and 3.6 are deleted effective January 1, 2001;
- Sections 4.5 and 4.6 are amended effective July 1, 2000;
- Section 5.1 is amended effective July 1, 2000;
- Section 7.1 is amended effective September 1, 1999;
- Section 9.3 is deleted effective July 1, 2000; and
- Article 11 is amended effective September 1, 1999.

The Motorola Profit Sharing and Investment Trust (hereinafter referred to as the "Trust"), established pursuant to a separate trust agreement, is intended to form a part of the Plan. Effective January 1, 2000, the Trust shall be known as the Motorola, Inc. 401(k) Profit Sharing Trust.

The Plan and the Trust are intended to meet the requirements of Sections 401(a), 401(k) and 501(a) of the Internal Revenue Code, as now in effect or hereafter amended, and the Employee

MOT-ERISA 3940

Retirement Income Security Act of 1974 ("ERISA"), as now in effect or hereafter amended, including, but not limited to, Section 404(c) and the regulations thereunder.

MOT-ERISA 3941

## ARTICLE 1 - DEFINITIONS

**1.1** **"Affiliated Employer"** means the Corporation and any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Corporation; any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Corporation; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Code Section 414(m)) which includes the Corporation; and any other entity required to be aggregated with the Corporation pursuant to regulations under Code Section 414(o). Notwithstanding the foregoing, for purposes of Section 4.3(a), the definition of Affiliated Employer is modified as set forth in Section 415(h) of the Code.

**1.2** **"Beneficiary"** means a person or persons (natural or otherwise) designated by a Participant or former Participant in accordance with Section 5.2 hereof to receive benefits under the Plan upon the death of such Participant or former Participant.

**1.3** **"Board of Directors"** means the Board of Directors of the Corporation and shall also mean any committee of the Board of Directors which has been delegated authority to exercise the powers and authority of the Board of Directors with respect to the Plan, except that the latter meaning shall not apply to Section 11.3 hereof.

**1.4** **"Break in Service"** means a Period of Severance of at least twelve (12) consecutive months.

**1.5** **"Code"** means the Internal Revenue Code of 1986 and amendments thereto.

**1.6** **"Company"** means the Corporation and any domestic corporation that is or becomes a Subsidiary of the Corporation and is authorized by the Board of Directors of such Subsidiary to participate in the Plan, in accordance with Section 13.1 of the Plan.

**1.7** **"Company Contribution"** means the contribution of the Company to the Trust Fund in accordance with the provisions of Section 3.2 of the Plan. The Company Contribution consists of Matching Contribution and Profit Sharing Contribution.

**1.8** **"Company Contribution Account"** means the account maintained for a Participant to record his share of the Company Contribution and adjustments relating thereto.

MOT-ERISA 3942

**1.9** **"Company Securities"** means the common or preferred stock, bonds, notes, debentures, or other obligations or indebtedness issued by the Corporation or any of its Subsidiaries, or warrants or rights to subscribe to or purchase any of the foregoing.

**1.10** **"Compensation"** means direct compensation received from the Company during the Plan Year, including individual sales incentive payments, payments from the Field Sales and Engineering Incentive Plan, commissions, shift differentials, overtime and salary deferrals under Sections 125, 129 and 401(k) of the Code; but excluding the amount of any benefits paid under the Plan, any benefits paid under the Motorola, Inc. Pension Plan, all moving allowances, all educational allowances, non-cash payments, all overseas allowances, awards, bonuses, cost-of-living or geographical adjustments, severance and other termination payments, and, for Plan Years prior to January 1, 2000, Motorola Executive Incentive Plan payments, RONA Incentive Plan payments, Stakeholders Plan payments and other incentive payments. Effective for Plan Years commencing on or after January 1, 2000, Motorola Executive Incentive Plan payments, similar incentive plan pay (but not awards or individual bonuses) and lump sum merit pay shall be included in Compensation. The annual compensation of each Participant taken into account under the Plan for any purpose shall not exceed $160,000, as such amount may be adjusted for cost-of-living adjustments under Section 401(a)(17)(B) of the Code. Notwithstanding the foregoing, Sections 1.18, 3.3 and 4.3 provide alternate definitions of compensation for purposes of such respective provisions.

**1.11** **"Corporation"** means Motorola, Inc., a Delaware corporation.

**1.12** **"Early Retirement Date"** means the later to occur of (a) the date a Participant attains age fifty-five (55), or (b) the date a Participant completes five (5) Years of Service.

**1.13** **"Elective Deferrals"** or **"Elective Contributions"** means contributions made to the Plan during the Plan Year by the Company at the election of the Participant in lieu of Compensation, but shall not include the one percent (1%) mandatory Participant Contribution required of each Participant prior to July 1, 2000, under Section 3.1 hereof.

**1.14** **"Employee"** means any individual in an employee-employer relationship with the Company, but excluding (a) any independent contractor; (b) any consultant; (c) any individual performing services for the Company who has entered into an independent contractor or consultant agreement with the Company; (d) any individual performing services for the

4

Company under an independent contractor or consultant agreement, a purchase order, a supplier or staffing agreement or any other agreement that the Company enters into for services; (e) any "leased employee" as defined in Section 414(n) of the Code; and (f) any individual whose terms and conditions of employment are governed by a collective bargaining agreement resulting from good faith collective bargaining where benefits of the type being offered under the Plan were the subject of such bargaining, unless such agreement specifies that such individuals are eligible for the Plan. In addition, a United States citizen employed by a Foreign Subsidiary, who immediately prior to entering the employment of the Foreign Subsidiary was employed by the Company, shall be deemed to be, for purposes of the Plan, an Employee of the Company, providing the following conditions are met:

(i)     The Company owns directly at least twenty percent (20%) of:

(1)     the voting stock of such Foreign Subsidiary employing such United States citizen; or

(2)     the voting stock of a Foreign Subsidiary which, in turn, owns directly at least 50% of the voting stock of the Foreign Subsidiary which employs such United States citizen;

(ii)    The Company has entered into an agreement with the United States Treasury Department to cover for Social Security purposes all United States citizens employed by such Foreign Subsidiary; and

(iii)   The United States citizen employed by such Foreign Subsidiary is not a participant in any other pension, profit sharing, stock bonus or other plan of deferred compensation (except the Motorola Pension Plan or Motorola Executive Incentive Plan), whether or not qualified for tax exemption under the Code, to which contributions are made on his behalf by any person other than the Company or the Employee with respect to the compensation he receives from such Foreign Subsidiary.

**1.15**   **"Foreign Subsidiary"** means a Subsidiary that is organized under the laws of a country other than the United States, or a Subsidiary more than fifty percent (50%) of the sales of which are derived from countries other than the United States or more than fifty percent (50%) of the fixed assets of which are located in a country or countries other than the United States.

MOT-ERISA 3944

**1.16** **"Forfeiture"** means the portion of the Company Contribution Account which is not payable to a Participant under the provisions of Section 5.4 of the Plan, because of the termination of employment of such Participant prior to July 1, 2000 by resignation or discharge prior to completing a Period of Service of five (5) years.

**1.17** **"Fund"** means the Trust Fund.

**1.18** **"Highly Compensated Employee"** means an employee who performs service for an Affiliated Employer during the determination year and (a) was, at any time during the Plan Year for which the determination is being made or the preceding Plan Year (the "look-back year"), a five percent (5%) owner of an Affiliated Employer, determined as described in Section 416(i) of the Code, or (b) had compensation (as defined in Section 415(c)(3) of the Code and modified, for the Plan Year beginning January 1, 1997, as provided in Section 414(q)(4)(B) of the Code) from an Affiliated Employer in excess of $80,000, as adjusted pursuant to Section 415(d) of the Code. Notwithstanding the foregoing, the Corporation may elect to limit the application of clause (b) of the preceding sentence to employees in the top-paid group during the look-back year. For this purpose, the term "top-paid group" means the top twenty percent (20%) of active employees as ranked on the basis of compensation received from the Affiliated Employers during the year, determined as described in Section 414(q) of the Code. The term Highly Compensated Employee shall also include any former employee of an Affiliated Employer who was a Highly Compensated Employee at the time of his separation from service or at any time after attaining age fifty-five (55).

**1.19** **"Hour of Service"** for vesting purposes means each hour for which an Employee is directly or indirectly paid, or entitled to payment by the Company for the performance of duties for the Company, each hour for which an Employee is paid or is entitled to payment by the Company for vacation, holiday, illness, incapacity (including disability), layoff, jury duty or leave of absence, not including a Military Leave of Absence (as defined in Article 6 hereof), and each hour for which back pay, irrespective of mitigation of damages, is awarded or agreed to by the Company. The term "Hour of Service" for determining eligibility to participate in the Plan shall have the definition given to such term in Department of Labor Regulation Section 2530.200b-2. As used in this Section 1.19, the term "Company" includes all Affiliated Employers. Notwithstanding the foregoing, (a) a Participant who is on the weekly payroll shall be credited with forty-five (45) Hours of Service for each week in which he is required to be credited with at least one (1) Hour of Service, (b) a Participant who is on the biweekly payroll shall be credited with ninety (90) Hours of Service for each biweekly period in which he is

6

required to be credited with at least one (1) Hour of Service, and (c) a Participant who is on the semimonthly payroll shall be credited with ninety-five (95) Hours of Service for each semimonthly period in which he is required to be credited with at least one (1) Hour of Service.

1.20    "**Income**" means, as of any Valuation Date, the net gain or loss of the Trust Fund from investments as reflected by interest payments, dividends, realized and unrealized gains and losses on securities, other investments, transactions and expenses paid from the Trust Fund. In determining the Income of the Trust Fund for any period, assets shall be valued on the basis of their fair market value.

1.21    "**Investment Funds**" means the investment funds maintained by the Trustee for purposes of investing Trust Fund assets.

1.22    "**Matching Contribution**" means the contribution of the Company to the Trust Fund made in accordance with the provisions of Section 3.2(a) of the Plan.

1.23    "**Motorola Stock Fund**" means an Investment Fund the purpose of which is to invest in Motorola, Inc. common stock.

1.24    "**Non-Highly Compensated Employee**" means any employee of an Affiliated Employer who is not a Highly Compensated Employee.

