# EXHIBIT 1
# (Part 3 of 4)

that the methods specified in (ii) and (iii) below may not be elected by a Participant who becomes an Employee on or after January 1, 1996:

(i)     By payment of a lump sum;

(ii)    By payment in substantially equal annual installments over a period certain not exceeding the life expectancy of the Participant. The accounts of a Participant or former Participant who elects to receive installment payments shall continue to share in the Income of the Investment Funds in which he has investments until all amounts in the accounts are paid out. Upon the death of a Participant or former Participant who is receiving installment distributions, the remaining balance in his accounts shall be paid to his Beneficiary or Beneficiaries in a lump sum. A Beneficiary may not elect to be paid in installments. If a Participant resigns or is discharged prior to his Early Retirement Date, such Participant may not elect to be paid in annual installments.

(iii)   By the purchase of a Qualified Annuity for such Participant with part or all of the amounts credited to the accounts of such Participant. Upon payment of a premium for a Qualified Annuity on behalf of a Participant, the Participant's share of the Fund applied to such premium shall cease to be an asset of the Trust Fund and he shall cease to be a Participant with respect to such amount or with respect to the Qualified Annuity.

(iv)    By direct transfer of an Eligible Rollover Distribution to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover. The following definitions apply to this Section 5.6(a)(iv):

(1)     An "Eligible Rollover Distribution" is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years or more; any distribution to the

MOT-ERISA 3987

extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(2)     An "Eligible Retirement Plan" is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution. However, in the case of an Eligible Rollover Distribution to the surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.

(3)     A "Distributee" includes a Participant or former Participant. In addition, the Participant's or former Participant's surviving spouse and the Participant's or former Participant's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are Distributees with regard to the interest of the spouse or former spouse.

(4)     A "Direct Rollover" is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

(b)     If a Participant does not make an election as provided in Section 5.6(a) within sixty (60) days after the date the payment of a distribution is scheduled to commence, such Participant's distribution shall be paid in a lump sum.

**5.5     Loans.** The Profit Sharing Committee shall have the authority to establish and maintain a program under which loans may be made to any Participant who is an Employee, including those on leave of absence or layoff (an "Eligible Borrower"). All loans shall be subject to the rules, regulations, limitations, restrictions (including the assessment of processing fees), procedures and provisions, in effect from time to time, adopted by the Profit Sharing Committee or its delegate(s). Loans shall be subject to the following rules:

49

MOT-ERISA 3988

(a)      Loans shall be made available to all Eligible Borrowers on a reasonably equivalent basis.

(b)      Loans shall not be made available to Highly Compensated Employees (as defined in section 414(q) of the Code) in an amount greater than the amount made available to other Eligible Borrowers.

(c)      Loans shall be adequately secured, bear a reasonable interest rate, provide for repayment within a specified period of time and be amortized over the term of the loan in level payments made not less frequently than quarterly.

(d)      If any of the survivor benefit requirements of Section 401(a)(11) of the Code applies to an Eligible Borrower when part or all of such person's accrued benefit is to be used as security for a loan, no portion of such person's accrued benefit may be used as security for such loan unless the spouse (if any) of such person consents in writing to such use during the 90-day period ending on the date on which the loan is to be so secured. Such consent must be in writing, must acknowledge the effect of the use of the accrued benefit as security for the loan, and must be witnessed by a notary public or a Plan representative. Such consent shall thereafter be binding with respect to the consenting spouse or any subsequent spouse with respect to that loan. Consent, if given, shall be irrevocable. Spousal consent shall not be required if it is established to the satisfaction of the Profit Sharing Committee or its delegate that the spouse cannot be located.

(e)      In the event of default on a loan by an Employee Participant, if the Participant's accounts secure the loan, foreclosure on the note and security may be postponed until a distributable event occurs under the Plan. In the event of default on any loan, the Plan and Trust shall have the immediate and continuing right to offset all principal and interest due on such loan against the accounts of the debtor.

(f)      No loan shall be made which would constitute a distribution under Section 72(p) of the Code.

(g)      If a proceeding under any bankruptcy or insolvency law or other law for the relief of debtors is commenced by or against a Participant who has an outstanding loan

MOT-ERISA 3989

from the Trust Fund (not from his individual account), and if payments on the loan are stayed or ceased or not paid when due in accordance with the terms of the promissory note or other evidence of indebtedness signed by the Participant, an amount sufficient to pay in full all principal and interest unpaid on the loan indebtedness shall be withdrawn from the Participant's Company Contribution and Participant Contribution Accounts and shall be used by the Trust to pay such loan indebtedness, except that Income earned after December 31, 1988 on Elective Deferrals shall not be withdrawn. Any such withdrawal shall constitute a withdrawal on account of hardship of the Participant. Any or all Company and Participant contributions not made under Section 401(k) of the Code, and Income thereon, may be withdrawn to pay loan indebtedness as herein provided.

(h)     Except for withdrawals which are approved pursuant to Section 5.8, no distribution shall be made to any Eligible Borrower or to a Beneficiary or Beneficiaries of any such Eligible Borrower, unless and until all loans, including accrued interest thereon, to such Eligible Borrower have been repaid or liquidated out of the amounts credited to the accounts of such Eligible Borrower.

**5.6     Facility of Payment.** Whenever, in the Profit Sharing Committee's opinion, a person entitled to receive any payment of a benefit hereunder is under a legal disability or is incapacitated in any way so as to be unable to manage his financial affairs, the Profit Sharing Committee may pay or cause payment to be made to such person or to his legal representative or a relative or friend of such person for his benefit, or the Profit Sharing Committee may apply or cause to be applied the payment for the benefit of such person in such manner as the Profit Sharing Committee considers advisable. Any such payment in accordance with this Section 5.6 shall be a complete discharge of any liability for making of such payment under the Plan.

**5.7     Notice of Address.** Each person entitled to benefits hereunder must file with the Company from time to time in writing his post office address and each change of post office address. Any communication, statement or notice addressed to such a person at his last post office address as filed with the Company will be binding upon such person for all purposes of the Plan. Neither the Profit Sharing Committee, the Trustee nor the Company shall be required to search for or locate such person.

MOT-ERISA 3990

5.8        **Hardship Withdrawals.**

(a)       Subject to such rules and regulations as may from time to time be promulgated by
the Profit Sharing Committee, a Participant may request a withdrawal from that
portion of his accounts attributable to (1) Elective Deferrals plus related Income
credited as of December 31, 1988, but exclusive of earnings after such date, and
(2) effective July 1, 2000, rollover contributions. No such withdrawal will be
permitted without the consent of the Profit Sharing Committee or its designee and
then only to the extent that such withdrawal is necessary due to "financial
hardship." Unless the Profit Sharing Committee determines otherwise by rule or
regulation of general application, a Participant may take no more than one
hardship withdrawal in any calendar year, and the minimum hardship withdrawal
shall be one thousand dollars ($1,000). "Financial hardship" means a
Participant's immediate and heavy financial need that cannot be satisfied from
other reasonably available resources and is caused by one of the following:

(i)        Medical expenses described in Section 213(d) of the Code previously
incurred by the Participant, the Participant's spouse, or any dependents of
the Participant (as defined in Section 152 of the Code) or necessary for
any of these persons to obtain medical care described in Section 213(d);

(ii)       Costs directly related to the purchase (excluding mortgage payments) of a
principal residence for the Participant;

(iii)      Payment of tuition, related educational fees and room and board expenses
for the next twelve (12) months of post-secondary education for the
Participant, his spouse, children or dependents (as defined in Section 152
of the Code);

(iv)      Payments necessary to prevent the eviction of the Participant from his
principal residence or foreclosure on the mortgage of the Participant's
principal residence; or

(v)       Other unusual expenses creating a financial need.

