5.8     **Hardship Withdrawals**.

(a)     **General Rule.**  Subject to such rules and regulations as may from time to time be promulgated by the Plan Administrator, a Participant may request a withdrawal from that portion of his or her Accounts attributable to:

(i)     Elective Contributions plus related Income credited as of December 31, 1988, but exclusive of earnings after such date, and

(ii)     Rollover Contributions.

No such withdrawal will be permitted without the consent of the Plan Manager or its designee and then only to the extent that such withdrawal is necessary due to Financial Hardship.  Unless the Plan Manager determines otherwise by rule or regulation of general application, a Participant may take no more than one hardship withdrawal in any calendar year, and the minimum hardship withdrawal shall be one thousand dollars ($1,000).

(b)     **Requesting a Hardship Withdrawal.**  The determinations of the existence of an immediate and heavy financial need and of the amount necessary to meet the need will be made in accordance with the following standards:

(i)     A Participant requesting a withdrawal must complete and sign an application which sets forth:

(A)     the facts causing the Financial Hardship;

(B)     the amount required to meet (but not exceed) the financial need;

(C)     a representation which demonstrates that the financial need cannot be relieved from other reasonably available resources; and

(D)     any other matters required by the Plan Manager; and

(ii)     The withdrawal will not be granted unless:

(A)     Financial Hardship is established to the reasonable satisfaction of the Plan Manager or its designee;

(B)     the need cannot be satisfied by a loan taken under Section 5.5 hereof; and

(C)     the need cannot be satisfied from other reasonably available resources.

(c)     **Requirement to Take Dividends in Cash**.  If a Participant requests a hardship withdrawal pursuant to this Section 5.8 and is eligible to make an election to receive cash dividends pursuant to Section 6.8, then the Participant must elect to have paid to him or her all cash dividends that are currently available to him or her under the ESOP Fund by reason of the dividend election provisions described in Section 6.8.

**MOT-ERISA 3902**

5.9 **Withdrawal at Age 59½.** A Participant who has attained age 59½ and who is an Employee may withdraw all or any portion of his or her Accounts attributable to Participant Contributions and Rollover Contributions by submitting a request for such withdrawal in such form and in such manner as the Plan Manager may determine. Unless the Plan Manager determines otherwise by rule or regulation of general application, a Participant may take no more than one such withdrawal in any six month period, and the minimum withdrawal shall be two hundred dollars ($200). The Plan Manager may promulgate such additional rules and regulations governing withdrawals at or after age 59½ as it deems appropriate from time to time.

5.10 **Withdrawal at Age 70½.** Subject to Section 5.3(d) above, a Participant who has attained age 70½ and who is an Employee may withdraw all or any portion of his or her accounts (including amounts attributable to Company Contributions) at any time by submitting a request for such withdrawal in such form and in such manner as the Plan Manager may determine. Unless the Plan Manager determines otherwise by rule or regulation of general application, a Participant may take no more than one such withdrawal in any six-month period, and the minimum withdrawal shall be two hundred dollars ($200). The Plan Manager may promulgate such additional rules and regulations concerning withdrawals at or after age 70½ as it deems appropriate from time to time.

5.11 **Withdrawal of Rollover Contributions.** A Participant who is an Employee and who has made a transfer described in Section 4.6 of the Plan may withdraw all or any portion of his or her Accounts attributable to such amounts at any time by submitting a request for such withdrawal in such form and in such manner as the Plan Manager may determine. Unless the Plan Manager determines otherwise by rule or regulation of general application, a Participant may take no more than one such withdrawal in any six-month period, and the minimum withdrawal shall be two hundred dollars ($200). The Plan Manager may promulgate such additional rules and regulations concerning withdrawals of Rollover Contributions as it deems appropriate from time to time.

5.12 **Missing Participants.** Distribution, forfeiture, and reinstatement of benefits to Missing Participants shall be in accordance with this Section 5.12; *provided, however,* that nothing in this Section 5.12 shall be deemed or construed to supersede, alter or amend the provision of Section 5.7.

(a) Notwithstanding any provisions of the Plan to the contrary other than Section 5.7, if a Missing Participant is entitled to a benefit payable under the Plan and reasonable efforts to locate the Missing Participant have been unsuccessful, then amounts distributable to the Missing Participant will remain in the Missing Participant's Accounts until forfeited or distributed in accordance with the provisions of the Plan.

(b) In addition to and notwithstanding any provision of the Plan to the contrary other than Section 5.7, a Missing Participant who is eligible for a distribution payable is not subject to the Plan's mandatory distribution provisions that would otherwise result in the automatic "cash out" of such amounts without the Missing Participant's consent.

(c) If a Participant or Beneficiary has been notified at his/her last known address of entitlement to his/her benefits under the Plan (or issued a check of distribution therefrom) and the Participant or Beneficiary fails to claim such benefits within two years after such initial notification, his/her benefits shall be treated as a Forfeiture under the Plan and shall be used in accordance with the Forfeiture provisions. In the event such Participant or

**MOT-ERISA 3903**

Beneficiary subsequently files a valid claim for such benefit, such benefit shall be immediately restored to the Participant's or Beneficiary's Accounts under the Plan with payments to commence in accordance with this Article 5.

      (d)      If the Plan is joined as a party to escheat proceedings involving a forfeited amount or Participant's or Beneficiary's Account, the Plan will comply with the final judgment as if it were a claim filed by the Participant or Beneficiary and will make payment in accordance with the judgment.

      (e)      The Committee may adopt and amend from time to time such procedures as it deems appropriate to administer this Section 5.12.

## ARTICLE 6 - THE ESOP

6.1    **ESOP Portion of the Plan**.  The Company intends that the Plan and the ESOP together shall constitute a single plan under ERISA and the Code. Accordingly, the provisions set forth in the other sections of the Plan shall apply to the ESOP in the same manner as those provisions apply to the remaining portions of the Plan, except to the extent that those provisions are by their terms inapplicable to the ESOP, or to the extent that they are inconsistent with the specific provisions set forth below in this Article. Except as provided in this Article, the ESOP shall not affect any Beneficiary designations or any other applicable agreements, elections, or consents that Participants, former Participants, spouses, alternate payees or Beneficiaries validly executed under the terms of the Plan without regard to the ESOP; and such designations, agreements, elections, and consents shall apply under the ESOP in the same manner as they apply under the Plan. The ESOP, as set forth in this Article, is intended to meet the requirements of an employee stock ownership plan, as defined in Code Section 4975(e)(7) and the accompanying regulations, and ERISA Section 407(d)(6). As provided below, the ESOP is designed to invest primarily in qualifying employer securities of the Company.

6.2    **Effective Date**.  This Article shall be effective for Plan Years beginning on or after October 1, 2002.

6.3    **Eligibility and Participation**.  Each Participant in the Plan is eligible to participate in the ESOP. Each Accountholder will be treated as if he or she is a Participant in the ESOP for purposes of this Article and shall be considered to be a "named fiduciary" within the meaning of, and to the extent permitted under, ERISA Section 402(a)(2) with respect to the treatment of dividends paid on Company Stock held in such person's Accounts.

6.4    **Investments in Company Stock**.  Pursuant to Section 4.5 of the Plan, Accountholders may elect to have a portion or all of their accounts invested by the Trustee in the Motorola Stock Fund, which consists primarily of Company Stock. For this purpose it is intended that the ESOP be considered an "eligible individual account plan" which explicitly provides for the acquisition and holding of "qualifying employer securities" (as those terms are defined in ERISA Sections 407(d)(3) and 407(d)(5)), and that the Trustee may invest up to 100% of the Trust Fund held by it in Company Stock, to the extent elected by Accountholders. Company Stock may be acquired by the Trustee through purchases on the open market, private purchases, purchases from the Employers (including purchases from the Company of treasury shares or authorized but unissued shares), contributions in kind by the Company, or otherwise. The Trustee in its discretion may hold a

portion of the ESOP Fund in cash or cash equivalents to meet liquidity needs for distribution and while pending investment in Company Stock.

6.5 **Additional Accounting Rules for Company Stock**. Notwithstanding the provisions of Section 4.2(e) of the Plan, and subject to Section 4.5 of the Plan (including provisions regarding the payment of expenses of Investment Funds), the following additional rules apply with respect to Company Stock in the ESOP Fund:

(a) As of each Valuation Date, uncredited cash dividends attributable to Company Stock previously allocated to a Participant's account in the ESOP Fund shall be credited to his or her account in such fund.

(b) As of each Valuation Date, uncredited whole and fractional shares of Company Stock resulting from stock dividends or splits attributable to Company Stock previously allocated to a Participant's account in the ESOP Fund shall be credited to his or her account in such Fund.

(c) If rights or warrants are issued with respect to any Company Stock held by the Trustee in the Company Stock Fund, such rights or warrants shall be appropriately reflected in Participants' Accounts, in accordance with rules established by the Plan Manager and uniformly applied, until sold or exercised by the Trustee and the proceeds appropriately reflected as directed by the Plan Manager.

6.6 **Voting of Company Stock**. The Trustee shall vote the shares of Company Stock held in the ESOP in the manner set forth in Section 4.1 of the Plan.

6.7 **Dividends Paid on Company Stock**. At the election of Participants, any cash dividend paid with respect to Company Stock credited to Participants' Accounts as of the record date of such dividend payment will be paid to the Trustee and reinvested in Company Stock or will be paid in cash either directly to such Participants or to the Trustee and, within 90 days following the close of the Plan Year, shall be distributed to such Participants. A Participant shall be deemed to elect to have the cash dividends automatically reinvested in Company Stock, unless the Participant files a timely election with the Plan Manager to have all or a portion of the cash dividends paid to the Participant.

