# EXHIBIT 2

# (1 of 2)

# MOTOROLA 401(k) PLAN

## As Amended And Restated Effective January 1, 2006

MOT-ERISA 3851

CHI 11122185.4

# TABLE OF CONTENTS

**PAGE**

ARTICLE 1 - DEFINITIONS ................................................................................2
- 1.1 "404(c) Fiduciary ................................................................2
- 1.2 "Account" or "Accounts" ....................................................2
- 1.3 "Accountholder" ...............................................................2
- 1.4 "Actual Deferral Percentage" ............................................2
- 1.5 "Affiliated Employer"........................................................2
- 1.6 "Annual Additions" ..........................................................2
- 1.7 "Average Actual Deferral Percentage".................................3
- 1.8 "Average Contribution Percentage" ....................................3
- 1.9 "Beneficiary" ...................................................................3
- 1.10 "Board of Directors" .........................................................3
- 1.11 "Break in Service" ............................................................3
- 1.12 "Catch-Up Contribution" ...................................................3
- 1.13 "Code".............................................................................3
- 1.14 "Company" .......................................................................3
- 1.15 "Company Contributions" ..................................................3
- 1.16 "Company Contributions Account"......................................4
- 1.17 "Company Securities".......................................................4
- 1.17A "Company Stock" ..............................................................4
- 1.18 "Compensation".................................................................4
- 1.19 "Computation Period".........................................................5
- 1.20 "Contribution Percentage" .................................................5
- 1.21 "Corporation".....................................................................5
- 1.22 "Determination Date" .........................................................5
- 1.23 "Direct Rollover" ...............................................................5
- 1.24 "Distributee" ......................................................................6
- 1.25 "Distribution Calendar Year" ...............................................6
- 1.26 "Early Retirement Date".......................................................6
- 1.27 "Elective Contributions"......................................................6
- 1.28 "Elective Deferrals"............................................................6
- 1.29 "Eligible Participant"..........................................................6
- 1.30 "Eligible Retirement Plan" ..................................................7
- 1.31 "Eligible Rollover Distribution"............................................7
- 1.32 "Employee".........................................................................7
- 1.33 "Employment Commencement Date"....................................8
- 1.34 "ESOP"...............................................................................8
- 1.35 "ESOP Fund" ......................................................................9
- 1.36 "Excess Aggregate Contributions" ......................................9
- 1.37 "Excess Contributions".......................................................9
- 1.38 "Excess Deferral".................................................................9
- 1.39 "Financial Hardship" ...........................................................9
- 1.40 "Foreign Subsidiary" ...........................................................9
- 1.41 "Forfeiture" .......................................................................10
- 1.42 "Fund".................................................................................10
- 1.43 "Highly Compensated Employee".........................................10
- 1.44 "Hour of Service" ................................................................10

i

MOT-ERISA 3852

**TABLE OF CONTENTS**
(continued)

PAGE

1.45 "Income" ..............................................11
1.46 "Investment Funds" ..............................................11
1.47 "Key Employee" ..............................................11
1.48 "Leased Employee" ..............................................11
1.49 "Life Expectancy" ..............................................11
1.50 "Matching Contribution" ..............................................11
1.51 "Missing Participant" ..............................................11
1.52 "Motorola Stock Fund" ..............................................11
1.53 "Non-Highly Compensated Employee" ..............................................12
1.54 "Normal Retirement Date" ..............................................12
1.55 "One Year Break in Service" ..............................................12
1.56 "Participant" ..............................................12
1.57 "Participant Contribution" ..............................................12
1.58 "Participant Contributions Account" ..............................................12
1.59 "Participant's Vested Account Balance" ..............................................12
1.60 "Pension-Eligible Participant" ..............................................13
1.61 "Period of Service" ..............................................13
1.62 "Period of Severance" ..............................................13
1.63 "Permissive Aggregation Group" ..............................................13
1.64 "Plan" ..............................................13
1.65 "Plan Manager" ..............................................13
1.66 "Plan Year" ..............................................13
1.67 "Profit Sharing Contribution" ..............................................13
1.68 "Qualified Employer Contributions" ..............................................13
1.69 "Qualified Employer Deferral Contributions" ..............................................14
1.70 "Qualified Matching Contributions" ..............................................14
1.71 "Qualified Military Service" ..............................................14
1.72 "Qualified Nonelective Contributions" ..............................................14
1.73 "Qualified Plan" ..............................................14
1.74 "Reemployment Commencement Date" ..............................................14
1.75 "Required Aggregation Group" ..............................................14
1.76 "Required Beginning Date" ..............................................15
1.77 "Retirement Benefits Committee" or "Committee" ..............................................15
1.78 "Rollover Contribution Account" ..............................................15
1.79 "Rollover Contribution" ..............................................15
1.80 "Section 414(s) Compensation" ..............................................15
1.81 "Section 415 Compensation" ..............................................15
1.82 "Service in the Uniformed Services" ..............................................16
1.83 "Severance from Service Date" ..............................................16
1.84 "Statutory Matching Contributions" ..............................................16
1.85 "Subsidiary" ..............................................16
1.86 "Total and Permanent Disability" ..............................................16
1.87 "Trust" ..............................................16
1.88 "Trust Fund" or "Fund" ..............................................16
1.89 "Uniformed Services" ..............................................16

**TABLE OF CONTENTS**
(continued)

**PAGE**

1.90 "USERRA" ............................................................16
1.91 "Valuation Date"................................................17
1.92 "Year of Service" .............................................17

ARTICLE 2 - ELIGIBILITY AND PARTICIPATION ......................17
2.1 Eligibility ...........................................................17
2.2 Re-Employment ..................................................18
2.3 Years of Service of Employees of Foreign Subsidiaries .........19
2.4 Cessation of Participation ....................................19

ARTICLE 3 - CONTRIBUTIONS TO THE FUND ........................19
3.1 Participant Contributions .....................................19
3.2 Matching Contributions .......................................23
3.3 Actual Deferral Percentage (ADP) Tests...................25
3.4 Average Contribution Percentage Tests....................27
3.5 Additional Testing Rules .....................................29

ARTICLE 4 – ALLOCATIONS TO PARTICIPANTS' ACCOUNTS AND TOP-HEAVY
    PROVISIONS ......................................................30
4.1 Investment of Participant Accounts ........................30
4.2 Account Adjustments...........................................31
4.3 Maximum Allocations and Top Heavy Provisions.........31
4.4 Valuation of Fund ..............................................34
4.5 Investment of Funds............................................34
4.6 Rollover Contributions........................................35

ARTICLE 5 - VESTING AND DISTRIBUTION OF BENEFITS..........37
5.1 Vesting of Benefits .............................................37
5.2 Designation of Beneficiaries..................................39
5.3 Commencement of Distributions ............................41
5.4 Method of Payment of Distribution ........................43
5.5 Loans................................................................44
5.6 Facility of Payment ............................................45
5.7 Notice of Address ..............................................45
5.8 Hardship Withdrawals.........................................46
5.9 Withdrawal at Age 59½ .......................................47
5.10 Withdrawal at Age 70½ .......................................47
5.11 Withdrawal of Rollover Contributions.....................47
5.12 Missing Participants............................................47

ARTICLE 6 - THE ESOP ................................................48
6.1 ESOP Portion of the Plan....................................48
6.2 Effective Date ...................................................48
6.3 Eligibility and Participation .................................48
6.4 Investments in Company Stock .............................48
6.5 Additional Accounting Rules for Company Stock .......49

CHI 11122185.4 MOT-ERISA 3854

## TABLE OF CONTENTS
(continued)

PAGE

6.6     Voting of Company Stock ....................................................49
6.7     Dividends Paid on Company Stock ........................................49
6.8     Dividends Not Subject to Section 6 ......................................50
6.9     Distribution of Company Stock ...........................................50
6.10    Withdrawal and Diversification Rights ................................51
6.11    Nonterminable Rights ........................................................52

ARTICLE 7 - QUALIFIED MILITARY SERVICE ...............................52
7.1     Military Leave of Absence ...................................................52
7.2     Distribution of Benefits During Military Leave of Absence ...........52
7.3     Continuance of Participant's Interest in Fund During Military Leave of Absence 52
7.4     Effect of Termination of Military Leave of Absence ................53
7.5     Employees Entitled to the Benefits of USERRA .....................53
7.6     Applicable Laws ...............................................................54

ARTICLE 8 - PLAN ADMINISTRATION ..........................................54
8.1     Membership of the Retirement Benefits Committee ................54
8.2     Powers of the Retirement Benefits Committee ......................54
8.3     Procedures of the Retirement Benefits Committee .................55
8.4     Adoption of Rules by the Retirement Benefits Committee ........56
8.5     Directions to Trustee .........................................................56
8.6     Records to be Kept by the Retirement Benefits Committee ........56
8.7     Inspection of Records of the Retirement Benefits Committee ........56
8.8     Indemnification ................................................................56
8.9     Claims Procedure ..............................................................56
8.10    Participants Subject to Section 16(b) of Securities Exchange Act ........56
8.11    Assignment of Duties under ERISA Section 404(c) .................57
8.12    Valuation of Fund .............................................................57
8.13    Plan Manager ...................................................................57

ARTICLE 9 - TRUSTEE .................................................................57
9.1     Trust Agreement ...............................................................57
9.2     Appointment of Successor Trustee ......................................58

ARTICLE 10 - INVESTMENT OF TRUST FUND ASSETS ....................58
10.1    Direction of Investments ....................................................58
10.2    Investment Guidelines .......................................................58
10.3    Investment in Company Securities ......................................58

ARTICLE 11 - CHANGES IN THE ORGANIZATION OF THE COMPANY ........58
11.1    Merger or Consolidation .....................................................58
11.2    Transfer of a Participant to a Subsidiary ...............................58
11.3    Transfer of a Participant from a Subsidiary to the Company .......59
11.4    Sale, Disposition or Transfer of a Subsidiary or Business Subdivision ........59
11.5    Employees Transferred in Acquisition ..................................61

MOT-ERISA 3855

**TABLE OF CONTENTS**
(continued)

PAGE

ARTICLE 12 - AMENDMENT AND TERMINATION OF THE PLAN.................................62
    12.1   Amendments to Comply with Law.................................................62
    12.2   Amendment of the Plan.................................................................62
    12.3   Termination by Corporation.........................................................62
    12.4   Effect of Termination...................................................................62

ARTICLE 13 - RESTRICTION ON ALIENATION OF BENEFITS .................................63
    13.1   Nonalienation.................................................................................63
    13.2   Exceptions to Nonalienation ........................................................63
    13.3   Qualified Domestic Relations Order Rules..................................63

ARTICLE 14 - MISCELLANEOUS ...............................................................................64
    14.1   Participation of Subsidiaries ........................................................64
    14.2   Sole Benefit of Participants .........................................................64
    14.3   Nonguarantee of Employment .....................................................64
    14.4   Resolutions of the Board of Directors .........................................64
    14.5   Written Notice by Trustee.............................................................64
    14.6   Gender and Numbers ....................................................................64
    14.7   Headings .......................................................................................64
    14.8   Litigation......................................................................................64
    14.9   Governing Law .............................................................................65

EXHIBIT A..............................................................................................................1

EXHIBIT B..............................................................................................................1

EXHIBIT C..............................................................................................................1

EXHIBIT D..............................................................................................................1

EXHIBIT E..............................................................................................................1

EXHIBIT F..............................................................................................................1

EXHIBIT G..............................................................................................................1

EXHIBIT H..............................................................................................................1

EXHIBIT I...............................................................................................................1

EXHIBIT J...............................................................................................................1

APPENDIX A   1

APPENDIX B   1

MOT-ERISA 3856

## MOTOROLA 401(k) PLAN
### (As Amended and Restated Effective January 1, 2006)

### *History of the Motorola 401(k) Plan*

On November 18, 1947, Motorola, Inc., a Delaware corporation (hereinafter referred to as the "Corporation"), established the Motorola Employees' Savings and Profit Sharing Plan for the benefit of its employees to provide funds for employees in the event of death, disability, unemployment and retirement, and to encourage employees' interests in the successful operation of the business and provide a share in the resulting profits for the benefit of employees. The name of the Motorola Employees' Savings and Profit Sharing Plan was changed to the Motorola Profit Sharing and Investment Plan (herein referred to as the "Plan") effective January 1, 1996. Effective January 1, 2000, the name of the Plan was again changed to the Motorola, Inc. 401(k) Profit Sharing Plan. Effective January 1, 2005, the name of the Plan was again changed to the Motorola 401(k) Plan.

### *Effective Date of Amendment and Restatement*

Except as otherwise provided herein, this document sets forth the Plan, as amended and restated effective January 1, 2006. Certain provisions of the Plan are effective prior to January 1, 2006 or after January 1, 2006, as provided elsewhere herein.

### *Creation of the ESOP portion of the Motorola 401(k) Plan*

Effective as of October 1, 2002, the Plan was amended to convert a portion of the Plan to a stock bonus plan and a non-leveraged employee stock ownership plan ("ESOP") satisfying the requirements of Section 401(a), certain subsections of Section 409, and Section 4975(e) of the Code, and to make additional conforming design and administrative changes to the Plan. The ESOP portion of the Plan is designed to be invested primarily in shares of Motorola, Inc. common stock, which are "employer securities" within the meaning of Section 409(l) of the Code ("Company Stock"). Article 6 of the Plan shall be known as the Motorola, Inc. ESOP Fund (the "ESOP"). The ESOP provides for the investment of Company and Participant Contributions, and the earnings thereon in shares of Company Stock, so that Participants will have an opportunity to become stockholders of the Company.

### *Motorola 401(k) Trust*

The Motorola 401(k) Trust (known prior to January 1, 2005 as the Motorola, Inc. 401(k) Profit Sharing Trust and hereinafter referred to as the "Trust"), established pursuant to a separate trust agreement, is intended to form a part of the Plan.

The Plan and the Trust are intended to meet the requirements of Code Sections 401(a), 401(k) and 501(a), as now in effect or hereafter amended, and the Employee Retirement Income Security Act of 1974 ("ERISA"), as now in effect or hereafter amended, including, but not limited to, ERISA Section 404(c) and the regulations thereunder.