1.25    "**Normal Retirement Date**" means the date a Participant attains age sixty-five (65) (**Normal Retirement Age**) regardless of his Years of Service.

1.26    "**One Year Break in Service**" means a Period of Severance of at least twelve (12) consecutive months. In the case of an Employee who is absent from work for maternity or paternity reasons, the twelve (12) consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a Break in Service. For purposes of this Section 1.26, an absence from work for maternity or paternity reasons means an absence (a) by reason of the pregnancy of the Employee, (b) by reason of a birth of a child of the Employee, (c) by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee, or (d) for purposes of caring for such child for a period beginning immediately following such birth or placement.

MOT-ERISA 3946

**1.27** **"Participant"** means an Employee who is participating in the Plan in accordance with Article 2 hereof. For purposes of determining the time of commencement or method of payment of a distribution under Section 5.3 or 5.4, respectively, the term "Participant" may include a former Participant who has a vested interest in a benefit under the Plan, unless the context requires otherwise.

**1.28** **"Participant Contribution"** means a contribution that is made on behalf of a Participant or Employee to the Fund pursuant to a Compensation reduction agreement in accordance with Section 3.1 of the Plan.

**1.29** **"Participant Contribution Account"** means the account maintained for a Participant to record his Participant Contributions and any adjustments relating thereto.

**1.30** **"Period of Service"** means a period of time that begins on the Employee's employment commencement date or reemployment commencement date, whichever is applicable, and ends on the Severance from Service Date. Employment commencement date means the date on which the Employee first performs an Hour of Service. Reemployment commencement date means the first date following a Period of Severance on which the Employee performs an Hour of Service. For purposes of vesting under the Plan, an Employee shall receive credit for the aggregate of all Periods of Service with an Affiliated Employer. In determining a Participant's Period of Service for vesting purposes, the Plan shall take into account the following Periods of Severance:

    (a)    If an Employee severs from service by reason of quitting, discharge or retirement and the Employee then performs an Hour of Service within twelve (12) months of the Severance from Service Date, the Plan shall take into account the Period of Severance; and

    (b)    If an Employee severs from service by reason of quitting, discharge or retirement during an absence from service of twelve (12) months or less for any reason other than quitting, discharge, retirement or death, and then performs an Hour of Service within twelve (12) months of the date on which the Employee was first absent from service, the Plan shall take into account the Period of Severance.

**1.31** **"Period of Severance"** means the period of time commencing on the Severance from Service Date and ending on the date on which the Employee is reemployed by the Company or an Affiliated Employer and again performs an Hour of Service.

MOT-ERISA 3947

**1.32** **"Plan"** means the profit sharing and investment plan as set forth in this document and known as the "Motorola Profit Sharing and Investment Plan" (or, on or after January 1, 2000, the "Motorola, Inc. 401(k) Profit Sharing Plan") as the same may, from time to time, be amended.

**1.33** **"Plan Year"** means the calendar year.

**1.34** **"Profit Sharing Committee"** means the persons appointed under the provisions of Article 7 hereof to administer the Plan.

**1.35** **"Profit Sharing Contribution"** means the contribution of the Company to the Trust Fund made in accordance with the provisions of Section 3.2(b) of the Plan.

**1.36** **"Qualified Annuity"** means a single premium, nontransferable annuity contract issued by an annuity company unrelated to the Company. The premium for such annuity contract shall equal the balance in the Participant's accounts at the time such contract is purchased. The normal form of distribution to a Participant who has elected to receive a Qualified Annuity under Section 5.4 and who is married on the Annuity Starting Date (as defined below) shall be a Qualified Joint and Survivor Annuity (as defined below). The normal form of distribution to such a Participant who is not married on the Annuity Starting Date shall be a single life annuity for the life of the Participant. If the Annuity Starting Date is after the Participant's death, the normal form of distribution shall be a single-life annuity for the life of the Beneficiary.

A "Qualified Joint and Survivor Annuity" means a reduced annuity for the life of the Participant with a survivor annuity for the life of the surviving spouse which is 50%, 75% or 100%, as selected by the Participant, of the amount of the annuity payable during the joint lives of the Participant and his spouse. If the Participant does not specify a larger percentage, the applicable percentage will be 50%. The Qualified Joint and Survivor Annuity shall be the actuarial equivalent of the single life annuity benefit provided under the annuity contract. The term "spouse" or "surviving spouse," as used herein, has the meaning set forth in Section 5.2. The term "Annuity Starting Date" means the first day of the first period for which an amount is paid as an annuity or any other form.

In lieu of the normal form of benefit described above, a Participant who has elected to receive a Qualified Annuity may elect within the time provided in the last paragraph of this Section 1.36 any of the following annuity forms in a writing acceptable to the Profit Sharing Committee (or,

9

after purchase of the Qualified Annuity, the annuity provider): (a) single life annuity for the life of the Participant, (b) Qualified Joint and Survivor Annuity, (c) joint and 50%, 75% or 100% survivor annuity, or (d) life-ten years certain annuity. Notwithstanding the foregoing, if a Participant is married on the Annuity Starting Date, an election of an annuity form other than a Qualified Joint and Survivor Annuity hereunder shall not be valid unless (i) it is in writing, (ii) the Participant's spouse consents in writing to such election, (iii) such election indicates that the Participant alone is to receive the benefit or designates a specific joint annuitant or Beneficiary or Beneficiaries and the form of benefit payment, and (iv) the spouse's consent acknowledges the effect of such election and is witnessed by a Plan representative or notary public. Consent, if given, shall be irrevocable. Spousal consent shall not be required if the Participant establishes to the satisfaction of the Profit Sharing Committee (or, after purchase of the Qualified Annuity, the annuity provider) that such written consent cannot be obtained because there is no spouse or the spouse cannot be located. Any consent necessary under this provision will be effective only with respect to the spouse who signs the consent.

The Participant's designation of a specific joint annuitant or Beneficiary or Beneficiaries under the preceding paragraph may not be changed without spousal consent, unless the change reinstates the Qualified Joint and Survivor Annuity or the consent of the spouse expressly permits designations by the Participant without any requirement of further consent by the spouse. Such consent must acknowledge that the spouse has the right to limit consent to a specific Beneficiary and a specific form of benefit, where applicable, and that the spouse voluntarily elects to relinquish either or both of such rights. The Participant may revoke a prior waiver of a Qualified Joint and Survivor Annuity without the consent of the spouse at any time before the Annuity Starting Date. The number of revocations shall not be limited.

The Profit Sharing Committee (or, after purchase of the Qualified Annuity, the annuity provider) shall provide each Participant who has elected to receive a Qualified Annuity no less than thirty (30) days and no more than ninety (90) days prior to the Annuity Starting Date a written explanation of: (1) the terms and conditions of a Qualified Joint and Survivor Annuity; (2) the Participant's right to make and the effect of an election to waive the Qualified Joint and Survivor Annuity form of benefit; (3) the rights of a Participant's spouse; and (4) the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor Annuity.

The Participant's waiver of the Qualified Joint and Survivor Annuity, with spousal consent, if applicable, must be submitted to the Profit Sharing Committee (or, after purchase of the

MOT-ERISA 3949

Qualified Annuity, the annuity provider) at least thirty (30) days after the above notice is provided pursuant to the Participant and within the ninety (90) day period ending on the Annuity Starting Date. The Participant may make such an election, with spousal consent, if applicable, less than thirty (30) days after receiving such written explanation, if (A) the explanation provided to the Participant makes it clear that the Participant has at least thirty (30) days to consider such election, (B) the Participant may revoke such election prior to the later of the Annuity Starting Date or the expiration of the seven day period beginning on the day after such written explanation is provided, (C) the Annuity Starting Date is after the date such written explanation is provided to the Participant (but may precede the date the election is made), except as otherwise provided above, and (D) distribution does not commence before the expiration of the seven day period beginning on the day after such written explanation is provided.

**1.37** **"Severance from Service Date"** means the earlier of (a) the date on which the Employee quits, retires, is discharged or dies or (b) the first anniversary of the first date of a period in which an Employee remains absent from service (with or without pay) for any reason other than quit, retirement, discharge or death, such as vacation, holiday, sickness, disability, leave of absence or layoff; provided, however, that "second anniversary" shall be substituted for "first anniversary" if the absence is due to maternity or paternity reasons as defined in Section 1.26 hereof, and in such case, the period between the first anniversary and the second anniversary shall not be a Period of Service or a Period of Severance.

**1.38** **"Subsidiary"** means any corporation in one or more chains of corporations at least eighty percent (80%) of the total outstanding voting stock of which (other than directors' qualifying shares) is at the time, directly or indirectly, owned by the Corporation or by one or more of the other corporations or by the Corporation and one or more of the other corporations.

**1.39** **"Total and Permanent Disability"** means entitlement to disability benefits under Title II of the Social Security Act or to long term disability benefits under the Motorola Disability Income Plan, as amended from time to time.

**1.40** **"Trust"** means the trust established for the receiving, holding, investing and disposing of the Trust Fund and for implementing and carrying out the provisions of the Plan, which Trust is known as the "Motorola Profit Sharing and Investment Trust." Effective January 1, 2000, the Trust shall be known as the Motorola, Inc. 401(k) Profit Sharing Trust.

MOT-ERISA 3950

**1.41** **"Trust Fund"** or **"Fund"** means the assets held by the trustee of the Trust pursuant to the terms of the trust agreement, as from time to time amended, which constitutes a part of the Plan.

**1.42** **"Valuation Date"** means the date or dates established by the Profit Sharing Committee for valuing the assets of the Trust Fund. Effective July 1, 2000, a Valuation Date shall mean each business day that the New York Stock Exchange is open, or such less frequent dates as the Profit Sharing Committee shall determine.