MOT-ERISA 3991

(b)     The determinations of the existence of an immediate and heavy financial need and of the amount necessary to meet the need will be made in accordance with the following standards:

(i)     A Participant requesting a withdrawal must complete and sign an application which sets forth (1) the facts causing the financial hardship; (2) the amount required to meet (but not exceed) the financial need; (3) a representation which demonstrates that the financial need cannot be relieved from other reasonably available resources, and (4) any other matters required by the Profit Sharing Committee; and

(ii)    The withdrawal will not be granted unless (1) financial hardship is established to the reasonable satisfaction of the Profit Sharing Committee or its designee, (2) the need cannot be satisfied by a loan taken under Section 5.5 hereof, and (3) the need cannot be satisfied from other reasonably available resources.

**5.9     Withdrawal at Age 59½.** Effective July 1, 2000, a Participant who has attained age 59½ and who is an Employee may withdraw all or any portion of his or her Participant Contribution Accounts by submitting a request for such withdrawal in such form and in such manner as the Profit Sharing Committee may determine. Unless the Profit Sharing Committee determines otherwise by rule or regulation of general application, a Participant may take no more than one such withdrawal in any six month period, and the minimum withdrawal shall be two hundred dollars ($200). The Profit Sharing Committee may promulgate such additional rules and regulations governing withdrawals at or after age 59½ as it deems appropriate from time to time.

MOT-ERISA 3992

## ARTICLE 6 - QUALIFIED MILITARY SERVICE

**6.1** **Special Definitions for Article 6.** The following definitions shall apply to this Article 6:

    (a)    "Qualified Military Service" means any Service in the Uniformed Services by any Employee or employee of an Affiliated Employer if such Employee or employee of an Affiliated Employer is entitled to reemployment rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 United States Code Section 4301, et seq.

    (b)    "Service in the Uniformed Services" means the performance of duty on a voluntary or involuntary basis in a Uniformed Service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, and a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty.

    (c)    "Uniformed Services" means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or emergency.

**6.2** **Military Leave of Absence.** Any employee of the Company or of an Affiliated Employer who enters into Service in the Uniformed Services shall, solely for purposes of the Plan, be on a Military Leave of Absence during his term of Service in the Uniformed Services. Such Military Leave of Absence shall continue from the employee's date of entry into the Service in the Uniformed Services to the earliest of the following:

    (a)    The expiration of the period following the date of his discharge from the Service in the Uniformed Services during which he is required to apply for reemployment as prescribed by USERRA;

    (b)    The date of his return to employment by the Company or an Affiliated Employer;

    (c)    The date of his employment by another company; or

MOT-ERISA 3993

(d)     The date of his death.

**6.3     Distribution of Benefits During Military Leave of Absence.** A Participant on Military Leave of Absence, at any time following his induction into the Uniformed Services, may request a distribution of the amount which would be distributed under Section 5.4(a) if he had resigned or was discharged from the employment of the Company upon the date of his request. If the request is approved by the Profit Sharing Committee, in its sole discretion, such amount shall be paid over to the Participant within thirty (30) days from the date of such request. The remaining amount, if any, credited to the Participant's Company Contribution Account shall not be a Forfeiture, but shall remain in each of the funds in which such Participant has an interest as provided for hereafter in Sections 6.4 and 6.5. The Profit Sharing Committee shall cause to be credited to the Company Contribution Account of such Participant his proportionate share of the Company Contribution contributed for the Plan Year during which such Participant begins his Military Leave of Absence, if and when such contribution is made.

**6.4     Continuance of Participant's Interest in Fund During Military Leave of Absence.** A Participant on Military Leave of Absence shall continue to participate in the Plan as though he had remained in the active employment of the Company, except that he shall participate in the Company Contribution only to the extent provided for in Sections 6.3 and 6.6. The full amounts credited to the accounts of a Participant on Military Leave of Absence who does not receive a distribution of his interest in the Trust Fund and the remaining amount, if any, credited to the account of Participant on Military Leave of Absence who has received a distribution of the amounts credited to his accounts under the provisions of Section 6.3, shall constitute such Participant's interest in the Fund.

**6.5     Effect of Termination of Military Leave of Absence.** A Participant on Military Leave of Absence who is reemployed shall be credited with his share of the Company Contribution for the Plan Year during which he returns to the active employment of the Company based on his Participant Contributions for said Plan Year.

A Participant who does not return to active employment with the Company on or before the date of the expiration of his Military Leave of Absence shall cease to be a Participant upon the expiration of his Military Leave of Absence and there shall be paid over to him the amount (determined without giving effect to any distribution previously made to said Participant under the provisions of Section 6.3) which would be paid over to him under the provisions of Section

55

5.4 of the Plan if he had resigned from employment of the Company upon the date of the expiration of his Military Leave of Absence, reduced by the amount of any distribution previously made to said Participant under the provisions of Section 6.3. The remaining amounts credited to the accounts of such Participant shall constitute a Forfeiture.

Any amount credited to a Participant under the provisions of this Article 6 to which the Participant is not entitled because of the expiration of his Military Leave of Absence which is unknown to the Profit Sharing Committee shall, upon discovery thereof, be treated as a Forfeiture.

**6.6    Employees Entitled to the Benefits of USERRA.**  Notwithstanding anything to the contrary which may be contained elsewhere in the Plan, the following provisions shall apply to each employee of the Company or of an Affiliated Employer who is entitled to the benefits of USERRA and who is reemployed (the conditions of USERRA for reemployment having been complied with) by the Company or an Affiliated Employer, as applicable, after a period of Qualified Military Service, subject to the conditions and restrictions of USERRA and Section 414(u) of the Code:

(a)    Each such employee reemployed under the provisions of USERRA shall be treated as not having incurred a break in service by reason of the    employee's period of Qualified Military Service.

(b)    Each period of Qualified Military Service served by an employee shall be, upon reemployment under the provisions of USERRA, deemed to constitute service with the Company or the Affiliated Employer and shall be counted in determining Years of Service for all purposes of the Plan.