(a) **Participant Irrevocable Elections**. The Plan Manager shall provide notice to each Participant that sets forth the right of each Participant to make an irrevocable election and the procedures for making such election. Such notice shall be provided to new Participants within a reasonable period of time commencing either before or after the person becomes a Participant in the Plan, but in no event later than a dividend payment date with respect to those dividends. Once made, a Participant's election is irrevocable and will continue from year to year until changed by the Participant in accordance with procedures established by the Plan Manager, as amended from time to time, except that a Participant must have a reasonable opportunity to change his or her election at least annually. A Participant's election shall be made in accordance with procedures established by the Plan Manager and shall become irrevocable at the time specified in such procedures, but in no event later than the close of the Plan Year during which such dividend are paid. If there is a change in the terms of the Plan governing the manner in which dividends are paid or distributed to Participants, then the Plan Manager shall notify the Participants of the new

49

MOT-ERISA 3905

terms, and Participants must be given a reasonable opportunity to make new elections under the new terms prior to the date on which the first dividend subject to the new terms or conditions is paid or distributed.

(b) **Agent to Disburse Payment of Dividends.** At the direction of the Plan Manager, the Trustee shall retain an agent to disburse payment of dividends. If directed by the Plan Manager, the Trustee shall provide that the dividend payments be made by the dividend disbursing agent:

      (i) directly to Participants;

      (ii) to the Company's payroll department, which shall serve, for this purpose, as agent for the Participants; or

      (iii) to the Trustee who is hereby authorized to pay any dividend directly to Participants or to appoint the Company's payroll department as disbursing agent for the Trustee.

(c) **Less Than One Share of Company Stock.** A cash dividend will not be subject to the election for reinvestment or paid to a Participant pursuant to the provisions of this Section 6.7, if, as of the applicable record date, such Participant's Account in the Company Stock Fund is credited with less than one share of Company Stock.

(d) **Fully Vested.** A Participant shall be fully vested in and have a non-forfeitable right to any cash dividends that are subject to the provisions of this Section 6.7, without regard to whether the Participant is vested in the stock with respect to which the dividend is paid.

(e) **Deduction Requirement.** Section 6.7 is intended to satisfy the requirements of Code Section 404(k) and the application of the provisions of this Section 6.7 is conditioned upon such dividends constituting "applicable dividends" as that term is used in Code Section 404(k)(2)(A)(iii) and qualifying for a deduction for a taxable year of the Company in the amount of the dividends that are subject to the election by Participants pursuant to this Section 6.7.

6.8 **Dividends Not Subject to Section 6.7.** Any cash dividend paid with respect to Company Stock that is not credited to Participants' Accounts under the ESOP as of the record date of such dividend payment, or is otherwise not subject to Section 6.7, shall be invested in Company Stock, or otherwise held, applied or invested, in the manner provided elsewhere in the Plan.

6.9 **Distribution of Company Stock.**

(a) **General Rule.** Upon a distribution of a Participant's Account, the Participant (or, if applicable, the Participant's Beneficiary) shall be entitled to receive a distribution of the Company Stock then credited to his or her Account under the ESOP Fund at the same time and in the same manner as he or she receives a distribution of the other portions of his or her Account balances in accordance with the terms of the Plan. A Participant shall not be entitled to elect a time or method of distribution, or to designate a Beneficiary, with respect to

**MOT-ERISA 3906**

such Company Stock that is different from the time and method of distribution and Beneficiary that are applicable to the other portions of the Participant's Accounts.

(b) **Cash-Outs**. For purposes of determining, pursuant to Section 6.8, whether a Participant's Account balances exceed $1,000 (or such other maximum amount as may be permitted by the Code for involuntary payments) for purposes of Section 5.3 or Article 13 of the Plan, the Participant's ESOP Fund shall not be considered separately, but shall be included with the other portions of his or her Participant Accounts.

(c) **Distributions in Company Stock**. All Company Stock held in a Participant's Accounts shall be distributed in accordance with the provisions of Article 5, except that the Participant may elect to demand a distribution of his or her Accounts under the ESOP Fund in the form of Company Stock.

(d) **Put Option**. In accordance with Code Sections 409(h)(4), (5) and (6), if Company Stock ceases to be readily tradable on an established market, then any Participant who otherwise is entitled to a total distribution from the Plan shall have the right (hereinafter referred to as the "Put Option") to require that the Company Stock credited to his or her Accounts shall be repurchased by the Company under a fair valuation formula. The Put Option shall only be exercisable during the sixty-day (60-day) period immediately following the date of distribution, and if the Put Option is not exercised within such sixty-day (60-day) period, it can be exercised for an additional sixty (60) days in the following plan year.

(i) The amount paid for the Company Stock pursuant to the exercise of a Put Option as part of a total distribution shall be paid in substantially equal periodic payments (not less frequently than annually) over a period beginning not later than thirty (30) days after the request for total distribution is made and not exceeding five (5) years. There shall be adequate security provided and reasonable interest paid on an unpaid balance due under this paragraph.

(ii) If the Company is required to repurchase Company Shares as part of an installment distribution, the amount to be paid for the Company Shares will be paid not later than thirty (30) days after the exercise of the Put Option.

6.10 **Withdrawal and Diversification Rights**.

(a) **Withdrawals and Loans**. A Participant may withdraw or obtain loan amounts from his or her Account in the ESOP Fund subject to the same rules as apply to withdrawals and loans from the Participant's Accounts generally under the Plan. A Participant may elect to receive any withdrawal from his or her Account in the ESOP Fund in the form of Company Stock rather than in cash.

(b) **Diversification Rights**. It is the intent of the Company that the fact that the Participant has the right, in accordance with Sections 4.5 and 10.1 of the Plan, to direct how his or her Account balances shall be invested, shall satisfy the diversification requirements of Code Section 401(a)(28). Accordingly, a Participant who has attained age 55 and has completed ten years of participation in the ESOP portion of the Plan shall be entitled to have all or any portion of his or her Account in the ESOP Fund and any earnings attributable

MOT-ERISA 3907

thereto invested in any Investment Fund other than the ESOP Fund, as provided in Section 4.5 and Article 10 of the Plan.

6.11 **Nonterminable Rights**. Except as otherwise provided in subsection 6.9(d), no shares of Company Stock in the ESOP Fund held or distributed by the Trustee may be subject to a put, call, or other option or to a buy sell or similar arrangement. The provisions of this Section 6.11 shall continue to be applicable to Company Stock even if the ESOP Fund ceases to be an employee stock ownership plan within the meaning of Code Section 4975(e)(7).

## ARTICLE 7 - QUALIFIED MILITARY SERVICE

7.1 **Military Leave of Absence**. Any employee of the Company or of an Affiliated Employer who enters into Service in the Uniformed Services shall, solely for purposes of the Plan, be on a Military Leave of Absence during his or her term of Service in the Uniformed Services. Such Military Leave of Absence shall continue from the employee's date of entry into the Service in the Uniformed Services to the earliest of the following:

(a) The expiration of the period following the date of his discharge from the Service in the Uniformed Services during which he or she is required to apply for reemployment as prescribed by USERRA;

(b) The date of his or her return to employment by the Company or an Affiliated Employer;

(c) The date of his or her employment by another company; or

(d) The date of his or her death.

7.2 **Distribution of Benefits During Military Leave of Absence**. A Participant on Military Leave of Absence, at any time following his or her induction into the Uniformed Services, may request a distribution of the amount which would be distributed under Section 5.4(a) if he or she had resigned or was discharged from the employment of the Company upon the date of his or her request. If the request is approved by the Plan Manager, in its sole discretion, such amount shall be paid over to the Participant within thirty (30) days from the date of such request. The remaining amount, if any, credited to the Participant's Company Contributions Account shall not be a Forfeiture, but shall remain in each of the funds in which such Participant has an interest as provided for hereafter in Sections 7.3 and 7.4. The Plan Manager shall cause to be credited to the Company Contributions Account of such Participant his or her proportionate share of the Company Contributions contributed for the Plan Year during which such Participant begins his or her Military Leave of Absence, if and when such contribution is made.

7.3 **Continuance of Participant's Interest in Fund During Military Leave of Absence**. A Participant on Military Leave of Absence shall continue to participate in the Plan as though he or she had remained in the active employment of the Company, except that he or she shall participate in the Company Contribution only to the extent provided for in Sections 7.2 and 7.5. The full amounts credited to the accounts of a Participant on Military Leave of Absence who does not receive a distribution of his or her interest in the Trust Fund and the remaining amount, if any, credited to the account of Participant on Military Leave of Absence who has received a distribution

CHI 11122185.4

MOT-ERISA 3908

of the amounts credited to his or her Accounts under the provisions of Section 7.2, shall constitute such Participant's interest in the Fund.