## ARTICLE 1 - DEFINITIONS

1.1 "__404(c) Fiduciary__" means the Director, Global Rewards of the Corporation, as from time to time designated.

1.2 "__Account__" or "__Accounts__" means the individual accounts maintained for a Participant that consist of his or her entire interest in the Plan. A Participant's Accounts are made up of all of the following accounts that are maintained in the name of each Participant, as applicable:

    (a)    his or her Company Contributions Account;

    (b)    his or her Participant Contributions Account; and

    (c)    his or her Rollover Contribution Account.

1.3 "__Accountholder__" means each Participant, former Participant, alternate payee or Beneficiary who retains an Account balance in the Plan.

1.4 "__Actual Deferral Percentage__" means the ratio (expressed as a percentage to the nearest one-hundredth of one percent) of the sum of Elective Deferrals and Qualified Employer Deferral Contributions made on behalf of an Eligible Participant for the Plan Year to the Eligible Participant's Section 414(s) Compensation for the Plan Year. The Actual Deferral Percentage of an Eligible Participant who makes no Elective Deferrals and is allocated no Qualified Employer Deferral Contributions shall be zero (0).

1.5 "__Affiliated Employer__" means the Corporation and any corporation which together with the Corporation, is:

    (a)    a member of a controlled group of corporations (as defined in Code Section 414(b));

    (b)    any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c));

    (c)    any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Code Section 414(m)); and

    (d)    any other entity required to be aggregated with the Corporation pursuant to regulations under Code Section 414(o).

Notwithstanding the foregoing, for purposes of Section 4.3(a), the definition of Affiliated Employer is modified as set forth in Code Section 415(h).

1.6 "__Annual Additions__" means, with respect to each Plan Year, the sum of the following amounts allocated to a Participant's Accounts (and to accounts in any other tax-qualified defined contribution plan maintained by an Affiliated Employer with respect to the Code Section 415 limitation year) during the Code Section 415 limitation year:

CHI 11122185.4

MOT-ERISA 3858

(a)     a Participant's Elective Contributions;

(b)     the Affiliated Employers' Company Contributions;

(c)     any other Affiliated Employers' contributions; and

(d)     Forfeitures.

The Annual Addition limit for any calendar year shall be based on the Code Section 415 limitation year ending with or within such calendar year.

1.7     "**Average Actual Deferral Percentage**" means the average (expressed as a percentage to the nearest one-hundredth of one percent) of the Actual Deferral Percentages of the Eligible Participants in a group.

1.8     "**Average Contribution Percentage**" means the average (expressed as a percentage to the nearest one-hundredth of one percent) of the Contribution Percentages of the Eligible Participants in a group.

1.9     "**Beneficiary**" means a person or persons (natural or otherwise) designated by a Participant or former Participant in accordance with Section 5.2 hereof to receive benefits under the Plan upon the death of such Participant or former Participant.

1.10    "**Board of Directors**" means the Board of Directors of the Corporation and shall also mean any committee of the Board of Directors which has been delegated authority to exercise the powers and authority of the Board of Directors with respect to the Plan, except that the latter meaning shall not apply to Section 12.3 hereof.

1.11    "**Break in Service**" means a Period of Severance of at least twelve (12) consecutive months.

1.12    "**Catch-Up Contribution**" means a Participant Contribution made pursuant to Section 3.1(g) of the Plan.

1.13    "**Code**" means the Internal Revenue Code of 1986 and amendments thereto. Reference to any Section of the Code includes a reference to legally effective regulations issued by the Department of Treasury and notices and other releases issued by the Internal Revenue Service which interpret and implement such Code Section.

1.14    "**Company**" means the Corporation and any company organized under the law of the United States that is or becomes a Subsidiary of the Corporation and is authorized by the Board of Directors of such Subsidiary to participate in the Plan, in accordance with Section 14.1 of the Plan.

1.15    "**Company Contributions**" means, collectively:

(a)     Matching Contributions made by the Company to the Trust Fund in accordance with Section 3.2 of the Plan; and

MOT-ERISA 3859

(b)     Profit Sharing Contributions, if any, made by the Company to the Trust Fund prior to January 1, 2005.

1.16    "**Company Contributions Account**"  means  the  account  maintained  for  a Participant  to  reflect  his  or  her  share  of  the  Company  Contributions  and  adjusted  to  reflect  any earnings, losses, changes in market value, fees, expenses and distributions attributable thereto.

1.17    "**Company Securities**"  means  the  common  or  preferred  stock,  bonds,  notes, debentures, or other obligations or indebtedness issued by the Corporation or any of its Subsidiaries, or warrants or rights to subscribe to or purchase any of the foregoing.

1.17A   "**Company Stock**" means Motorola, Inc. common stock, which is constitutes "employer securities" within the meaning of Section 409(l) of the Code.

1.18    "**Compensation**"  means  direct  compensation  received  from  the  Company  during the Plan Year, *including*:

    (a)    regular earnings;

    (b)    individual sales incentive plan payments;

    (c)    commissions;

    (d)    shift differentials;

    (e)    overtime;

    (f)    salary deferrals under Code Sections 125, 129 and 401(k);

    (g)    Motorola Incentive Plan payments;

    (h)    similar incentive plan pay (but not awards or individual bonuses); and

    (i)    lump sum merit pay;

but *excluding:*

    (i)    the amount of any benefits paid under the Plan;

    (ii)   any benefits paid under the Motorola, Inc. Pension Plan;

    (iii)  all moving allowances;

    (iv)   all educational allowances;

    (v)    non-cash payments;

    (vi)   all overseas allowances;

CHI 11122185.4

MOT-ERISA 3860

(vii)    awards;

(viii)    individual bonuses;

(ix)    cost-of-living adjustments;

(x)    severance; and

(xi)    other termination payments.

The annual compensation of a Participant taken into account under the Plan for any purpose shall not exceed the dollar limitation set forth in Code Section 401(a)(17) ($225,000 for Plan Years beginning on or after January 1, 2007), as such amount may be adjusted for cost-of-living adjustments as described in Code Section 401(a)(17)(B). For purposes of this Section 1.18, amounts under Code Section 125 of include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage; such amounts will be treated as an amount under Code Section 125 only if the Company does not otherwise request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

1.19    "**Computation Period**" means:

    (a)    with respect to when an Employee is first hired, the period beginning with the Employee's Employment Commencement Date and ending twelve (12) consecutive months later, and subsequent computation periods, if required for the Employee to become eligible to participate in the Plan, shall begin on each succeeding anniversary of the Employee's Employment Commencement Date and end twelve (12) consecutive months later; or

    (b)    with respect to an Employee who incurs a One Year Break in Service and is later reemployed by the Company, the period beginning with such Employee's Reemployment Commencement Date and ending twelve (12) consecutive months later, and subsequent computation periods, if required for the Employee to become eligible to participate in the Plan, shall begin on each succeeding anniversary of the Employee's Reemployment Commencement Date and end twelve (12) consecutive months later.

1.20    "**Contribution Percentage**" means the ratio (expressed as a percentage to the nearest one-hundredth of one percent) of the sum of the Statutory Matching Contributions (other than Qualified Matching Contributions) and Qualified Employer Contributions made on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's Section 414(s) Compensation for the Plan Year. The Contribution Percentage of an Eligible Participant who neither makes nor receives such contributions shall be zero (0).

1.21    "**Corporation**" means Motorola, Inc., a Delaware corporation.

1.22    "**Determination Date**" means, with respect to any Plan Year, the last Valuation Date of the preceding Plan Year.

1.23    "**Direct Rollover**" means a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

1.24   "**Distributee**" means a Participant or former Participant.   In addition, the Participant's or former Participant's surviving spouse and the Participant's or former Participant's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p), are Distributees with regard to the interest of the spouse or former spouse. Notwithstanding the foregoing, effective January 1, 2007, to the extent that a Direct Rollover complies with all of the requirements of Code Section 402(c)(11), a Participant's designated Beneficiary, who is not the surviving spouse of the Participant, will also be treated as a Distributee for purposes of the Plan.

1.25   "**Distribution Calendar Year**" means a calendar year for which a minimum distribution is required under Section 5.3(d).  For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date. The required minimum distribution for the Participant's first Distribution Calendar Year shall be made on or before the Participant's Required Beginning Date. The required minimum distribution for other Distribution Calendar Years, including the required minimum distribution for the Distribution Calendar Year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that Distribution Calendar Year.

1.26   "**Early Retirement Date**"  means the later to occur of:

    (a)    the date a Participant attains age fifty-five (55); or

    (b)    the date a Participant completes five (5) Years of Service.

1.27   "**Elective Contributions**"  means contributions made to the Plan during the Plan Year by the Company at the election of the Participant in lieu of receiving Compensation, but shall not include the one percent (1%) mandatory Participant Contribution required of each Participant prior to July 1, 2000.

1.28   "**Elective Deferrals**" means contributions made by the Company to this Plan and any other qualified plans that are maintained by the Company which are aggregated with this Plan for the Plan Year at the election of the Eligible Participant, in lieu of cash compensation (that either would have been received by the Eligible Participant in the Plan Year or is attributable to services performed in the Plan Year and would have been received by the Eligible Participant within two and one half (2-1/2) months after the close of the Plan Year, but for a deferral election), and shall include contributions made pursuant to a Compensation reduction agreement.  Such "Elective Deferrals" shall be taken into account for a Plan Year only if they are allocated to the Eligible Participant's account as of a date within the Plan Year, the allocation is not contingent on the Eligible Participant's participation in the Plan or performance of services for the Company after such date, and the Elective Deferrals are paid to the Trust no later than twelve (12) months after the close of the Plan Year to which they relate.  Notwithstanding the foregoing, Catch-Up Contributions under Section 3.1(g) shall not be treated as Elective Deferrals for purposes of Sections 3.3 and 3.4 of the Plan.

1.29   "**Eligible Participant**"  for purposes of Section 3.3 hereof means any Employee who is eligible under this Plan to have Elective Deferrals or Qualified Employer Deferral Contributions allocated to his or her account for the Plan Year. "Eligible Participant" for purposes of Section 3.4 hereof means any Employee who is eligible under this Plan to have Statutory Matching Contributions or Qualified Employer Contributions allocated to his or her account for the Plan Year.

1.30    "**Eligible Retirement Plan**" means:

    (a)    an individual retirement account described in Code Section 408(a),

    (b)    an individual retirement annuity described in Code Section 408(b),

    (c)    an annuity plan described in Code Section 403(a), or

    (d)    a qualified trust described in Code Section 401(a),

that accepts the Distributee's Eligible Rollover Distribution. "Eligible Retirement Plan" shall also include an annuity described in Code Section 403(b) and an eligible governmental plan described in Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state, and which agrees to separately account for amounts transferred to such plan from this Plan.

1.31    "**Eligible Rollover Distribution**" means any distribution of all or any part of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:

    (a)    any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary or for a specified period of ten years or more;

    (b)    any distribution to the extent such distribution is required under Code Section 401(a)(9); and

    (c)    the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

Notwithstanding the foregoing, any amount that is distributed under Section 5.8 on account of hardship shall not be an Eligible Rollover Distribution, and an Eligible Rollover Distribution may include amounts attributable to after-tax contributions.

1.32    "**Employee**" means any individual in an employee-employer relationship with the Company, but *excluding*

    (a)    any independent contractor;

    (b)    any consultant;

    (c)    any individual performing services for the Company who has entered into an independent contractor or consultant agreement with the Company;

MOT-ERISA 3863

(d)    any individual performing services for the Company under an independent contractor or consultant agreement, a purchase order, a supplier or staffing agreement or any other agreement that the Company enters into for services;

(e)    any individual that has been classified by the Company as an independent contractor or consultant who is later reclassified as a common law employee by a governmental agency, court or any other entity or law for any purpose, *provided, however,* that such individual shall be an Employee and shall be eligible to participate in the Plan as of the date of his or her reclassification (but not retroactively), provided he or she is otherwise eligible to participate in the Plan;

(f)    any Leased Employee; and

(g)    any individual whose terms and conditions of employment are governed by a collective bargaining agreement resulting from good faith collective bargaining where benefits of the type being offered under the Plan were the subject of such bargaining, unless such agreement specifies that such individuals are eligible for the Plan.

In addition, a United States citizen employed by a Foreign Subsidiary, who immediately prior to entering the employment of the Foreign Subsidiary was employed by the Company, shall be deemed to be, for purposes of the Plan, an Employee of the Company, providing the following conditions are met:

(i)    The Company owns directly at least twenty percent (20%) of:

(A)    the voting stock of such Foreign Subsidiary employing such United States citizen; or

(B)    the voting stock of a Foreign Subsidiary which, in turn, owns directly at least 50% of the voting stock of the Foreign Subsidiary which employs such United States citizen;

(ii)    The Company has entered into an agreement with the United States Treasury Department to cover for Social Security purposes all United States citizens employed by such Foreign Subsidiary; and

(iii)    The United States citizen employed by such Foreign Subsidiary is not a participant in any other pension, profit sharing, stock bonus or other plan of deferred compensation (except the Motorola Pension Plan or Motorola Incentive Plan), whether or not qualified for tax exemption under the Code, to which contributions are made on his or her behalf by any person other than the Company or the Employee with respect to the compensation he or she receives from such Foreign Subsidiary.

1.33    "**Employment Commencement Date**" means the date on which an Employee first performs an Hour of Service for the Company.

1.34    "**ESOP**" means an employee stock ownership plan as defined in Code Sections 4975(e) and 409.

8

1.35 "**ESOP Fund**" means the portion of a Participant's Accounts invested in the Motorola Stock Fund.

1.36 "**Excess Aggregate Contributions**" shall have the same meaning as that term is defined in Code Section 401(m)(6)(B).

1.37 "**Excess Contributions**" shall have the same meaning as that term is defined in Code Section 401(k)(8)(B).

1.38 "**Excess Deferral**" shall have the same meaning as that term is defined in Code Section 402(g)(2).