**1.43** **"Year of Service"** for vesting purposes means a Period of Service of twelve (12) months. The term "Year of Service" for the purpose of determining eligibility to participate in the Plan means a twelve (12) consecutive month period (computation period) during which period the Employee has completed at least one thousand (1,000) Hours of Service as defined in Department of Labor Regulation Section 2530.200b-2. The initial computation period of an Employee shall begin on the date he first performs an Hour of Service for the Company, and additional computation periods, if required for the Employee to become eligible to participate in the Plan, shall begin on each succeeding anniversary of the date the Employee first performs an Hour of Service. If an Employee incurs a One Year Break in Service and is later reemployed by the Company, the computation period shall begin with the date such Employee is reemployed by the Company and again performs an Hour of Service, and additional computation periods, if required for the Employee to become eligible to participate in the Plan, shall begin on each succeeding anniversary of the date the Employee was reemployed by the Company and performs an Hour of Service. As used in this Section 1.43, the term Company includes all Affiliated Employers.

MOT-ERISA 3951

## ARTICLE 2 - ELIGIBILITY AND PARTICIPATION

**2.1     Employees Covered by the Plan.** Subject to the terms and conditions of the Plan, each Employee of the Company shall be eligible to become a Participant in the Plan for all purposes as of the first day of the month coincident with or next following the date on which he has completed one (1) Year of Service if he meets both of the following requirements:

(a)     the Employee is not classified by the Company as contract labor (such as black badges, brown badges, contractors, contract employees, job shoppers) regardless of length of service; and

(b)     the Employee's base wage or base salary is processed for payment by the Payroll Department(s) of the Company or the Payroll Department(s) of any Subsidiary and not by any other department of the Company or any Subsidiary.

Further, each Employee of the Company who meets the requirements stated above in (a) and (b) shall be eligible to make Elective Deferrals; provided, however, that such Employee shall not share in the allocation of Company Contributions under Section 4.2(a) or (c) prior to the completion of one Year of Service as described above. The term "Participant" shall apply to an Employee with less than a Year of Service only to the extent of such participation. All Years of Service with the Company and Affiliated Employers shall be counted toward eligibility.

"Leased Employees," as defined in Section 414(n) of the Code, shall not be eligible to participate in the Plan, but they shall be taken into account for purposes of Code Section 414(n)(3) unless the safe harbor of Code Section 414(n)(5) is satisfied.

**2.2     Re-Employment.** A former Participant will become a Participant for all purposes immediately upon returning to the employ of the Company. An Employee who has not completed a Year of Service and whose employment terminates shall be deemed to be a new Employee as of the date of his re-employment if he has a One Year Break in Service prior to re-employment. Such Employee shall become a Participant as of the first day of the month coincident with or next following completion of a Year of Service.

**2.3     Years of Service of Employees of Foreign Subsidiaries.** In the case of an employee of a Foreign Subsidiary who is treated under the Plan as an Employee of the Company, employment

MOT-ERISA 3952

with such Foreign Subsidiary shall be deemed to be, for the purposes of the Plan, employment with the Company.

MOT-ERISA 3953

## ARTICLE 3 - CONTRIBUTIONS TO THE FUND

**3.1     Participant Contributions.**

(a)     Each Participant, so long as he is in the employ of the Company in a classification eligible for participation under Section 2.1, shall elect an amount to be contributed by the Company to the Fund on his behalf during each Plan Year, which amount (Participant Contribution) shall be a whole percentage of from one percent (1%) to and including seventeen percent (17%) of the Participant's Compensation during such Plan Year, subject to the dollar limitation in Section 3.1(f) hereof. Effective July 1, 2000, a Participant may elect to have contributed to the Plan as a Participant Contribution a whole percentage of Compensation of from zero (0) to and including twenty percent (20%), subject to the dollar limitation in Section 3.1(f) hereof.

(b)     Each Employee shall, upon becoming a Participant, enter into a Compensation reduction agreement with the Company in a form acceptable to the Profit Sharing Committee, which shall provide that the Participant agrees to accept a reduction in Compensation equal to the amount elected by the Participant as his Participant Contribution.  In consideration of such agreement, the Company will make contributions to the Fund on behalf of the Participant in an amount equal to the amount by which his Compensation is reduced with respect to each pay period during which such agreement is in effect.  Each Employee who first becomes a Participant prior to July 1, 2000, and who, upon becoming a Participant, fails to make an election as to the amount of his Participant Contribution as aforesaid, shall be deemed to have elected to make Participant Contributions to the Plan in the amount of three percent (3%) of Compensation, effective as of the first day of the first payroll period in which he becomes a Participant. Such deemed election shall be considered the Participant's Compensation reduction agreement for all purposes of the Plan until superseded by a subsequent salary reduction agreement or, after July 1, 2000, revoked in accordance with Section 3.1(d).

(c)     Each Employee in a classification eligible for participation under Section 2.1 who has not completed a Year of Service may enter into a Compensation reduction agreement with the Company in a form acceptable to the Profit Sharing Committee which shall provide that the Employee agrees to accept a reduction in Compensation equal to the amount elected by the Employee as his Elective

MOT-ERISA 3954

Deferral. Such Elective Deferrals shall not share in the allocation of Company Contributions but shall share in the allocation of the Income of the Fund. In consideration of such agreement, the Company will make contributions to the Fund on behalf of the Employee in an amount equal to the amount by which his Compensation is reduced with respect to each pay period during which such agreement is in effect. An Employee hired on or after July 1, 2000 who fails to make an election as to the amount of his Elective Deferrals as aforesaid shall be deemed to have elected to make Elective Deferrals to the Plan in the amount of three percent (3%) of Compensation, effective as of the first day of the first payroll period after completion of the enrollment confirmation process in which the Employee is employed in a classification eligible for participation in the Plan under Section 2.1. Such deemed election shall be considered the Employee's Compensation reduction agreement and shall be treated as such for all purposes of the Plan until superseded by a subsequent salary reduction agreement or revoked in accordance with Section 3.1(d).

(d)     Each Participant shall have the right to change the amount of his Participant Contribution, and each Employee shall have the right to change the amount of his Elective Deferrals, by filing with the Plan an election to that effect in such manner and in such form as the Profit Sharing Committee shall determine. Notwithstanding the foregoing, prior to July 1, 2000, a Participant shall not have the right to reduce his Participant Contribution below one percent (1%).

(e)     Compensation reduction agreements shall be governed by the following:

    (i)     A Compensation reduction agreement shall apply to each payroll period.

    (ii)    Prior to July 1, 2000, if a Participant has a financial emergency, as determined by the Profit Sharing Committee, such Participant's Compensation reduction agreement may be amended by the Participant to decrease (but not below one percent (1%)) Participant Contributions effective as of the beginning of the payroll period next following the date the determination of financial emergency is made by the Profit Sharing Committee.

MOT-ERISA 3955

(iii)  The Company shall have the right to amend its Compensation reduction agreement with any Participant at any time if the Company determines that such amendment is necessary to insure that a Participant's Elective Deferrals for any Plan Year will not exceed the limitations of Section 402(g) of the Code and Section 3.1(f) hereof, to insure that Annual Additions for any Plan Year will not exceed the limitations of Section 415 of the Code and Section 4.3(a) hereof, to insure that the discrimination tests of Sections 401(k) and 401(m) of the Code are met for any Plan Year as provided in Sections 3.4 and 3.5 hereof, and to insure that a Participant's Participant Contributions for any Plan Year will not exceed the limits which may be imposed by the Profit Sharing Committee from time to time in its sole and absolute discretion.

(iv)  Except as provided above, a Compensation reduction agreement may not be amended by a Participant or the Company.

(e)  All amounts credited to a Participant's Participant Contribution Account, and all Qualified Nonelective Contributions and Qualified Matching Contributions (both as defined in Section 3.3) which may be made by the Company shall be one hundred percent (100%) vested and nonforfeitable at all times.

(f)  No Participant may make Elective Deferrals under this Plan and all other plans, contracts or arrangements of any Affiliated Employers for any taxable year of the Participant which begins in the Plan Year exceeding the limitation imposed by Section 402(g) of the Code (as adjusted as provided in Sections 415(d) and 402(g)(5) of the Code). If a Participant's Elective Deferrals under this Plan and/or any other plan, contract or arrangement of any Affiliated Employers, or together with elective deferrals (as defined in Treasury Regulation Section 1.402(g)-1(b)) under another plan, exceed the limitation imposed by Section 402(g) of the Code for such Participant's taxable year, the Participant may, not later than March 1 following the close of his taxable year, notify the Profit Sharing Committee in writing of such excess and request that his Elective Deferrals under this Plan be reduced by an amount specified by the Participant. To the extent a Participant has excess deferrals for a taxable year under this Plan and/or any other plan, contract or arrangement of the Affiliated Employers, the Participant shall be deemed to have notified the Profit Sharing Committee of such excess deferrals and requested

17

a distribution thereof. In any such event, the Profit Sharing Committee may cause such excess amount, plus any income and minus any loss allocable thereto, to be distributed to the Participant not later than the first April 15 following the close of the Participant's taxable year.

(g)     Participant Contributions shall be paid to the Trust as soon as practicable after such amounts are withheld from Participant Compensation, but in no event later than the fifteenth (15th) business day of the month following the month in which such amounts would otherwise have been paid to the Participant in cash.

**3.2     Company Contributions.** The Company shall make Company Contributions to the Trust Fund as set forth below, subject to any condition precedent specified herein. The Company Contribution shall consist of two parts, a Matching Contribution and a Profit Sharing Contribution.

(a)     Matching Contribution.

(i)     For each Plan Year within the period beginning on January 1, 1996 and ending on or before December 31, 1999, the Matching Contribution shall be determined as follows: If the net earnings of the Corporation and its consolidated subsidiaries for the fiscal (calendar) year of the Corporation equal or exceed four percent (4%) of net sales of the Corporation and its consolidated subsidiaries for such fiscal year, all as determined for and included in the financial statements which have been certified by the Corporation's independent certified public accountants for release to the Corporation's stockholders, the Matching Contribution which shall be paid to the Trust Fund for each pay period of the Company during the Plan Year immediately following the fiscal year for which net earnings equaled or exceeded four percent (4%), for each Participant who has met the eligibility requirements to share in the allocation of Company Contributions under Section 2.1, shall be one dollar ($1.00) for each one dollar ($1.00) of such Participant's Participant Contribution for such Plan Year with respect to one percent (1%) of Compensation and fifty cents ($.50) for each one dollar ($1.00) of such Participant's Participant Contribution for such Plan Year exceeding one percent (1%) but not exceeding three percent (3%) of Compensation. If, during any Plan Year,

18

a Participant makes Participant Contributions to the Plan in an amount equal to or greater than three percent (3%) of such Participant's Compensation for such Plan Year, and if the total of the Matching Contributions made on behalf of such Participant during such Plan Year does not equal the maximum amount of Matching Contributions required by this Section 3.2(a)(i) to be made with respect to three percent (3%) of such Participant's Compensation, the Company shall, within thirty (30) days after the end of such Plan Year, make a lump sum contribution to the account of such Participant in an amount equal to the difference between the amount of the Matching Contributions that was required to be made and the amount actually made. To receive such a lump sum contribution, such Participant must be employed by the Company or an Affiliated Employer on December 31 of such Plan Year, except that a Participant who retired or who became a Transferred Participant, as defined in Section 10.4(a) hereof, during such Plan Year shall receive his lump sum contribution.