(c)    A Participant reemployed under the provisions of USERRA shall have the right, during the period which begins on the date of reemployment and the duration of which is three (3) times the period of Qualified Military Service of such Participant or five (5) years, whichever is less, to make Participant Contributions in an amount elected by such Participant, but not less than one percent (1%) of Compensation and not exceeding the maximum amount of Participant Contributions which such Participant would have been permitted to make under the Plan during the period of Qualified Military Service if he had remained continuously employed by the Company throughout such period, based on the

MOT-ERISA 3995

Compensation he would have received if he were not in Qualified Military Service. Such deemed Compensation shall be determined based on the rate of Compensation the Participant would have received from the Company but for his Qualified Military Service, or if such Compensation that is not reasonably certain, based on such Participant's average Compensation from the Company during the twelve (12) month period immediately preceding the Qualified Military Service, or, if shorter, the period of employment immediately preceding the Qualified Military Service. With respect to such Participant Contributions made by a reemployed Participant as aforesaid, the Company shall make Company Contributions to such Participant's Company Contribution Accounts in such amounts as would have been required had such Participant Contributions been made during the period of the Participant's Qualified Military Service; provided, however, that no Income earned during such Participant's Qualified Military Service shall be allocated to such Participant's accounts based on Participant Contributions or Company Contributions made pursuant to this Section 6.6(c).

6.7    **Applicable Laws.** The provisions of this Article 6 shall be subject to all applicable statutes and laws of the United States, including, but not limited to, USERRA and Section 414(u) of the Code, and the rules and regulations thereunder, and in case of any inconsistency, said statutes, laws, rules and regulations shall control. The provisions of this Article 6 shall take precedence over any other inconsistent Plan provisions.

MOT-ERISA 3996

## ARTICLE 7 – PLAN ADMINISTRATION

**7.1    Membership of the Profit Sharing Committee.** Effective September 1, 1999, the Plan shall be administered by a committee to be known as the "Profit Sharing Committee" comprised of one or more individuals appointed by the Board of Directors, or by a delegate appointed by the Board of Directors, to serve at its pleasure and without compensation from the Trust Fund. Members of the Profit Sharing Committee may, but need not, be directors, officers or employees of the Corporation.  Any such member of the Profit Sharing Committee appointed by the Board of Directors or its delegate may resign by delivering his written resignation to the Board of Directors or its delegate.   Any member of the Profit Sharing Committee may be removed, without cause, by the Board of Directors or its delegate.  In the event of the resignation, removal or death of a member of the Profit Sharing Committee, the Board of Directors or its delegate may appoint a replacement.   The Company may, in its sole and absolute discretion, pay expenses authorized and incurred by the Profit Sharing Committee in the administration of the Plan, but is not required to do so.  Any such expenses not paid by the Company shall be paid from the Trust Fund.

**7.2    Powers of the Profit Sharing Committee.**  The Profit Sharing Committee shall have authority and discretion to control and manage the operation and administration of the Plan, including all rights and powers necessary or convenient to the carrying out of its functions hereunder, whether or not such rights and powers are specifically enumerated herein.  The Profit Sharing Committee may, in its discretion, delegate authority with regard to the administration of the Plan to any individual, officer or committee in accordance with paragraph (i) below. Notwithstanding any other provision of the Plan, if an action or direction of any person to whom authority hereunder has been delegated conflicts with an action or direction of the Profit Sharing Committee, then the authority of the Profit Sharing Committee shall supersede that of the delegate with respect to such action or direction.

Without limiting the generality of the foregoing, and in addition to the other powers set forth in this Article 7, the Profit Sharing Committee shall have the following express authorities:

(a)    To construe and interpret the provisions of the Plan; to decide all questions arising thereunder, including, without limitation, questions of eligibility for participation, eligibility for benefits, the validity of any election or designation made under the Plan, and the amount, manner and time of any allocation to accounts or payment of any benefits hereunder; and to make factual determinations necessary or appropriate for such decisions or determination;

58

MOT-ERISA 3997

(b)    To prescribe procedures to be followed by Participants, former Participants, Beneficiaries or alternate payees in filing applications for benefits and any other elections, designations and forms required or permitted under the Plan;

(c)    To prepare and distribute information explaining the Plan;

(d)    To receive from the Company and from Participants, former Participants, Beneficiaries and alternate payees such information as shall be necessary for the proper administration of the Plan;

(e)    To furnish the Corporation, upon request, such reports with respect to the administration of the Plan as are reasonable and appropriate;

(f)    To receive, review and keep on file, as it deems convenient or proper, reports of the financial condition, and of the receipts and disbursements, of the Trust from the Trustee;

(g)    To appoint or employ advisors, including legal and actuarial counsel (who may also be counsel to the Company) to render advice with regard to any responsibility of the Profit Sharing Committee under the Plan or to assist in the administration of the Plan; and

(h)    To select annuity providers to provide benefits from the Plan and to select investment managers for purposes of the Plan;

(i)    To designate in writing other persons to carry out a specified part or parts of its responsibilities hereunder (including this power to designate other persons to carry out a part of such designated responsibility). Any such designation must be accepted by the designated person who shall acknowledge in writing that he, she or it is a fiduciary with respect to the Plan. Any such person may be removed by the Committee at any time with or without cause; and

(j)    To rule on claims, and to determine the validity of qualified domestic relations orders described in Section 414(p) of the Code and to comply with such orders.

The Profit Sharing Committee shall perform its duties under the Plan and the Trust Agreement solely in the interests of the Participants (and their Beneficiaries). All rules, actions,

MOT-ERISA 3998

interpretations and decisions of the Committee are conclusive and binding on all persons, and shall be given the maximum possible deference allowed by law.

**7.3     Procedures of the Profit Sharing Committee.**  The Profit Sharing Committee shall act by a majority of its members at the time in office, and such action may be taken either by a vote at a meeting or in writing without a meeting.  The Profit Sharing Committee may authorize any person or persons, who may but need not be a member or members of the Profit Sharing Committee, to execute any document or documents on behalf of the Profit Sharing Committee, in which event the Profit Sharing Committee shall notify the Trustee in writing of such action and the name or names of such person or persons so designated.  The Trustee thereafter may accept and rely upon any document executed by such person or persons as representing such action by the Profit Sharing Committee until the Profit Sharing Committee shall file with the Trustee a written revocation of such designation.

**7.4     Adoption of Rules by Profit Sharing Committee.**  The Profit Sharing Committee may adopt such rules as it deems necessary, desirable or appropriate.  All rules and decisions of the Profit Sharing Committee shall be uniformly and consistently applied to all Participants in similar circumstances.   When making a determination or calculation, the Profit Sharing Committee shall be entitled to rely upon information furnished by a Participant or Beneficiary, the Company, the legal counsel of the Company,  the Trustee, or such other person as it deems appropriate.

**7.5     Directions to Trustee.**  The Profit Sharing Committee shall advise the Trustee in writing with respect to all benefits which become payable under the terms of the Plan and shall direct the Trustee to pay such benefits from the Trust Fund.

**7.6     Records to be Kept by the Profit Sharing Committee.**  The Profit Sharing Committee shall keep a record of all its proceedings and acts and shall keep all such books of account, records and other data as may be necessary for the proper administration of the Plan.  The Profit Sharing Committee shall file or cause to be filed all such annual reports, financial and other statements as may be required by any Federal or State statute, agency or authority within the time prescribed by the law or regulations for filing said documents.  The Profit Sharing Committee shall furnish such reports, statements, and other documents to Participants and Beneficiaries of the Plan as may be required by any Federal or State statute or regulation within the time prescribed for furnishing such documents.