7.4 **Effect of Termination of Military Leave of Absence.** A Participant on Military Leave of Absence who is reemployed shall be credited with his or her share of the Company Contributions for the Plan Year during which he or she returns to the active employment of the Company based on his or her Participant Contributions for said Plan Year. A Participant who does not return to active employment with the Company on or before the date of the expiration of his or her Military Leave of Absence shall cease to be a Participant upon the expiration of his or her Military Leave of Absence and there shall be paid over to him or her the amount (determined without giving effect to any distribution previously made to said Participant under the provisions of Section 7.2) which would be paid over to him or her under the provisions of Section 5.4 of the Plan if he or she had resigned from employment of the Company upon the date of the expiration of his or her Military Leave of Absence, reduced by the amount of any distribution previously made to said Participant under the provisions of Section 7.2. The remaining amounts credited to the accounts of such Participant shall constitute a Forfeiture. Any amount credited to a Participant under the provisions of this Article 7 to which the Participant is not entitled because of the expiration of his or her Military Leave of Absence which is unknown to the Plan Manager shall, upon discovery thereof, be treated as a Forfeiture.

7.5 **Employees Entitled to the Benefits of USERRA.** Notwithstanding anything to the contrary which may be contained elsewhere in the Plan, the following provisions shall apply to each Employee of the Company or of an Affiliated Employer who is entitled to the benefits of USERRA and who is reemployed (the conditions of USERRA for reemployment having been complied with) by the Company or an Affiliated Employer, as applicable, after a period of Qualified Military Service, subject to the conditions and restrictions of USERRA and Code Section 414(u):

(a) Each such Employee reemployed under the provisions of USERRA shall be treated as not having incurred a Break in Service by reason of the Employee's period of Qualified Military Service.

(b) Each period of Qualified Military Service served by an Employee shall be, upon reemployment under the provisions of USERRA, deemed to constitute service with the Company or the Affiliated Employer and shall be counted in determining Years of Service for all purposes of the Plan.

(c) A Participant reemployed under the provisions of USERRA shall have the right, during the period which begins on the date of reemployment and the duration of which is three (3) times the period of Qualified Military Service of such Participant or five (5) years, whichever is less, to make Participant Contributions in an amount elected by such Participant, but not exceeding the maximum amount of Participant Contributions which such Participant would have been permitted to make under the Plan during the period of Qualified Military Service if he or she had remained continuously employed by the Company throughout such period, based on the Compensation the Participant would have received if he or she were not in Qualified Military Service. Such deemed Compensation shall be determined based on the rate of Compensation the Participant would have received from the Company but for his or her Qualified Military Service, or if such Compensation is not reasonably certain, based on such Participant's average Compensation from the Company during the twelve (12) month period immediately preceding the Qualified Military Service,

or, if shorter, the period of employment immediately preceding the Qualified Military Service. With respect to such Participant Contributions made by a reemployed Participant as aforesaid, the Company shall make Company Contributions to such Participant's Company Contributions Accounts in such amounts as would have been required had such Participant Contributions been made during the period of the Participant's Qualified Military Service; provided, however, that no Income earned during such Participant's Qualified Military Service shall be allocated to such Participant's Accounts based on Participant Contributions or Company Contributions made pursuant to this paragraph (c).

7.6 **Applicable Laws**. The provisions of this Article 7 shall be subject to all applicable statutes and laws of the United States, including, but not limited to, USERRA and Code Section 414(u), and the rules and regulations thereunder, and in case of any inconsistency, said statutes, laws, rules and regulations shall control. The provisions of this Article 7 shall take precedence over any other inconsistent Plan provisions.

## ARTICLE 8 - PLAN ADMINISTRATION

8.1 **Membership of the Retirement Benefits Committee**. The Plan shall be administered by the Retirement Benefits Committee which is comprised of one or more individuals appointed by the Board of Directors, or by a delegate appointed by the Board of Directors, to serve at its pleasure and without compensation from the Trust Fund. Members of the Retirement Benefits Committee may, but need not, be directors, officers or employees of the Corporation. Any such member of the Retirement Benefits Committee appointed by the Board of Directors or its delegate may resign by delivering his or her written resignation to the Board of Directors or its delegate. Any member of the Retirement Benefits Committee may be removed, without cause, by the Board of Directors or its delegate. In the event of the resignation, removal or death of a member of the Retirement Benefits Committee, the Board of Directors or its delegate may appoint a replacement. The Company may, in its sole and absolute discretion, pay expenses authorized and incurred by the Retirement Benefits Committee in the administration of the Plan, but is not required to do so. Any such expenses not paid by the Company shall be paid from the Trust Fund.

8.2 **Powers of the Retirement Benefits Committee**. The Retirement Benefits Committee shall have authority and discretion to control and manage the operation and administration of the Plan, including all rights and powers necessary or convenient to the carrying out of its functions hereunder, whether or not such rights and powers are specifically enumerated herein. The Retirement Benefits Committee may, in its discretion, delegate authority with regard to the administration of the Plan to any individual, officer or committee in accordance with subparagraph (i) immediately below. Notwithstanding any other provision of the Plan, if an action or direction of any person to whom authority hereunder has been delegated conflicts with an action or direction of the Retirement Benefits Committee, then the authority of the Retirement Benefits Committee shall supersede that of the delegate with respect to such action or direction. Without limiting the generality of the foregoing, and in addition to the other powers set forth in this Article 8, the Committee shall have the following express authorities:

    (a) To construe and interpret the provisions of the Plan; to decide all questions arising thereunder, including, without limitation, questions of eligibility for participation, eligibility for benefits, the validity of any election or designation made under the Plan, and the amount, manner and time of any allocation to accounts or payment of any benefits

hereunder; and to make factual determinations necessary or appropriate for such decisions or determination;

(b)     To prescribe procedures to be followed by Participants, former Participants, Beneficiaries or alternate payees in filing applications for benefits and any other elections, designations and forms required or permitted under the Plan;

(c)     To prepare and distribute information explaining the Plan;

(d)     To receive from the Company and from Participants, former Participants, Beneficiaries and alternate payees such information as shall be necessary for the proper administration of the Plan;

(e)     To furnish the Corporation, upon request, such reports with respect to the administration of the Plan as are reasonable and appropriate;

(f)     To receive, review and keep on file, as it deems convenient or proper, reports of the financial condition, and of the receipts and disbursements, of the Trust from the Trustee;

(g)     To appoint or employ advisors, including legal and actuarial counsel (who may also be counsel to the Company) to render advice with regard to any responsibility of the Committee under the Plan or to assist in the administration of the Plan;

(h)     To select annuity providers to provide benefits from the Plan and to select investment managers for purposes of the Plan;

(i)     To designate in writing other persons to carry out a specified part or parts of its responsibilities hereunder (including this power to designate other persons to carry out a part of such designated responsibility).  Any such designation must be accepted by the designated person who shall acknowledge in writing that he, she or it is a fiduciary with respect to the Plan.  Any such person may be removed by the Retirement Benefits Committee at any time with or without cause; and

(j)     To rule on claims, and to determine the validity of qualified domestic relations orders described in Code Section 414(p) and to comply with such orders.

The Retirement Benefits Committee shall perform its duties under the Plan and the Trust Agreement solely in the interests of the Participants (and their Beneficiaries).  All rules, actions, interpretations and decisions of the Retirement Benefits Committee are conclusive and binding on all persons, and shall be given the maximum possible deference allowed by law.

8.3    **Procedures of the Retirement Benefits Committee**.  The Retirement Benefits Committee shall act by a majority of its members at the time in office, and such action may be taken either by a vote at a meeting or in writing without a meeting.  The Retirement Benefits Committee may authorize any person or persons, who may but need not be a member or members of the Retirement Benefits Committee, to execute any document or documents on behalf of the Retirement Benefits Committee, in which event the Retirement Benefits Committee shall notify the Trustee in

CHI 11122185.4                                                          MOT-ERISA 3911

writing of such action and the name or names of such person or persons so designated. The Trustee thereafter may accept and rely upon any document executed by such person or persons as representing such action by the Retirement Benefits Committee until the Retirement Benefits Committee shall file with the Trustee a written revocation of such designation.

8.4 **Adoption of Rules by the Retirement Benefits Committee**. The Retirement Benefits Committee may adopt such rules as it deems necessary, desirable or appropriate. All rules and decisions of the Retirement Benefits Committee shall be uniformly and consistently applied to all Participants in similar circumstances. When making a determination or calculation, the Retirement Benefits Committee shall be entitled to rely upon information furnished by a Participant or Beneficiary, the Company, the legal counsel of the Company, the Trustee, or such other person as it deems appropriate.

8.5 **Directions to Trustee**. The Retirement Benefits Committee shall advise the Trustee in writing with respect to all benefits which become payable under the terms of the Plan and shall direct the Trustee to pay such benefits from the Trust Fund.

8.6 **Records to be Kept by the Retirement Benefits Committee**. The Retirement Benefits Committee shall keep a record of all its proceedings and acts and shall keep all such books of account, records and other data as may be necessary for the proper administration of the Plan. The Retirement Benefits Committee shall file or cause to be filed all such annual reports, financial and other statements as may be required by any Federal or State statute, agency or authority within the time prescribed by the law or regulations for filing said documents. The Retirement Benefits Committee shall furnish such reports, statements, and other documents to Participants and Beneficiaries of the Plan as may be required by any Federal or State statute or regulation within the time prescribed for furnishing such documents.

8.7 **Inspection of Records of the Retirement Benefits Committee**. The Retirement Benefits Committee's records and books of account shall be open to inspection at all reasonable times by the Board of Directors or any person designated from time to time by the Board of Directors.

8.8 **Indemnification**. The Company shall indemnify each member of the Retirement Benefits Committee, and the directors, officers and employees of the Company involved in the operation and administration of the Plan against any and all claims, loss, damages, expenses and liabilities arising from any action or failure to act, except when the same is determined by the Board of Directors to be due to gross negligence or willful misconduct of such member.