1.39 "**Financial Hardship**" means a Participant's immediate and heavy financial need that cannot be satisfied from other reasonably available resources and is caused by one of the following:

 (a) Medical expenses described in Code Section 213(d) previously incurred by the Participant, the Participant's spouse, or any dependents of the Participant (as defined in Code Section 152) or necessary for any of these persons to obtain medical care described in Code Section 213(d);

 (b) Costs directly related to the purchase (excluding mortgage payments) of a principal residence for the Participant;

 (c) Payment of tuition, related educational fees and room and board expenses for the next twelve (12) months of post-secondary education for the Participant, his or her spouse, children or dependents (as defined in Code Section 152);

 (d) Payments necessary to prevent the eviction of the Participant from his or her principal residence or foreclosure on the mortgage of the Participant's principal residence;

 (e) Payments for burial or funeral expenses for the Participant's deceased parent, Spouse, children or dependents (as defined in Code Section 152 without regard to Code Section 152(d)(1)(B);

 (f) Expenses for the repair of damage to the Participant's principal residence that would qualify for the casualty deduction under Code Section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income); or

 (g) Other unusual expenses creating a financial need.

1.40 "**Foreign Subsidiary**" means a Subsidiary:

 (a) that is organized under the laws of a country other than the United States; or

 (b) where more than fifty percent (50%) of the sales of which are derived from countries other than the United States or more than fifty percent (50%) of the fixed assets of which are located in a country or countries other than the United States.

CHI 111122185.4      **MOT-ERISA 3865**

1.41    "**Forfeiture**" means the portion of the Company Contributions Account which is not payable to a Participant under the provisions of Section 5.1(c) of the Plan, because of the Participant has incurred a Severance from Service Date before becoming 100% vested in such amounts.

1.42    "**Fund**" means the Trust Fund.

1.43    "**Highly Compensated Employee**" means, for any Plan Year, an Employee who performs service for an Affiliated Employer and who:

> (a)    was, at any time during the Plan Year for which the determination is being made or the preceding Plan Year, a five percent (5%) owner (as such term is defined under Code Section 318) of an Affiliated Employer; or

> (b)    for the preceding Plan Year, had compensation (as defined in Code Section 414(q)(4)) from an Affiliated Employer in excess of the amount in effect for such year under Code Section 414(q)(1)(B), as adjusted pursuant to Code Section 415(d) ($100,000 for 2006).

The term Highly Compensated Employee shall also include any former employee of an Affiliated Employer who was a Highly Compensated Employee at the time of his or her Severance from Service Date or at any time after attaining age fifty-five (55).

1.44    "**Hour of Service**" for vesting purposes, means, with respect to any Employee:

> (a)    Each hour for which an Employee is directly or indirectly paid or entitled to payment by the Company for the performance of duties for the Company;

> (b)    Each hour for which an Employee is directly or indirectly paid or entitled to payment by the Company on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) for vacation, holiday, illness, incapacity (including disability), layoff, jury duty or leave of absence, not including a Military Leave of Absence; and

> (c)    Each hour for which back pay, irrespective of mitigation of damages, is awarded or agreed to by the Company.

The term "Hour of Service" for determining eligibility to participate in the Plan shall have the definition given to such term in Department of Labor Regulation Section 2530.200b-2. As used in this Section 1.44, the term "Company" includes all Affiliated Employers. Notwithstanding the foregoing, any Employee for whom actual Hours of Service are not maintained shall be credited with:

> > (i)    forty-five (45) Hours of Service for each week for which they are paid or entitled to payment if paid on a weekly basis;

> > (ii)    ninety (90) Hours of Service for each biweekly period for which they are paid or entitled to payment if paid on a biweekly basis; and

CHI 111122185.4

MOT-ERISA 3866

(iii)     ninety-five (95) Hours of Service for each semimonthly period for which they are paid or entitled to payment if paid on a semi-monthly basis.

Notwithstanding anything to the contrary, when the Corporation (or any Affiliated Employer) maintains the plan of or acquires the employees of a predecessor organization, service with such predecessor organization shall not be treated as service for the Corporation or any Affiliated Employer unless specifically required by applicable law or agreed to by the Motorola Director of Human Resources as reflected in Appendix A to the Plan.

1.45     "**Income**" means, as of any Valuation Date, the net gain or loss of the Trust Fund from investments as reflected by interest payments, dividends, realized and unrealized gains and losses on securities, other investments, transactions and expenses paid from the Trust Fund. In determining the Income of the Trust Fund for any period, assets shall be valued on the basis of their fair market value.

1.46     "**Investment Funds**" means the investment funds maintained by the Trustee for purposes of investing Trust Fund assets.

1.47     "**Key Employee**" means a Participant or former Participant who is a "key employee" as defined in Code Section 416(i).

1.48     "**Leased Employee**" means any person who is not an employee of an Affiliated Employer and who provides services to the Affiliated Employer if:

(a)     such services are provided pursuant to an agreement between the Affiliated Employer and any other person (the "leasing organization");

(b)     such person has performed such services for the Affiliated Employer (or for the Affiliated Employer and related persons) on a substantially full-time basis for a period of at least one (1) year; and

(c)     such services are performed under the primary direction or control by the Affiliated Employer.

1.49     "**Life Expectancy**" means the expected length of a Participant's life as computed by use of the Single Life Table in Treasury Regulation Section 1.401(a)(9)-9.

1.50     "**Matching Contribution**" means the contribution of the Company to the Trust Fund made in accordance with the provisions of Section 3.2 of the Plan.

1.51     "**Missing Participant**" means a Participant or Beneficiary for whom a piece of communication (such as a statement of the Participant's or Beneficiary's Account, a notice, disclosure statement, or benefit payment check) is returned by the United States Postal Service as undeliverable after it was mailed to the Participant or Beneficiary using the address for the Participant or Beneficiary reflected in the records of the Company or the Retirement Benefits Committee as the most recent mailing address as provided in Section 5.7.

1.52     "**Motorola Stock Fund**" means an Investment Fund the purpose of which is to invest in Motorola, Inc. common stock.

11

MOT-ERISA 3867

1.53 "**Non-Highly Compensated Employee**" means any employee of an Affiliated Employer who is not a Highly Compensated Employee.

1.54 "**Normal Retirement Date**" means the date a Participant attains age sixty-five (65) regardless of his or her Years of Service.

1.55 "**One Year Break in Service**" means a Period of Severance of at least twelve (12) consecutive months. In the case of an Employee who is absent from work for maternity or paternity reasons, the twelve (12) consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a Break in Service. For purposes of this Section 1.55, an absence from work for maternity or paternity reasons means an absence:

    (a)    by reason of the pregnancy of the Employee;

    (b)    by reason of a birth of a child of the Employee;

    (c)    by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee; or

    (d)    for purposes of caring for such child for a period beginning immediately following such birth or placement.

1.56 "**Participant**" means an Employee who is or was eligible to participate in the Plan in accordance with Article 2 and who is making or has made Participant Contributions to the Plan. For purposes of determining the time of commencement or method of payment of a distribution under Section 5.3 or 5.4, respectively, the term "Participant" may include a former Participant who has a vested interest in a benefit under the Plan, unless the context requires otherwise.

1.57 "**Participant Contribution**" means a contribution made on behalf of a Participant or Employee to the Trust Fund pursuant to a Compensation reduction agreement in accordance with Section 3.1 of the Plan, including the one percent (1%) mandatory Participant Contribution required of each Participant prior to July 1, 2000.

1.58 "**Participant Contributions Account**" means the account maintained for a Participant to reflect his/her Participant Contributions and adjusted to reflect any earnings, losses, changes in market value, fees, expenses and distributions attributable thereto.

1.59 "**Participant's Vested Account Balance**" means the Participant's vested Account balance as of the last valuation date in the calendar year immediately preceding the Distribution Calendar Year (valuation calendar year) increased by the amount of any vested contributions made and allocated or vested forfeitures allocated to the Participant's Account balance as of dates in the valuation calendar year after the valuation date and decreased by distributions made in the valuation calendar year after the valuation date. The Participant's Account balance for the valuation calendar year includes any vested amounts rolled over or transferred to the Plan either in the valuation calendar year or in the Distribution Calendar Year if distributed or transferred in the valuation calendar year.

MOT-ERISA 3868

1.60 **"Pension-Eligible Participant"** means a Participant who is eligible to accrue a benefit under the Motorola, Inc. Pension Plan because he or she:

(a) was an Employee of the Company on or before December 31, 2004; or

(b) was employed by Crisnet, Inc., MeshNetworks, Inc. or Quantum Bridge Communications on December 31, 2004;

*provided, however*, that an Employee shall not be a Pension-Eligible Participant if he or she returns to employment with the Company after incurring a "One Year Break in Service" (as such term is defined in the Motorola, Inc. Pension Plan) which ends after December 31, 2004.

1.61 **"Period of Service"** means a period of time that begins on the Employee's Employment Commencement Date or Reemployment Commencement Date, whichever is applicable, and ends on his or her Severance from Service Date.

1.62 **"Period of Severance"** means the period of time commencing on the Severance from Service Date and ending on the date on which the Employee is reemployed by the Company or an Affiliated Employer and again performs an Hour of Service.

1.63 **"Permissive Aggregation Group"** means, with respect to a given Plan Year, this Plan and all other plans of the Affiliated Employers (other than those included in the Required Aggregation Group) which, when aggregated with the plans in the Required Aggregation Group, continue to meet the requirements of Code Sections 401(a)(4) and 410.

1.64 **"Plan"** means the plan as set forth in this document and known as the "Motorola 401(k) Plan" as the same may, from time to time, be amended.

1.65 **"Plan Manager"** means the Director, Global Rewards, of the Corporation, or such other person or persons to whom the Retirement Benefits Committee has delegated responsibility for the day-to-day administration of the Plan, who shall have the specific authority and duties designated in this Plan.

1.66 **"Plan Year"** means the calendar year.

1.67 **"Profit Sharing Contribution"** means the profit sharing contributions, if any, made by the Company to the Trust Fund for Plan Years ending on or before December 31, 2004.

1.68 **"Qualified Employer Contributions"** means Qualified Nonelective Contributions and Elective Deferrals which are taken into account under the Plan in determining an Eligible Participant's Contribution Percentage; *provided, however,* that in order for Elective Deferrals to be taken into account, all Elective Deferrals must satisfy the limitations of the Actual Deferral Percentage test by including and excluding such Elective Deferrals, and the Qualified Nonelective Contributions and Elective Deferrals taken into account must satisfy the other requirements of Treasury Regulation Section 1.401(m)-2(a)(6). Qualified Nonelective Contributions taken into account to determine the Participant's Contribution Percentage cannot be used in determining an Eligible Participant's Actual Deferral Percentage.

MOT-ERISA 3869

1.69 "**Qualified Employer Deferral Contributions**" means Qualified Nonelective Contributions and Qualified Matching Contributions taken into account under this Plan and any other qualified plans that are maintained by the Company or an Affiliated Employer which are aggregated with this Plan in determining an Eligible Participant's Actual Deferral Percentage which satisfy the requirements of Treasury Regulation Section 1.401(k)-2(a)(6). Qualified Nonelective Contributions taken into account to determine the Participant's Actual Deferral Percentage cannot be used in determining an Eligible Participant's Contribution Percentage.

1.70 "**Qualified Matching Contributions**" means Statutory Matching Contributions taken into account under the Plan in determining an Eligible Participant's Actual Deferral Percentage. In order for Statutory Matching Contributions to be considered as Qualified Matching Contributions, the Statutory Matching Contributions must be one hundred percent (100%) vested and nonforfeitable when made and must be distributable under the Plan only in accordance with the distribution provisions applicable to Elective Deferrals. Qualified Matching Contributions, if any, shall be paid to the Trustee within the time period prescribed under Regulation Section 1.401(m)-2(a)(6)(i) of the Treasury Regulations, or if outside of this time period, upon approval from the Retirement Benefits Committee. The Retirement Benefits Committee may, in its discretion, use Forfeitures to pay for Qualified Matching Contributions, if desired.

1.71 "**Qualified Military Service**" means any Service in the Uniformed Services by any Employee or employee of an Affiliated Employer if such Employee or employee of an Affiliated Employer is entitled to reemployment rights under USERRA.

1.72 "**Qualified Nonelective Contributions**" means contributions made by the Company to this Plan and to any other qualified plans maintained by the Company or an Affiliated Employer which are aggregated with this Plan (other than Elective Deferrals and Statutory Matching Contributions) which are allocated to the Eligible Participant's account and which the Eligible Participant may not elect to receive in cash until distributed from the plan. In order for such contributions to be considered as Qualified Nonelective Contributions, they must be one hundred percent (100%) vested and nonforfeitable when made and must be distributable under the terms of the Plan only in accordance with the distribution provisions applicable to Elective Deferrals. Qualified Nonelective Contributions, if any, shall be paid to the Trustee within the time period prescribed under Regulation Section 1.401(k)-2(a)(6)(i) of the Treasury Regulations, or if outside of this time period, upon approval from the Retirement Benefits Committee. The Retirement Benefits Committee may, in its discretion, use Forfeitures to pay for Qualified Nonelective Contributions, if desired.

1.73 "**Qualified Plan**" means any pension, profit sharing, stock bonus or other retirement benefit plan qualified under Code Section 401(a).

1.74 "**Reemployment Commencement Date**" means the first date following a Period of Severance on which an Employee performs an Hour of Service for the Company.

1.75 "**Required Aggregation Group**" means, with respect to a given Plan Year:

    (a) this Plan;

    (b) each other plan of the Affiliated Employers in which a Key Employee is a participant; and

MOT-ERISA 3870

(c)     each other plan of the Affiliated Employers which enables a plan described in paragraphs (a) or (b) to meet the requirements of Code Sections 401(a)(4) or 410.

1.76     "**Required Beginning Date**" means:

(a)     for a Participant who is not a 5% owner of an Affiliated Employer as defined in Code Section 416(i)(1)(B) at any time during the Plan Year in which he or she attains age 70½, and who continues to be employed by the Company or an Affiliated Employer following attainment of age 70½, April 1 of the calendar year following the calendar year in which he or she retires; and

(b)     for a Participant who is a 5% owner of an Affiliated Employer, or to a Participant who is no longer in service, April 1 of the calendar year following his or her attainment of age 70½.