(ii)    For each Plan Year beginning on or after January 1, 2000, the Company shall make a Matching Contribution to the Trust Fund with respect to each Participant who has made a Participant Contribution for such Plan Year and, at the time of such Participant Contribution, has met the eligibility requirements to share in the allocation of Company Contributions under Section 2.1. The amount of Matching Contribution with respect to such Participant shall be one dollar ($1.00) for each one dollar ($1.00) of the Participant's Participant Contribution up to three percent (3%) of Compensation for the Plan Year, and fifty cents ($.50) for each one dollar ($1.00) of Participant Contributions exceeding three percent (3%) of Compensation but not exceeding six percent (6%) of Compensation for the Plan Year. If, during any Plan Year, a Participant makes Participant Contributions to the Plan in an amount equal to or greater than six percent (6%) of such Participant's Compensation for such Plan Year, and if the total of the Matching Contributions made on behalf of such Participant during such Plan Year does not equal the maximum amount of Matching Contributions required by this Section 3.2(a)(ii) to be made with respect to six percent (6%) of such Participant's Compensation, the Company shall, within thirty (30) days after the end of such Plan Year, make a lump sum

19

contribution to the account of such Participant in an amount equal to the difference between the amount of the Matching Contributions that was required to be made and the amount actually made. To receive such a lump sum contribution, such Participant must be employed by the Company or an Affiliated Employer on December 31 of such Plan Year, except that a Participant who retired or who became a Transferred Participant, as defined in Section 10.4(a) hereof, during such Plan Year shall receive his lump sum contribution. The largest Matching Contribution that may be made with respect to a Participant for any Plan Year beginning on or after January 1, 2000, shall be four and one-half percent (4.5%) of such Participant's Compensation while eligible for a Matching Contribution during the Plan Year.

(b)   **Profit Sharing Contribution.** The Company's Profit Sharing Contribution shall be determined as follows:

(i)     Seven and one-half percent (7-1/2%) of the worldwide earnings of the Corporation and its consolidated subsidiaries (including any equity in the earnings of unconsolidated subsidiaries) before income taxes, including, without limitation, non-United States income taxes and United States federal, state and local income taxes, as adjusted pursuant to Section 3.2(b)(ii) hereof, multiplied by a fraction, the numerator of which is the aggregate dollar amount of the Compensation paid by the Company for the Plan Year and the denominator of which is the aggregate dollar amount of the worldwide Compensation paid by the Corporation and its consolidated Subsidiaries for the Plan Year. From the result so obtained there shall be subtracted the total amount of the Matching Contribution, if any, paid or payable with respect to such Plan Year.

(ii)    The worldwide earnings described in Section 3.2(b)(i) hereof for any Plan Year shall be adjusted so that there shall be no deductions for (1) amounts paid or payable to the Fund as the Company Contribution under the Plan (other than Matching Contributions, as described above), (2) the Company's contribution to the Motorola Executive Incentive Plan and (3) any extraordinary charge against worldwide earnings, as determined by the Profit Sharing Committee or its designee. The Company, however, shall

20

MOT-ERISA 3959

deduct amounts paid by the Company under state and federal Social Security and other laws having purposes similar to the purpose of the Plan. The Company shall also make deductions of such amounts as are required under generally accepted accounting principles for the purpose of setting up reserves for losses on accounts and notes receivable, depreciation and maintenance or for any other purpose provided such reserves are included in the financial statements which have been certified by the Corporation's independent certified public accountants for release to the Corporation's stockholders.

(iii)   In computing the net sales, net earnings and worldwide earnings described above for any Plan Year, the Board of Directors of the Company, the officers of the Company, and the Profit Sharing Committee shall be entitled to rely conclusively upon the computation as prepared and certified by a firm of independent certified public accountants selected by the Board of Directors for that purpose, which accountants may be the firm of independent certified public accountants employed by the Corporation for any other purpose, and such determination when made by such independent certified public accountants shall be binding upon the Company, all Participants and the Profit Sharing Committee.

(iv)   Nothing in the Plan shall be construed to obligate the Company to make contributions described in Section 3.2(a)(i) or 3.2(b) to the Fund unless the net earnings and worldwide earnings described above shall suffice therefor. Nothing in the Plan shall be construed to obligate the Company to contribute to the Trust Fund any sum in excess of the amount allowable as a deduction for income tax purposes under the applicable provisions of the Code.

(v)   If the net earnings or worldwide earnings, or both, described in Section 3.2(a)(i) or Section 3.2(b) hereof with respect to a Plan Year shall not be sufficient to permit any Company Contribution under the terms of the Plan, the failure of the Company to make a Company Contribution for such Plan Year shall not be deemed to effect the termination of the Plan or the Trust.

MOT-ERISA 3960

(c)     Forfeitures. As of the last day of the month in which a Forfeiture occurs, the Forfeiture shall be used to reduce the amount of the Company Contribution otherwise payable for the Plan Year, or, if there is no Company Contribution for such Plan Year, for the next Plan Year in which there is a Company Contribution.

(d)     Time of Payment. Company Contributions for any Plan Year shall be paid to the Trust no later than the date prescribed by law for filing the Company's Federal income tax returns, including extensions, for such Plan Year.

(e)     Return of Contributions. If contributions or payments made by the Company to the Plan shall result in funds or payments in excess of the amounts required by the Plan to be paid by the Company by reason of mistake of fact, the Company shall be entitled to the return of such excess funds or payments within one (1) year after the payment of the excess amount. Each contribution to the Plan is conditioned upon its deductibility under Section 404 of the Code. To the extent that all or any portion of a contribution is determined not to be deductible under Section 404 of the Code, such contribution or portion thereof shall be returned to the Company within one year after disallowance of the deduction.

**3.3**     **Special Rules Applicable to Sections 3.1 and 3.2.** Effective January 1, 2001, Participant Contributions under Section 3.1 are intended to comply with the alternative method of meeting nondiscrimination rules set forth in Section 401(k)(12) of the Code, and Company Contributions under Section 3.2(a) are intended to comply with the alternative method of meeting nondiscrimination rules set forth in Section 401(m)(11) of the Code, as described in Internal Revenue Service Notice 98-52. Prior to January 1, 2001, Participant Contributions and Company Contributions shall be subject to the limitations in Section 3.4 and 3.5, respectively, and the following definitions shall apply:

(a)     **"Average Contribution Percentage"** means the average (expressed as a percentage to the nearest one-hundredth of one percent) of the Contribution Percentages of the Eligible Participants in a group.

(b)     **"Actual Deferral Percentage"** means the ratio (expressed as a percentage to the nearest one-hundredth of one percent) of the sum of Elective Deferrals and Qualified Employer Deferral Contributions made on behalf of an Eligible Participant for the Plan Year to the Eligible Participant's Compensation for the

22

MOT-ERISA 3961

Plan Year. The Actual Deferral Percentage of an Eligible Participant who makes no Elective Deferrals and is allocated no Qualified Employer Deferral Contributions shall be zero (0).

(c)     **"Average Actual Deferral Percentage"** means the average (expressed as a percentage to the nearest one-hundredth of one percent) of the Actual Deferral Percentages of the Eligible Participants in a group.

(d)     **"Compensation"** means any definition of compensation that satisfies Section 414(s) of the Code and the regulations thereunder which is used by the Company from time to time.

(e)     **"Contribution Percentage"** means the ratio (expressed as a percentage to the nearest one-hundredth of one percent) of the sum of the Statutory Matching Contributions (other than Qualified Matching Contributions) and Qualified Employer Contributions made on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's Compensation for the Plan Year. The Contribution Percentage of an Eligible Participant who neither makes nor receives such contributions shall be zero (0).

(f)     **"Elective Deferrals"** means contributions made by the Company to this Plan and any other qualified plans that are maintained by the Company which are aggregated with this Plan for the Plan Year at the election of the Eligible Participant, in lieu of cash compensation (that either would have been received by the Eligible Participant in the Plan Year or is attributable to services performed in the Plan Year and would have been received by the Eligible Participant within two and one half (2-1/2) months after the close of the Plan Year, but for a deferral election), and shall include contributions made pursuant to a Compensation reduction agreement. Such "Elective Deferrals" shall be taken into account for a Plan Year only if they are allocated to the Eligible Participant's account as of a date within the Plan Year, the allocation is not contingent on the Eligible Participant's participation in the Plan or performance of services for the Company after such date, and the Elective Deferrals are paid to the Trust no later than twelve (12) months after the close of the Plan Year to which they relate.

MOT-ERISA 3962

(g)   **"Eligible Participant"** for purposes of Section 3.4 hereof means any Employee who is eligible under this Plan to have Elective Deferrals or Qualified Employer Deferral Contributions allocated to his account for the Plan Year. "Eligible Participant" for purposes of Section 3.5 hereof means any Employee who is eligible under this Plan to have Statutory Matching Contributions or Qualified Employer Contributions allocated to his account for the Plan year.

(h)   **"Qualified Employer Contributions"** means Qualified Nonelective Contributions and Elective Deferrals which are taken into account under the Plan in determining an Eligible Participant's Contribution Percentage; provided, however, that in order for Elective Deferrals to be taken into account, all Elective Deferrals must satisfy the limitations of the Actual Deferral Percentage test by including and excluding such Elective Deferrals, and the Qualified Nonelective Contributions and Elective Deferrals taken into account must satisfy the other requirements of Treasury Regulation Section 1.401(m)-1(b)(5). Qualified Nonelective Contributions taken into account to determine the Participant's Contribution Percentage cannot be used in determining an Eligible Participant's Actual Deferral Percentage.