MOT-ERISA 3999

**7.7    Inspection of Records of the Profit Sharing Committee.**   The Profit Sharing Committee's records and books of account shall be open to inspection at all reasonable times by the Board of Directors or any person designated from time to time by the Board of Directors.

**7.8    Indemnification.**   The Company shall indemnify each member of the Profit Sharing Committee, and the directors, officers and employees of the Company involved in the operation and administration of the Plan against any and all claims, loss, damages, expenses and liabilities arising from any action or failure to act, except when the same is determined by the Board of Directors to be due to gross negligence or willful misconduct of such member.

**7.9    Claims Procedure.**   The Profit Sharing Committee shall make all determinations as to the right of any person to a benefit.  The Profit Sharing Committee shall establish a claims procedure which complies with Section 503 of ERISA and the regulations thereunder.

**7.10    Participants Subject to Section 16(b) of Securities Exchange Act.**   Notwithstanding anything to the contrary in this Plan, to prevent violations of the Securities Exchange Act of 1934, as amended, (the "1934 Act"), the Profit Sharing Committee or its delegate shall have the right to impose restrictions and limitations which are additional to and different from those contained in this Plan which will apply to Participants who are subject to Section 16(b) of the 1934 Act, with respect to transactions relating to the Motorola Stock Fund, including, but not limited to (a) transfers into and out of the Motorola Stock Fund, and (b) loans and withdrawals from the Motorola Stock Fund.

**7.11    Assignment of Duties under ERISA Section 404(c).**   The Manager of Retirement Benefits Administration of the Corporation, as from time to the designated, shall be the fiduciary (the "404(c) Fiduciary") responsible for the following matters pertaining to compliance with Section 404(c) of ERISA and the regulations thereunder, and shall have all of the rights, powers and authority of the Profit Sharing Committee under Section 7.2 in the performance of his duties hereunder:

(a)    receiving investment instructions from Participants, Beneficiaries and alternate payees, and he shall be obligated to comply therewith except that investment instructions need not be complied with if they would result in a prohibited transaction described in Section 406 of ERISA or Section 4975 of the Code, would generate income that would be taxable to the Plan or instructions described in Department of Labor Regulation Section 2550.404(c)-1(d)(2)(ii);

61

(b)     providing to Participants, Beneficiaries and alternate payees written confirmations of investment instructions; and

(c)     providing to Participants, Beneficiaries and alternate payees the information required by Department of Labor Regulation Section 2550.404(c)-1(b)(2)(B)(1) and (2). The 404(c) Fiduciary may designate one or more persons to act on his behalf in fulfilling this responsibility.

MOT-ERISA 4001

## ARTICLE 8 - TRUSTEE

**8.1    Trust Agreement.**  The Corporation, on behalf of itself and other corporations that may be participating in the Plan, has entered into a trust agreement creating a Trust, under which the Trustee shall hold the assets of the Trust Fund.  Such trust agreement shall be a part of the Plan. The Trust shall be administered by the Trustee in accordance with the terms of the trust agreement and the Plan.  If any provisions of the Plan and the trust agreement shall be inconsistent or otherwise in conflict regarding the rights, duties or obligations of the Trustee, the provisions of the trust agreement shall control.

**8.2    Appointment of Successor Trustee.**  In the event of the resignation or removal of the Trustee, or the inability or refusal of the Trustee to act under the Trust, or in the event of the death of an individual Trustee, the Board of Directors shall appoint a successor Trustee who may be either an individual or a corporation empowered to act as a trustee under the Trust.

MOT-ERISA 4002

## ARTICLE 9 - INVESTMENT OF THE TRUST FUND ASSETS

**9.1** **Direction of Investments.** Subject to Sections 4.5 and 7.11, the Profit Sharing Committee shall have the power to direct the investment and reinvestment of the Trust Fund. In connection with such power, the Profit Sharing Committee may delegate in writing its authority to an investment manager or investment managers. In the event the authority to manage the assets of the Plan is delegated to an investment manager or investment managers, the Trustee, upon receiving written instructions from the investment manager or investment managers, shall receive or deliver the assets purchased or sold for the Trust Fund and make or receive payment for such assets purchased or sold for the Trust Fund in accordance with such instructions.

**9.2** **Investment Guidelines.** The Profit Sharing Committee may from time to time adopt a written investment policy and written investment guidelines which shall govern the manner in which the assets of the Trust Fund are to be invested. The investment manager or investment managers shall follow the investment guidelines in managing the assets of the Trust Fund. The investment policy and investment guidelines may contain, among other things, requirements for diversification and standards for the quality of securities to be held in the Trust Fund. Before the investment policy and the investment guidelines become effective, such investment policy and investment guidelines must be approved in writing by the Trustee and such written approval must be delivered to the Profit Sharing Committee.

**9.3** **Investment in Company Securities.** The Trust Fund may be invested in Company Securities; provided, however, that prior to July 1, 2000, the Trustee shall not be instructed to acquire any Company Securities in any Plan Year in which the value of the Company Securities held in the Trust Fund exceeds fifty percent (50%) of the value of the assets of the Trust Fund.

MOT-ERISA 4003

## ARTICLE 10 - CHANGES IN THE ORGANIZATION OF THE COMPANY

**10.1 Merger or Consolidation.** In the case of any merger or consolidation with, or transfer of assets and liabilities to, any other plan, provision shall be made so that each Participant in the Plan on the date thereof (if the Plan then terminated) would receive a benefit after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately prior to the merger, consolidation or transfer (if the Plan had then terminated).

**10.2 Transfer of a Participant to a Subsidiary.** If a Participant is transferred to and becomes an employee of a Subsidiary that is not participating in the Plan, but maintains a retirement plan qualified under Sections 401(a) and 401(k) of the Code containing substantially the same provisions as the provisions of the Plan, the Profit Sharing Committee may, at the request of the Participant and with the consent of the plan administrator of the transferee plan, transfer to the trustee under the plan of such Subsidiary the full amounts credited to the accounts of the Participant in the Trust Fund (without regard to any provisions respecting Forfeitures), plus such Participant's share of the Company Contribution for such Plan Year and any other credits allocable as of the date of such transfer. Upon such transfer the Participant shall have no further right or interest under the Plan or in and to the Trust Fund hereby created.

**10.3 Transfer of a Participant from a Subsidiary to the Company.** If a participant in a retirement plan qualified under Sections 401(a) and 401(k) of the Code maintained by any Subsidiary that is not participating in the Plan is transferred to and becomes an Employee of the Company, the Profit Sharing Committee is authorized to accept the transfer to it by the trustee under such tax-qualified 401(k) plan of the share of such Participant thereunder and to hold the same under the terms of the Plan with the same force and effect as though the participant had been a Participant hereunder during the period of time he was a participant under the plan of the Subsidiary, in which event such participant shall forthwith become a Participant in the Plan, and the period of his employment with such Subsidiary shall be included in determining Years of Service under the Plan.