8.9 **Claims Procedure**. The Committee shall make all determinations as to the right of any person to a benefit. The Retirement Benefits Committee shall establish a claims procedure which complies with Section 503 of ERISA and the regulations thereunder.

8.10 **Participants Subject to Section 16(b) of Securities Exchange Act**. Notwithstanding anything to the contrary in this Plan, to prevent violations of the Securities Exchange Act of 1934, as amended, (the "1934 Act"), the Retirement Benefits Committee or its delegate shall have the right to impose restrictions and limitations which are additional to and different from those contained in this Plan which will apply to Participants who are subject to Section 16(b) of the 1934 Act, with respect to transactions relating to the Motorola Stock Fund, including,

but not limited to (a) transfers into and out of the Motorola Stock Fund, and (b) loans and withdrawals from the Motorola Stock Fund.

8.11 **Assignment of Duties under ERISA Section 404(c)**. The 404(c) Fiduciary is responsible for the following matters pertaining to compliance with Section 404(c) of ERISA and the regulations thereunder, and shall have all of the rights, powers and authority of the Retirement Benefits Committee under Section 8.2 in the performance of his duties hereunder:

(a) receiving investment instructions from Participants, Beneficiaries and alternate payees, and he or she shall be obligated to comply therewith except that investment instructions need not be complied with if they would result in a prohibited transaction described in Section 406 of ERISA or Section 4975 of the Code, would generate income that would be taxable to the Plan or instructions described in Department of Labor Regulation Section 2550.404(c)-1(d)(2)(ii);

(b) providing to Participants, Beneficiaries and alternate payees written confirmations of investment instructions; and

(c) providing to Participants, Beneficiaries and alternate payees the information required by Department of Labor Regulation Section 2550.404(c)-1(b)(2)(B)(1) and (2).

The 404(c) Fiduciary may designate one or more persons to act on his or her behalf in fulfilling this responsibility.

8.12 **Valuation of Fund**. As provided in Section 4.4 of the Plan, the Retirement Benefits Committee shall, at least annually, prepare a statement of the condition of the Trust Fund .

8.13 **Plan Manager.** The Director, Global Rewards, or such other person as may be subsequently appointed by the Retirement Benefits Committee, shall be the Plan Manager. The Plan Manager shall be responsible for the day to day administration of the Plan and for carrying out those duties and responsibilities assigned to the Plan Manager under the terms of the Plan. The Plan Manager shall have and may exercise such powers, rights, and authority as are granted to the Retirement Benefits Committee under the Plan in connection with any responsibility assigned or delegated to the Plan Manager under the terms of the Plan or by the Retirement Benefits Committee, including the authority to delegate his or her responsibilities hereunder in accordance with Section 8.2(i).

## ARTICLE 9 - TRUSTEE

9.1 **Trust Agreement**. The Corporation, on behalf of itself and other corporations that may be participating in the Plan, has entered into a trust agreement creating a Trust, under which the Trustee shall hold the assets of the Trust Fund. Such trust agreement shall be a part of the Plan. The Trust shall be administered by the Trustee in accordance with the terms of the trust agreement and the Plan. If any provisions of the Plan and the trust agreement shall be inconsistent or otherwise in conflict regarding the rights, duties or obligations of the Trustee, the provisions of the trust agreement shall control.

CHI 11122185.4

MOT-ERISA 3913

9.2    **Appointment of Successor Trustee**. In the event of the resignation or removal of the Trustee, or the inability or refusal of the Trustee to act under the Trust, or in the event of the death of an individual Trustee, the Board of Directors shall appoint a successor Trustee who may be either an individual or a corporation empowered to act as a trustee under the Trust.

## ARTICLE 10 - INVESTMENT OF TRUST FUND ASSETS

10.1    **Direction of Investments**. Subject to Sections 4.5 and 8.11, the Retirement Benefits Committee shall have the power to direct the investment and reinvestment of the Trust Fund. In connection with such power, the Retirement Benefits Committee may delegate in writing its authority to an investment manager or investment managers. In the event the authority to manage the assets of the Plan is delegated to an investment manager or investment managers, the Trustee, upon receiving written instructions from the investment manager or investment managers, shall receive or deliver the assets purchased or sold for the Trust Fund and make or receive payment for such assets purchased or sold for the Trust Fund in accordance with such instructions.

10.2    **Investment Guidelines**. The Retirement Benefits Committee may from time to time adopt a written investment policy and written investment guidelines which shall govern the manner in which the assets of the Trust Fund are to be invested. The investment manager or investment managers shall follow the investment guidelines in managing the assets of the Trust Fund. The investment policy and investment guidelines may contain, among other things, requirements for diversification and standards for the quality of securities to be held in the Trust Fund. Before the investment policy and the investment guidelines become effective, such investment policy and investment guidelines must be approved in writing by the Trustee and such written approval must be delivered to the Committee. The ESOP portion of the Plan is intended to be invested primarily in employer securities as that term is defined in Code Section 409(l).

10.3    **Investment in Company Securities**. The Trust Fund may be invested in Company Securities; provided, however, that prior to July 1, 2000, the Trustee shall not be instructed to acquire any Company Securities in any Plan Year in which the value of the Company Securities held in the Trust Fund exceeds fifty percent (50%) of the value of the assets of the Trust Fund.

## ARTICLE 11 - CHANGES IN THE ORGANIZATION OF THE COMPANY

11.1    **Merger or Consolidation**. In the case of any merger or consolidation with, or transfer of assets and liabilities to, any other plan, provision shall be made so that each Participant in the Plan on the date thereof (if the Plan then terminated) would receive a benefit after the merger, consolidation or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately prior to the merger, consolidation or transfer (if the Plan had then terminated).

11.2    **Transfer of a Participant to a Subsidiary**. If a Participant is transferred to and becomes an employee of a Subsidiary that is not participating in the Plan, but maintains a retirement plan qualified under Sections 401(a) and 401(k) of the Code containing substantially the same provisions as the provisions of the Plan, the Plan Manager may, at the request of the Participant and with the consent of the plan administrator of the transferee plan, transfer to the trustee under the plan of such Subsidiary the full amounts credited to the accounts of the Participant in the Trust Fund

CHI 11122185.4

MOT-ERISA 3914

(without regard to any provisions respecting Forfeitures), plus such Participant's share of the Company Contributions for such Plan Year and any other credits allocable as of the date of such transfer. Upon such transfer the Participant shall have no further right or interest under the Plan or in and to the Trust Fund hereby created.

11.3    **Transfer of a Participant from a Subsidiary to the Company.** If a participant in a retirement plan qualified under Code Sections 401(a) and 401(k) maintained by any Subsidiary that is not participating in the Plan is transferred to and becomes an Employee of the Company, the Plan Manager is authorized to accept the transfer to it by the trustee under such tax-qualified 401(k) plan of the share of such Participant thereunder and to hold the same under the terms of the Plan with the same force and effect as though the participant had been a Participant hereunder during the period of time he or she was a participant under the plan of the Subsidiary, in which event such participant shall forthwith become a Participant in the Plan, and the period of his or her employment with such Subsidiary shall be included in determining Years of Service under the Plan.

11.4    **Sale, Disposition or Transfer of a Subsidiary or Business Subdivision.**

(a)    **Authority to Transfer Out.** In the event of the sale, disposition, transfer or spin-off of a Subsidiary which is participating in the Plan, or of all or part of a business subdivision, by the Corporation or by a Subsidiary which is participating in the Plan, to any person, firm, partnership, corporation or other entity (hereinafter called "purchaser" and which, in the case of a spin-off of a Subsidiary may include the Subsidiary itself), which sale, disposition, transfer or spin-off includes the transfer to the purchaser of Participants (hereinafter called a "Transferred Employing Unit"), if the conditions of this Section 11.4 are satisfied, the pro rata share of the Trust Fund (determined as provided in Sections 11.4(b) and (d)) allocable to Participants transferred to and employed by the purchaser of the transferred Employing Unit (hereinafter called "Transferred Participants") shall be held subject to transfer as hereinafter provided. In addition, in the event of:

(i)    the sale, disposition or transfer of all or part of a business subdivision by the Corporation or by a Subsidiary which is participating in the Plan to a Subsidiary which is not participating in the Plan ("purchaser"), which sale, disposition or transfer includes the transfer to the purchaser of Participants ("Transferred Employing Unit"), and

(ii)    the purchaser's cessation as a Subsidiary as a result of the subsequent sale, disposition or transfer of all or a portion of the Corporation's (or other Subsidiary's) interest in the purchaser,

the provisions of this Section 11.4 shall apply.

(b)    **Requirements to Transfer Out.** If the purchaser of the Transferred Employing Unit shall have established a plan qualified under Code Section 401(a) with provisions for accepting such transferred funds, the Trustee shall transfer to the trustee of the trust under such plan (or to the funding agent, if the plan is not implemented by a trust) each Transferred Participant's pro rata share of the Trust Fund as determined hereinafter in Section 11.4(d) (the "transferred interests"). Before any such transfer, purchaser shall furnish evidence to the satisfaction of the Retirement Benefits Committee prior to the First Transfer Date, as hereinafter defined, that:

MOT-ERISA 3915

(i)     purchaser's plan qualified under Code Section 401(a);

(ii)     the plan provides for the receipt of such transferred interests on a fully vested basis, whether or not such transferred interests were fully vested under the terms of the Plan;

(iii)     the terms of the purchase provide for such transfer or the purchaser files with the Corporation a written request for the transfer of such assets on behalf of Participants being employed by the Transferred Employing Unit held subject to transfer pursuant to this Section 11.4; and

(iv)     the purchaser's plan provides for the preservation of each "Section 411(d)(6) protected benefit," as defined in Treasury Regulation Section 1.411(d)-4, for each Transferred Participant.