1.77     "**Retirement Benefits Committee**" or "**Committee**" means the persons appointed under the provisions of Article 8 hereof to administer the Plan.

1.78     "**Rollover Contribution Account**" means account maintained for a Participant to reflect his/her Rollover Contributions and adjusted to reflect any earnings, losses, changes in market value, fees, expenses and distributions attributable thereto.

1.79     "**Rollover Contribution**" means an Employee' contribution of part or all of a cash distribution or cash proceeds from a sale which qualifies as an eligible rollover distribution (within the meaning of Code Sections 402(c)(4)) or as a rollover contribution (within the meaning of Code Section 408(d)(3)) which is transferred to this Plan pursuant to Section 4.6 of the Plan. Notwithstanding any provision herein to the contrary, after-tax contributions shall not be accepted as Rollover Contributions under the Plan.

1.80     "**Section 414(s) Compensation**" means any definition of compensation that satisfies Code Section 414(s) and the regulations thereunder which is used by the Company from time to time. For purposes of determining Section 414(s) Compensation, amounts under Code Section 125 include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage; such amount will be treated as an amount under Code Section 125 only if the Company does not otherwise request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

1.81     "**Section 415 Compensation**" means compensation as set forth and defined in Treasury Regulation Section 1.415-2(d) (including any salary reduction contributions excluded from income under the Plan, or under Code Section 125, 132(f)(4), 401(k) or 457(b)). For purposes of determining "Section 415 Compensation," amounts under Code Section 125 include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage. Such amount will be treated as an amount under Code Section 125 only if the Company does not otherwise request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

MOT-ERISA 3871

1.82 **"Service in the Uniformed Services"** means the performance of duty on a voluntary or involuntary basis in a Uniformed Service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, and a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty.

1.83 **"Severance from Service Date"** means the earlier of:

(a) the date on which the Employee quits, retires, is discharged or dies; or

(b) the first anniversary of the first date of a period in which an Employee remains absent from service (with or without pay) for any reason other than quit, retirement, discharge or death, such as vacation, holiday, sickness, disability, leave of absence or layoff; *provided, however*, that "second anniversary" shall be substituted for "first anniversary" if the absence is due to maternity or paternity reasons as defined in Section 1.55 hereof, and in such case, the period between the first anniversary and the second anniversary shall not be a Period of Service or a Period of Severance.

1.84 **"Statutory Matching Contributions"** means contributions made by the Company to the Plan for the Plan Year and allocated to an Eligible Participant's account by reason of his or her Elective Deferrals; *provided, however*, that such Statutory Matching Contributions must be allocated to the Eligible Participant's account as of a date within that Plan year and actually be paid to the Trust no later than twelve (12) months after the close of the Plan Year to which they relate.

1.85 **"Subsidiary"** means any corporation in one or more chains of corporations at least eighty percent (80%) of the total outstanding voting stock of which (other than directors' qualifying shares) is at the time, directly or indirectly, owned by the Corporation or by one or more of the other corporations or by the Corporation and one or more of the other corporations.

1.86 **"Total and Permanent Disability"** means entitlement to disability benefits under Title II of the Social Security Act or to long term disability benefits under the Motorola Disability Income Plan, as amended from time to time.

1.87 **"Trust"** means the trust established for the receiving, holding, investing and disposing of the Trust Fund and for implementing and carrying out the provisions of the Plan, which Trust is known as the "Motorola 401(k) Trust."

1.88 **"Trust Fund"** or **"Fund"** means the assets held by the trustee of the Trust pursuant to the terms of the trust agreement, as from time to time amended, which constitutes a part of the Plan.

1.89 **"Uniformed Services"** means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or emergency.

1.90 **"USERRA"** means the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 United States Code Section 4301, et seq.

CHI 11122185.4

MOT-ERISA 3872

1.91 **"Valuation Date"** means each business day that the New York Stock Exchange is open, or such less frequent dates as the Plan Manager shall determine.

1.92 **"Year of Service"** means:  •

(a) For vesting purposes and for purposes of determining eligibility to participate in Matching Contribution by Participants who are not Pension-Eligible Participants, a Computation Period of twelve (12) months; and

(b) For purposes of determining a Pension-Eligible Participant's eligibility to participate in Matching Contributions, a Computation Period of twelve (12) consecutive month period during which the Employee has completed at least one thousand (1,000) Hours of Service as defined in Department of Labor Regulation Section 2530.200b-2.

## ARTICLE 2 - ELIGIBILITY AND PARTICIPATION

2.1 **Eligibility**.

(a) **Employees Covered by the Plan**. Each Employee of the Company shall be eligible to make Elective Contributions as provided in Section 2.1(b) below, and to receive an allocation of Matching Contributions upon completing the requirements of Section 2.1(c) below, if he or she meets both of the following requirements:

(i) the Employee is not classified by the Company as contract labor (such as contractors, contract employees, job shoppers) regardless of length of service; and

(ii) the Employee's base wage or base salary is processed for payment by the U.S. Payroll Department(s) of the Company or the U.S. Payroll Department(s) of any Subsidiary and not by any other department of the Company or any Subsidiary.

Leased Employees shall not be eligible to participate in the Plan, but they shall be taken into account for purposes of Code Section 414(n)(3) unless the safe harbor of Code Section 414(n)(5) is satisfied.

(b) **Eligibility to Make Elective Contributions**. Each Employee of the Company who meets the requirements of Section 2.1(a) above shall be eligible to make Elective Contributions in accordance with Section 3.1 as of the second pay period after the Employee first performs an Hour of Service or meets the requirements of Section 2.1(a) above , if later.

(c) **Eligibility for Matching Contributions**.

(i) **Pension-Eligible Participants**. Each Pension-Eligible Participant who meets the requirements of Section 2.1(a) above shall be eligible to receive Matching Contributions in accordance with Section 3.1 as of the first day of the month coincident with or next following the date on which he or she has completed one (1) Year of Service. All Years of Service with the Company and Affiliated Employers shall be counted toward eligibility for Matching Contributions.

17

      (ii)    **All Other Participants.** Each Employee who is not a Pension-Eligible Participant and meets the requirements of Section 2.1(a) above shall be eligible to receive Matching Contributions in accordance with Section 3.1 as of the second pay period after the Employee first performs an Hour of Service or meets the requirements of Section 2.1(a) above, if later.

      (d)    **Special Rules for Mergers and Acquisitions.** Notwithstanding anything to the contrary in this Section 2.1, in the event that the Company succeeds by merger, acquisition, consolidation or other transaction, to all or part of the assets or business of, or enters into a joint venture with, any other person, firm, partnership, corporation or other entity (a "Person"), and in either case employees of such other Person become Employees of the Company who may otherwise become eligible for participation in the Plan, the Motorola Director of Human Resources may:

      (i)    designate that such Employees of the Person shall be ineligible to participate in the Plan for any purpose, or

      (ii)    waive the requirement that such Employees of the Person shall have completed one (1) Year of Service as a condition for participation in Matching Contributions.

Any such action by the Motorola Director of Human Resources shall be reflected in Appendix A to the Plan.

2.2    **Re-Employment**.

      (a)    **Participation Purposes.**

      (i)    **Where Employee Was Previously a Participant Under the Plan.** A former Participant who had completed at least a Year of Service will become a Participant, for purposes of Elective Contributions and Matching Contributions, immediately upon his or her Reemployment Commencement Date, if he or she is re-employed in an eligible classification under Section 2.1. Notwithstanding the foregoing, in the case of a Pension-Eligible Participant, such Employee shall become eligible to participate in Matching Contributions under Section 3.2 as of the first day of the month coincident with or next following completion of a Year of Service after such Reemployment Commencement Date.

      (ii)    **Where Employee Was Not Previously a Participant Under the Plan.** An Employee who had not completed a Year of Service at the time of his or her Severance from Service Date shall be deemed to be a new Employee, for purposes of Elective Contributions and Matching Contributions, as of his or her Reemployment Commencement Date if the Employee has incurred a One Year Break in Service prior to such Reemployment Commencement Date.

      (b)    **Vesting Purposes.** An Employee shall receive credit for the aggregate of all Periods of Service with an Affiliated Employer. In determining a Participant's Period of Service for vesting purposes, the Plan shall take into account the following Periods of Severance:

(i)     If an Employee incurs a Severance from Service Date by reason of quitting, discharge or retirement and then performs an Hour of Service within twelve (12) months of the Severance from Service Date, the Plan shall take into account the Period of Severance; and

(ii)     If an Employee incurs a Severance from Service Date by reason of quitting, discharge or retirement during an absence from service of twelve (12) months or less for any reason other than quitting, discharge, retirement or death, and then performs an Hour of Service within twelve (12) months of the date on which the Employee was first absent from service, the Plan shall take into account the Period of Severance.

2.3     **Years of Service of Employees of Foreign Subsidiaries**. In the case of an employee of a Foreign Subsidiary who is treated under the Plan as an Employee of the Company, employment with such Foreign Subsidiary shall be deemed to be, for the purposes of the Plan, employment with the Company.

2.4     **Cessation of Participation**.  An individual shall cease to be a Participant in the Plan if:

(a)     he or she ceases to be an Employee as a result of termination of service with the Company for any reason;

(b)     he or she remains in service but fails to be eligible for participation as described in Section 2.1 due to a change in employment status; or

(c)     the Plan is terminated or otherwise amended so that the individual ceases to be eligible for participation;

*provided, however,* that such individual shall continue to be a Participant solely with respect to his or her vested accrued benefits, until such accrued benefits are distributed from the Plan. Notwithstanding the foregoing, an individual described in paragraph (b) immediately above may continue to be eligible to earn Years of Service for vesting purposes while in service with the Company or any Affiliated Employer but shall not be eligible to elect to make Elective Contributions to the Plan or to have Company Contributions made on his or her behalf.

## ARTICLE 3 - CONTRIBUTIONS TO THE FUND

3.1     **Participant Contributions**.

(a)     **Elective Contributions**.

(i)     **Voluntary Participant Election**.  Each Employee, so long as he or she is in the employ of the Company in a classification eligible for participation under Section 2.1, may elect to make Elective Contributions in an amount to be contributed by the Company to the Fund on his or her behalf during each Plan Year, which amount shall be a whole percentage of from zero percent (0%) to and including

19

thirty percent (30%) of the Employee's Compensation during such Plan Year, subject to the dollar limitation in Section 3.1(e) hereof.

(ii)    **Automatic Enrollment.**

(A)    **Pension-Eligible Participants.**    Each Pension-Eligible Participant who, upon becoming eligible to participate in the Plan in accordance with Article 2, fails to make an election as to the amount of his or her Elective Contributions as set forth in subparagraph (i) immediately above shall be deemed to have elected to make Elective Contributions to the Plan in the amount of three percent (3%) of his or her Compensation, effective as of the first day of the second payroll period after he or she becomes eligible to participate under Article 2.

(B)    **Employees Who are Not Pension-Eligible Participants.** Each Employee who is not a Pension-Eligible Participant who, upon becoming eligible to participate in the Plan in accordance with Article 2, fails to make an election as to the amount of his or her Elective Contribution as set forth in subparagraph (i) immediately above shall be deemed to have elected to make Elective Contributions to the Plan in the amount of five percent (5%) of his or her Compensation, effective as of the first day of the second payroll period after he or she becomes eligible to participate under Article 2.

(b)    **Compensation Reduction Agreements.**  Each Participant shall enter into a Compensation reduction agreement with the Company in a form acceptable to the Plan Manager, which shall provide that the Participant agrees to accept a reduction in Compensation equal to the amount elected by the Participant as his or her Elective Contribution.  In consideration of such agreement, the Company will make contributions to the Trust Fund on behalf of the Participant in an amount equal to the amount by which his or her Compensation is reduced with respect to each pay period during which such agreement is in effect.  A deemed election by a Participant under Section 3.1(a)(ii) shall be considered the Participant's Compensation reduction agreement for all purposes of the Plan until superseded by a subsequent salary reduction agreement or revoked in accordance with Section 3.1(c). Compensation reduction agreements shall be governed by the following:

(i)    A Compensation reduction agreement shall apply to each payroll period;

(ii)    The Company shall have the right to amend its Compensation reduction agreement with any Participant at any time if the Company determines that such amendment is necessary to insure:

(A)    that a Participant's Elective Contributions for any Plan Year will not exceed the limitations of Code Section 402(g) and Section 3.1(e) below;

(B)    that Annual Additions for any Plan Year will not exceed the limitations of Code Section 415 and Section 4.3(a) below;

20

MOT-ERISA 3876

CHI 11122185.4

(C)     that the discrimination tests of Code Sections 401(k) and 401(m) are met for any Plan Year as provided in Sections 3.3 and 3.4 below; and

(D)     that a Participant's Elective Contributions for any Plan Year will not exceed the limits which may be imposed by the Plan Manager from time to time in its sole and absolute discretion.

(iii)     Except as provided above or in Section 3.1(c) below, a Compensation reduction agreement may not be amended by a Participant or the Company.

(c)     **Changes to Compensation Reduction Agreements.**

(i)     **General Rule.**  Each Participant shall have the right to change the amount of his or her Compensation reduction agreement or discontinue or recommence his or her Compensation reduction agreement at any time by filing with the Plan a new Compensation reduction agreement in such manner and in such form as the Plan Manager shall determine.  A change in the amount or a discontinuance of a Participant's Compensation reduction agreement shall be effective as soon as administratively practicable immediately following the date upon which the Participant requests the change.

(ii)     **Automatic Escalation.**  Notwithstanding subparagraph (i) immediately above, effective for Plan Years on and after January 1, 2007, a Participant may elect to have his or her percentage used to compute his or her Elective Contributions for a given Plan Year automatically increase from Plan Year to Plan Year (up to a maximum percentage of Compensation designated by the Retirement Benefits Committee) with no further action on the part of the Participant after such original automatic escalation election is filed.  Each Participant desiring automatic escalation shall make such election with the Company on a form provided by and acceptable to the Plan Manager.  A Participant can revoke any automatic escalation election at any time by filing a new Compensation reduction Agreement designating a defined percentage not subject to escalation.