(i)   **"Qualified Employer Deferral Contributions"** means Qualified Nonelective Contributions and Qualified Matching Contributions taken into account under this Plan and any other qualified plans that are maintained by the Company or an Affiliated Employer which are aggregated with this Plan in determining an Eligible Participant's Actual Deferral Percentage which satisfy the requirements of Treasury Regulation Section 1.401(k)-1(b)(5). Qualified Nonelective Contributions taken into account to determine the Participant's Actual Deferral Percentage cannot be used in determining an Eligible Participant's Contribution Percentage.

(j)   **"Qualified Matching Contributions"** means Statutory Matching Contributions taken into account under the Plan in determining an Eligible Participant's Actual Deferral Percentage. In order for Statutory Matching Contributions to be considered as Qualified Matching Contributions, the Statutory Matching Contributions must be one hundred percent (100%) vested and nonforfeitable when made and must be distributable under the Plan only in accordance with the distribution provisions applicable to Elective Deferrals.

24

MOT-ERISA 3963

(k) **"Qualified Nonelective Contributions"** means contributions made by the Company to this Plan and to any other qualified plans maintained by the Company or an Affiliated Employer which are aggregated with this Plan (other than Elective Deferrals and Statutory Matching Contributions) which are allocated to the Eligible Participant's account and which the Eligible Participant may not elect to receive in cash until distributed from the plan. In order for such contributions to be considered as Qualified Nonelective Contributions, they must be one hundred percent (100%) vested and nonforfeitable when made and must be distributable under the terms of the Plan only in accordance with the distribution provisions applicable to Elective Deferrals.

(l) **"Statutory Matching Contributions"** means contributions made by the Company to the Plan for the Plan Year and allocated to an Eligible Participant's account by reason of his Elective Deferrals; provided, however, that such Statutory Matching Contributions must be allocated to the Eligible Participant's account as of a date within that Plan year and actually be paid to the Trust no later than twelve (12) months after the close of the Plan Year to which they relate.

**3.4    Actual Deferral Percentage Tests.**

(a)    <u>Tests</u>.  For each Plan Year prior to January 1, 2001, one of the following tests must be satisfied.

(i)    The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for such Plan Year multiplied by one and one-fourth (1.25); or

(ii)    The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by two (2), provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the

25

MOT-ERISA 3964

Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than two (2) percentage points.

(b)     Correcting Excess Contributions

    (i)     If the limitation imposed by Section 3.4(a) is not satisfied for any Plan Year, the Plan shall take such remedial measures as are required under this subparagraph (b)(i) no later than the last day of the Plan Year following the Plan Year for which Excess Contributions were allocated.    The Company, in its sole discretion, may satisfy the limitations set forth above through any of the following ways, or through a combination thereof:

        (A)     The Company may, in its sole discretion, make a Qualified Nonelective Contribution or Qualified Matching Contribution, or both, on behalf of each Eligible Participant who is a Non-Highly Compensated Employee.  Such additional contribution shall be allocated to the accounts of such Eligible Participants in the proportion that each Eligible Participant's Compensation bears to the Compensation of all such Non-Highly Compensated Employee Eligible Participants.

        (B)     The Company may determine the Excess Contributions under subparagraph (b)(ii) below and distribute such Excess Contributions, with income or loss attributable thereto under subparagraph (b)(iii) below.

    (ii)     Excess Contributions shall be determined as follows:

        (A)     The Company shall rank its Eligible Participants who are Highly Compensated Employees by the dollar amount of Elective Deferrals and Qualified Employer Deferral Contributions in descending order.  The Company shall then reduce the amount of Elective Deferrals and Qualified Employer Deferral Contributions made on behalf of the Highly Compensated Employee with the highest amount of such contributions until the first of the following occurs:

26

MOT-ERISA 3965

(1)     The Plan satisfies the limitations set forth in Section 3.4(a);

(2)     The dollar amount of Elective Deferrals and Qualified Employer Deferral Contributions for such Highly Compensated Employee is reduced to equal the amount of such contributions on behalf of the Highly Compensated Employee with the next highest amount of Elective Deferrals and Qualified Employer Deferral Contributions.

The Company shall then repeat the application of this subparagraph (b)(ii)(A) until the Plan satisfies the limitations in Section 3.4(a).

(B)     For each Eligible Participant who is a Highly Compensated Employee, "Excess Contributions" means, with respect to a Plan Year, the excess of:

(1)     The sum of the Elective Deferrals and Qualified Employer Deferral Contributions allocated to the Highly Compensated Employee for such Plan Year; over

(2)     The maximum amount of the contribution permitted under Section 401(k)(3)(A)(ii).

Notwithstanding the foregoing, in no event shall Excess Contributions exceed the amount of Elective Deferrals and Qualified Employer Deferral Contributions made on behalf of such Highly Compensated Employee for such Plan Year.

(iii)     The income or loss attributable to Excess Contributions shall include a pro rata share of income or loss in the Plan Year in which the Excess Contributions were made (the "Contribution Year Income"). Contribution Year Income may be determined by the method used for allocating Income to Participants' accounts provided it is reasonable, it does not violate Section 401(a)(4) of the Code, and it is used consistently for all Participants and for all corrective distributions under the Plan for a Plan

27

MOT-ERISA 3966

Year. Alternatively, Contribution Year Income may be determined by multiplying the income or loss for the Plan Year allocable to Elective Deferrals and Qualified Employer Deferral Contributions by a fraction the numerator of which is the Excess Contributions of the Eligible Participant for the Plan Year and the denominator of which is the total balance of the Eligible Participant's account attributable to Elective Deferrals and Qualified Employer Deferral Contributions, reduced by the income and increased by the loss allocable to such amount for the Plan Year.

    (iv)    Excess Contributions shall be reduced, in accordance with regulations prescribed by the Secretary of the Treasury, by the amount of excess Elective Deferrals distributed to the Eligible Participant under Section 3.1(f) for his taxable year ending with or within such Plan Year.

**3.5    Average Contribution Percentage Tests.**

    (a)    <u>Tests</u>. For each Plan Year prior to January 1, 2001, one of the following tests must be satisfied:

        (i)    The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by one and one-fourth (1.25); or

        (ii)    The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by two (2), provided that the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than two (2) percentage points.

    (b)    Correcting Excess Aggregate Contributions

MOT-ERISA 3967

(i)     If the limitation imposed by Section 3.5(a) is not satisfied for any Plan Year, the Plan shall take such remedial measures as are required under this subparagraph (b)(i) no later than the last day of the Plan Year following the Plan Year for which Excess Aggregate Contributions were allocated. The Company, in its sole discretion, may satisfy the limitations set forth above through any of the following ways, or through a combination thereof:

(A)     The Company may, in its sole discretion, make a Qualified Nonelective Contribution on behalf of each Eligible Participant who is a Non-Highly Compensated Employee. Such additional contribution shall be allocated among the accounts of such Eligible Participants in the proportion that each Eligible Participant's Compensation bears to the Compensation of all such Non-Highly Compensated Employees.

(B)     The Company may determine Excess Aggregate Contributions under subparagraph (b)(ii) below and may forfeit Statutory Matching Contributions, with income or loss attributable thereto, if forfeitable under the terms of the Plan. Such forfeitures shall be allocated to the accounts of Non-Highly Compensated Employees in the proportion that each such Eligible Participant's Compensation bears to the Compensation of all such Eligible Participants, in the year in which such forfeiture occurs.

(C)     The Company may determine Excess Aggregate Contributions under subparagraph (b)(ii) below and distribute such Excess Aggregate Contributions with income or loss attributable thereto under subparagraph (b)(iii) below.

(ii)    Excess Aggregate Contributions shall be determined as follows:

(A)     The Company shall rank its Eligible Participants who are Highly Compensated Employees by dollar amount of the aggregate of Statutory Matching Contributions, employee contributions and Qualified Employer Contributions, in descending order. The

29

Company shall then reduce the amount of Statutory Matching Contributions, employee contributions, if any, and Qualified Employer Contributions made on behalf of the Highly Compensated Employees with the highest amount of such contributions until the first of the following occurs:

(1)     The Plan satisfies the limitations set forth in Section 3.5(a); or

(2)     The dollar amount of Statutory Matching Contributions, employee contributions, and Qualified Employer Contributions for such Highly Compensated Employee is reduced to equal the amount of such contributions on behalf of the Highly Compensated Employee with the next highest amount of Statutory Matching Contributions, employee contributions and Qualified Employer Contributions.

The Company shall then repeat the application of this subparagraph (b)(ii)(A) until the Plan satisfies the limitations in Section 3.5(a).

(B)     For each Eligible Participant who is a Highly Compensated Employee, "Excess Aggregate Contributions" means, with respect to any Plan Year, the excess of:

(1)     The sum of the Statutory Matching Contributions, employee contributions and Qualified Employer Contributions allocated to the Highly Compensated Employee for such Plan Year; over

(2)     The maximum amount of contributions permitted under Section 401(m)(2)(A) of the Code.

Notwithstanding the foregoing, in no event shall Excess Aggregate Contributions exceed the amount of Statutory Matching Contributions, employee contributions, and Qualified Employer

MOT-ERISA 3969

Contributions made on behalf of such Highly Compensated
Employee for such Plan Year.

(iii)     The income or loss attributable to Excess Aggregate Contributions shall
include a pro rata share of income or loss in the Plan Year in which the
Excess Aggregate Contributions were made (the "Contribution Year
Income"). Contribution Year Income may be determined by the method
used for allocating Income to Participants' accounts provided it is
reasonable, it does not violate Section 401(a)(4) of the Code, and it is used
consistently for all Participants and for all corrective distributions under
the Plan for a Plan Year. Alternatively, Contribution Year Income may be
determined by multiplying the income or loss for the Plan Year allocable
to employee contributions, Statutory Matching Contributions, and
Qualified Employer Contributions by a fraction the numerator of which is
the Excess Aggregate Contributions of the Eligible Participant for the Plan
Year and the denominator of which is the total balance of the Eligible
Participant's account attributable to employee contributions, Statutory
Matching Contributions, and Qualified Employer Contributions, reduced
by the income and increased by the loss allocable to such amount for the
Plan Year.