MOT-ERISA 4004

**10.4    Sale, Disposition or Transfer of a Subsidiary or Business Subdivision.**

(a)    In the event of the sale, disposition or transfer to any person, firm, partnership, corporation or other entity (hereinafter called "purchaser") of a Subsidiary which is participating in the Plan, or of all or part of a business subdivision by the Corporation or by a Subsidiary which is participating in the Plan, which sale, disposition or transfer includes the transfer to the purchaser of Participants (hereinafter called a "Transferred Employing Unit"), if the conditions of this Section 10.4 are satisfied, the pro rata share of the Trust Fund (determined as provided in Sections 10.4(b) and (d)) allocable to Participants transferred to and employed by the purchaser of the transferred Employing Unit (hereinafter called "Transferred Participants") shall be held subject to transfer as hereinafter provided.

(b)    If the purchaser of the Transferred Employing Unit shall have established a plan qualified under Section 401(a) of the Code with provisions for accepting such transferred funds, the Trustee shall transfer to the trustee of the trust under such plan (or to the funding agent, if the plan is not implemented by a trust) each Transferred Participant's pro rata share of the Trust Fund as determined hereinafter in Section 10.4(d)(the "transferred interests"). Before any such transfer, purchaser shall furnish evidence to the satisfaction of the Profit Sharing Committee prior to the First Transfer Date, as hereinafter defined, that: (i) purchaser's plan qualified under Section 401(a) under the Code; (ii) the plan provides for the receipt of such transferred interests on a fully vested basis, whether or not such transferred interests were fully vested under the terms of the Plan; (iii) the terms of the purchase provide for such transfer or the purchaser files with the Corporation a written request for the transfer of such assets on behalf of Participants being employed by the Transferred Employing Unit held subject to transfer pursuant to this Section 10.4; and (iv) the purchaser's plan provides for the preservation of each "Section 411(d)(6) protected benefit," as defined in Treasury Regulation Section 1.411(d)-4, for each Transferred Participant.

The Profit Sharing Committee shall, within a reasonable time (the "First Transfer Date") after the conditions specified herein have been satisfied, and taking into account any required filings with governmental agencies and compliance with any required waiting periods, transfer to the trustee or other funding agent of the

MOT-ERISA 4005

transferee plan such assets of the Fund (in cash or other property and, in all cases, promissory notes or other evidences of indebtedness with respect to outstanding loans made to Transferred Participants) having a fair market value as of the Valuation Date determined under Section 10.4(d) hereof equal to the aggregate pro rata interests of Transferred Participants in the Fund as determined by the Profit Sharing Committee. The remaining balance, if any, of the amount required to be transferred will be transferred within a reasonable time (the "Final Transfer Date") following the First Transfer Date. Such remaining balance shall be increased or decreased by an amount equal to any increase or decrease in the pro rata interest of the Transferred Participants in the Fund which may have occurred during the period between the valuation date and the First Transfer Date. Upon final transfer such Transferred Participants shall have no further interest in the Fund. In determining the fair market value of the Fund, an evidence of indebtedness of a Transferred Participant will be deemed to have a value equal to its unpaid balance plus accrued but unpaid interest. If the employment with the purchaser of any Transferred Participant terminates before the First Transfer Date, no transfer shall be made for such Transferred Participant, and if any Forfeiture results from any such termination, such Forfeiture shall remain in the Trust Fund.

(c)     If the terms of purchase do not provide for the transfer of assets from the Fund or if such terms do provide for the transfer of assets from the Fund, and the purchaser does not maintain or does not establish a plan meeting the requirements of Section 10.4(b) within a reasonable time (as determined by the Corporation), the share of the Fund attributable to Transferred Participants shall become fully vested and shall be held by the Trustee for distribution in accordance with the terms of the Plan.

(d)     The interest of a Transferred Participant transferable as herein provided shall be his account balances of the Valuation Date next preceding the First Transfer Date, unless the Profit Sharing Committee elects to use a different valuation date. If the Profit Sharing Committee decides, one or more special valuations may be made for purposes of determining the pro rata share of the Fund attributable to Transferred Participants. Such valuation or valuations shall be adjusted by adding or deducting from each such valuation (as the case may be) such amounts as may be necessary to take into account (i) any contributions made by Transferred Participants after the last preceding valuation date, (ii) each Transferred

MOT-ERISA 4006

Participant's share of any Company Contributions accrued but not yet paid with respect to the Plan year preceding the Plan Year in which his transfer of employment to the purchaser occurs (the "Employment Transfer Date"), (iii) any other credits allocable to such Transferred Participants with respect to the Plan Year preceding the Plan Year in which his Employment Transfer Date occurs, credited or payable after the end of such Plan Year, (iv) any amounts forfeited by any Transferred Participant who shall have terminated his employment (whether by reason of death, disability, retirement or otherwise) with purchaser after his Employment Transfer Date but prior to the Final Transfer Date; and (v) amounts determined as provided in Article 5 hereof with respect to the Company Contribution for the Plan Year in which his Employment Transfer Date occurs.

(e)    In addition to the amounts determined under the preceding paragraph, each Transferred Participant who, at the end of the Plan Year in which his Employment Transfer Date occurs, is in the employ of the purchaser of the Transferred Employing Unit shall be entitled to share in the Profit Sharing Contribution, if any, for the Plan Year in which his Employment Transfer Date occurs based upon his Participant Contributions to the Plan made during such Plan Year.

(f)    In order to avoid any undue hardship which might result from a delay in the transfer of the portion of the Trust Fund held subject to transfer attributable to Transferred Participants, the Profit Sharing Committee may make a loan to a Transferred Participant, as provided in Section 5.5, under the rules and regulations of the Profit Sharing Committee then in effect, provided such loan is effected prior to the First Transfer Date.

**10.5    Employees Transferred in Acquisition.**  In the case of an acquisition by the Company of all or any part of the assets or business, or both, of any person, firm, partnership, corporation or other entity (herein called "seller"), which acquisition includes the transfer from the seller to the Company of employees who then become Employees, the years of service of each such Employee with the seller shall be deemed to be Years of Service with the Company, and each such Employee shall be credited with all such Years of Service for purposes of determining eligibility for participation under Section 2.1 and for vesting under Section 5.1.

MOT-ERISA 4007

## ARTICLE 11 - AMENDMENT AND TERMINATION OF THE PLAN

**11.1     Amendments to Comply with Law.**  The Board of Directors (or its delegate) and the Profit Sharing Committee may at any time and from time to time by resolution make any amendment or amendments to the Plan to bring the Plan into compliance or conformity with, or to enable the Plan to meet the requirements of, any law, regulation or ruling, as now in effect or hereafter amended or adopted.