The Retirement Benefits Committee shall, within a reasonable time (the "First Transfer Date") after the conditions specified herein have been satisfied, and taking into account any required filings with governmental agencies and compliance with any required waiting periods, transfer to the trustee or other funding agent of the transferee plan such assets of the Fund (in cash or other property and, in all cases, promissory notes or other evidences of indebtedness with respect to outstanding loans made to Transferred Participants) having a fair market value as of the Valuation Date determined under Section 11.4(d) hereof equal to the aggregate pro rata interests of Transferred Participants in the Fund as determined by the Committee. The remaining balance, if any, of the amount required to be transferred will be transferred within a reasonable time (the "Final Transfer Date") following the First Transfer Date. Such remaining balance shall be increased or decreased by an amount equal to any increase or decrease in the pro rata interest of the Transferred Participants in the Fund which may have occurred during the period between the valuation date and the First Transfer Date. Upon final transfer such Transferred Participants shall have no further interest in the Fund. In determining the fair market value of the Fund, an evidence of indebtedness of a Transferred Participant will be deemed to have a value equal to its unpaid balance plus accrued but unpaid interest. If the employment with the purchaser of any Transferred Participant terminates before the First Transfer Date, no transfer shall be made for such Transferred Participant, and if any Forfeiture results from any such termination, such Forfeiture shall remain in the Trust Fund.

(c)     **Transaction Provides for No Transfer Out**. If the terms of the sale, disposition or transfer do not provide for the transfer of Trust Funds, or if such terms do provide for the transfer of Trust Funds and the purchaser does not maintain or does not establish a plan meeting the requirements of paragraph (b) above within a reasonable time (as determined by the Corporation), the portion of the Trust Fund attributable to such Transferred Participants shall, if not then vested, become fully vested and shall be held by the Trustee for distribution to such Participants pursuant to the provisions of the Plan. To the extent permitted by law, Transferred Participants shall be treated as having incurred a termination of employment and separation from service for purposes of the Plan.

(d)     **Valuations**. The interest of a Transferred Participant transferable as herein provided shall be his or her Account balances of the Valuation Date next preceding the First

Transfer Date, unless the Retirement Benefits Committee elects to use a different valuation date. If the Retirement Benefits Committee decides, one or more special valuations may be made for purposes of determining the pro rata share of the Fund attributable to Transferred Participants. Such valuation or valuations shall be adjusted by adding or deducting from each such valuation (as the case may be) such amounts as may be necessary to take into account:

> (i)    any contributions made by Transferred Participants after the last preceding valuation date;

> (ii)   each Transferred Participant's share of any Company Contributions accrued but not yet paid with respect to the Plan year preceding the Plan Year in which his or her transfer of employment to the purchaser occurs (the "Employment Transfer Date");

> (iii)  any other credits allocable to such Transferred Participants with respect to the Plan Year preceding the Plan Year in which his or her Employment Transfer Date occurs, credited or payable after the end of such Plan Year;

> (iv)   any amounts forfeited by any Transferred Participant who shall have terminated his or her employment (whether by reason of death, disability, retirement or otherwise) with purchaser after his or her Employment Transfer Date but prior to the Final Transfer Date; and

> (v)    amounts determined as provided in Article 5 hereof with respect to the Company Contributions for the Plan Year in which his or her Employment Transfer Date occurs.

(e)    **Loans and Hardship Withdrawals Prior to Transfer.**  In order to avoid any undue hardship which might result from a delay in the transfer of the portion of the Trust Fund held subject to transfer attributable to Transferred Participants, the Plan Manager may make a loan or hardship withdrawal to a Transferred Participant, as provided in Section 5.5 or 5.8, respectively, under the rules and regulations of the Plan Manager then in effect with respect to Transferred Participants, provided such loan or hardship withdrawal is effected prior to the First Transfer Date.

11.5   **Employees Transferred in Acquisition.**  In the event that the Company or an Affiliated Employer succeeds by merger, acquisition, consolidation or other transaction, to all or part of the assets or business of, or enters into a joint venture with, any other person, firm, partnership, corporation or other entity (a "Person"), and in either case employees of such other Person become Employees of the Company or an Affiliated Employer, the years of service of each such Employee with such other Person prior to the date such Employee becomes an Employee of the Company or an Affiliated Employer (and prior to the date such Person becomes an Affiliated Employer, as applicable) shall not be deemed to be Years of Service with the Company or an Affiliated Employer for any purpose of the Plan, except as otherwise determined by action of the Motorola Director of Human Resources or his or her delegate and reflected in an appendix to the Plan.

MOT-ERISA 3917

## ARTICLE 12 - AMENDMENT AND TERMINATION OF THE PLAN

12.1 **Amendments to Comply with Law**. The Board of Directors or its delegate, or the Retirement Benefits Committee, may at any time and from time to time by resolution make any amendment or amendments to the Plan to bring the Plan into compliance or conformity with, or to enable the Plan to meet the requirements of, any law, regulation or ruling, as now in effect or hereafter amended or adopted.

12.2 **Amendment of the Plan**. The Plan may be amended at any time and from time to time and for any reason by resolution of the Board of Directors or its delegate; provided, however, that no amendment shall be adopted the effect of which would be:

      (a) to revest in the Company any interest in the assets of the Fund, or any part thereof;

      (b) to divest any Participant of his or her interest therein inconsistently with the provisions of the Plan;

      (c) to give any Participant any assignable or exchangeable interest or any right or thing of exchangeable value in the Fund in advance of the time distributions now or thereafter provided for hereunder may be made;

      (d) to authorize or permit any part of the Fund (other than such part as is required to pay taxes and administrative expenses) to be used for or diverted to purposes other than for the exclusive benefit of the Participants, their Beneficiaries or estates; or

      (e) to decrease a Participant's Account balance or reduce or eliminate a Code Section 411(d)(6) protected benefit.

12.3 **Termination by Corporation**. The Corporation hopes and expects to continue the Plan and the Trust indefinitely. However, the Corporation may terminate the Plan and the Trust at any time, and such action may be effected by a resolution adopted by the Board of Directors.

12.4 **Effect of Termination**. Upon complete discontinuance of the Company Contributions or the full or partial termination of the Plan, the accounts of the Participants affected by such full or partial termination shall be one hundred percent (100%) vested, and no portion of such accounts shall be a Forfeiture, except to the extent that law or regulations may require a Forfeiture in order to prevent discrimination in favor of officers, shareholders or Highly Compensated Employees. Upon termination of the Plan, the Board of Directors shall direct that the amounts in the Trust Fund, after the payment of expenses properly chargeable against the Trust Fund, shall be distributed by one or more of the following methods:

      (a) In cash or in kind and in such manner as the Plan Manager shall determine;

      (b) In such manner and at such times as provided in Article 5 of the Plan; or

      (c) If the Corporation or the Company has any other plan qualified under Code Section 401(a) with provisions for accepting the Trust Fund, by transfer to the Trustee of such other plan (or to the funding agent, if such plan is not implemented by a trust) all of the

CHI 11122185.4

MOT-ERISA 3918

amounts credited to the Accounts of the Participants, and upon such transfer, the Participants shall have no further interest in the Trust Fund.

## ARTICLE 13 - RESTRICTION ON ALIENATION OF BENEFITS

13.1   **Nonalienation.**  Except as provided in Sections 5.5 and 5.8, benefits payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit under the terms of the Plan; and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder shall be void.

13.2   **Exceptions to Nonalienation.**  The preceding Section shall not apply to:

(a)   an order or requirement to pay funds to the Plan arising under a judgment or conviction for a crime involving the Plan or under a civil judgment entered by a court in an action alleging a violation of Part 4 of ERISA to the extent permitted under Code Section 401(a)(13)(C) and ERISA Section 206(d)(4); or

(b)   the creation, assignment or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order which is determined by the Plan Manager or its delegate to be a qualified domestic relations order ("QDRO") as defined in Code Section 414(p) and ERISA Section 206(d); *provided however,* a domestic relations order entered prior to January 1, 1985 may, in the discretion of the Plan Manager or its delegate, be treated as a QDRO, even though the order does not satisfy the requirements of Sections 414(p) of the Code and 206(d) of ERISA.

13.3   **Qualified Domestic Relations Order Rules.**  The amount assigned or awarded to an alternate payee by a QDRO shall be paid to such alternate payee as soon as administratively feasible after acceptance of the QDRO, even though the Participant to whom the QDRO relates is not entitled to receive a distribution from the Plan at that time, and payment will be made in a lump sum unless the alternate payee elects a different form of payment. Payment of a benefit having a present value in excess of five thousand dollars ($5,000) may be made without the consent of the alternate payee unless the QDRO requires such consent. If the amount assigned or awarded to the alternate payee by a QDRO is not to be paid out immediately, a separate account in the name of the alternate payee shall be established in the Investment Fund(s), specified in the QDRO or elected by the alternate payee, and in the absence of such specification or election, in the same proportion in Investment Funds as the Participant's Account is invested at the time the separate account is established, and the amount awarded to the alternate payee shall be deposited in such Account. An alternate payee shall not have the status of a Participant and shall not have any of the rights or options of a Participant, other than the rights to direct the investment of the amount in his or her account as provided in Section 4.5 hereof and to designate a Beneficiary or Beneficiaries with respect to his or her Account in the Plan. An alternate payee's Account shall share in the Income of the Investment Fund(s) in which invested from the time of deposit until the time of distribution. The Trust Fund shall neither be liable for nor subject to the debts, contracts, liabilities, engagements or torts of any person entitled to benefits hereunder. All reasonable expenses incurred in determining whether a domestic relations order or proposed order is a QDRO (or would be a QDRO if adopted by the court) shall be charged against

CHI 11122185.4

**MOT-ERISA 3919**

the account of the Participant or alternate payee seeking such determination, except to the extent paid by the Company in its sole discretion.