(d)     **Vesting of Participant Contributions Account, Qualified Nonelective Contributions and Qualified Matching Contributions.**  All amounts credited to a Participant's Participant Contributions Account, all Qualified Nonelective Contributions and all Qualified Matching Contributions which may be made by the Company, shall be one hundred percent (100%) vested and nonforfeitable at all times.

(e)     **Maximum Amount of Elective Contributions per Plan Year.**

(i)     **General Rule.**  Except to the extent permitted under Section 3.1(g) of the Plan and Code Section 414(v) with respect to Catch-Up Contributions, no Participant may make Elective Contributions under this Plan and all other plans, contracts or arrangements described in Code Section 402(g)(3) of any Affiliated Employers for any taxable year of the Participant which begins in the Plan Year exceeding the limitation imposed by Code Section 402(g) for such taxable year, as adjusted under Code Section 402(g)(5).

**MOT-ERISA 3877**

(ii)     **Return of Excess Deferrals.** If a Participant's Elective Contributions under this Plan and/or any other plan, contract or arrangement of any Affiliated Employers, or together with elective deferrals (as defined in Treasury Regulation Section·1.402(g)-1(b)) under another plan, exceed the limitation imposed by Code Section 402(g) for such Participant's taxable year, the Participant may, not later than March 1 following the close of his or her taxable year, notify the Plan Manager in writing of such Excess Deferral and request that his or her Elective Contributions under this Plan be reduced by an amount specified by the Participant.  To the extent a Participant has Excess Deferrals for a taxable year under this Plan and/or any other plan, contract or arrangement of the Affiliated Employers, the Participant shall be deemed to have notified the Plan Manager of such excess deferrals and requested a distribution thereof.  In any such event, the Plan Manager may cause such Excess Deferral, plus any income and minus any loss allocable thereto, to be distributed to the Participant not later than the first April 15 following the close of the Participant's taxable year in which such Excess Deferral occurred.

(f)     **Timing of Deposit with Trustee of Elective Contributions.**  Elective Contributions shall be paid to the Trust as soon as practicable after such amounts are withheld from the Participant's Compensation, but in no event later than the fifteenth (15th) business day of the month following the month in which such amounts would otherwise have been paid to the Participant in cash.

(g)     **Catch-Up Contributions.**

(i)     **Eligibility.**  Each Participant eligible to make Elective Contributions under Section 2.1(b) above:

(A)     who will have attained age fifty (50) before the close of the Plan Year, and

(B)     with respect to whom no other Elective Contributions may (without regard to this paragraph (g)) be made to the Plan for such Plan Year by reason of the application of any limitation or other restriction described in the federal income tax laws or the terms of the Plan

shall be eligible to make Catch-Up Contributions for such year in accordance with, and subject to the limitations of, Code Section 414(v), by entering into a Compensation reduction agreement with the Company in a form acceptable to the Plan Manager, as described in paragraphs (b) and (c) above.

(ii)     **Treatment of Catch-Up Contributions.**     Such Catch-Up Contributions shall not be taken into account for purposes of Sections 3.1(a), 3.1(e), 3.2, 3.3, 3.4, 3.5 and 4.3 (other than 4.3(b)(i)) of the Plan).  The Plan shall not be treated as failing to satisfy the provisions of Code Section 401(a)(4), 401(k)(3), 401(k)(11), 401(k)(12), 410(b) or 416, as applicable, by reason of any Catch-Up Contributions hereunder.  Notwithstanding Section 1.18 of the Plan, Catch-up Contributions may be made without regard to the limitation on Compensation set forth in Code Section 401(a)(17).  Catch-Up Contributions shall not be eligible for Matching Contributions.  An eligible Participant can change the amount of his or her

CHI 11122185.4

MOT-ERISA 3878

Catch-Up Contributions by filing with the Plan an election to that effect, in such manner and in such form as the Plan Manager shall determine.

3.2 **Matching Contributions**. The Company shall make a Matching Contribution to the Trust Fund with respect to each Participant who has made an Elective Contribution for such Plan Year and, at the time of such Elective Contribution, has met the eligibility requirements to share in the allocation of Matching Contributions under Section 2.1(c). The amount of the Matching Contribution is determined under paragraphs (a) or (b) below, as applicable. Catch-Up Contributions under Section 3.1(g) shall not be treated as Elective Contributions eligible for a Matching Contribution under this Section 3.2.

    (a)     **Participants Who Are Not Pension-Eligible Participants.**

        (i)     **Amount of Matching Contribution.** The amount of Matching Contributions with respect to a Participant who:

            (A)     is not a Pension-Eligible Participant, and

            (B)     is eligible for a Matching Contribution under Section 2.1(c),

shall be one dollar ($1.00) for each one dollar ($1.00) of the Participant's Elective Contribution that does not exceed three percent (3%) of Compensation for the Plan Year, and fifty cents ($0.50) for each one dollar ($1.00) of the Participant's Elective Contribution that exceeds three percent (3%) but does not exceed five percent (5%) of Compensation for the period.

        (ii)     **Year-End True Up.** If, during any Plan Year, the total of the Matching Contributions made on behalf of a Participant described in subparagraph (i) above during such Plan Year does not equal the maximum amount of Matching Contributions required by Section 3.2(a)(i) to be made with respect to the actual percentage of Compensation the Participant has contributed for the Plan Year, and the Participant satisfies the requirements specified in clauses (A) and (B) immediately below, the Company shall, within sixty (60) days after the end of such Plan Year, make a lump sum contribution to the Participant's Company Contributions Account in an amount equal to the difference between the amount of the Matching Contributions otherwise required to be made and the amount actually made. To receive such a lump sum contribution, such Participant must, with respect to such Plan Year, both:

            (A)     have made Elective Contributions in an amount equal to or greater than the lesser of:

                (1)     five percent (5%) of Compensation for such Plan Year, or

                (2)     a percentage of Compensation determined by dividing (a) the dollar limit specified in Code Section 402(g)(1) (as adjusted under Code Section 402(g)(5)) by (b) the dollar limit set forth in Code Section 401(a)(17) (as adjusted under Code Section 401(a)(17)(B)), and

(B)     be employed by the Company or an Affiliated Employer on December 31 of such Plan Year or have retired during such Plan Year; *provided, however,* if the Participant's Account has been spun-off or transferred during a given Plan Year as a result of the application of Section 11.4 of the Plan, then in no event shall such Participant be deemed to be employed by the Company or an Affiliated Employer on December 31 of such Plan Year.

The largest Matching Contribution that may be made with respect to a Participant who is not a Pension-Eligible Participant for any Plan Year beginning on or after January 1, 2005 shall be four percent (4%) of such Participant's Compensation while eligible for a Matching Contribution during such period.

(b)     **Pension-Eligible Participants.**

(i)     **Amount of Matching Contribution.**  The amount of Matching Contributions with respect to a Pension-Eligible Participant who is eligible for a Matching Contribution under Section 2.1(c) shall be fifty cents ($0.50) for each one dollar ($1.00) of the Participant's Elective Contribution up to six percent (6%) of Compensation for the Plan Year.

(ii)     **Year-End True Up.**  If, during any Plan Year, the total of the Matching Contributions made on behalf of a Pension-Eligible Participant during such Plan Year does not equal the maximum amount of Matching Contributions required by Section 3.2(b)(i) to be made with respect to the actual percentage of Compensation the Participant has contributed for the Plan Year, and the Participant satisfies the requirements specified in clauses (A) and (B) immediately below, the Company shall, within sixty (60) days after the end of such Plan Year, make a lump sum contribution to the account of such Participant in an amount equal to the difference between the amount of the Matching Contributions otherwise required to be made and the amount actually made.  To receive such a lump sum contribution, such Participant must, with respect to such Plan Year, both:

(A)     have made Participant Contributions in an amount equal to or greater than the lesser of:

(1)     six percent (6%) of Compensation for such Plan Year, or

(2)     a percentage of Compensation determined by dividing (a) the dollar limit specified in Code Section 402(g)(1) (as adjusted under Code Section 402(g)(5)) by (b) the dollar limit set forth in Code Section 401(a)(17) (as adjusted under Code Section 401(a)(17)(B)), and

(B)     be employed by the Company or an Affiliated Employer on December 31 of such Plan Year or have retired during such Plan Year; *provided, however,* if the Participant's Account has been spun-off or transferred during a given Plan Year as a result of the application of Section 11.4 of the Plan, then in no event shall such Participant be deemed to be

24

employed by the Company or an Affiliated Employer on December 31 of such Plan Year.

The largest Matching Contribution that may be made with respect to a Pension-Eligible Participant for any period shall be three percent (3%) of such Participant's Compensation while eligible for a Matching Contribution during such period.

(c) **Time of Payment.** Matching Contributions for any Plan Year shall be paid to the Trust no later than the date prescribed by law for filing the Company's Federal income tax returns, including extensions, for such Plan Year.

(d) **General Nonreversion of Matching Contributions.** If contributions or payments made by the Company to the Plan shall result in funds or payments in excess of the amounts required by the Plan to be paid by the Company by reason of mistake of fact, the Company shall be entitled to the return of such excess funds or payments within one (1) year after the payment of the excess amount. Each contribution to the Plan is conditioned upon its deductibility under Code Section 404. To the extent that all or any portion of a contribution is determined not to be deductible under Code Section 404, such contribution or portion thereof shall be returned to the Company within one year after disallowance of the deduction.

3.3 **Actual Deferral Percentage (ADP) Tests.**

(a) **Calculation.** For each Plan Year, one of the following tests must be satisfied:

(i) The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for such Plan Year multiplied by one and one-fourth (1.25); or

(ii) The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by two (2), provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than two (2) percentage points.

Compliance with subparagraph (ii) immediately above shall be determined in accordance with the rules set forth in Code Section 401(k)(3) and Treas. Reg. § 1.401(k)-2, or any successors thereto and, as such, the following rules shall apply:

(A) The individual Actual Deferral Percentage of a Highly Compensated Employee who is an eligible employee in more than one cash or deferred arrangement of the same employer is calculated by treating all contributions with respect to such Participant under any such arrangement as being made under the cash or deferred arrangement being tested. However, cash or deferred arrangements under plans that are not permitted to be

aggregated under Treas. Reg. § 1.401(k)-1(b)(4) (determined without regard to the prohibition on aggregating plans with inconsistent testing methods and the prohibition on aggregating plans with different plan years) are not aggregated under this clause.

(B)     For the purposes of calculating the Average Actual Deferral Percentage, the individual Actual Deferral Percentage of any Non-Highly Compensated Employee who has not met the minimum age and service requirements of Code Section 410(a)(1)(A) shall be disregarded.

(C)     For the purposes of calculating the Average Actual Deferral Percentage, any Elective Contributions made on behalf of a Participant in connection with a Qualified Military Service are excluded from that Participant's individual Actual Deferral Percentage computation.

(b)     **Correcting Excess Contributions.**   If the limitation imposed by Section 3.3(a) is not satisfied for any Plan Year, the Plan shall take such remedial measures as are required under this paragraph (b) no later than the last day of the Plan Year following the Plan Year for which Excess Contributions were allocated.

(i)     **Distribution of Excess Contributions.**   The Retirement Benefits Committee may cause the Plan to distribute Excess Contributions to Highly Compensated Employees as described below. The amount of Excess Contributions to be distributed shall be reduced by Excess Deferrals previously distributed for the taxable year ending in the same Plan Year.

(A)     The contributions of the Highly Compensated Employee with the highest dollar amount of Elective Deferrals taken into account under Section 3.3 are reduced by the amount required to cause that Highly Compensated Employee's Elective Deferrals to equal the dollar amount of such Elective Deferrals for the Highly Compensated Employee with the next highest dollar amount of Elective Deferrals.  If a lesser apportionment to the Highly Compensated Employee would enable the Plan to apportion the total amount of Excess Contributions, only the lesser apportionment would apply.

(B)     Matching Contributions attributable to Elective Deferrals distributed hereunder shall be forfeited.

(C)     The foregoing steps shall be repeated until the total amount of Excess Contributions have been distributed.   Recalculation of the Actual Deferral Percentage test following the distribution of Excess Contributions shall not be required.

(D)     The Income attributable to a Participant's Excess Contributions distributed hereunder must also be distributed and shall be computed in accordance with Treas. Reg. § 1.401(k)-2(b)(2)(iv).

(ii)     **Qualified Employer Deferral Contributions.**   The Company may, in its sole discretion, make a Qualified Nonelective Contribution or a Qualified

MOT-ERISA 3882

Matching Contribution, or both on behalf of Non-Highly Compensated Employees that are taken into account for purposes of Section 3.3(a) so as to allow the Plan to satisfy the requirements thereof. Qualified Nonelective Contributions may be made on behalf of all Non-Highly Compensated Employees or those whose Compensation does not exceed an amount determined by the Company. Such Qualified Nonelective Contributions may be contributed in different percentages, provided that, any such Qualified Nonelective Contribution may not exceed the amount determined in accordance with Treas. Reg. §1.401(k)-2(b)(6)(iv).

(iii)     **Recharacterization of Excess Contributions.** In lieu of distributing Excess Contributions under subparagraph (i) immediately above, the Plan may recharacterize such Excess Contributions as after-tax contributions under the Plan. Recharacterization of Excess Contributions is permitted only if the affected Highly Compensated Employee receives notice of the inclusion of such contributions in income no later than two and one-half months after the end of the Plan Year to which the recharacterized contributions relate.

(iv)     **Combination of Methods.** In addition to any correction method provided for above, the Plan may limit Elective Deferrals of Highly Compensated Employees in a manner designed to prevent Excess Contributions from being made, or may use a combination of these methods, to avoid or correct Excess Contributions. The Plan Administrator may permit a Highly Compensated Employee to elect whether any Excess Contributions are to be recharacterized or distributed.

3.4     <u>**Average Contribution Percentage Tests**</u>.

(a)     <u>**Calculation**</u>. For each Plan Year, one of the following tests must be satisfied:

(i)     The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by one and one-fourth (1.25); or

(ii)     The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by two (2), provided that the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than two (2) percentage points.