**3.6     Additional Testing Rules.** For Plan Years prior to January 1, 2001, the following rules
shall apply to the nondiscrimination tests set forth in Sections 3.4 and 3.5 of the Plan.

(a)     The Actual Deferral Percentage or Contribution Percentage of any Eligible
Participant who is a Highly Compensated Employee for the Plan Year and who is
eligible to have Elective Deferrals, Qualified Deferral Contributions, employee
contributions, Statutory Matching Contributions or Qualified Employer
Contributions allocated to his account under two or more plans described in
Section 401(a) of the Code that are maintained by Affiliated Employers shall be
determined as if all such contributions were made under a single plan, provided
that no such plan is an employee stock ownership plan as defined in Sections
4975(e) and 409 of the Code ("ESOP"). If any such plan is an employee stock
ownership plan, the Actual Deferral Percentage or Contribution Percentage shall
be determined separately for all ESOPs and all non-ESOPs. If such an Eligible
Participant participates in two or more plans that have different plan years, all

31

MOT-ERISA 3970

such plans ending with or within the same calendar year shall be treated as a single plan.

(b)   This Plan and any other qualified plans which any Affiliated Employer maintains providing for a cash or deferred arrangement, employee contributions or Statutory Matching Contributions shall be treated as follows: If this Plan satisfies the requirements of Section 401(a)(4) or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of Section 401(a)(4) or 410(b) of the Code only if aggregated with this Plan, then Sections 3.4 and 3.5 shall be applied by determining the Actual Deferral Percentage or Contribution Percentage of Eligible Participants as if all such plans were a single plan. This Plan may be aggregated with any other qualified plan maintained by the Company or an Affiliated Employer to determine whether the Actual Deferral Percentage or Contribution Percentage of Participants satisfies the requirements of Sections 3.4 and 3.5, provided that (i) the aggregated plans are treated as one plan for purposes of Sections 401(a)(4), 401(k), 401(m) and 410(b) of the Code, (ii) the plans so aggregated have the same plan year, and (iii) no plan so aggregated is an ESOP.

(c)   If the requirements of Sections 3.4 and 3.5 above are both satisfied by use of the limitations established in Section 3.4(a)(ii) and 3.5(a)(ii), respectively, the Average Deferral Percentages and Average Contribution Percentages for Eligible Participants who are Highly Compensated Employees must also satisfy the aggregate use limitation set forth in Treasury Regulation Section 1.401(m)-2.

(d)   For purposes of Section 4.3(a), Excess Aggregate Contributions, including amounts forfeited by Highly Compensated Employees under Section 3.5(b)(i)(B), shall be treated as Annual Additions. Forfeited Statutory Matching Contributions that are reallocated to the accounts of other Participants for the Plan Year in which the forfeiture occurs are treated under Section 415 as Annual Additions for the Participants to whose accounts they are reallocated and for the Participants from whose accounts they are forfeited. Any reduction of Statutory Matching Contributions required under Section 3.5 shall be applied first to Profit Sharing Contributions and then, to the extent necessary, to Matching Contributions.

MOT-ERISA 3971

For any Plan Year beginning on or after January 1, 1999, the Profit Sharing Committee may elect to apply Sections 3.4 and 3.5 without regard to eligible Employees (other than Highly Compensated Employees) who have not met the one Year of Service requirement of Section 2.1, to the extent permitted under Section 401(k)(3)(F) of the Code.

(c)    Any distribution under Section 3.4 or 3.5 may be made without any notice or consent otherwise required under the Plan or Sections 411(a)(11) and 417 of the Code. In addition, any such distribution will not be considered a distribution for purposes of determining whether the Plan satisfies the minimum distribution requirements of Section 5.3(d) hereof.

(d)    Sections 3.4 and 3.5 shall be applied so as to meet the requirements of Sections 401(k) and 401(m) of the Code, respectively, and the regulations promulgated thereunder.

MOT-ERISA 3972

## ARTICLE 4 - ALLOCATIONS TO PARTICIPANTS' ACCOUNTS

**4.1 Participant Accounts.** The assets of the Trust Fund shall be invested in such Investment Funds as may be selected by the Profit Sharing Committee from time to time. The Profit Sharing Committee shall maintain or cause to be maintained records of each such Investment Fund that shall accurately reflect from time to time the interest in the Trust Fund of each Participant. Such records shall be in the form of individual accounts, and credits and charges shall be made to such accounts in the manner described in the Plan.

Each Participant shall have two accounts, a Company Contribution Account and a Participant Contribution Account, in each Investment Fund in which account balances, if any, are maintained for the Participant. The Profit Sharing Committee may establish such additional Participant accounts or sub-accounts as it deems appropriate from time to time to properly reflect Participants' benefits under the Plan. The maintenance of individual accounts for each Participant is for accounting purposes only, and a segregation of the assets of the Trust Fund to such accounts shall not be required.

Each Participant shall be entitled to direct the manner in which the shares (including fractional shares) of Motorola, Inc. common stock in his account in the Motorola Stock Fund are to be voted. The Trustee shall vote such shares in accordance with the directions of the Participants. This requirement will be met if the Trustee votes the combined fractional shares to the extent possible to reflect the direction of the voting Participants. All shares credited to Participants' accounts as to which the Trustee does not receive voting directions, and all unallocated shares held by the Trustee, shall be voted by the Trustee proportionately in the same manner as the Trustee votes shares as to which the Trustee has received voting instructions. The Corporation will distribute proxy materials to all Participants who have an account balance in the Motorola Stock Fund prior to each stockholders' meeting at the same time it distributes such materials to all other stockholders.

**4.2 Account Adjustments.** The accounts of the Participants shall be adjusted in accordance with the following:

(a) **Allocation of Profit Sharing Contributions.** As of the last day of the Plan Year, each Participant's share of the Profit Sharing Contribution as determined under this Section 4.2(a) shall be credited to such Participant's Company Contribution Accounts. Prior to January 1, 2000, a Participant's proportionate share of the

34

MOT-ERISA 3973

Profit Sharing Contribution for a Plan Year shall be a share equal to the ratio of his Participant Contribution for such Plan Year not exceeding three percent (3%) of his Compensation to the aggregate amount of all Participants' Contributions for such Plan Year not exceeding three percent (3%) of each Participant's Compensation. Effective January 1, 2000, a Participant's proportionate share of the Profit Sharing Contribution for a Plan Year shall be a share equal to the ratio of his Participant Contribution for such Plan Year not exceeding six percent (6%) of his Compensation to the aggregate amount of all Participants' Contributions for such Plan Year not exceeding six percent (6%) of each Participant's Compensation. To receive a share of the Profit Sharing Contribution for a Plan Year, the Participant must be employed by the Company or an Affiliated Employer on December 31 of such Plan Year, except that a Participant who retired during such Plan Year or who is an Eligible Transferred Participant, as defined in Section 10.4(e) hereof, shall receive his share.

(b)    **Allocation of Participant Contributions.**  Participant Contributions made on behalf of a Participant shall be allocated to his Participant Contribution Account as soon as practicable after such Participant Contributions are paid to the Trust Fund.

(c)    **Allocation of Matching Contributions.**  Matching Contributions made on behalf of a Participant shall be allocated to such Participant's Company Contribution Account as soon as practicable after such Matching Contribution is paid to the Trust Fund.

(d)    **Allocation of Qualified Nonelective Contributions and Qualified Matching Contributions.**  Qualified Nonelective Contributions and Qualified Matching Contributions for a Plan Year shall be allocated as of the last day of such Plan Year to the Participant Contribution Accounts and Company Contribution Accounts, respectively, of Eligible Participants who are Non-Highly Compensated Employees.

(e)    **Allocation of Income to Participants.**  Income shall be separately determined for each Investment Fund as of each Valuation Date and shall be allocated among the accounts within such Investment Fund as of each Valuation Date, in accordance with the rules and regulations governing such Investment Funds.    Amounts

35

MOT-ERISA 3974

deemed allocated to accounts as of the last day of the Plan Year hereunder shall not be taken into account under this Section 4.2(e) until such amounts are actually paid to the Trust Fund and the actual allocation of funds occurs.

**4.3    Maximum Allocations and Top Heavy Provisions**

(a)    **Limitation on Allocations to Participants.**  Notwithstanding any other provision of the Plan, Annual Additions (as defined below) which can be credited to the accounts of a Participant in any Plan Year (a "limitation year") under this Plan and any other defined contribution plan maintained by an Affiliated Employer shall not exceed the lesser of (i) $30,000, or, if greater, one-fourth of the defined benefit dollar limitation set forth in Section 415(b)(1) of the Code as in effect for the limitation year, or (ii) twenty-five percent (25%) of the Participant's compensation (as defined below) for such limitation year.  "Annual Additions" means the sum of (1) contributions of Affiliated Employers (2) Participant contributions and (3) forfeitures, allocated to the accounts of a Participant in this Plan and in any other tax-qualified defined contribution plan maintained by an Affiliated Employer with respect to a limitation year, as more fully described in Code Section 415(c)(2) and regulations thereunder.

If Annual Additions for any Participant exceed the limitation in the first sentence of this Section 4.3(a), the Elective Deferrals made by the Participant for the limitation year which cause the excess, plus any Income allocable thereto, shall be returned to the Participant.  If, after returning such Elective Deferrals and Income to the Participant an excess still exists, and the Participant is covered by the Plan at the end of the limitation year, the excess amount in the Participant's accounts will be used to reduce Company Contributions for such Participant in the next limitation year, and each succeeding limitation year if necessary.  However, if the Participant is not covered by the Plan at the end of a limitation year, such excess amount will be held unallocated in a suspense account.  The suspense account will be applied to reduce future Company Contributions for all remaining Participants in the next limitation year, and each succeeding limitation year if necessary.  A suspense account under this Section 4.3(a) will not participate in the allocation of Income.  If a suspense account is in existence at any time during a particular limitation year, all amounts in the suspense account must be allocated and reallocated to Participants' accounts before any Company or any Participant

36

MOT-ERISA 3975

Contributions may be made to the Plan for that limitation year. Excess amounts in a suspense account may not be distributed to Participants or former Participants.