**11.2     Amendment of the Plan.**  Effective September 1, 1999, the Plan may be amended at any time and from time to time and for any reason by resolution of the Board of Directors or its delegate and the Profit Sharing Committee; provided, however, that no amendment shall be adopted the effect of which would be (a) to revest in the Company any interest in the assets of the Fund, or any part thereof, (b) to divest any Participant of his interest therein inconsistently with the provisions of the Plan, (c) to give any Participant any assignable or exchangeable interest or any right or thing of exchangeable value in the Fund in advance of the time distributions now or thereafter provided for hereunder may be made, (d) to authorize or permit any part of the Fund (other than such part as is required to pay taxes and administrative expenses) to be used for or diverted to purposes other than for the exclusive benefit of the Participants, their Beneficiaries or estates, or (e) to decrease a Participant's account balance or reduce or eliminate a Code Section 411(d)(6) protected benefit.

**11.3     Termination by Corporation.**  The Corporation hopes and expects to continue the Plan and the Trust indefinitely.  However, the Corporation may terminate the Plan and the Trust at any time, and such action may be effected by a resolution adopted by the Board of Directors.

**11.4     Effect of Termination.**  Upon complete discontinuance of the Company Contribution or the full or partial termination of the Plan, the accounts of the Participants affected by such full or partial termination shall be one hundred percent (100%) vested, and no portion of such accounts shall be a Forfeiture, except to the extent that law or regulations may require a Forfeiture in order to prevent discrimination in favor of officers, shareholders or highly compensated employees. Upon termination of the Plan, the Board of Directors shall direct that the amounts in the Trust Fund, after the payment of expenses properly chargeable against the Trust Fund, shall be distributed by one or more of the following methods:

      (a)     In cash or in kind and in such manner as the Profit Sharing Committee shall determine;

MOT-ERISA 4008

(b)     In such manner and at such times as provided in Article 5 of the Plan; or

(c)     If the Corporation or the Company has any other plan qualified under Section 401(a) of the Code with provisions for accepting the Trust Fund, by transfer to the Trustee of such other plan (or to the funding agent, if such plan is not implemented by a trust) all of the amounts credited to the accounts of the Participants, and upon such transfer, the Participants shall have no further interest in the Trust Fund.

MOT-ERISA 4009

## ARTICLE 12 - RESTRICTION ON ALIENATION OF BENEFITS

Except as provided in Sections 5.5 and 5.8 benefits payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit under the terms of the Plan; and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder shall be void. The preceding sentence shall not apply to (a) an order or requirement to pay funds to the Plan arising under a judgment or conviction for a crime involving the Plan or under a civil judgment entered by a court in an action alleging a violation of Part 4 of ERISA to the extent permitted under Section 401(a)(13)(C) of the Code and Section 206(d)(4) of ERISA, or (b) the creation, assignment or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order which is determined by the Profit Sharing Committee to be a qualified domestic relations order ("QDRO") as defined in Section 414(p) of the Code and Section 206(d) of ERISA; provided however, a domestic relations order entered prior to January 1, 1985 may, in the discretion of the Profit Sharing Committee or its delegate, be treated as a QDRO, even though the order does not satisfy the requirements of Sections 414(p) of the Code and 206(d) of ERISA. The amount assigned or awarded to an alternate payee by a QDRO shall be paid to such alternate payee as soon as administratively feasible after acceptance of the QDRO, even though the Participant to whom the QDRO relates is not entitled to receive a distribution from the Plan at that time, and payment will be made in a lump sum unless the alternate payee elects a different form of payment. Payment of a benefit having a present value in excess of five thousand dollars ($5,000) may be made without the consent of the alternate payee unless the QDRO requires such consent. If the amount assigned or awarded to the alternate payee by a QDRO is not to be paid out immediately, a separate account in the name of the alternate payee shall be established in the Investment Fund(s), specified in the QDRO or elected by the alternate payee, and in the absence of such specification or election, in the same proportion in Investment Funds as the Participant's account is invested at the time the separate account is established, and the amount awarded to the alternate payee shall be deposited in such account. An alternate payee shall not have the status of a Participant and shall not have any of the rights or options of a Participant, other than the rights to direct the investment of the amount in his or her account as provided in Section 4.5 hereof and to designate a Beneficiary or Beneficiaries with respect to his or her account in the Plan. An alternate payee's account shall share in the Income of the Investment Fund(s) in which invested from the time of deposit until the time of distribution. The Trust Fund shall neither be liable for

71

nor subject to the debts, contracts, liabilities, engagements or torts of any person entitled to benefits hereunder.

MOT-ERISA 4011

## ARTICLE 13 - MISCELLANEOUS

**13.1 Participation of Subsidiaries.** Any Subsidiary may at any time participate in the Plan by filing with the Board of Directors a certified copy of the resolution of its board of directors authorizing such action and stating therein the date such Subsidiary is to be included hereunder; provided, however, that the Board of Directors must also approve such Subsidiary's participating in the Plan. Any participating Subsidiary may at any time terminate its participation in the Plan by filing with the Board of Directors a certified copy of the resolution of its board of directors authorizing such action and stating therein the effective date of such termination. Upon such termination, the Profit Sharing Committee shall determine the proportionate share of such valuation attributable to such Subsidiary having participated in the Plan. Such proportionate share shall be and become fully vested in the Participants in the employ of such Subsidiary to the extent provided in Section 11.4 and shall be distributed, held or transferred, as the Profit Sharing Committee shall determine, in accordance with the last sentence of Section 11.4.

**13.2 Sole Benefit of Participants.** The Trust Fund shall be administered for the sole and exclusive benefit of the Participants in the Plan and, to the extent applicable, their Beneficiaries.

**13.3 Nonguarantee of Employment.** Nothing contained in the Plan shall be construed as a contract of employment between the Company and any Employee or Participant, or as a right to be continued in the employment of the Company, or as a limitation of the right of the Company to discharge any of its Employees, with or without cause.

**13.4 Resolutions of the Board of Directors.** Any action required to be taken by the Board of Directors under the provisions of the Plan shall be evidenced by a resolution of the Board of Directors.

**13.5 Written Notice by Trustee.** Any notice, direction, request or recommendation required under the Plan to be given or delivered by the Trustee to the Company, the Board of Directors (or its delegate) or the Profit Sharing Committee shall be in writing, signed by an officer of the Trustee or such other person authorized by the Trustee to sign for the Trustee.

**13.6 Gender and Numbers.** Whenever in the Plan the masculine gender is used, it shall be deemed to mean the feminine gender also, unless the context clearly indicates to the contrary.

MOT-ERISA 4012

**13.7    Headings.**    The titles or headings of the respective Articles and Sections in the Plan are inserted merely for convenience, and shall be given no legal effect.

**13.8    Litigation.**    In any action or proceeding regarding any Plan assets, any Plan benefits or the administration of the Plan, any final judgment which is not appealed or appealable and which may be entered in such action or proceeding shall be binding and conclusive on the parties hereto and on all persons having or claiming to have any interest in the Plan.    Notwithstanding any other provision of the Plan, if the Profit Sharing Committee, the Trustee, the Plan or the Trust is required by a final court order to distribute the benefits of a Participant other than in a manner required under the Plan, then the Profit Sharing Committee shall cause the Participant's benefits to be distributed in a manner consistent with such final court order.    However, the Profit Sharing Committee shall not be required to comply with the requirements of a final court order in an action in which the Profit Sharing Committee, the Trustee, the Plan or the Trust was not a party, except to the extent such a final court order is a qualified domestic relations order.