## ARTICLE 14 - MISCELLANEOUS

14.1 **Participation of Subsidiaries**. Any Subsidiary may at any time participate in the Plan by filing with the Board of Directors a certified copy of the resolution of its board of directors authorizing such action and stating therein the date such Subsidiary is to be included hereunder; provided, however, that the Board of Directors must also approve such Subsidiary's participation in the Plan. Any participating Subsidiary may at any time terminate its participation in the Plan by filing with the Board of Directors a certified copy of the resolution of its board of directors authorizing such action and stating therein the effective date of such termination. Upon such termination, the Retirement Benefits Committee shall determine the proportionate share of such valuation attributable to such Subsidiary having participated in the Plan. Such proportionate share shall be and become fully vested in the Participants in the employ of such Subsidiary to the extent provided in Section 12.4 and shall be distributed, held or transferred, as the Retirement Benefits Committee shall determine, in accordance with the last sentence of Section 12.4.

14.2 **Sole Benefit of Participants**. The Trust Fund shall be administered for the sole and exclusive benefit of the Participants in the Plan and, to the extent applicable, their Beneficiaries.

14.3 **Nonguarantee of Employment**. Nothing contained in the Plan shall be construed as a contract of employment between the Company and any Employee or Participant, or as a right to be continued in the employment of the Company, or as a limitation of the right of the Company to discharge any of its Employees, with or without cause.

14.4 **Resolutions of the Board of Directors**. Any action required to be taken by the Board of Directors under the provisions of the Plan shall be evidenced by a resolution of the Board of Directors.

14.5 **Written Notice by Trustee**. Any notice, direction, request or recommendation required under the Plan to be given or delivered by the Trustee to the Company, the Board of Directors (or its delegate), the Retirement Benefits Committee, or the Plan Manager shall be in writing, signed by an officer of the Trustee or such other person authorized by the Trustee to sign for the Trustee.

14.6 **Gender and Numbers**. Whenever in the Plan the masculine gender is used, it shall be deemed to mean the feminine gender also, unless the context clearly indicates to the contrary.

14.7 **Headings**. The titles or headings of the respective Articles and Sections in the Plan are inserted merely for convenience, and shall be given no legal effect.

14.8 **Litigation.** In any action or proceeding regarding any Plan assets, any Plan benefits or the administration of the Plan, any final judgment which is not appealed or appealable and which may be entered in such action or proceeding shall be binding and conclusive on the parties hereto and on all persons having or claiming to have any interest in the Plan. Notwithstanding any other provision of the Plan, if the Retirement Benefits Committee, the Trustee, the Plan or the Trust is required by a final court order to distribute the benefits of a Participant other than in a manner

MOT-ERISA 3920

required under the Plan, then the Retirement Benefits Committee shall cause the Participant's benefits to be distributed in a manner consistent with such final court order. However, the Retirement Benefits Committee shall not be required to comply with the requirements of a final court order in an action in which the Plan Manager, the Trustee, the Plan or the Trust was not a party, except to the extent such a final court order is a qualified domestic relations order.

14.9    **Governing Law**. The Plan shall be construed and administered according to the laws of the State of Illinois to the extent that such laws are not preempted by the laws of the United States of America.

*       *       *       *       *

**[Remainder of the page intentionally left blank.]**

CHI 11122185.4

MOT-ERISA 3921

**IN WITNESS WHEREOF,** the undersigned have executed this Motorola 401(k) Plan, As Amended and Restated Effective January 1, 2006 as of this _____ day of November, 2006.

_____
Ronald T. Miller


_____
James MacLaughlin


_____
James Foote


_____
Laurel Meissner

CHI 11122185.4

MOT-ERISA 3922

**EXHIBIT A**
**Supplement to the**
**Motorola, Inc. 401(k) Profit Sharing Plan**
**for the**
**Philips Consumer Communications L.P. 401(k) Retirement Savings Plan**

Effective September 1, 2000, assets from the Philips Consumer Communications L.P. 401(k) Retirement Savings Plan (the "PCC Plan") were transferred into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola Plan"), pursuant to the Motorola-Lucent-PCC Transfer Agreement, dated August 28, 2000. The following provisions shall apply effective September 1, 2000 to former participants in the PCC Plan with respect to whom a transfer of assets and liabilities was made from the PCC Plan to the Motorola Plan (a "PCC Participant") in connection with such asset transfer:

1. **Withdrawal of After-Tax Contributions.** A PCC Participant who is an Employee may withdraw all or any portion of his or her account attributable to participant voluntary after-tax contributions (as adjusted for earnings and/or losses attributable thereto) transferred from the PCC Plan to the Motorola Plan.

2. **Withdrawal of Rollover Contributions.** A PCC Participant who is an Employee, and to whom no withdrawal under paragraph 1 above is available, may withdraw all or any portion of his or her account attributable to participant Rollover Contributions (as adjusted for earnings and/or losses attributable thereto) transferred from the PCC Plan to the Motorola Plan.

3. **Withdrawal upon Attaining Age 70½.** A PCC Participant who is an Employee, and who has attained age 70½, may withdraw all or any portion of his or her account attributable to amounts transferred from the PCC Plan to the Motorola Plan.

4. **Withdrawal of Matching Contributions.** Notwithstanding Section 5.9 of the Motorola Plan, a PCC Participant who is an Employee, and who has attained age 59½, may withdraw all or any portion of his or her account attributable to matching contributions (as adjusted for earnings and/or losses attributable thereto) transferred from the PCC Plan to the Motorola Plan.

5. **Withdrawal of Philips Electronics Matching Contributions.** This paragraph applies to a PCC Participant who previously participated in the Philips Electronics North America Corporation Employee Savings Plan (a "Philips Electronics Plan") and for whom a "Transferor Plan Matching Account" was maintained in the PCC Plan as a result of such participation. A PCC Participant who is an Employee, and who has sixty or more months of participation in the Plan, the PCC Plan and/or the Philips Electronics Plan, may withdraw all or any portion of his or her account attributable to matching contributions to the Philips Electronics Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the PCC Plan to the Motorola Plan as the Transferor Plan Matching Account. A PCC Participant who is an Employee, and who has less than sixty months of participation in the Plan, the

PCC Plan and/or the Philips Electronics Plan, may withdraw all or any portion of his or her account attributable to matching contributions to the Philips Electronics Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the PCC Plan to the Motorola Plan as the Transferor Plan Matching Account, excluding the actual aggregate dollar amount of employer contributions to such Transferor Plan Matching Account made during the twenty-four months immediately preceding the first day of the month following the Valuation Date of the withdrawal.

6.   **Rules Applicable to Withdrawals.**   A PCC Participant may initiate withdrawals under this Supplement by submitting a request in such form and in such manner as the Committee may determine. Unless the Committee determines otherwise by rule or regulation of general application, a Participant may take no more than one withdrawal under a specific paragraph above in any six-month period, and the minimum withdrawal under any paragraph above shall be two hundred dollars ($200).

The above provisions shall not affect the rights of PCC Participants to take such other withdrawals and distributions as may be available to them under the terms of the Motorola Plan.

**Approved and Adopted November 7, 2000.**

CHI 11122185.4

MOT-ERISA 3924

**EXHIBIT B**
**Supplement to the**
**Motorola, Inc. 401(k) Profit Sharing Plan**
**for the**
**Software Corporation of America Thrift Incentive & Profit Sharing Plan**

Effective December 29, 2000, the Software Corporation of America Thrift Incentive & Profit Sharing Plan (the "SCA Plan") will be merged into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola Plan"). The following provision shall apply effective December 29, 2000 to former participants in the SCA Plan with respect to whom a transfer of assets and liabilities was made from the SCA Plan to the Motorola Plan (an "SCA Participant") in connection with such merger:

1.  **In-Service Withdrawal upon Attaining Age 59½.** An SCA Participant who is an Employee, and who has attained age 59½, may withdraw all or any portion of his or her account attributable to amounts transferred from the SCA Plan to the Motorola Plan.

2.  **Rules Applicable to In-Service Withdrawals.** An SCA Participant may initiate withdrawals under this Supplement by submitting a request in such form and in such manner as the Committee may determine. Unless the Committee determines otherwise by rule or regulation of general application, a Participant may take no more than one in-service withdrawal hereunder in any six-month period, and the minimum in-service withdrawal under any paragraph above shall be two hundred dollars ($200).

The above provisions shall not affect the rights of SCA Participants to take such other withdrawals and distributions as may be available to them under the terms of the Motorola Plan.