Compliance with subparagraph (ii) immediately above shall be determined in accordance with the rules set forth in Code Section 401(m)(2) and Treas. Reg. § 1.401(m)-2, or any successors thereto and, as such, the following rules shall apply:

(A)     The individual Contribution Percentage of a Highly Compensated Employee who is an eligible employee in more than one plan of the same employer to which matching contributions or employee

CHI 11122185.4

MOT-ERISA 3883

contributions are made is calculated by treating all contributions with respect to such Eligible Participant under any such plan as being made under the plan being tested. However, plans that are not permitted to be aggregated under Treas. Reg. § 1.401(m)•1(b)(4) (determined without regard to the prohibition on aggregating plans with inconsistent testing methods and the prohibition on aggregating plans with different plan years) are not aggregated under this clause.

(B)     For the purposes of calculating the Average Contribution Percentage, the individual Contribution Percentage for any Non-Highly Compensated Employee who has not met the minimum age and service requirements of Code Section 410(a)(1)(A) shall be disregarded.

(b)     **Correcting Excess Aggregate Contributions.** If the limitation imposed by Section 3.4(a) is not satisfied for any Plan Year, the Plan shall take such remedial measures as are required under this paragraph (b) no later than the last day of the Plan Year following the Plan Year for which Excess Aggregate Contributions were allocated. The amount of Excess Aggregate Contributions to be distributed shall be reduced by any Matching Contributions forfeited under Section 3.3(b)(i)(B) for the same Plan Year.

(i)     **Distribution of Excess Aggregate Contributions.** The Retirement Benefits Committee shall distribute vested Matching Contributions and forfeit unvested Matching Contributions after the end of the Plan Year according to the following rules:

(A)     The contributions with respect to the Highly Compensated Employee with the highest dollar amount of contributions taken into account under Section 3.4 are reduced by the amount required to cause that Highly Compensated Employee's contributions to equal the dollar amount of such contributions for the Highly Compensated Employee with the next highest dollar amount of contributions taken into account under Section 3.4. If a lesser apportionment to the Highly Compensated Employee would enable the Plan to apportion the total amount of Excess Aggregate Contributions, only the lesser apportionment would apply.

(B)     The foregoing steps shall be repeated until the total amount of Excess Aggregate Contributions have been distributed. Recalculation of the Average Contribution Percentage test following the distribution of Excess Aggregate Contributions shall not be required.

(C)     The Income attributable to a Participant's Excess Aggregate Contributions distributed hereunder for the Plan Year during which such Excess Aggregate Contributions arose must also be distributed and shall be computed in accordance with Treas. Reg. § 1.401(m)-2(b)(2)(iv).

(ii)     **Forfeit Statutory Matching Contributions.** The Company may determine Excess Aggregate Contributions under subparagraph (i) immediately above and may forfeit Statutory Matching Contributions, with Income attributable thereto, if forfeitable under the terms of the Plan. Such forfeitures either:

MOT-ERISA 3884

CH1 11122185.4

(A)     shall be used to reduce the amount paid to the Plan by an Affiliated Employer for Matching Contributions; or

(B)     shall be allocated to the accounts of Non-Highly Compensated Employees in the proportion that each such Eligible Participant's Section 414(s) Compensation bears to the Section 414(s) Compensation of all such Eligible Participants,

in the year in which such forfeiture occurs.

(iii)   **Qualified Matching Contributions.**  The Employer may, in its sole discretion, make discretionary Qualified Matching Contributions on behalf of Non-Highly Compensated Employees that are taken into account for purposes of Section 3.4 so as to allow the Plan to satisfy the requirements thereof.

(iv)   **Combination of Methods.**  In addition to any correction method provided for above, the Plan Administrator may limit Elective Deferrals or Matching Contributions on behalf of Highly Compensated Employee in a manner designed to prevent Excess Aggregate Contributions from being made, or may use a combination of these methods, to avoid or correct Excess Aggregate Contributions.

3.5     **Additional Testing Rules.**  The following rules shall apply to the nondiscrimination tests set forth in Sections 3.3 and 3.4 of the Plan.

(a)     **Participation in Two or More Plan.**  The Actual Deferral Percentage or Contribution Percentage of any Eligible Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Elective Deferrals, Qualified Deferral Contributions, employee contributions, Statutory Matching Contributions or Qualified Employer Contributions allocated to his or her account under two or more plans described in Code Section 401(a) that are maintained by Affiliated Employers shall be determined as if all such contributions were made under a single plan.  If such an Eligible Participant participates in two or more plans that have different plan years, all such plans ending with or within the same calendar year shall be treated as a single plan.

(b)     **Aggregation Rules.**  This Plan and any other qualified plans which any Affiliated Employer maintains providing for a cash or deferred arrangement, employee contributions or Statutory Matching Contributions shall be treated as follows:

(i)     If this Plan satisfies the requirements of Code Section 401(a)(4) or 410(b) only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of Code Section 401(a)(4) or 410(b) only if aggregated with this Plan (after application of the mandatory disaggregation rules of Treas. Reg. § 1.410(b)-7(c) and the permissible aggregation rules of Treas. Reg. § 1.410(b)-7(d) as modified by Treas. Reg. § 1.401(k)-1(b)(4)(v)), then Sections 3.3 and 3.4 shall be applied by determining the Actual Deferral Percentage or Contribution Percentage of Eligible Participants as if all such plans were a single plan.

**MOT-ERISA 3885**

(ii)     This Plan may be aggregated with any other qualified plan maintained by the Company or an Affiliated Employer to determine whether the Actual Deferral Percentage or Contribution Percentage of Participants satisfies the requirements of Sections 3.3 and 3.4, provided that:

(A)     the aggregated plans are treated as one plan for purposes of Code Sections 401(a)(4), 401(k), 401(m) and 410(b);

(B)     the plans so aggregated have the same plan year; and the plans being aggregated employ the same testing methodology for the Actual Deferral Percentage test and the Actual Contribution Percentage test.

(c)     **Inclusion as Annual Additions.**  For purposes of Section 4.3(a), Excess Aggregate Contributions, including amounts forfeited by Highly Compensated Employees under Section 3.4(b)(ii), shall be treated as Annual Additions.  Forfeited Statutory Matching Contributions that are reallocated to the accounts of other Participants for the Plan Year in which the Forfeiture occurs are treated under Code Section 415 as Annual Additions for the Participants to whose accounts they are reallocated and for the Participants from whose accounts they are forfeited.

(d)     **No Notice or Consent Required to Distribute.**  Any distribution under Sections 3.3 or 3.4 may be made without any notice or consent otherwise required under the Plan or Code Sections 411(a)(11) and 417.  In addition, any such distribution will not be considered a distribution for purposes of determining whether the Plan satisfies the minimum distribution requirements of Section 5.3(d) hereof.

(e)     **Compliance with the Code.**  Sections 3.3 and 3.4 shall be applied so as to meet the requirements of Code Sections 401(k) and 401(m) respectively, and the regulations promulgated thereunder.

# ARTICLE 4 - ALLOCATIONS TO PARTICIPANTS' ACCOUNTS AND TOP-HEAVY PROVISIONS

## 4.1     Investment of Participant Accounts.

(a)     **General Rules.**  The assets of the Trust Fund shall be invested in such Investment Funds as may be selected by the Retirement Benefits Committee from time to time; *provided, however,* that such Investment Funds shall include the Motorola Stock Fund.  Each Participant shall have three accounts, a Company Contributions Account, a Participant Contributions Account and a Rollover Contributions Account, in each Investment Fund in which Account balances, if any, are maintained for the Participant.  The Plan Manager may establish such additional Participant accounts or sub-accounts as it deems appropriate from time to time to properly reflect Participants' benefits under the Plan.  The maintenance of individual Accounts for each Participant is for accounting purposes only, and a segregation of the assets of the Trust Fund to such Accounts shall not be required.

(b)     **Voting a Participant's Investment in Motorola Common Stock.**  Each Participant shall be entitled to direct the manner in which the shares (including fractional

shares) of Motorola, Inc. common stock in his or her Account in the Motorola Stock Fund are to be voted. The Trustee shall vote such shares in accordance with the directions of the Participants. This requirement will be met if the Trustee votes the combined fractional shares to the extent possible to reflect the direction of the voting Participants. All shares credited to Participants' Accounts as to which the Trustee does not receive voting directions, and all unallocated shares held by the Trustee, shall be voted by the Trustee proportionately in the same manner as the Trustee votes shares as to which the Trustee has received voting instructions. The Corporation will cause to be distributed proxy materials to all Participants who have an Account balance in the Motorola Stock Fund prior to each stockholders' meeting at the same time it distributes such materials to all other stockholders.

4.2 **Account Adjustments**. The Accounts of the Participants shall be adjusted in accordance with the following:

(a) **Allocation of Participant Contributions**. Participant Contributions made on behalf of a Participant shall be allocated to his or her Participant Contribution Account as soon as practicable after such Participant Contributions are paid to the Trust Fund.

(b) **Allocation of Matching Contributions**. Matching Contributions made on behalf of a Participant shall be allocated to such Participant's Company Contribution Account as soon as practicable after such Matching Contribution is paid to the Trust Fund.

(c) **Allocation of Qualified Nonelective Contributions and Qualified Matching Contributions**. Qualified Nonelective Contributions and Qualified Matching Contributions for a Plan Year shall be allocated as of the last day of such Plan Year to the Participant Contributions Accounts and Company Contributions Accounts, respectively, of Eligible Participants who are Non-Highly Compensated Employees.

(d) **Allocation of Income to Participants**. Income shall be separately determined for each Investment Fund as of each Valuation Date and shall be allocated among the Accounts within such Investment Fund as of each Valuation Date, in accordance with the rules and regulations governing such Investment Funds. Amounts deemed allocated to Accounts as of the last day of the Plan Year hereunder shall not be taken into account under this Section 4.2(d) until such amounts are actually paid to the Trust Fund and the actual allocation of funds occurs.

4.3 **Maximum Allocations and Top Heavy Provisions**.

(a) **Annual Addition Limitation on Allocations to Participants**. Notwithstanding any other provision of the Plan, Annual Additions (as defined below) which can be credited to the accounts of a Participant in any Plan Year (a "limitation year") under this Plan and other tax-qualified defined contribution plan maintained by an Affiliated Employer shall not exceed the lesser of:

(i) the dollar amount set forth in Code Section 415(c)(1)(A) ($45,000 effective January 1, 2007) as in effect for such Code Section 415 limitation year, as adjusted for cost of living increases under Section 415(d); or

MOT-ERISA 3887

(ii)    one hundred percent (100%) of the Participant's Section 415 Compensation for such Code Section 415 limitation year.

(b)    **Correction of Annual Addition Excesses.**

(i)    **General Rule.** If Annual Additions for any Participant exceed the limitation described above, the Elective Contributions (other than Catch-Up Contributions) made by the Participant for the Code Section 415 limitation year which cause the excess (to the extent no Company Contributions have been made with respect to such Elective Contributions), plus any Income allocable thereto, shall be returned to the Participant. If, after returning such Elective Contributions to the Participant an excess still exists, additional Elective Deferrals made by the Participant for such Code Section 415 limitation year (plus Income allocable thereto) shall be returned to the Participant, and any Company Contributions attributable to such Elective Deferrals (plus Income allocable thereto) shall be applied as described in subparagraph (ii) immediately below, to the extent necessary to eliminate such excess.

(ii)    **Allocation of Excess Company Contributions and Suspense Accounts.** If the Participant is covered by the Plan at the end of the Code Section 415 limitation year, any excess Company Contributions (and Income) forfeited from the Participant's Accounts under the preceding sentence will be used to reduce Company Contributions for such Participant in the next Code Section 415 limitation year, and each succeeding Code Section 415 limitation year if necessary. However, if the Participant is not covered by the Plan at the end of a Code Section 415 limitation year, such excess amount will be held unallocated in a suspense account. The suspense account will be applied to reduce future Company Contributions for all remaining Participants in the next Code Section 415 limitation year, and each succeeding Code Section 415 limitation year if necessary. A suspense account under this Section 4.3(b)(ii) will not participate in the allocation of Income. If a suspense account is in existence at any time during a particular Code Section 415 limitation year, all amounts in the suspense account must be allocated and reallocated to Participants' accounts before any Company or any Participant Contributions may be made to the Plan for that Code Section 415 limitation year. Excess amounts in a suspense account may not be distributed to Participants or former Participants.

(c)    **Top Heavy Provisions.**

(i)    **Top Heavy Determination.** The Plan will be considered to be "Top Heavy" for a Plan Year if, as of the Determination Date:

(A)    the aggregate value (determined as of the most recent Valuation Date that falls within or ends with the Plan Year ending on the Determination Date) of the Accounts of Participants who are Key Employees, *exceeds*

(B)    sixty percent (60%) of the aggregate value of the Accounts of all Participants, excluding former Key Employees and individuals who have

MOT-ERISA 3888

not performed services for the Company at any time during the one-year period ending on the Determination Date.

If the Plan is part of a Required Aggregation Group, the Plan will be considered to be Top Heavy for a Plan Year if, as of the Determination Date:

(1)      the sum of:

(a)      the aggregate value (determined as of the most recent Valuation Date within the preceding Plan Year) of the Accounts of Key Employees under all defined contribution plans included in the Required Aggregation Group; and

(b)      the present value (determined as of the most recent Valuation Date within the preceding Plan Year) of the cumulative accrued benefits for Key Employees under all defined benefit plans included in the Required Aggregation Group; *exceeds*

(2)      sixty percent (60%) of a similar sum for all participants in all such plans, excluding former Key Employees and individuals who have not performed services for the Company at any time during the one-year period ending on the Determination Date.

For purposes of determining the value of the Account or present value of the cumulative accrued benefit for any Participant, such values shall be increased by the aggregate distributions made with respect to such Participant under a plan during the one-year period ending on the Determination Date, including any terminated plan maintained within the last one-year period ending on the Determination Date which, if it had not been terminated, would have been included in the Required Aggregation Group, and any other distributions with respect to the Participant in the five-year period ending on the Determination Date that were made for reasons other than separation from service, death or disability. The Top Heavy ratio will be computed in accordance with the provisions of Code Section 416. Notwithstanding the above, the Plan shall not be considered to be Top Heavy for any Plan Year in which the Plan is included in a Required Aggregation Group or Permissive Aggregation Group, within the meaning of Code Section 416(g), which is not Top Heavy.