As used in this Section 4.3(a), the term "compensation" shall have the meaning set forth in Treasury Regulation Section 1.415-2(d); provided, however, that the Company shall have the right to use such alternate definition of compensation as permitted under Section 415 of the Code and the regulations thereunder.

Notwithstanding any other provision of the Plan to the contrary, for limitation years beginning prior to January 1, 2000, the total Annual Additions on behalf of a Participant for any limitation year shall not cause the sum of that Participant's defined contribution plan fraction and defined benefit plan fraction (as those terms are defined in Section 415 of the Code and regulations thereunder, and as modified to the extent necessary to meet the requirements of Section 416(h) of the Code) to exceed 1.0. If the sum of such fractions would exceed 1.0 for any limitation year, the excess amount will be eliminated first by making appropriate adjustments under any defined benefit plan maintained by the Affiliated Employer and then under this Plan. The limitations in this Section 4.3(a) are intended to comply with the provisions of Section 415 of the Code so that the maximum benefits provided by plans of the Affiliated Employers shall be equal to the maximum amounts allowed under Section 415 of the Code and regulations thereunder.

MOT-ERISA 3976

**(b) Top Heavy Provisions.**

(i) **Determination of Top Heavy.** The Plan will be considered to be "Top Heavy" for a Plan Year if, as of the last day of the preceding Plan Year (the "Determination Date"), the aggregate value (determined as of the most recent Valuation Date that falls within or ends with the Plan Year ending on the Determination Date) of the accounts of Participants who are Key Employees, as defined in Section 416 (i) of the Code, exceeds sixty percent (60%) of the aggregate value of the accounts of all Participants, excluding former Key Employees and individuals who have not performed services for the Company at any time during the five year period ending on the Determination Date. If the Plan is part of a Required Aggregation Group, as defined in Section 416(g) of the Code, the Plan will be considered to be Top Heavy for a Plan Year if, as of the Determination Date, the sum of (1) the aggregate value (determined as of the most recent valuation within the preceding Plan Year) of the accounts of Key Employees under all defined contribution plans included in the Required Aggregation Group and (2) the present value (determined as of the most recent Valuation Date within the preceding Plan Year) of the cumulative accrued benefits for Key Employees under all defined benefit plans included in the Required Aggregation Group exceeds sixty percent (60%) of a similar sum for all participants in all such plans, excluding former Key Employees and individuals who have not performed services for the Company at any time during the five year period ending on the Determination Date. For purposes of determining the value of the account or present value of the cumulative accrued benefit for any Participant, such values shall be increased by the aggregate distributions made with respect to such Participant under a plan during the five (5) year period ending on the Determination Date, including any terminated plan maintained within the last five (5) years ending on the Determination Date which, if it had not been terminated, would have been included in the Required Aggregation Group. The Top Heavy ratio will be computed in accordance with the provisions of Section 416 of the Code. Notwithstanding the above, the Plan shall not be considered to be Top Heavy for any Plan Year in which the Plan is included in a Required Aggregation Group or Permissive Aggregation Group, within the meaning of Section 416(g) of

MOT-ERISA 3977

the Code, which is not Top Heavy. For purpose hereof, the Required Aggregation Group will include each defined contribution plan and each defined benefit plan intended to comply with Section 401(a) of the Code and maintained by an Affiliated Employer in which a Key Employee participates in the Plan Year containing the Determination Date or any of the four (4) preceding Plan Years, or any other such plan of an Affiliated Employer which enables any such plan in which a Key Employee participates to meet the requirements of Section 401(a)(4) or 410 of the Code. For purposes hereof, a Permissive Aggregation Group includes all plans required to be included in the Required Aggregation Group plus one or more other plans that are not part of the Required Aggregation Group but that satisfy the requirements of Sections 401(a)(4) and 410 of the Code when considered together with the plans contained in the Required Aggregation Group. For purposes of this Section 4.3(b) "compensation" shall have the meaning as set forth in Treasury Regulation Section 1.415-2(d); provided, however, that the Company shall have the right to use such alternate definition of compensation as may be permitted under Section 416 of the Code and the regulations thereunder.

(ii) **Minimum Contributions.** Notwithstanding the provisions of Sections 3.2 and 4.2 hereof, for each Plan Year in which the Plan is Top Heavy, the Company Contributions plus Forfeitures, if any, allocated to the account of each Participant (including Participants who fail to complete 1,000 Hours of Service during the Plan Year) who is not a Key Employee shall equal at least three percent (3%) of his compensation for such Plan Year, or, if less, the largest percentage of compensation provided on behalf of any Key Employee for that Plan Year. For purposes of the foregoing, (1) the percentage of compensation for each Key Employee shall be determined by dividing the sum of the share of the Company Contribution plus Forfeitures, if any, and Elective Deferrals allocated on behalf of such Key Employees by so much of compensation as does not exceed the limitation set forth in Section 1.10; (2) all defined contribution plans required to be included in the Required Aggregation Group shall be treated as one plan; and (3) the minimum contribution shall be three percent (3%) if the Plan enables a defined benefit plan included with it in a Required Aggregation Group to meet the requirements of Section 401(a)(4) or 410

39

of the Code. The minimum allocation will be determined without regard to any Social Security contribution. Notwithstanding the foregoing, Participants who also participate in the Motorola, Inc. Pension Plan shall not receive both the defined contribution and the defined benefit minimums provided for in Section 416(c) of the Code. In such case, the minimum contribution or benefit requirement for such other plan will be met by increasing the three percent (3%) requirement of this paragraph (ii) to five percent (5%).

**4.4    Valuation of Fund.** The Profit Sharing Committee shall, as of the last Valuation Date of the Plan Year and as of such other Valuation Dates as it shall determine, prepare a statement of the condition of the Trust Fund setting forth all contributions, investments, receipts, disbursements, income and other transactions effected with respect to the Trust Fund during the period for which the statement is being prepared, including a list of all cash, securities, and other property held on such Valuation Date at their cost and fair market values determined as of the Valuation Date for which the statement of condition is being prepared.

**4.5    Investment of Funds.** Each Participant, former Participant, alternate payee or Beneficiary who retains an account balance in the Plan ("Accountholder") shall be permitted to direct the investment of his accounts among Investment Funds that the Trustee shall from time to time cause to be made available at the direction of the Profit Sharing Committee, in accordance with Section 404(c) of ERISA and regulations thereunder. Each Accountholder shall bear the sole responsibility for the selection of the Investment Funds for his accounts, and neither the Trustee, the 404(c) Fiduciary nor the Profit Sharing Committee shall have any responsibility or liability for any losses that may occur in connection with such selection, as set forth in Section 404(c) of ERISA and regulations thereunder. Investment elections by an Accountholder shall be made in such manner, in such increments, and at such time or times, as authorized under the administrative rules and procedures established from time to time by the 404(c) Fiduciary consistent with such reasonable guidelines and limitations as the Profit Sharing Committee shall deem appropriate for the efficient administration of the Plan. All earnings and expenses, including commissions and transfer taxes, realized or incurred in connection with any investments pursuant to an Accountholder's directions shall be credited or charged to the account for which the investment is made, except to the extent paid by the Company in its sole discretion.

**4.6    Transferred Benefits.** With the consent of the Profit Sharing Committee or its designee, in its discretion, amounts may be transferred to this Plan by or on behalf of an

MOT-ERISA 3979

Employee from other pension, profit sharing, stock bonus or other retirement benefit plans qualified under Section 401(a) of the Code (a "qualified plan"). In addition, a former Participant who continues to have a vested account balance in the Plan may elect to transfer to this Plan any eligible benefit amount payable to or on behalf of the former Participant from the Motorola Pension Plan. Such transferred benefits shall become subject to the terms and conditions of this Plan. The transferred benefits shall be credited to the Employee's (or former Participant's) Participant Contribution Account as of the first day of the month following the date the transfer is made. The Employee (or former Participant) shall have the right to direct the investment of the transferred benefits in the various Investment Funds as provided in Section 4.5 hereof, and in the absence of such direction, the transferred benefits will be invested in the Balanced Fund I Investment Fund. The transferred benefits shall be fully vested at all times and shall not be subject to forfeiture. The amounts which may be transferred to this Plan include: (a) amounts transferred to this Plan directly from another qualified plan; (b) lump-sum distributions received by an Employee (or, in the case of the Motorola Pension Plan, by a former Participant) from another qualified plan which are eligible for tax free rollover to a qualified plan and which are transferred by the Employee (or former Participant) to this Plan within sixty (60) days following his receipt thereof; (c) amounts transferred to this Plan from a conduit individual retirement account provided that the conduit individual retirement account has no assets other than assets which (i) were previously distributed to the Employee by another qualified plan as a lump-sum distribution, (ii) were eligible for tax-free rollover to a qualified plan, and (iii) were deposited in such conduit individual retirement account within sixty (60) days after receipt thereof and other than earnings on said assets; and (d) amounts distributed to the Employee from a conduit individual retirement account meeting the requirements of clause (c) above and transferred by the Employee to this Plan within sixty (60) days of his receipt thereof from such conduit individual retirement account. Prior to accepting any transfers to which this Section 4.6 applies, the Profit Sharing Committee or its designee may require the Employee to establish that the amounts to be transferred to this Plan meet the requirements hereof.

MOT-ERISA 3980

## ARTICLE 5 – VESTING AND DISTRIBUTION OF BENEFITS

**5.1**      **Vesting of Benefits.**

(a)      A Participant's interest in his Participant Contribution Account shall be 100% vested and nonforfeitable at all times. A Participant's interest in any Qualified Employer Contributions, as defined in Section 3.3(h), shall be 100% vested and nonforfeitable at all times.

(b)      If a Participant's employment with the Company is terminated due to retirement on or after his Normal Retirement Date or Early Retirement Date, or due to his death or Total and Permanent Disability, such Participant (or, in the case of death, his Beneficiary) shall be entitled to receive the entire amount credited to his Company Contribution Account.