74

MOT-ERISA 4013

Resolutions of the
Director of Human Resources
of Motorola, Inc.

February 27, 2002

WHEREAS, Motorola, Inc. (the "Company") maintains the Motorola 401(k) Profit Sharing Plan (the "Plan") for the benefit of its eligible employees and the eligible employees of its adopting affiliated companies; and

WHEREAS, Section 11.2 of the Plan provides that the Plan may be amended at any time and from time to time by resolution of the Board of Directors Motorola, Inc, (the "Board of Directors") or its delegate and the Profit Sharing Committee; and

WHEREAS, the Board of Directors has delegated authority to amend the Plan to the Compensation Committee of the Board of Directors of Motorola, Inc. (the "Compensation Committee"); and

WHEREAS, by resolution dated January 29, 2001, the Compensation Committee delegated to the Motorola Director of Human Resources the authority, in connection with the merger of any plan (the "Merged Plan") into the Plan in accordance with Section 10.1 thereof, to amend the Plan to the extent necessary or appropriate to preserve on behalf of participants previously covered by a Merged Plan any then-accrued benefit under such Merged Plan and any "section 411(d)(6) protected benefit" (as such term is defined for purposes of Treasury Regulation Section 1.411(d)(6)-4) provided by such Merged Plan prior to the merger effective date; and

WHEREAS, the Motorola Director of Human Resources desires to amend the Plan to assure that any Merged Plan is qualified under Section 401(a) and other applicable provisions of the Internal Revenue Code, as amended by the Uruguay Round Agreements Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, and the Taxpayer Relief Act of 1997, as of the merger effective date;

NOW, THEREFORE, BE IT RESOLVED that the Motorola 401(k) Profit Sharing Plan is hereby amended by adding the following paragraph to the introduction thereto:

> To the extent necessary for a "Merged Plan" (as defined below) to comply with the requirements of Section 401(a) and related provisions of the Code for any period prior to the date of merger into this Plan (the "Merger Date"), any provision of the Plan required by the Uruguay Round Agreements Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, and the Taxpayer Relief Act of 1997 (collectively known as the "GUST" legislation) to be effective under the Merged Plan for periods prior to the Merger Date shall be incorporated by this reference into the Merged Plan, effective as of the date such provision is required to

DC1 30072620v1

MOT-ERISA 4014

be effective by GUST. For this purpose, the term "Merged Plan" means the Software Corporation of America Thrift Incentive & Profit Sharing Plan and the General Instrument Corporation Savings Plan, and any other defined contribution plan intended to be qualified under Section 401(a) of the Code that has been merged into and with the Plan.

**FURTHER RESOLVED,** that the appropriate officers of the Company are hereby authorized and directed to take all actions necessary and appropriate, and to execute all documents as they may deem necessary or advisable or as may be recommended by legal counsel to the Company, in order to effectuate the purpose of the above resolution.

Dated: _2-27-02_

Glenn Gienko
Its: Director of Human Resources

DC1 30072620v1

MOT-ERISA 4015

**Unanimous Written Consent of the**
**Profit Sharing Committee of Motorola, Inc.**

The undersigned, constituting all of the members of the Profit Sharing Committee of Motorola, Inc. (the "Company"), hereby consent to the adoption of, and do hereby adopt, the following resolutions:

**WHEREAS**, the Company maintains the Motorola 401(k) Profit Sharing Plan (the "Plan") for the benefit of its eligible employees and adopting affiliated companies; and

**WHEREAS**, Section 11.2 of the Plan provides that the Plan may be amended at any time and from time to time by resolution of the Board of Directors of Motorola, Inc. (the "Board of Directors") or its delegate and the Profit Sharing Committee; and

**WHEREAS**, the Board of Directors has delegated its authority to amend the Plan to the Compensation Committee of the Board of Directors of Motorola, Inc. (the "Compensation Committee"); and

**WHEREAS**, by resolution dated January 29, 2001, the Compensation Committee has delegated its authority to amend the Plan to this Committee, to exercise as it deems appropriate and in the interests of the Company as sponsor of the Plan;

**WHEREAS**, this Committee deems it appropriate to amend the Plan as described below:

**NOW THEREFORE, BE IT RESOLVED**, that Section 3.2(a) of the Plan is hereby amended by deleting subsection (ii) in its entirety and inserting the following in its place, effective January 1, 2002:

(ii) For the Plan Years beginning on January 1, 2000 and January 1, 2001, the Company shall make a Matching Contribution to the Trust Fund with respect to each Participant who has made a Participant Contribution for such Plan Year and, at the time of such Participant Contribution, has met the eligibility requirements to share in the allocation of Company Contributions under Section 2.1. The amount of Matching Contribution with respect to such Participant shall be one dollar ($1.00) for each one dollar ($1.00) of the Participant's Participant Contribution up to three percent (3%) of Compensation for the Plan Year, and fifty cents ($.50) for each one dollar ($1.00) of Participant Contributions exceeding three percent (3%) of Compensation but not exceeding six percent (6%) of Compensation for the Plan Year. If, during any Plan Year, a Participant makes Participant Contributions to the Plan in an amount equal to or greater than six percent (6%) of such Participant's Compensation for such Plan Year, and if the total of

MOT-ERISA 4016

the Matching Contributions made on behalf of such Participant during such Plan Year does not equal the maximum amount of Matching Contributions required by this Section 3.2(a)(ii) to be made with respect to six percent (6%) of such Participant's Compensation, the Company shall, within thirty (30) days after the end of such Plan Year, make a lump sum contribution to the account of such Participant in an amount equal to the difference between the amount of the Matching Contributions that was required to be made and the amount actually made. To receive such a lump sum contribution, such Participant must be employed by the Company or an Affiliated Employer on December 31 of such Plan Year, except that a Participant who retired or who became a Transferred Participant, as defined in Section 10.4(a) hereof, during such Plan Year shall receive his lump sum contribution. The largest Matching Contribution that may be made with respect to a Participant for each of the Plan Years beginning January 1, 2000, and January 1, 2001, shall be four and one-half percent (4.5%) of such Participant's Compensation while eligible for a Matching Contribution during the Plan Year.

(iii)  Effective for the period beginning January 1, 2002 and ending February 2, 2002, the Company shall make a Matching Contribution to the Trust Fund with respect to each Participant who has made a Participant Contribution for such period and, at the time of such Participant Contribution, has met the eligibility requirements to share in the allocation of Company Contributions under Section 2.1. The amount of Matching Contribution with respect to such Participant shall be one dollar ($1.00) for each one dollar ($1.00) of the Participant's Participant Contribution up to three percent (3%) of Compensation for the period, and fifty cents ($.50) for each one dollar ($1.00) of Participant Contributions exceeding three percent (3%) of Compensation but not exceeding six percent (6%) of Compensation for the period. The largest Matching Contribution that may be made with respect to a Participant for the period beginning January 1, 2002, and ending February 2, 2002, shall be four and one-half percent (4.5%) of such Participant's Compensation while eligible for a Matching Contribution during such period.