**Approved and Adopted November 7, 2000.**

**EXHIBIT C**
**Supplement to the**
**Motorola, Inc. 401(k) Profit Sharing Plan**
**for the**
**General Instrument Corporation Savings Plan**

Effective April 1, 2001, or as soon thereafter as the transfer of assets may be accomplished, the General Instrument Corporation Savings Plan (the "GI Savings Plan") shall be merged into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola 401(k) Plan"). The following provisions shall apply effective April 1, 2001 to former participants in the GI Savings Plan with respect to whom a transfer of assets liabilities is made from the GI Savings Plan to the Motorola 401(k) Plan (a "GI Participant") in connection with such asset transfer:

1. **Withdrawal of Rollover Contributions.** A GI Participant who is an Employee may withdraw all of any portion of his or her Rollover Contribution Account attributable to (a) "Rollover Contributions" as defined in Section 2.43 of the GI Savings Plan and (b) "Trust-to-Trust Transfer" amounts permitted to be withdrawn under Section 7.4(a) of the GI Savings Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the GI Savings Plan to the Motorola 401(k) Plan.

2. **Withdrawal of Matching Contributions.** A GI Participant who is an Employee may withdraw all or any portion of his or her Company Contributions Account attributable to matching employer contributions made under the GI Savings Plan prior to December 31, 1998 (as adjusted for earnings and/or losses attributable thereto) transferred from the GI Savings Plan to the Motorola 401(k) Plan.

3. **In-Service Withdrawal upon Attaining Age 59½.** A GI Participant who is an Employee who has attained age 59½ may withdraw all or any portion of his or her Company Contribution Account attributable to matching employer contributions made under the GI Savings Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the GI Savings Plan to the Motorola 401(k) Plan.

4. **Rules Applicable to In-Service Withdrawals.** A GI Participant may initiate withdrawals under this Supplement by submitting a request in such form and in such manner as the Committee may determine. Unless the Committee determines otherwise by rule or regulation of general application, a Participant may take no more than one in-service withdrawal under any paragraph above in any six-month period, and the minimum in-service withdrawal under any paragraph above shall be two hundred dollars ($200).

**Approved and Adopted on or around April 1, 2001.**

**EXHIBIT D**
**Supplement to the**
**Motorola, Inc. 401(k) Profit Sharing Plan**
**for the**
**Next Level Communications, Inc. Savings Plan**

Effective January 1, 2004 or as soon thereafter as the transfer of assets may be accomplished, the Next Level Communications, Inc. Savings Plan (the "Next Level Plan") shall be merged into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola 401(k) Plan"). The following provisions shall apply effective January 1, 2004 to former participants in the Next Level Plan with respect to whom a transfer of assets and liabilities is made from the Next Level Plan to the Motorola 401(k) Plan (a "Next Level Participant") in connection with such asset transfer:

1. **Maintenance of Trust to Trust Accounts.** The portion of a Next Level Participant's Trust to Trust Account (representing Trust to Trust Transfers, as defined in Section 2.48 of the Next Level Plan) attributable to elective deferrals (within the meaning of Section 402(g) of the Code) made under the Old NLC Plan or the Telenetworks Plan (both as defined in Schedule A of the Next Level Plan) shall be separately accounted for under the Plan (including earnings, gains, losses, and expenses attributable thereto) as if such separately accounted for amounts were held in separate Accounts under the Plan.

2. **Withdrawal of Rollover Contributions and Amounts in Trust to Trust Account.** A Next Level Participant may at any time withdraw all or any portion of his or her Rollover Account attributable to "Rollover Contributions," as defined in Section 2.42 of the Next Level Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the Next Level Plan to the Motorola 401 (k) Plan. A Next Level Participant may withdraw amounts in his or her Trust to Trust Account to the extent such amounts are permitted to be withdrawn under Schedule A of the Next Level Plan.

3. **Withdrawal upon Attaining Age 591/2.** A Next Level Participant who has attained age 591/2 and who has withdrawn the full amount to which he is entitled under Paragraph 2 above may withdraw all or any portion of his Company Contributions Account attributable to matching employer contributions or employer profit sharing contributions (as adjusted for earnings and/or losses attributable thereto) transferred from the Next Level Plan to the Motorola 401 (k) Plan, to the extent such amounts are vested.

4. **Rules Applicable to In Service Withdrawals.** A Next Level Participant may initiate withdrawals under this Exhibit by submitting a request in such form and in such manner as the Committee may determine. Unless the Committee determines otherwise by rule or regulation of general application, a Participant may take no more than one in service withdrawal under any paragraph above in any six month period, and the minimum in service withdrawal under any paragraph above shall be two hundred dollars ($200).

**Approved and Adopted September 24 2003.**

**EXHIBIT E**
**Supplement to the**
**Motorola, Inc. 401(k) Profit Sharing Plan**
**for the**
**Winphoria Networks, Inc. Profit Sharing/401(k) Plan**

Effective December 31, 2003, or as soon thereafter as the transfer of assets may be accomplished, the Winphoria Networks, Inc. Profit Sharing/401(k) Plan (the "Winphoria Plan") shall be merged into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola 401(k) Plan"). The following provisions shall apply to former participants in the Winphoria Plan with respect to whom a transfer of assets and liabilities is made from the Winphoria Plan to the Motorola 401(k) Plan (a "Winphoria Participant") in connection with such asset transfer:

1.  **Withdrawal of Employee Contributions.** A Winphoria Participant may at any time withdraw all or any portion of his or her Participant Contributions Account attributable to "Employee Contributions," as defined in Section 2.01(t) of the Winphoria Plan (as adjusted for earnings and/or losses attributable thereto) transferred from the Winphoria Plan to the Motorola 401(k) Plan.

2.  **Withdrawal upon Attaining Age 59½.** A Winphoria Participant who has attained age 59½ may withdraw any or a portion of his or her Company Contributions Account attributable to the funds (as adjusted for earnings and/or losses attributable thereto) transferred from the Winphoria Plan to the Motorola 401(k) Plan.

3.  **Rules Applicable to In-Service Withdrawals.** A Winphoria Participant may initiate withdrawals under this Exhibit by submitting a request in such form and in such manner as the Committee may determine. Unless the Committee determines otherwise by rule or regulation of general application, a Participant may take no more than one in-service withdrawal under any paragraph above in any six-month period, and the minimum in-service withdrawal under any paragraph above shall be two hundred dollars ($200).

4.  **Forms of Distributions.** Installment payments shall be eliminated; provided however, that such form of distribution shall continue to be available to any Winphoria Participant who has an Annuity Starting Date that is the earlier of (1) the 90th day after that Participant is provided with a summary of material modifications that reflects the elimination of such forms of payment and satisfies 29 C.F.R. § 2520.104b-3 and (2) the first day of the second plan year following the effective date of the merger of the Winphoria Plan into the Motorola Plan.

**Approved and Adopted November 14, 2003.**

**EXHIBIT F**
**Supplement to the**
**Motorola 401(k) Profit Sharing Plan**
**for the**
**Solectron 401(k) Retirement Savings Plan**

Effective September 15, 2004, or as soon thereafter as the transfer of assets may be accomplished, the portion of the Solectron 401(k) Retirement Savings Plan attributable to Force Employees (the "Solectron Plan") shall be transferred into the Motorola, Inc. 401(k) Profit Sharing Plan (the "Motorola 401(k) Plan"). The following provisions shall apply effective September 15, 2004, to former participants in the Solectron Plan with respect to whom a transfer of assets and liabilities is made from the Selectron Plan to the Motorola 401(k) Plan (a "Solectron Participant") in connection with such asset transfer:

1.  **Withdrawal upon Attaining Age 59½.** A Solectron Participant who has attained age 59½ may withdraw any or a portion of his or her Company Contributions Account attributable to the funds (as adjusted for earnings and/or losses attributable thereto) transferred from the Solectron Plan to the Motorola 401(k) Plan. Unless the Profit Sharing Committee determines otherwise by rule or regulation of general application, a Solectron Participant may take no more than one such withdrawal in any six-month period, and the minimum withdrawal shall be two hundred dollars ($200). The Profit Sharing Committee may promulgate such additional rules and regulations concerning withdrawals of Company Contributions at age 59½ as it deems appropriate from time to time.

2.  **In-Service Withdrawals from After-Tax Contributions Account.** Certain prior Selectron Participants may have After-Tax Contribution Accounts as a result of a merger of another tax-qualified plan with and into the Selectron Plan. A Solectron Participant with an After-Tax Contributions Account may withdraw all or a part of his or her After-Tax Contributions Account (as adjusted for earnings and/or losses attributable thereto) at any time. Any such withdrawals shall be in the amount specified by the Solectron Participant up to the value of his or her After-Tax Contributions Account balance. Unless the Profit Sharing Committee determines otherwise by rule or regulation of general application, a Solectron Participant may take no more than one such withdrawal in any six-month period, and the minimum withdrawal shall be two hundred dollars ($200). The Profit Sharing Committee may promulgate such additional rules and regulations concerning withdrawals of After-Tax Contributions as it deems appropriate from time to time.

**Approved and Adopted on or around August 1, 2004.**

MOT-ERISA 3929

**EXHIBIT G**
**Supplement to the Motorola 401(k) Plan**
**for the**
**MeshNetworks, Inc. 401(k) Profit Sharing Plan and Trust**

      Effective January 1, 2005, the MeshNetworks, Inc. 401(k) Profit Sharing Plan and Trust (the "MeshNetworks Plan") shall be merged into the Motorola 401(k) Plan (the "Motorola Plan"). The following provisions shall apply effective January 1, 2005, to former participants in the MeshNetworks Plan with respect to whom a transfer of assets and liabilities is made from the MeshNetworks Plan to the Motorola Plan (a "MeshNetworks Participant") in connection with such merger:

    1.    **Withdrawal upon Attaining Age 59½.** A MeshNetworks Participant who has attained age 59½ may withdraw any or a portion of his or her Company Contribution Account attributable to amounts (as adjusted for earnings and/or losses attributable thereto) transferred from the MeshNetworks Plan to the Motorola Plan. A MeshNetworks Participant may initiate withdrawals under this Exhibit by submitting a request in such form and in such manner as the Plan Manager may determine. Unless the Plan Manager determines otherwise by rule or regulation of general application, a MeshNetworks Participant may take no more than one such in-service withdrawal in any six-month period, and the minimum such in-service withdrawal shall be two hundred dollars ($200).