(ii)      **Top Heavy Minimum Contributions.** Notwithstanding the provisions of Sections 3.2 and 4.2 hereof, for each Plan Year in which the Plan is Top Heavy, the Company Contributions plus Forfeitures, if any, allocated to the Account of each Participant (including Participants who fail to complete 1,000 Hours of Service during the Plan Year) who is not a Key Employee shall equal at least three percent (3%) of his or her Section 415 Compensation for such Plan Year, or, if less, the largest percentage of Section 415 Compensation provided on behalf of any Key Employee for that Plan Year. Matching Contributions shall be taken into account for purposes of satisfying this minimum contribution requirement. For purposes of the foregoing:

MOT-ERISA 3889

(A)    the percentage of Section 415 Compensation for each Key Employee shall be:

(1)    the sum of the share of the Company Contribution plus Forfeitures, if any, and Elective Contributions allocated on behalf of such Key Employees, *divided by*

(2)    so much of Section 415 Compensation as does not exceed the Code Section 401(a)(17) limitation;

(B)    all defined contribution plans required to be included in the Required Aggregation Group shall be treated as one plan; and

(C)    the minimum contribution shall be three percent (3%) if the Plan enables a defined benefit plan included with it in a Required Aggregation Group to meet the requirements of Code Section 401(a)(4) or 410.

The minimum allocation will be determined without regard to any Social Security contribution. Notwithstanding the foregoing, Participants who also participate in the Motorola, Inc. Pension Plan shall not receive both the defined contribution and the defined benefit minimums provided for in Code Section 416(c). In such case, the minimum contribution or benefit requirement for such other plan will be met by increasing the three percent (3%) requirement of this subparagraph (ii) to five percent (5%).

(iii)    **Subsequent Law.** In the event that Congress should provide by statute, or the Treasury Department should provide by regulation or ruling, that the limitations provided in this Section 4.3 are no longer necessary for the Plan to meet the requirements of Code Section 401 or other applicable law then in effect, such limitations shall become void and shall no longer apply, without the necessity of further amendment to the Plan.

4.4    **Valuation of Fund**.  The Retirement Benefits Committee shall, as of the last Valuation Date of the Plan Year and as of such other Valuation Dates as it shall determine, prepare a statement of the condition of the Trust Fund setting forth all contributions, investments, receipts, disbursements, income and other transactions effected with respect to the Trust Fund during the period for which the statement is being prepared, including a list of all cash, securities, and other property held on such Valuation Date at their cost and fair market values determined as of the Valuation Date for which the statement of condition is being prepared.

4.5    **Investment of Funds**.

(a)    **Investment Direction and Investment Elections.**

(i)    **General Rule.**  Each Accountholder shall be permitted to direct the investment of his or her accounts among Investment Funds that the Trustee shall from time to time cause to be made available at the direction of the Retirement Benefits Committee, in accordance with Section 404(c) of ERISA and regulations thereunder. Investment elections by an Accountholder shall be made in such manner, in such

increments, and at such time or times, as authorized under the administrative rules and procedures established from time to time by the 404(c) Fiduciary consistent with such reasonable guidelines and limitations as the Retirement Benefits Committee shall deem appropriate for the efficient administration of the Plan. The Plan Manager may authorize alternative methods for making changes in investment elections, including electronic or telephonic communications, in lieu of a written election form. Any election that complies with the requirements of such alternative method of making investment elections shall be considered to have been "filed" with the Plan Manager. Any such alternative investment election method (including all applicable rules, procedures and limitations) shall be communicated to Participants. All earnings and expenses, including commissions and transfer taxes, realized or incurred in connection with any investments pursuant to an Accountholder's directions shall be credited or charged to the Account for which the investment is made, except to the extent paid by the Company in its sole discretion.

(ii) **Default Investment Elections.** In the absence of an individual investment election by the Participant, the Plan Manager shall invest a Participant's Account in a managed account program selected, from time to time, by the Retirement Benefits Committee. Default investments under the managed account program shall be periodically evaluated from time to time by the 404(c) Fiduciary with input requested from the Retirement Benefits Committee.

(b) **Limitation of Liability.** Each Accountholder shall bear the sole responsibility for the selection of the Investment Funds for his or her accounts, and neither the Trustee, the 404(c) Fiduciary nor the Retirement Benefits Committee nor the Plan Manager shall have any responsibility or liability for any losses that may occur in connection with such selection, as set forth in Section 404(c) of ERISA and regulations thereunder.

4.6 **Rollover Contributions**.

(a) **General Rules.** With the consent of the Plan Manager, in its discretion, amounts may be transferred to this Plan by or on behalf of an Employee from another Qualified Plan. In addition, a former Participant who continues to have a vested Account balance in the Plan may elect to transfer to this Plan any eligible benefit amount payable to or on behalf of the former Participant from the Motorola Pension Plan. Such transferred benefits shall become subject to the terms and conditions of this Plan. The transferred benefits shall be credited to the Employee's (or former Participant's) Rollover Contributions Account as soon as practicable after the date the transfer is made. The Employee (or former Participant) shall have the right to direct the investment of the Rollover Contributions Account in the various Investment Funds as provided in Section 4.5 hereof, and in the absence of such direction, the Rollover Contributions Account will be invested in the managed account program (or similar vehicle) currently being offered under the Plan. The Rollover Contributions Account shall be fully vested at all times and shall not be subject to forfeiture.

(b) **Amount Which May Be Transferred to the Plan.** The amounts which may be transferred to this Plan include:

MOT-ERISA 3891

(i)    amounts transferred to this Plan directly from another Qualified Plan at the Employee's request;

(ii)    lump-sum distributions received by an Employee (or, in the case of the Motorola Pension Plan, by a former Participant) from another Qualified Plan which are eligible for tax free rollover to a Qualified Plan and which are transferred by the Employee (or former Participant) to this Plan within sixty (60) days following his or her receipt thereof;

(iii)    amounts transferred to this Plan from a conduit individual retirement account provided that the conduit individual retirement account has no assets other than assets which:

(A)    were previously distributed to the Employee by another Qualified Plan as a lump-sum distribution,

(B)    were eligible for tax-free rollover to a Qualified Plan, and

(C)    were deposited in such conduit individual retirement account within sixty (60) days after receipt thereof and other than earnings on said assets;

(iv)    amounts distributed to the Employee from a conduit individual retirement account meeting the requirements of subparagraph (iii) immediately above and transferred by the Employee to this Plan within sixty (60) days of his or her receipt thereof from such conduit individual retirement account;

(v)    amounts rolled over from an individual retirement account ("IRA") described in Code Section 408(a) (without regard to whether such IRA is a conduit individual retirement account described in subparagraph (iii) immediately above) provided that such amounts are transferred within sixty (60) days of the Participant's receipt of such amounts;

(vi)    amounts rolled over from an individual retirement annuity described in Code Section 408(b) provided that such amounts are transferred within sixty (60) days of the Participant's receipt of such amounts;

(vii)    amounts rolled over from an annuity described in Code Section 403(b) provided that such amounts are transferred within sixty (60) days of the Participant's receipt of such amounts; and

(viii)    amounts rolled over from an eligible governmental plan described in Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state, provided that such amounts are transferred within sixty (60) days of the Participant's receipt of such amounts.

Notwithstanding the foregoing, no stock or other non-cash property, and no amounts attributable to after-tax contributions, may be transferred to this Plan under this Section 4.6. Prior to accepting any transfers to which this Section 4.6 applies, the Plan Manager may

    MOT-ERISA 3892

require the Employee to establish that the amounts to be transferred to this Plan meet the requirements hereof.

(c)     **Special Rule for Participants Under Terminated Qualified Plans.** If a defined contribution plan qualified under Code Sections 401(a) and 401(k) maintained by an Affiliated Employer is terminated, and there are participants in such plan who cannot be located or who otherwise fail to consent to a distribution, the Plan Manager is authorized to accept the transfer to the Plan by the trustee under such other tax-qualified 401(k) plan of the amount credited to the account of such individuals. Such transferred benefits shall become subject to the terms and conditions of the Plan. The transferred benefits shall be credited to such individual's Rollover Contributions Account as soon as practicable after the date the transfer is made, and shall be treated hereunder as a rollover amount. Such individual shall have the right to direct the investment of the transferred benefits in the various Investment Funds as provided in Section 4.5 hereof, and in the absence of such direction, the transferred benefits will be invested in the managed account program (or similar vehicle) currently being offered under the Plan. The transferred benefits shall be fully vested at all times and shall not be subject to forfeiture. Any optional forms of distribution available under the transferor plan shall be preserved with respect to the transferred benefits, unless and until the requirements of Treasury Regulation Section 1.411(d)-4(e) are met with respect to the elimination of such optional form of distribution.

## ARTICLE 5 - VESTING AND DISTRIBUTION OF BENEFITS

5.1     **Vesting of Benefits**.

(a)     **Participant Contributions Account.** A Participant's interest in his or her Participant Contributions Account shall be 100% vested and nonforfeitable at all times. A Participant's interest in any Qualified Employer Contributions shall also be 100% vested and nonforfeitable at all times.

(b)     **Rollover Contributions Account.** A Participant's interest in his or her Rollover Contributions Account shall be 100% vested and nonforfeitable at all times.

(c)     **Company Contributions Account.** A Participant's vested interest in his or her Company Contributions Account shall be determined in accordance with subparagraphs (i) or (ii) below, as applicable to the Participant.

(i)     **Participant Who Is Not a Pension-Eligible Participant.** For a Participant other than a Pension-Eligible Participant, the vested percentage of the Company Contributions Account shall be determined in accordance with the following schedule, based on the number of the Participant's Years of Service:

| | |
|---|---|
| Less than 1 Year of Service | 0% |
| 1 or more Years of Service | 100% |

Notwithstanding the foregoing, if such a Participant's employment with the Company terminates due to retirement on or after his or her Normal Retirement Date or Early Retirement Date, or due to death or Total and Permanent Disability, such Participant

(or, in the case of death, his or her Beneficiary) shall be entitled to receive the entire amount credited to his or her Company Contribution Account.

      (ii)    **Pension-Eligible Participant.** A Pension-Eligible Participant who has earned an Hour of Service on or after July 1, 2000 shall be 100% vested in his or her Company Contributions Account, without regard to the Participant's Years of Service.

    (d)    **Forfeitures.**

      (i)    **General Rule.** The portion of a Participant's Company Contributions Account which is not vested upon his or her termination of employment with the Affiliated Employers under Section 5.1(c) will become a Forfeiture upon the earlier of the date the Participant:

        (A)    incurs a One Year Break in Service (or, prior to April 1, 2004, five (5) consecutive One Year Breaks in Service), or

        (B)    receives a distribution of the entire amount of the then vested portion of his or her Accounts.

      (ii)    **Reemployment Situations.** If a Participant who has incurred a Forfeiture is subsequently reemployed by an Affiliated Employer before he or she has five (5) consecutive One Year Breaks in Service, such Participant may repay the amount of any distribution which he or she received from his or her Company Contributions Account (and, for Participants whose Severance from Service Date is on or after January 1, 2005, the amount of any distribution received from his or her Participant Contributions Account) within the five (5) year period following his or her Reemployment Commencement Date. Upon such repayment:

        (A)    the repaid amount *plus* the amount of the prior Forfeiture (without Income) shall be credited to the Participant's new Company Contributions Account or Participant Contribution Account, as applicable; and

        (B)    the Years of Service, if any, the Participant completes following reemployment shall be aggregated with any pre-Break in Service Years of Service for purposes of determining his or her vested interest in his or her restored Company Contributions Account.

Such restoration of Forfeiture shall be made out of Forfeitures occurring in the Plan Year which includes his or her Reemployment Commencement Date, or if such Forfeitures are not sufficient, the Company shall make a special contribution to the Participant's restored Company Contributions Account. Notwithstanding the foregoing, in the case of a Forfeiture made prior to five (5) consecutive One Year Breaks in Service and prior to a distribution of the entire amount of the Participant's then vested portion of his or her accounts, the amount to be restored shall be adjusted to reflect any Income that would otherwise have been allocated with respect to such Forfeiture under Section 4.5 had such amount remained in the Participant's Account from the date of the Forfeiture to the date of restoration. Any amount so restored to a

Participant shall not constitute an Annual Addition under Section 4.3(a). If a Participant or former Participant is reemployed after he or she has five (5) consecutive One Year Breaks in Service, or if the Participant fails to repay the amount previously distributed to him or her within five (5) years following the date of his or her reemployment, the Participant's Years of Service subsequent to such Breaks in Service shall not be taken into account in determining the vested portion of his or her Company Contributions Account prior to such reemployment, and the portion of such Account which was forfeited shall not be restored.

     (iii)   **Use of Forfeitures**. Forfeitures:

        (A)   shall be used to reduce the amount paid to the Plan by an Affiliated Employer for Matching Contributions; or

        (B)   may be used, in the discretion of the Retirement Benefits Committee, to pay for Qualified Nonelective Contributions, if applicable; or

        (C)   may be used, in the discretion of the Administrative Committee, to pay for Qualified Matching Contributions, if applicable; or

        (D)   may be used to restore Forfeitures which previously occurred due to application of this paragraph (c) in prior Plan Years to affected Participants upon their Reemployment Commencement Date; or

        (E)   may be used to pay the administrative expenses related to the Plan.

Forfeitures shall be removed from a Participant's Account at least annually (or more frequently during the Plan Year if administratively feasible) and applied for the purposes outlined above back to the Affiliated Employer (to the extent administratively feasible and to the extent specifically identifiable) who originally contributed the forfeited Matching Contributions for the forfeiting Participant. For example, a particular Affiliated Employer's forfeitures which were removed from Participants' Accounts whom that Affiliated Employer employed shall be applied toward that particular Affiliated Employer's future Matching Contribution obligations.