(c)      Effective for any Participant who earns an Hour of Service on or after July 1, 2000, such Participant's interest in his Company Contribution Account shall be 100% vested and nonforfeitable, without regard to the Participant's Years of Service. If a Participant's employment with the Affiliated Employers terminates prior to July 1, 2000, for a reason other than as described in Section 5.1(b) above, the vested percentage of the Company Contribution Account to which the Participant is entitled shall be determined in accordance with the following schedule, based on the number of the Participant's Years of Service:

| | |
|---|---|
| Before 3 Years of Service | 50% |
| After 3 Years of Service | 60% |
| After 4 Years of Service | 80% |
| After 5 Years of Service | 100% |

(d)      The portion of a Participant's Company Contribution Account which is not vested upon his termination of employment with the Affiliated Employers under Section 5.1(a), (b) or (c) will become a Forfeiture upon the earlier of the date the Participant (i) incurs five (5) consecutive One Year Breaks in Service, or (ii) receives a distribution of the entire amount of the then vested portion of his or her accounts. If a Participant who has incurred a Forfeiture is subsequently reemployed by an Affiliated Employer before he has five (5) consecutive One

42

Year Breaks in Service, such Participant may repay the amount of any distribution which he received from his Company Contribution Account within the five (5) year period following the date of his re-employment. Upon such repayment, (1) the repaid amount plus the amount of the prior Forfeiture (without Interest) shall be credited to the Participant's new Company Contribution Account, and (2) the Years of Service, if any, the Participant completes following reemployment shall be aggregated with any pre-Break in Service Years of Service for purposes of determining his vested interest in his restored Company Contribution Account. Such restoration of Forfeiture shall be made out of Forfeitures occurring in the Plan Year of such reemployment, or if such Forfeitures are not sufficient, the Company shall make a special contribution to the Participant's restored Company Contribution Account. Any amount so restored to a Participant shall not constitute an Annual Addition under Section 4.3(a). If a Participant or former Participant is reemployed after he has five (5) consecutive One Year Breaks in Service, or if he fails to repay the amount previously distributed to him within five (5) years following the date of his reemployment, his Years of Service subsequent to such Breaks in Service shall not be taken into account in determining the vested portion of his Company Contribution Account prior to such reemployment, and the portion of such account which was forfeited shall not be restored.

(e) The amounts available for distribution under this Article 5 shall be adjusted to reflect any outstanding loan obligation, as provided in Section 5.5 or in any loan note or procedure promulgated thereunder.

## 5.2 Designation of Beneficiaries.

(a) Each Participant (including, for purposes of this Section 5.2, any former Participant) may, from time to time, designate any person or persons (who may be designated contingently or successively and who may be an entity other than a natural person) as his Beneficiary or Beneficiaries to whom the Participant's vested account balances under the Plan are to be paid if he dies before receipt of all such benefits, in accordance with such rules as the Profit Sharing Committee shall determine. Each Beneficiary designation must be made in a form acceptable to the Profit Sharing Committee and will be effective only when filed with it during the Participant's lifetime, and only if, in the case of a married Participant, spousal consent is provided as described in Section 5.2(e) below. Each

43

MOT-ERISA 3982

Beneficiary designation filed with the Profit Sharing Committee will cancel all Beneficiary designations previously filed with it by that Participant. The revocation of a Beneficiary designation, no matter how effected, shall not require the consent of any designated Beneficiary.

(b)     The Profit Sharing Committee may require such proof of death and such evidence of the right of any person to receive payment under this Section 5.2 as the Profit Sharing Committee may deem advisable. The Profit Sharing Committee's determination of death and of the right of any person to receive payment under this Section 5.2 shall be conclusive.

(c)     If a Participant who has designated his spouse as Beneficiary subsequently is divorced from such spouse, unless such Participant designates a different Beneficiary(ies) or remarries, the Participant shall be conclusively determined to have re-designated the divorced spouse as Beneficiary, and the divorced spouse shall remain the Beneficiary notwithstanding that such divorced spouse may have signed a waiver or release of property rights with respect to the Participant in connection with the divorce proceedings. Any Beneficiary designation made by an unmarried Participant shall be automatically revoked upon such Participant's marriage. If a Participant has not designated a Beneficiary or Beneficiaries in the manner provided herein, or if none of the designated Beneficiaries survive the Participant, or if for any reason such designation shall be legally ineffective, then payment of any distribution under this Section 5.2 shall be made in the following priority:

(i)     to the Participant's surviving spouse; or if there be none surviving,

(ii)    to the Participant's surviving children, in equal shares, or if there be none surviving,

(iii)   to the Participant's father and mother, in equal shares if both are surviving, or if only one is surviving, to the one surviving; or if neither is surviving,

(iv)    to the Participant's estate.

(d)     The term spouse or surviving spouse means the spouse of the Participant; provided, however, that a former spouse will be treated as the spouse or surviving spouse to the extent provided under a qualified domestic relations order as described in Section 414(p) of the Code. The benefit payable to a spouse will be

MOT-ERISA 3983

reduced to the extent necessary to comply with any qualified domestic relations order.

(e)    The consent of a spouse to the designation of a Beneficiary(ies) other than the spouse by the Participant must (i) be in writing, (ii) acknowledge the effect of the designation of a Beneficiary(ies) other than the spouse, and (iii) be witnessed by a notary public or a Plan representative. Consent, if given, shall be irrevocable. The designation of a Beneficiary(ies) may not be changed without spousal consent, unless the consent of the spouse expressly permits designations by the Participant without any requirement of further consent by the spouse and acknowledges that the spouse had the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elected to relinquish such right.

## 5.3    Commencement of Distributions.

(a)    If a Participant's employment with the Company is terminated for any reason and the nonforfeitable amount credited to such Participant's accounts as of the Valuation Date coincident with or next following the date of such termination does not exceed Five Thousand Dollars ($5,000), the Profit Sharing Committee shall distribute to such Participant the nonforfeitable amount credited to such Participant's accounts in a single lump sum payment (adjusted as necessary to reflect the repayment of any outstanding loan balance(s)).

(b)    If a Participant's employment with the Company is terminated for any reason and the nonforfeitable amount credited to such Participant's accounts as of the Valuation Date coincident with or next following the date of such termination exceeds Five Thousand Dollars ($5,000), such nonforfeitable amounts (adjusted as necessary to reflect the repayment of any outstanding loan balance(s)) shall be immediately distributable to the Participant (or in the case of the Participant's death, to his Beneficiary); provided, however, that no distribution from the Participant's accounts may be made prior to the date the Participant attains age seventy (70) (other than as a result of death) without obtaining the Participant's consent to such distribution, at such time and in such manner as may be required by the Profit Sharing Committee in accordance with Section 411(a)(11) of the Code and applicable regulations thereunder. If the Participant does not consent to such distribution, benefits shall remain in the Trust Fund (subject to reduction due

MOT-ERISA 3984

to Forfeiture) and shall continue to be invested pursuant to Section 4.5 and to receive allocations of Income pursuant to Section 4.2(e). Subject to the following provisions of this Section 5.3, such Participant's benefits shall be distributed to the Participant (or in the case of the Participant's death, his Beneficiary) as soon as practicable following the Valuation Date coincident with or next following the earlier of (i) the Participant's (or Beneficiary's) request for such distribution, or (ii) the date the Participant attains age seventy (70) (or if the Participant dies and his surviving spouse is his Beneficiary, the date the Participant would have attained age seventy (70)).

(c)     Unless the Participant elects otherwise, distribution of benefits will begin no later than the 60th day after the latest of the close of the Plan Year in which:

      (i)     the Participant attains age 65,

      (ii)    occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or

      (iii)   the Participant terminates service with the Company.

Failure of the Participant to submit a request for a distribution as described in paragraph (b) above shall be deemed to be an election by the Participant to defer distribution under this paragraph (c).

(d)     Distributions shall be determined and paid in accordance with Section 401(a)(9) of the Code and regulations thereunder, including Treasury Regulation Section 1.401(a)(9)-2 relating to minimum distribution incidental benefit requirements. The entire interest of a Participant shall be distributed or begin to be distributed no later than the first day of April of the Plan Year following the Plan Year in which the Participant attains age 70 ½ (the "Required Beginning Date.") If a Participant's interest is to be distributed in other than a lump sum, the following rules shall apply on or after the Required Beginning Date:

      (i)     If the Participant continues in service with the Company on or after the Required Beginning Date, the Participant's benefit shall be distributed over a period not exceeding the life expectancy of the Participant or the joint and last survivor life expectancy of the Participant and the Participant's designated Beneficiary. The life expectancies of the

46

MOT-ERISA 3985

Participant and his spouse may be recalculated annually. Life expectancy of a non-spouse Beneficiary may not be recalculated. The Profit Sharing Committee may establish uniform and nondiscriminatory rules governing the calculation of installment distributions.

(ii) If the Participant dies after distribution of his interest has begun, the remaining portion of such interest will continue to be distributed at least as rapidly as under the method of distribution being used prior to the Participant's death.

(iii) If the Participant dies before distribution of his or her interest begins, distribution of the Participant's entire interest shall be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death; provided, however, that if any portion of the Participant's interest is payable to or for the benefit of a designated Beneficiary, then distribution may be made over a period certain not exceeding the life expectancy of the designated Beneficiary, commencing, in the case of a non-spouse Beneficiary, not later than December 31 of the calendar year immediately following the calendar year in which the Participant died, or, if such designated Beneficiary is the Participant's surviving spouse, commencing not later than the later of December 31 of the calendar year immediately following the calendar year in which the Participant died or December 31 of the calendar year in which the Participant would have attained age 70.

(iv) If the Participant's or Beneficiary's benefit is distributed in the form of a Qualified Annuity, distributions thereunder shall be made in accordance with the requirements of Section 401(a)(9) of the Code and the regulations thereunder

**5.4    Method of Payment of Distribution.**

(a) A Participant, former Participant, his spouse or his Beneficiary(ies), as the case may be, entitled to receive a distribution under this Article 5 may elect that such distribution be made by one or more of the following methods, in such form and at such times as the Profit Sharing Committee shall determine; provided, however,

47