Effective for the period beginning February 3, 2002, the Company shall make a Matching Contribution to the Trust Fund with respect to each Participant who has made a Participant Contribution for such period and, at the time of such Participant Contribution, has met the eligibility requirements to share in the allocation of Company Contributions under Section 2.1. The amount of Matching Contribution with respect to such Participant shall be

MOT-ERISA 4017

fifty cents ($0.50) for each one dollar ($1.00) of the Participant's Participant Contribution up to six percent (6%) of Compensation for the Plan Year, but not exceeding three percent (3%) of Compensation for the period. If, during any Plan Year, a Participant makes Participant Contributions to the Plan in an amount equal to or greater than six percent (6%) of such Participant's Compensation for such Plan Year, and if the total of the Matching Contributions made on behalf of such Participant during such Plan Year does not equal the maximum amount of Matching Contributions required by this Section 3.2(a)(iii) to be made with respect to six percent (6%) of such Participant's Compensation, the Company shall, within thirty (30) days after the end of such Plan Year, make a lump sum contribution to the account of such Participant in an amount equal to the difference between the amount of the Matching Contributions that was required to be made and the amount actually made. To receive such a lump sum contribution, such Participant must be employed by the Company or an Affiliated Employer on December 31 of such Plan Year, except that a Participant who retired or who became a Transferred Participant, as defined in Section 10.4(a) hereof, during such Plan Year shall receive his lump sum contribution. The largest Matching Contribution that may be made with respect to a Participant for any period beginning on or after February 3, 2002, shall be three percent (3%) of such Participant's Compensation while eligible for a Matching Contribution during such period.

**FURTHER RESOLVED**, that the first paragraph of Section 3.3 of the Plan is hereby amended to read as follows, effective January 1, 2002:

**3.3 Special Rules Applicable to Sections 3.1 and 3.2.** Effective for the 2001 Plan Year, Participant Contributions under Section 3.1 are intended to comply with the alternative method of meeting nondiscrimination rules set forth in Section 401(k)(12) of the Code, and Company Contributions under Section 3.2 are intended to comply with the alternative method of meeting nondiscrimination rules set forth in Section 401(m)(11) of the Code, as described in Internal Revenue Service Notice 98-52 (except with respect to Employees permitted to be excluded from participation under Section 401(k)(3)(F) of the Code). Prior to January 1, 2001, and after December 31, 2001, Participant Contributions and Company Contributions shall be subject to the limitations in Section 3.4 and 3.5, respectively, and the following definitions shall apply:

**FURTHER RESOLVED**, that the first sentence of Section 3.4(a) of the Plan is hereby amended to read as follows, effective January 1, 2002:

DCI 30067331v1

MOT-ERISA 4018

(a)   Tests. For each Plan Year commencing prior to January 1, 2001, and after December 31, 2001, one of the following tests must be satisfied:

**FURTHER RESOLVED**, that the first sentence of Section 3.5(a) the Plan is hereby amended to read as follows, effective January 1, 2002:

(a)   Tests. For each Plan Year commencing prior to January 1, 2001, and after December 31, 2001, one of the following tests must be satisfied:

**FURTHER RESOLVED**, that the first sentence of Section 3.6 of the Plan is hereby amended to read as follows, effective January 1, 2002:

**3.6 Additional Testing Rules.** For Plan Years commencing prior to January 1, 2001, and after December 31, 2001, the following rules shall apply to the nondiscrimination tests set forth in Sections 3.4 and 3.5 of the Plan.

**FURTHER RESOLVED**, that Section 3.6(c) of the Plan is hereby amended in its entirety to read as follows, effective January 1, 2002:

(c)   Notwithstanding the foregoing, for any Plan Year prior to January 1, 2002, if the requirements of Sections 3.4 and 3.5 above (if applicable) are both satisfied by use of the limitations established in Sections 3.4(a)(ii) and 3.5(a)(ii), respectively, the Average Deferral Percentages and Average Contribution Percentages of Eligible Participants who are Highly Compensated Employees must also satisfy the aggregate use limitation set forth in Treasury Regulation Section 1.401(m)-2.

**FURTHER RESOLVED**, that the appropriate officers of the Company are hereby authorized and directed to take all actions necessary and appropriate, and to execute all documents as they may deem necessary or advisable or as may be recommended by legal counsel to the Company, in order to effectuate the purpose of the above resolution.

DC1 3006733!v1

MOT-ERISA 4019

**IN WITNESS WHEREOF**, the undersigned have executed this Consent as of the __14th__ day of December, 2001.

William P. DeClerck

Richard Enstrom

Garth L. Milne

Carl F. Koenemann

DC1 30067331v1

MOT-ERISA 4020

**Exhibit C**
**Supplement to the**
**Motorola, Inc. 401(k) Profit Sharing Plan**
**for the**
**General Instrument Corporation Savings Plan**

January 29, 2001

Effective April 1, 2001, or as soon thereafter as the transfer of assets may be accomplished, the General Instrument Corporation Savings Plan (the "GI Savings Plan") shall be merged into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola 401(k) Plan"). The following provisions shall apply effective April 1, 2001 to former participants in the GI Savings Plan with respect to whom a transfer of assets liabilities is made from the GI Savings Plan to the Motorola 401(k) Plan (a "GI Participant") in connection with such asset transfer:

1.  Withdrawal of Rollover Contributions. A GI Participant who is an Employee may withdraw all of any portion of his or her Rollover Contribution Account attributable to (a) "Rollover Contributions" as defined in Section 2.43 of the GI Savings Plan and (b) "Trust-to-Trust Transfer" amounts permitted to be withdrawn under Section 7.4(a) of the GI Savings Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the GI Savings Plan to the Motorola 401(k) Plan.

2.  Withdrawal of Matching Contributions. A GI Participant who is an Employee may withdraw all or any portion of his or her Company Contributions Account attributable to matching employer contributions made under the GI Savings Plan prior to December 31, 1998 (as adjusted for earnings and/or losses attributable thereto) transferred from the GI Savings Plan to the Motorola 401(k) Plan.

3.  In-Service Withdrawal upon Attaining Age 59½. A GI Participant who is an Employee who has attained age 59½ may withdraw all or any portion of his or her Company Contribution Account attributable to matching employer contributions made under the GI Savings Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the GI Savings Plan to the Motorola 401(k) Plan.

4.  Rules Applicable to In-Service Withdrawals. A GI Participant may initiate withdrawals under this Supplement by submitting a request in such form and in such manner as the Profit Sharing Committee may determine. Unless the Profit Sharing Committee determines otherwise by rule or regulation of general application, a

DCl 30044711v1

MOT-ERISA 4021

Participant may take no more than one in-service withdrawal under any paragraph above in any six-month period, and the minimum in-service withdrawal under any paragraph above shall be two hundred dollars ($200).

DC1 30044711v1

MOT-ERISA 4022