      The above provisions shall not affect the rights of MeshNetworks Participants to take such other withdrawals and distributions as may be available to them under the terms of the Motorola Plan.

**Approved and Adopted December 21, 2004.**

## EXHIBIT H

### Supplement to the Motorola 401(k) Plan
### for the
### Quantum Bridge Communications 401(k) Profit Sharing Plan & Trust

      Effective January 1, 2005, or as soon thereafter as the transfer of assets may be accomplished, the Quantum Bridge Communications 401(k) Profit Sharing Plan & Trust (the "Quantum Bridge Plan") shall be merged into the Motorola 401(k) Plan. The following provisions shall apply effective January 1, 2005 to former participants in the Quantum Bridge Plan in connection with such asset transfer:

1.    **Forms of Distributions.** Installment payments shall be eliminated; provided however, that installment payments shall continue to be available to any former participant of the Quantum Bridge Plan, with respect to amounts transferred from such plan, who has an annuity starting date that is the earlier of (1) the 90th day after that Participant is provided with a summary of material modifications that reflects the elimination of the installment form of payment and satisfies 29 C.F.R. § 2520.104b-3 and (2) the first day of the second plan year following the effective date of the merger of the Quantum Bridge Plan into the Motorola 401(k) Plan.

**Approved and Adopted June 14, 2005.**

## EXHIBIT I

### Supplement to the Motorola 401(k) Plan
### for the
### Ucentric Holdings, Inc. 401(k) Profit Sharing Plan

Effective May 31, 2005, or as soon thereafter as the transfer of assets may be accomplished, the Ucentric Holdings, Inc. 401(k) Profit Sharing Plan (the "Ucentric 401(k) Plan") shall be merged into the Motorola 401(k) Plan (the "Motorola 401(k) Plan"). The following provisions shall apply effective May 31, 2005 to former participants in the Ucentric 401(k) Plan in connection with such asset transfer:

1. **Withdrawal upon Attaining Age 59½.** A Ucentric Participant who has attained age 59½ may withdraw any or a portion of his or her Company Contributions Account attributable to the funds (as adjusted for earnings and/or losses attributable thereto) transferred from the Ucentric 401(k) Plan to the Motorola 401(k) Plan. Unless the 401(k) Committee determines otherwise by rule or regulation of general application, a Ucentric Participant may take no more than one such withdrawal in any six-month period, and the minimum withdrawal shall be two hundred dollars ($200). The 401(k) Committee may promulgate such additional rules and regulations concerning withdrawals of Company Contributions at age 59½ as it deems appropriate from time to time.

2. **In-Service Withdrawals from Prior Voluntary After-Tax Contributions.** Certain Ucentric Participants may have prior voluntary after-tax contributions under the Ucentric 401(k) Plan. A Ucentric Participant with any such prior voluntary after-tax contributions may withdraw all or a part of such amounts (as adjusted for earnings and/or losses attributable thereto) at any time. Any such withdrawals shall be in the amount specified by the Ucentric Participant up to the value of his or her prior voluntary after-tax contributions. Unless the 401(k) Committee determines otherwise by rule or regulation of general application, a Ucentric Participant may take no more than one such withdrawal in any six-month period, and the minimum withdrawal shall be two hundred dollars ($200). The 401(k) Committee may promulgate such additional rules and regulations concerning withdrawals of prior voluntary after-tax contributions under the Ucentric Plan as it deems appropriate from time to time.

**Approved and Adopted June 14, 2005.**

MOT-ERISA 3932

**EXHIBIT J**
**Supplement to the Motorola 401(k) Plan**
**for the**
**Orthogon Systems LLC 401(k) Profit Sharing Plan & Trust**

Effective May 8, 2006, or as soon thereafter as the transfer of assets may be accomplished, the Orthogon Systems LLC 401(k) Profit Sharing Plan & Trust (the "Orthogon Systems Plan") shall be merged into the Motorola 401(k) Plan. The following provisions shall apply effective May 8, 2006 to former participants in the Orthogon Systems Plan in connection with such asset transfer:

1.     **Forms of Distributions.** Installment payments shall be eliminated; provided however, that installment payments shall continue to be available to any former participant of the Orthogon Systems Plan, with respect to amounts transferred from such plan, who has an annuity starting date that is the earlier of (1) the 90th day after that Participant is provided with a summary of material modifications that reflects the elimination of the installment form of payment and satisfies 29 C.F.R. § 2520.104b-3 and (2) the first day of the second plan year following the effective date of the merger of the Orthogon Systems Plan into the Motorola 401(k) Plan.

2.     **Withdrawal upon Attaining Age 59½.** An Orthogon Systems Participant who has attained age 59½ may withdraw any or a portion of his or her Company Contribution Account attributable to amounts (as adjusted for earnings and/or losses attributable thereto) transferred from the Orthogon Systems Plan to the Motorola Plan. An Orthogon Systems Participant may initiate withdrawals under this Exhibit by submitting a request in such form and in such manner as the Plan Manager may determine. Unless the Plan Manager determines otherwise by rule or regulation of general application, an Orthogon Systems Participant may take no more than one such in-service withdrawal in any six-month period, and the minimum such in-service withdrawal shall be two hundred dollars ($200).

**Approved and Adopted May 8, 2006.**

# APPENDIX A

## ACTIONS BY THE MOTOROLA DIRECTOR OF HUMAN RESOURCES TO PERMIT PARTICIPATION BY EMPLOYEES TRANSFERRED FROM OTHER EMPLOYERS

By resolution dated January 29, 2001, the Compensation Committee delegated to the Motorola Director of Human Resources the authority to approve a Subsidiary becoming a participating employer in the Plan and to approve, with the concurrence of the Chief Financial Officer of Motorola or his or her delegate, the merger into the Plan of any profit sharing plan qualified under Code Section 401(a). Attached hereto as Exhibit A to the Plan are Resolutions of the Director of Human Resources approving the participation and merger, as applicable, of the following Subsidiaries and the effective date of participation in the plan for employees of such Subsidiary:

| Subsidiary | Date |
|---|---|
| Philips Consumer Communications L.P. | September 1, 2000 |
| Software Corporation of America | December 29, 2000 |
| General Instrument Corporation | April 1, 2001 |
| Next Level Communications | January 1, 2004 |
| Winphoria Networks, Inc. | January 1, 2004 |
| Force Computers, Inc. | August 1, 2004 |
| MeshNetworks, Inc. | January 1, 2005 |
| Quantum Bridge Communications | January 1, 2005 |
| Ucentric Systems, Inc. | May 31, 2005 |
| Freescale Semiconductor, Inc. | June 1, 2005 |
| Wireless Valley Communications, Inc. | January 1, 2006 |
| Orthogon Systems LLC | May 8, 2006 |

## APPENDIX B

### PROVISIONS RELATING TO QUALIFIED HURRICANE DISTRIBUTIONS AND LOANS UNDER THE GULF OPPORTUNITY ZONE ACT OF 2005

This Appendix B incorporates amendments made to the Plan effective December 21, 2005 to provide certain Participants impacted by hurricanes that hit the Gulf Coast region of the United States during the 2005 hurricane season the relief afforded by the Gulf Opportunity Zone Act of 2005 (GOZA). GOZA provides, among other things, the opportunity for victims of Hurricanes Katrina, Rita, and Wilma to take certain qualified distributions and obtain loans under expanded terms from qualified plans without adversely affecting the qualified status of those plans. The provisions of this Appendix B shall be interpreted in accordance with the requirements of GOZA and any applicable regulations or guidance issued thereunder.

(a)     For the purpose of this Appendix B, "**Hurricane Participant**" means:

(i)     A Participant whose main home on August 24, 2005 was located in the Hurricane Katrina disaster area and who sustained an economic loss because of Hurricane Katrina;

(ii)     A Participant whose main home on September 23, 2005 was located in the Hurricane Rita disaster area and who sustained an economic loss because of Hurricane Rita; or

(iii)     A Participant whose main home on October 23, 2005 was located in the Hurricane Wilma disaster area and who sustained an economic loss because of Hurricane Wilma.

(b)     Effective December 21, 2005, notwithstanding other provisions of the Plan to the contrary, but only to the extent consistent with the requirements of GOZA and any applicable regulations or guidance issued thereunder, Hurricane Participants may:

(i)     take "Qualified Hurricane Distributions" as that term is defined in GOZA ("QHD"), on or before December 31, 2006;

(ii)     repay to the Plan all or any portion of a QHD as provided in GOZA on or before the date which is three years after the day after the Hurricane Participant receives such QHD, and

(iii)     take loans as provided in Section 5.5 of the Plan, except that for any loan made on or before December 31, 2006 to an Eligible Borrower who is also a Hurricane Participant, the loan limits of Section 5.5 and the Motorola 401(k) Plan Participant Loan Policy & Procedures shall be modified as provided in GOZA.

MOT-ERISA 3935