     (e)   **Adjustment for Loans**. The amounts available for distribution under this Article 5 shall be adjusted to reflect any outstanding loan obligation, as provided in Section 5.5 or in any loan note or procedure promulgated thereunder.

## 5.2   **Designation of Beneficiaries**.

     (a)   **Making Beneficiary Designations**. Each Participant (including, for purposes of this Section 5.2, any former Participant) may, from time to time, designate any person or persons (who may be designated contingently or successively and who may be an entity other than a natural person) as his or her Beneficiary or Beneficiaries to whom the Participant's vested Account balances under the Plan are to be paid if he or she dies before receipt of all such benefits, in accordance with such rules as the Plan Manager shall determine. Each Beneficiary designation must be made in a form acceptable to the Plan

                             **MOT-ERISA 3895**

Manager and will be effective only when filed with him or her (or his or her designee) during the Participant's lifetime, and only if, in the case of a married Participant, spousal consent is provided as described in paragraph (e) immediately below. Each Beneficiary designation filed with the Plan Manager will cancel all Beneficiary designations previously filed with it by that Participant. The revocation of a Beneficiary designation, no matter how effected, shall not require the consent of any designated Beneficiary.

(b)     **Proof of Death.**  The Plan Manager may require such proof of death and such evidence of the right of any person to receive payment under this Section 5.2 as the Plan Manager may deem advisable. The Plan Manager's determination of death and of the right of any person to receive payment under this Section 5.2 shall be conclusive.

(c)     **Exceptions to a Beneficiary Designation.**  If a Participant who has designated his or her spouse as Beneficiary subsequently is divorced from such spouse, unless such Participant designates a different Beneficiary(ies) or remarries, the Participant shall be conclusively determined to have re-designated the divorced spouse as Beneficiary, and the divorced spouse shall remain the Beneficiary notwithstanding that such divorced spouse may have signed a waiver or release of property rights with respect to the Participant in connection with the divorce proceedings. Any Beneficiary designation made by an unmarried Participant shall be automatically revoked upon such Participant's marriage. If a Participant has not designated a Beneficiary or Beneficiaries in the manner provided herein, or if none of the designated Beneficiaries survive the Participant, or if for any reason such designation shall be legally ineffective, then payment of any distribution under this Section 5.2 shall be made in the following priority:

(i)     to the Participant's surviving spouse; or if there be none surviving,

(ii)     to the Participant's surviving children, in equal shares, or if there be none surviving,

(iii)     to the Participant's father and mother, in equal shares if both are surviving, or if only one is surviving, to the one surviving; or if neither is surviving,

(iv)     to the Participant's estate.

(d)     **Definition of Spouse.**  The term spouse or surviving spouse means the spouse of the Participant, as determined under the laws of the State of Illinois; *provided, however,* that a former spouse will be treated as the spouse or surviving spouse to the extent provided under a qualified domestic relations order as described in Code Section 414(p). The benefit payable to a spouse will be reduced to the extent necessary to comply with any qualified domestic relations order.

(e)     **Married Participant's Spousal Consent Requirement.**  The consent of a spouse to the designation of a Beneficiary(ies) other than the spouse by the Participant must:

(i)     be in writing;

(ii)     acknowledge the effect of the designation of a Beneficiary(ies) other than the spouse; and

MOT-ERISA 3896

(iii)    be witnessed by a notary public or a Plan representative.

Consent, if given, shall be irrevocable. The designation of a Beneficiary(ies) may not be changed without spousal consent, unless the consent of the spouse expressly permits designations by the Participant without any requirement of further consent by the spouse and acknowledges that the spouse had the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elected to relinquish such right.

5.3    **Commencement of Distributions**.

(a)    **Account Balances of $1,000 or Less.** If a Participant's employment with the Company is terminated for any reason and the nonforfeitable amount credited to such Participant's Accounts as of the Valuation Date immediately preceding the date distribution commences does not exceed One Thousand Dollars ($1,000), the Plan Manager shall distribute to such Participant the nonforfeitable amount credited to such Participant's Accounts in a single lump sum payment (adjusted as necessary to reflect the repayment of any outstanding loan balance(s)). Amounts transferred to this Plan pursuant to Section 4.6 shall be included in determining whether the nonforfeitable portion of a Participant's accounts equals or exceeds $1,000.

(b)    **Account Balances of More than $1,000.** If a Participant's employment with the Company is terminated for any reason and the nonforfeitable amount credited to such Participant's Accounts as of the Valuation Date immediately preceding the date distribution commences exceeds One Thousand Dollars ($1,000), such nonforfeitable amounts (adjusted as necessary to reflect the repayment of any outstanding loan balance(s)) shall be immediately distributable to the Participant (or in the case of the Participant's death, to his or her Beneficiary); *provided, however*, that no distribution from the Participant's Accounts may be made prior to the date the Participant attains the Required Beginning Date, other than as a result of death, without obtaining the Participant's consent to such distribution at such time and in such manner as may be required by the Plan Manager in accordance with Code Section 411(a)(11) and regulations thereunder. If the Participant does not consent to such distribution, benefits shall remain in the Trust Fund (subject to reduction due to Forfeiture) and shall continue to be invested pursuant to Section 4.5 and to receive allocations of Income pursuant to Section 4.2(d). Subject to the following provisions of this Section 5.3, such Participant's benefits shall commence to be distributed to the Participant as soon as practicable following the Valuation Date coincident with or next following the Participant's request for such distribution, but not later than the Required Beginning Date.

(c)    **General Rules Regarding Timing of Distributions.** Unless the Participant elects otherwise, distribution of benefits will begin no later than the 60th day after the latest of the close of the Plan Year in which:

(i)    the Participant attains age 65,

(ii)    occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or

(iii)    the Participant terminates service with the Company.

MOT-ERISA 3897

Failure of the Participant to submit a request for a distribution as described in paragraph (b) immediately above shall be deemed to be an election by the Participant to defer distribution under this paragraph (c).

(d)     **Minimum Required Distributions.**  The provisions of this Section 5.3(d) will apply to any distribution of a Participant's vested Accounts and will take precedence over any inconsistent provisions of this Plan.  Distributions in all cases will be made in accordance with Code Section 401(a)(9) and regulations thereunder.

(i)     **When Distributions Must Begin.**

(A)     **Required Beginning Date.**  Notwithstanding any other provision of this Plan to the contrary, distribution to a Participant must begin no later than the Participant's Required Beginning Date.

(B)     **Death of Participant Before Distributions Begin.**  If the Participant dies before distributions begin, the Participant's entire interest shall be distributed, or begin to be distributed, no later than as follows:

(1)     If the Participant's surviving spouse is the Participant's sole Beneficiary, then distributions to the surviving spouse shall begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

(2)     If the Participant's surviving spouse is not the Participant's sole Beneficiary, the Participant's entire interest shall be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(3)     If the Participant's surviving spouse is the Participant's sole Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, the Participant's entire vested interest shall be distributed by December 31 of the calendar year containing the fifth anniversary of the surviving spouse's death.

(ii)     **Amount of Required Minimum Distributions.**

(A)     **Required Minimum Distributions During Participant's Lifetime.**  Distributions shall be made in accordance with the method of distribution elected by the Participant under Section 5.4.  Notwithstanding the foregoing, if distributions are not made in the form of a single sum, during the Participant's lifetime the amount distributed for any Distribution Calendar Year may not be less than the lesser of:

(1)     the quotient obtained by dividing the Participant's Vested Account Balance by the distribution period in the Uniform

Lifetime Table set forth in Treasury Regulation Section 1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the Distribution Calendar Year; or

(2)    if the Participant's sole Beneficiary for the Distribution Calendar Year is the Participant's spouse, the quotient obtained by dividing the Participant's Vested Account Balance by the number in the Joint and Last Survivor Table set forth in Treasury Regulation Section 1.401(a)(9)-9, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the Distribution Calendar Year.

(B)    **Required Minimum Distributions After Participant's Death.**    Any distributions to Participant's Beneficiary following the Participant's death shall be made in the form of a lump sum.

5.4    **Method of Payment of Distribution**.

(a)    **Forms of Payment.**    A Participant, former Participant, or his or her Beneficiary(ies), as the case may be, entitled to receive a distribution under this Article 5 may elect that such distribution be made by one or more of the following methods, in such form and at such times as the Plan Manager shall determine; *provided, however*, that the installment method described in subparagraph (iii) immediately below may **not** be elected by a Participant who becomes an Employee on or after January 1, 1996:

(i)    By payment of a lump sum;

(ii)    By single sum distribution of a portion of the Participant's Account, but not less than five thousand dollars ($5,000); *provided, however*, that no more than one such distribution shall be permitted in any three (3) month period. Upon the death of a Participant or former Participant who is receiving partial distributions, the remaining balance in his or her Accounts shall be paid to his or her Beneficiary or Beneficiaries in a lump sum. This option may not be elected by any person other than a Participant who has attained his or her Required Beginning Date or a former Participant;

(iii)    By payment in substantially equal annual installments over a period certain not exceeding the Life Expectancy of the Participant provided the Participant became an Employee prior to January 1, 1996. The Accounts of a Participant or former Participant who elects to receive installment payments shall continue to share in the Income of the Investment Funds in which he or she has investments until all amounts in the Accounts are paid out. Upon the death of a Participant or former Participant who is receiving installment distributions, the remaining balance in his or her Accounts shall be paid to his or her Beneficiary or Beneficiaries in a lump sum. A Beneficiary may not elect to be paid in installments. If a Participant resigns or is discharged prior to his or her Early Retirement Date, such Participant may not elect to be paid in annual installments; and

MOT-ERISA 3899

(iv)    By direct transfer of an Eligible Rollover Distribution permitted above to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

Notwithstanding the foregoing, if the amount to be distributed does not exceed $5,000, regardless of any such form of payment election, such amounts shall be distributed in a lump sum. Although amounts transferred to the Plan pursuant to Section 4.6 are included in determining whether the nonforfeitable portion of a Participant's Accounts exceeds $1,000, they shall be excluded in determining whether the nonforfeitable portion of a Participant's Account exceeds $5,000.

(b)    **Default Form of Payment Election.**  If a Participant does not make an election as provided in Section 5.4(a) within sixty (60) days after the date the payment of a distribution is scheduled to commence, such Participant's distribution shall be paid in a lump sum.

(c)    **Distribution In-kind.**  Distributions shall be paid in cash; *provided, however,* that a Participant may elect to receive distribution with respect to that portion of his or her Account then invested in the Motorola Stock Fund in whole shares of Company Stock, with any fractional shares paid in cash.

5.5    **Loans**.  The Plan Manager shall have the authority to establish and maintain a program under which loans may be made to any Participant who is an Employee, including those on leave of absence or layoff.  All loans shall be subject to the rules, regulations, limitations, restrictions (including the assessment of processing fees), procedures and provisions, in effect from time to time, adopted by the Plan Manager.  Loans shall be subject to the following rules:

(a)    Loans shall be made available to all Employee Participants on a reasonably equivalent basis.

(b)    Loans shall not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Employee Participants.

(c)    In no event may the amount of a loan exceed the lesser of:

(i)    fifty percent (50%) of the sum of the vested portion of each of the Employee Participant's Accounts as of the date immediately preceding the Valuation Date; or

(ii)    $50,000, reduced by the highest outstanding balance of all other loans from the Plan to the Employee Participant during the one-year period ending on the day before the date upon which such loan was made.

(d)    Loans shall be in writing, adequately secured, bear a reasonable interest rate, provide for repayment within a specified period of time and be amortized over the term of the loan in level payments made not less frequently than quarterly.

(e)    If any of the survivor benefit requirements of Code Section 401(a)(11) applies to an Employee Participant when part or all of such person's accrued benefit is to be used as

MOT-ERISA 3900

security for a loan, no portion of such person's accrued benefit may be used as security for such loan unless the spouse (if any) of such person consents in writing to such use during the 90-day period ending on the date on which the loan is to be so secured. Such consent must be in writing, must acknowledge the effect of the use of the accrued benefit as security for the loan, and must be witnessed by a notary public or a Plan representative. Such consent shall thereafter be binding with respect to the consenting spouse or any subsequent spouse with respect to that loan. Consent, if given, shall be irrevocable. Spousal consent shall not be required if it is established to the satisfaction of the Plan Manager or its delegate that the spouse cannot be located.

(f)     In the event of default on a loan by an Employee Participant, if the Participant's Accounts secure the loan, foreclosure on the note and security may be postponed until a distributable event occurs under the Plan. In the event of default on any loan, the Plan and Trust shall have the immediate and continuing right to offset all principal and interest due on such loan against the accounts of the debtor.

(g)     No loan shall be made which would constitute a distribution under Code Section 72(p).

(h)     Except for withdrawals which are approved pursuant to Section 5.8, no distribution shall be made to any Employee Participant or to a Beneficiary or Beneficiaries of any such Employee Participant, unless and until all loans, including accrued interest thereon, to such Employee Participant has been repaid or liquidated out of the amounts credited to the Accounts of such Employee Participant.

(i)     No loan shall be available to Participants residing in the United Kingdom to the extent such loan would violate the terms of any applicable United Kingdom law or result in adverse tax consequences to the Plan under United Kingdom law.

5.6     **Facility of Payment**. Whenever, in the Plan Manager's opinion, a person entitled to receive any payment of a benefit hereunder is under a legal disability or is incapacitated in any way so as to be unable to manage his or her financial affairs, the Plan Manager may pay or cause payment to be made to such person or to his legal representative or a relative or friend of such person for his or her benefit, or the Plan Manager may apply or cause to be applied the payment for the benefit of such person in such manner as the Plan Manager considers advisable. Any such payment under this Section 5.6 shall be a complete discharge of any liability for making of such payment under the Plan.

5.7     **Notice of Address**. Each person entitled to benefits hereunder must file with the Company from time to time in writing his or her post office address and each change of post office address. Any communication, statement or notice addressed to such a person at his or her last post office address as filed with the Company will be binding upon such person for all purposes of the Plan. Notwithstanding Section 5.12 or any other provision of the Plan to the contrary, neither the Committee, the Plan Manager, the Trustee nor the Company shall be required to search for or locate such person.

MOT-ERISA 3901